

**FILED**

**NOVEMBER 13, 2006**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

06CV6171
JUDGE SHADUR
MAGISTRATE JUDGE ASHMAN

| | |
|---|---|
| AMERICAN AUTO GUARDIAN, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. |
| | ) |
| ACUITY MUTUAL INSURANCE | ) |
| COMPANY, | ) |
| Defendant. | ) |

FILED
NOV 13 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

NOW COMES the Plaintiff, **AMERICAN AUTO GUARDIAN, INC.** ("*AAG*"), by and through its attorneys, and for its Complaint against defendant **ACUITY MUTUAL INSURANCE COMPANY** ("*Acuity*"), states as follows:

### THE PARTIES

1.      Plaintiff AAG is an Illinois corporation with its principal place of business in Arlington Heights, Illinois.

2.      Defendant Acuity is a Wisconsin domiciled insurance company with its principal place of business in Sheboygan, Wisconsin.

### JURISDICTION

3.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1) in that this is a dispute between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

### VENUE

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) in that a substantial part of the events giving rise to this claim occurred in the Northern District of Illinois.

2144655.01.04.doc
1640937/RAW

## FACTUAL BACKGROUND

5.     AAG markets and administers various financial and insurance-type products sold in connection with the purchase of automobiles and other vehicles. These products include vehicle service contracts (covering the repair of mechanical breakdowns), GAP (covering any "gap" between the payoff amount due on a vehicle loan and the insurance settlement received for a vehicle found to be a total loss), theft protection warranties (providing cash and other benefits if the theft protection product fails to prevent the vehicle from being stolen), and excess wear and tear coverage for leased vehicles (covering wear and tear on leased vehicles in excess of what is considered normal by the leasing company). AAG's products are primarily marketed by independent agents to automobile dealers, who then sell the products in connection with a vehicle purchase.

6.     In connection with its business operations, AAG purchased insurance to cover itself in the event of a loss due to employee dishonesty. As is relevant here, from July 1, 2000 through 12:01 A.M. on July 12, 2002, employee dishonesty coverage was provided by General Casualty Insurance Company. Beginning after 12:01 A.M. on July 12, 2002 through 12:01 A.M. on July 12, 2005, employee dishonesty coverage was provided by Acuity. The specific policies providing coverage are set forth below, and are attached to this complaint as the listed Exhibits and incorporated herein by reference:

| Exhibit | Insurer | Policy No. | Effective Dates |
|---------|---------|------------|-----------------|
| A | General Casualty Insurance Company | CDD0300861 | 07/01/00-11/01/00 |
| B | General Casualty Insurance Company | CDD0300861 | 11/01/00-11/01/01 |
| C | General Casualty Insurance Company | CDD0300861 | 11/01/01-07/12/02 |
| D | Acuity Mutual Insurance Company | K21167-0 | 07/12/02-07/12/03 |
| E | Acuity Mutual Insurance Company | K21167-0 | 07/12/03-07/12/04 |
| F | Acuity Mutual Insurance Company | K21167-0 | 07/12/04-07/12/05 |

7.    Each of the above listed General Casualty and Acuity policies provided coverage to AAG for employee dishonesty up to $500,000. The Acuity policies have no deductible.

8.    On or about August 8, 2005, AAG discovered that its Vice President of Accounting, Sherri Kramer ("*Kramer*"), in conspiracy with her husband, Harry G. ("*Chip*") Kramer, III (together with his wife, Sherri, the "*Kramers*"), had been embezzling funds from AAG. The Kramers had established a bank account at TCF National Bank in the name of Bosley Design, a former printing supplier to AAG. Sherri and her husband were the owners of that account ("the fake Bosley Design account"), not Bosley Design. Sherri Kramer then issued AAG checks payable to Bosley Design even though no work had been performed by that company, and deposited the checks into the fake Bosley Design account. Kramer concealed the issuance of the checks to Bosley Design in many cases by changing the payee's name in AAG's accounting records to a printing supplier with whom AAG was currently doing business.

9.    AAG notified Acuity of the Kramers' embezzlement scheme in writing on or about August 26, 2005. In its notice, AAG advised Acuity that it had uncovered nine (9) checks that Kramer had issued between September 24, 2004 and June 24, 2005 representing $75,784.63 in embezzled AAG funds deposited into the fake Bosley Design account. AAG also notified Acuity that it had discovered that Kramer had embezzled Merrill Lynch credit card reward points that belonged to AAG, and used them to purchase a Canadian ski vacation.

10.    Subsequent to August 26, 2005, AAG continued its investigation into Sherri Kramer's actions. That investigation revealed that from October 19, 2001 through June 24, 2005, Kramer had issued sixty-four (64) AAG checks payable to Bosley Design totaling $285,284.22 which were deposited into the fake Bosley Design account. On October 19, 2005, AAG advised Acuity that its investigation into the Bosley Design embezzlement scheme was complete, although its investigation into other Kramer misappropriations was continuing. AAG also notified Acuity that it should begin its own investigation immediately. On November 9, 2005, AAG filed a civil federal racketeering complaint against the Kramers in this Court, Case no. 05 C 6404.

11.     Four months after AAG had notified Acuity that its investigation into the Bosley Design scheme was complete, under cover of a letter dated February 20, 2006, Acuity forwarded to AAG a check in the amount of $49,783.46 as payment on the Bosley Design embezzlement scheme. This payment represented coverage only for five AAG checks dated between February 11, 2005 and June 24, 2005 issued by Kramer and deposited into the fake Bosley Design account. The letter failed to provide any explanation as to why four additional checks dated between September 24, 2004 and December 30, 2004, and referenced in AAG's initial August 26, 2005 notification, were not covered, even though they fell within the same policy period (July 12, 2004 – July 12, 2005; Exhibit F) as the five checks that were covered. The letter further failed to explain why the remaining fifty-five (55) checks were not covered, or address the theft of the Merrill Lynch credit card reward points.

12.     On February 23, 2006, AAG requested that Acuity provide an explanation as to why the remaining Bosley Design checks were not covered. AAG again requested an explanation on March 7, 2006. AAG's request was met with silence.

13.     Although AAG had completed its investigation into Sherri Kramer's Bosley Design embezzlement scheme in October, 2005, its continuing investigation into Kramer's actions uncovered further dishonesty. Kramer had used AAG's corporate credit cards and credit card reward points for personal purchases such as vacations, jewelry, computers, cameras, electronics, sporting goods, concert tickets, clothing, limousines, golf clubs, gift certificates, and restaurant meals. In addition, Kramer had embezzled AAG funds through schemes such as a fraudulent unapproved salary increase, undocumented and fake expenses, and reimbursement for a non-existent $3,000 cancellation fee for a canceled holiday party at Medinah Country Club where her husband was a member.

14.     After further investigations uncovered the dishonesty referred to in paragraph 13, AAG filed an amended federal racketeering complaint on March 23, 2006. The Kramers relied on their Fifth Amendment privilege against self-incrimination in answering AAG's complaint. The Kramers have since been indicted by State authorities and are named in criminal complaints

filed in the Circuit Court of Cook County Illinois under Case nos. 06 CR 2127101 and 06 CR 2127102.

15.    Prior to making its $49,783.46 payment on the Bosley Design Scheme, Acuity had not required that a formal Proof of Loss be filed. However, on February 20, 2006 AAG was requested by Acuity to file a Proof of Loss, which AAG did on March 28, 2006. A true and correct copy of the Proof of Loss is attached hereto as Exhibit G. In that Proof of Loss, AAG detailed Kramer's dishonesty which covered the period from April, 2000 through July, 2005, and set forth its resulting losses at $444,431.19.

16.    By letter dated August 2, 2006, more than four months after the Proof of Loss was filed, Acuity enclosed its check payable to AAG in the amount of $71,846.09, which it asserted was the "remaining liability" on AAG's claim. That payment included coverage for the four Bosley Design checks that Kramer had issued between September 24, 2004 and December 30, 2004, and which Acuity had failed to cover without explanation in its earlier February 20, 2006 payment of $49,783.46.

17.    In its August 2, 2006 letter, Acuity did not dispute that the nature of Sherri Kramer's dishonest acts were covered. However, for the first time since AAG notified Acuity eleven (11) months prior of Kramer's dishonest acts, Acuity revealed that in its opinion only those dishonest acts that occurred during the last policy period from July 12, 2004 through July 12, 2005 were covered, and that any dishonest acts occurring prior to July 12, 2004 were not covered.

18.    On August 29, 2006, AAG disputed by letter Acuity's limitation on coverage. AAG advised Acuity that its position was unreasonable and squarely contradicted existing law. AAG further advised Acuity that it considered Acuity's denial of coverage vexatious and part of a pattern of delay. AAG requested Acuity to reconsider its denial of coverage and to respond to the request for reconsideration within ten (10) days.

19.    After receiving AAG's August 29, 2006 letter, Acuity promised that it would respond "shortly," and then said that it would respond by October 3, 2006. In order to hopefully

avoid the costs of litigation, AAG decided to await Acuity's response. Consistent with its pattern of delay, as of the date of the filing of this lawsuit, Acuity has not responded to AAG's August 29, 2006 letter.

20.    As is pertinent here, the General Casualty Insurance Company policies in effect from July 1, 2000 through November 1, 2001 had the following coverage provisions regarding employee dishonesty:

### B. General Conditions.

* * *

### 5. Extended Period to Discover Loss

We will pay only for covered loss discovered no later than one year from the end of the policy period.

* * *

### 10. Loss Sustained During Prior Insurance

a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

(1)   This insurance became effective at the time of cancellation or termination of the prior insurance; and

(2)   The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

* * *

21.    The General Casualty Insurance Company policy in effect from November 1, 2001 until its cancellation effective July 12, 2002 had similar coverage provisions:

### E. Conditions

#### 1. Conditions Applicable to All Insuring Agreements

\* \* \*

#### i. Extended Period to Discover Loss

(1) We will pay for loss that you sustained prior to the effective date of termination or cancellation of this policy, which is discovered by you no later than 1 year from the date of that termination or cancellation.

(2) However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded by this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

\* \* \*

#### p. Loss Sustained

Subject to the Loss Sustained During Prior insurance Condition **E.1.q.**, we will pay for loss that you sustain through acts committed or events occurring during the policy period shown in the Declarations and discovered by you:

(1) During the policy period; or

(2) During the period of time provided in the Extended Period To Discover Loss Condition **E.1.i.**

#### q. Loss Sustained During Prior Insurance

(1) If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this policy, provided:

- 7 -

       (a)    This policy became effective at the time of cancellation or termination of the prior insurance; and

       (b)    The loss would have been covered by this policy had it been in effect when the acts or events causing the loss were committed or occurred.

\* \* \*

22.    As is pertinent here, each of the Acuity policies in effect from July 12, 2002 through July 12, 2005 had the following coverage provisions for employee dishonesty.

### 3. Employee Dishonesty

\* \* \*

e. We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

\* \* \*

g. We will pay only for covered loss or damage discovered no later than one year from the end of the Policy Period.

h. If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

    (1)    This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

> (2) The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

* * *

23.     Under Section 3.g of the Acuity policies, dishonest acts that occur during the current policy period and that are discovered up to one year after the expiration of the policy period are covered by that policy. Under Section 3.h, dishonest acts occurring "during the period of *any prior* insurance" are covered so long as there was a policy in effect that would have provided coverage for the acts if they had been discovered under the prior insurance policy period, and the dishonest acts are of the same nature or type that would be covered under Acuity's insurance.

24.     Pursuant to the above provisions and policies, AAG had employee dishonesty coverage continuously for the period July 1, 2000 through July 12, 2005. Under the "prior acts" provisions of the Acuity policies set forth above, the dishonest acts of Sherri Kramer occurring during the period July 1, 2000 through July 12, 2005 are covered.

## COUNT I
## BREACH OF CONTRACT OF INSURANCE

25.     AAG incorporates by reference as though fully stated herein paragraphs 1 – 24 above.

26.     Acuity breached the terms of the insurance policies purchased by AAG by denying coverage for those dishonest acts of Sherri Kramer that occurred during the period July 1, 2000 through July 12, 2004.

27.     As a result of Acuity's breach of its contract of insurance, AAG has been damaged in that the dishonest acts of Sherri Kramer during the period July 1, 2000 through July 12, 2004 that resulted in losses totaling $311,357.55 have not been covered and paid by Acuity. (AAG Is not seeking recovery for two checks, one dated April 24, 2000 in the amount of

- 9 -

$5,291.00, and the other dated May 29, 2000 in the amount of $6,153.09 that were inadvertently included in the Proof of Loss, but pre-date any insurance coverage.)

28.     AAG has demanded that Acuity cover and pay the above losses that AAG has sustained from July 1, 2000 through July 12, 2004 as a result of Kramer's dishonest actions, but Acuity has refused, and continues to refuse, to cover and pay said amount.

**WHEREFORE**, Plaintiff **AMERICAN AUTO GUARDIAN, INC.** respectfully prays that the Court enter judgment in its favor and against Defendant **ACUITY MUTUAL INSURANCE COMPANY** in the amount of $311,357.55, together with prejudgment interest and Plaintiff's costs incurred herein.

## COUNT II
## VIOLATION OF SECTION 155 OF THE ILLINOIS INSURANCE CODE – VEXATIOUS REFUSAL TO PAY

29.     For paragraph 29 of its complaint, AAG incorporates by reference as though fully stated herein paragraphs 25 through 28 above.

30.     Section 155(1) of the Illinois Insurance Code, 215 ILCS 5/155(1) provides as follows:

§ 155. Attorney fees.

(1)     In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a)     60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b)     $60,000;

(c)     the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

31.     Acuity has unreasonably delayed the resolution of AAG's claim, and has acted vexatiously, in the following manner:

(a)     refusing to pay for almost eleven (11) months for the four AAG checks issued by Kramer between September 24, 2004 and December 30, 2004 and deposited into the fake Bosley Design account when liability was reasonably clear, thereby depriving AAG of the use of its property;

(b)     construing the terms of its policies contrary to established legal precedent and unreasonably in order to deny coverage for losses incurred by AAG due to the dishonest acts of Sherri Kramer during the period July 1, 2000 through July 12, 2004;

(c)     failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies by: (i) ignoring for over five (5) months two written requests that Acuity provide the reasons for its failure to provide coverage for all AAG checks deposited into the fake Bosley Design account by Sherri Kramer; and (ii) promising repeatedly that it would respond to AAG's August 29, 2006 letter requesting reconsideration of the denial of AAG's claim, while never intending to do so; and

(d)     compelling AAG to file this lawsuit despite the fact that Acuity's liability is reasonably clear.

32.     In addition to the damages suffered by AAG due to the failure of Acuity to cover and pay for the dishonest acts of Sherri Kramer, AAG is entitled under Section 155 to recover a penalty of $60,000, plus its attorney's fees and costs incurred in bringing this action.

**WHEREFORE,** Plaintiff **AMERICAN AUTO GUARDIAN, INC.** respectfully prays that this Court enter judgment in its favor and against Defendant **ACUITY MUTUAL INSURANCE COMPANY** in the amount of $311,357.55 for covered losses, and in the amount of $60,000 for a penalty, together with attorney's fees and costs incurred by AAG in an amount to be determined.

Respectfully submitted,
AMERICAN AUTO GUARDIAN, INC.

By
One of its Attorneys

Richard A. Wohlleber
Joseph P. Lombardo
CHAPMAN AND CUTLER LLP
111 W. Monroe Street
Chicago, IL 60603
(312) 845-3000
(312) 701-2361

# EXHIBIT A

*general casualty*

# COMMERCIAL CRIME POLICY

7/1/00 - 11/01/2000

# GENERAL CASUALTY INSURANCE COMPANIES

**GENERAL CASUALTY COMPANY OF WISCONSIN**
**A STOCK COMPANY**
**ONE GENERAL DRIVE**
**SUN PRAIRIE, WISCONSIN 53596**

---

**GENERAL CASUALTY COMPANY OF ILLINOIS**
**A STOCK COMPANY**
**1125 S. KIWANIS DRIVE**
**FREEPORT, ILLINOIS 61032**

---

**REGENT INSURANCE COMPANY**
**A STOCK COMPANY**
**ONE GENERAL DRIVE**
**SUN PRAIRIE, WISCONSIN 53596**

IN RETURN FOR THE PAYMENT ● THE PREMIUM, AND SUBJECT TO AL ● HE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

POLICY PERIOD — 12:01 AM STANDARD TIME AT THE NAMED INSURED'S MAILING ADDRESS SHOWN IN THE DECLARATIONS.

## COMMERCIAL CRIME QUICK REFERENCE

This Commercial Crime Policy consists of several items as described below:

1. **DECLARATION PAGES:** They list the Named Insured, Policy Period, and the Coverage Form(s) included in the policy. They also show the limits of insurance and endorsements that apply to each Coverage Form.

2. **COVERAGE FORMS:** Each Coverage Form describes the type of property covered or not covered and the circumstances under which coverage is provided or excluded. It also includes any conditions that apply specifically to that Coverage Form.

3. **ADDITIONAL PROVISIONS OR EXCLUSIONS:** Some or all of the Coverage Forms may be modified by additional provisions or exclusions. When this happens, the forms which contain those provisions or exclusions will be found after the Coverage Forms they modify. The form numbers will also appear on the Declaration Page of the Coverage Form(s) to which they apply.

4. **COMMON POLICY CONDITIONS:** This form lists some of the conditions to which you and we are subject. These conditions apply to all Coverage Forms attached to this policy.

**THIS QUICK REFERENCE IS NOT PART OF THE COMMERCIAL CRIME POLICY AND DOES NOT PROVIDE COVERAGE. PLEASE READ THE COMMERCIAL CRIME POLICY ITSELF FOR ACTUAL CONTRACTUAL PROVISIONS.**

IN WITNESS WHEREOF, the Company designated on the Declaration page has caused this policy to be signed by its president and secretary, but this policy shall not be valid unless completed by the attachment hereto of a Declaration page and countersigned on the aforesaid Declaration page by a duly authorized agent of the company.

*Anne Brouwers Smith*
Secretary

*John G. Golloch*
President

CDD 0300861       ORIGINAL COPY       **general casualty**
PAGE  1 OF  2
COMBINED BILL
 ACCOUNT NO. AMER-FCC614
 NEW DECLARATION

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY |
|---|---|---|---|---|
| CDD 0300861 | 07/01/2000 | 11/01/2000 | GENERAL CASUALTY CO OF IL | 0120703 01 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| AMERICAN AUTO GUARDIAN INC<br>WEAR PROTECTION CORPORATION<br>350 W KENSINGTON RD   NO 108<br>MT PROSPECT IL      60056 | DS&P INSURANCE SERVICES<br>1530 E DUNDEE RD STE 200<br>PALATINE IL              031<br>                   50074 |

CRIME POLICY DECLARATIONS
THIS POLICY CONSISTS OF THIS DECLARATIONS FORM, THE COMMON POLICY
CONDITIONS, THE CRIME GENERAL PROVISIONS FORM AND THE COVERAGE FORMS
INDICATED AS APPLICABLE.
==============================================================================
COVERAGE, PREMIUM, LIMITS OF INSURANCE AND DEDUCTIBLE

COVERAGE FORMS FORMING PART OF THIS POLICY            PREMIUM

EMPLOYEE DISHONESTY - BLANKET                $       778
LIMIT OF INSURANCE $   500,000  DEDUCTIBLE $ G 40
-----------------------------------------------------------
                                                      $
LIMIT OF INSURANCE $          DEDUCTIBLE $
-----------------------------------------------------------
                                                          $
LIMIT OF INSURANCE $          DEDUCTIBLE $
-----------------------------------------------------------
                                                           $
LIMIT OF INSURANCE $          DEDUCTIBLE $
-----------------------------------------------------------
                                                           $
LIMIT OF INSURANCE $          DEDUCTIBLE $
-----------------------------------------------------------
                                                           $
LIMIT OF INSURANCE $          DEDUCTIBLE $
-----------------------------------------------------------

M.P. $  INCL      TOTAL PREMIUM FOR ALL COVERAGE FORM(S)    $    262 P/R
==============================================================================
CANCELLATION OF PRIOR INSURANCE: BY ACCEPTANCE OF THIS POLICY YOU GIVE US
NOTICE CANCELLING PRIOR POLICY OR BOND NOS.
THE CANCELLATION TO BE EFFECTIVE AT THE TIME THIS POLICY BECOMES EFFECTIVE.

APPLICABLE FORMS-CR 0001 10/90   CR 0202 04/97   CR 1000 04/97   CR 7920 03/92
 IL 0017 11/98

                                                          06/16/2000
                                ------------------------ ----------
                                   AUTHORIZED SIGNATURE     DATE

 CR 7900 (07-86)

Case: 1:06-cv-06171 Document #: 1-2 Filed: 11/13/06 Page 17 of 296 PageID #:17

ORIGINAL COPY

*general casualty*

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY |
|---|---|---|---|---|
| CDD 0300861 | 07/01/2000 | 11/01/2000 | GENERAL CASUALTY CO OF IL | 0120703 01 |

| NAMED INSURED AND ADDRESS | AGENT | |
|---|---|---|
| AMERICAN AUTO GUARDIAN INC <br> WEAR PROTECTION CORPORATION <br> 350 W KENSINGTON RD  NO 108 <br> MT PROSPECT IL    60056 | DS&P INSURANCE SERVICES <br> 1530 E DUNDEE RD STE 200 <br> PALATINE IL            031 | 60074 |

## ENDORSEMENT

A $25,000 DEDUCTIBLE APPLIES TO CRIME COVERAGE

CDD 0300861
PAGE 1 OF 1
COMBINED BILL
ACCOUNT NO. AMER-FCC614
NEW DECLARATION

ORIGINAL COPY

*general casualty*

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY |
|---|---|---|---|---|
| CDD 0300861 | 07/01/2000 | 11/01/2000 | GENERAL CASUALTY CO OF IL | 0120703 01 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| AMERICAN AUTO GUARDIAN INC<br>WEAR PROTECTION CORPORATION<br>350 W KENSINGTON RD NO 108<br>MT PROSPECT IL 60056 | DS&P INSURANCE SERVICES<br>1530 E DUNDEE RD STE 200<br>PALATINE IL 031<br><br>60074 |

-S T A T E M E N T  O F  A C C O U N T---  CDD0300861 0011 COMBINED BILL
                                            AMERICAN AUTO GUARDIAN INC
    INSUREDS COPY....RETAIN THIS PAGE FOR YOUR
                    RECORDS.

TOTAL POLICY PREMIUM ........   $262.00

THIS IS NOT A BILL....BILLING INFORMATION WILL BE MAILED SEPARATELY.

IF YOU HAVE ANY POLICY CHANGES, PLEASE CONTACT YOUR AGENT IMMEDIATELY.

YOUR INDEPENDENT AGENT IS WORKING FOR YOU

 ISSUE DATE - 06/16/2000

CC 141
(10-90)

CR 00 01 10 90

# EMPLOYEE DISHONESTY COVERAGE FORM

(Coverage Form A—Blanket)

## A. COVERAGE

We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Cause of Loss.

1. **Covered Property:** "Money", "securities", and "property other than money and securities".

2. **Covered Cause of Loss:** "Employee dishonesty".

3. **Coverage Extension**

   **Employees Temporarily Outside Coverage Territory:** We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory General Condition for a period not more than 90 days.

## B. LIMIT OF INSURANCE

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the DECLARATIONS.

## C. DEDUCTIBLE

1. We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the DECLARATIONS. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

2. You must:

   a. Give us notice as soon as possible of any loss of the type insured under this Coverage Form even though it falls entirely within the Deductible Amount.

   b. Upon our request, give us a statement describing the loss.

## D. ADDITIONAL EXCLUSIONS, CONDITION AND DEFINITIONS: In addition to the provisions in the Crime General Provisions, this Coverage Form is subject to the following:

1. **Additional Exclusions:** We will not pay for loss as specified below:

   a. **Employee Cancelled Under Prior Insurance:** loss caused by any "employee" of yours, or predecessor in interest of yours, for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation.

   b. **Inventory Shortages:** loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

      (1) An inventory computation; or

      (2) A profit and loss computation.

2. **Additional Condition**

   **Cancellation As To Any Employee:** This insurance is cancelled as to any "employee":

   a. Immediately upon discovery by:

      (1) You; or

      (2) Any of your partners, officers or directors not in collusion with the "employee";

   of any dishonest act committed by that "employee" whether before or after becoming employed by you.

   b. On the date specified in a notice mailed to you. That date will be least 30 days after the date of mailing.

   The mailing of notice to you at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

3. **Additional Definitions**

   a. **"Employee Dishonesty"** in paragraph A.2. means only dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:

      (1) Cause you to sustain loss; and also

      (2) Obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for:

         (a) The "employee"; or

         (b) Any person or organization intended by the "employee" to receive that benefit.

   b. **"Occurrence"** means all loss caused by, or involving, one or more "employees", whether the result of a single act or series of acts.


AUTHENTIC

COMMERCIAL CRIME
CR 02 02 04 97

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE PART

**A. Cancellation** (Common Policy Conditions) is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2.a. We may cancel this policy by mailing to you written notice stating the reason for cancellation.

  b. If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

  c. If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

    (1) 30 days prior to the effective date of cancellation if the policy has been in effect for less than 60 days.

    (2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

  a. Nonpayment of premium;

  b. The policy was obtained through a material misrepresentation;

  c. Any insured has violated any of the terms and conditions of the policy;

  d. The risk originally accepted has measurably increased;

  e. Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

  f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail written notice stating the reasons for nonrenewal no less than 60 days before the expiration date to:

  a. You; and

  b. The broker, if known to us, or the agent of record.

2. Even if we do not comply with these terms, this policy will terminate:

  a. On the expiration date if:

    (1) You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

    (2) We have indicated our willingness to renew this policy to you or your representative; or

    (3) You have notified us or our agent that you do not want to renew this policy.

  b. On the effective date of any other insurance replacing this policy.

Copyright, Insurance Services Office, Inc., 1997 ☐

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**D.** When forming a part of this policy, the **Legal Action Against Us** Condition in the Crime General Provisions and in the Safe Depository Direct Loss Coverage Form is replaced by the following:

**LEGAL ACTION AGAINST US**

You may not bring any legal action against us involving loss:

  **a.** Unless you have complied with all the terms of this insurance; and

  **b.** Until 90 days after you have filed proof of loss with us; and

  **c.** Unless brought within 2 years from the date you discover the loss. But we will extend this 2 year period by the number of days between the date proof of loss is filed and the date the claim is denied in whole or in part.

Copyright, Insurance Services Office, Inc., 1997       CR 02 02 04 97

Case: 1:06-cv-06171 Document #: 1-2 Filed: 11/13/06 Page 22 of 296 PageID #:22

# CRIME GENERAL PROVISIONS
# LOSS SUSTAINED FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Words and phrases in quotation marks are defined in the policy.

Unless stated otherwise in any Crime Coverage Form, Declarations or endorsement, the following General Exclusions, General Conditions and General Definitions apply to all Crime Coverage Forms forming part of this policy.

## A. General Exclusions

We will not pay for loss as specified below:

### 1. Acts Committed By You Or Your Partners

Loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.

### 2. Governmental Action

Loss resulting from seizure or destruction of property by order of governmental authority.

### 3. Indirect Loss

Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

a. Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

b. Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

### 4. Legal Expenses

Expenses related to any legal action.

### 5. Nuclear

Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

### 6. War And Similar Actions

Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

## B. General Conditions

### 1. Concealment, Misrepresentation Or Fraud

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

a. This insurance;

b. The Covered Property;

c. Your interest in the Covered Property; or

d. A claim under this insurance.

### 2. Consolidation – Merger

If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity:

a. Any additional persons become "employees"; or

b. You acquire the use and control of any additional "premises";

any insurance afforded for "employees" or "premises" also applies to those additional "employees" and "premises", for a period of 60 days after the effective date of such consolidation, merger, or purchase or acquisition of assets or liabilities.

You must give us written notice within this 60 day period and obtain our written consent to extend this insurance to such additional "employees" or "premises". Upon obtaining our written consent, you must pay us an additional premium.

If you fail to notify us in writing within this 60 day period, then this insurance shall automatically terminate as to such additional "employees" or "premises".

Copyright, Insurance Services Office, Inc., 1996
Copyright, The Surety Association of America, 1996

### 3. Coverage Extensions

Unless stated otherwise in the Coverage Form, our liability under any Coverage Extension is part of, not in addition to, the Limit Of Insurance applying to the Coverage or Coverage Section.

### 4. Duties In The Event Of Loss

After you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Property you must:

a. Notify us as soon as possible.

b. Submit to examination under oath at our request and give us a signed statement of your answers.

c. Give us a detailed, sworn proof of loss within 120 days.

d. Cooperate with us in the investigation and settlement of any claim.

### 5. Extended Period To Discover Loss

We will pay only for covered loss discovered no later than one year from the end of the policy period.

### 6. Joint Insured

a. If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

b. If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

c. An "employee" of any Insured is considered to be an "employee" of every Insured.

d. If this insurance or any of its coverages is cancelled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

e. We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

### 7. Legal Action Against Us

You may not bring any legal action against us involving loss:

a. Unless you have complied with all the terms of this insurance; and

b. Until 90 days after you have filed proof of loss with us; and

c. Unless brought within 2 years from the date you discover the loss.

### 8. Liberalization

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this insurance.

### 9. Loss Covered Under More Than One Coverage Of This Insurance

If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

a. The actual amount of loss; or

b. The sum of the limits of insurance applicable to those coverages.

### 10. Loss Sustained During Prior Insurance

a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

(1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

(2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

b. The insurance under this Condition is part of, not in addition to, the Limits Of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

(1) This insurance as of its effective date; or

(2) The prior insurance had it remained in effect.

### 11. Loss Covered Under This Insurance And Prior Insurance Issued By Us Or Any Affiliate

If any loss is covered:

a. Partly by this insurance; and

b. Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

Copyright, Insurance Services Office, Inc., 1996
Copyright, The Surety Association of America, 1996

CR 10 00 04 97 □

Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit Of Insurance cumulates from year to year or period to period.

### 12. Other Insurance

This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any deductible amount, not recoverable or recovered under the other insurance or indemnity. However, this insurance will not apply to the amount of loss that is more than the applicable Limit Of Insurance shown in the Declarations.

### 13. Ownership Of Property; Interests Covered

The property covered under this insurance is limited to property:

a. That you own or hold; or

b. For which you are legally liable.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

### 14. Policy Period

a. The Policy Period is shown in the Declarations.

b. Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

### 15. Records

You must keep records of all Covered Property so we can verify the amount of any loss.

### 16. Recoveries

a. Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

(1) To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

(2) Then to us, until we are reimbursed for the settlement made;

(3) Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

b. Recoveries do not include any recovery:

(1) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(2) Of original "securities" after duplicates of them have been issued.

### 17. Territory

This insurance covers only acts committed or events occurring within the United States of America, U. S. Virgin Islands, Puerto Rico, Canal Zone, or Canada.

### 18. Transfer Of Your Rights Of Recovery Against Others To Us

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

### 19. Valuation – Settlement

a. Subject to the applicable Limit Of Insurance provision we will pay for:

(1) Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

(a) At face value in the "money" issued by that country; or

(b) In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

(2) Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

(a) Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

(b) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

(i) Value of the "securities" at the close of business on the day the loss was discovered; or

(ii) Limit Of Insurance.

Copyright, Insurance Services Office, Inc., 1996
Copyright, Surety Association of America, 1996

(3) Loss of, or loss from damage to, "property other than money and securities" or loss from damage to the "premises" for not more than the:

   (a) Actual cash value of the property on the day the loss was discovered;

   (b) Cost of repairing the property or "premises"; or

   (c) Cost of replacing the property with property of like kind and quality.

We may, at our option, pay the actual cash value of the property or repair or replace it.

If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost will be determined by arbitration.

b. We may, at our option, pay for loss of, or loss from damage to, property other than "money":

   (1) In the "money" of the country in which the loss occurred; or

   (2) In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

c. Any property that we pay for or replace becomes our property.

## C. General Definitions

1. "Employee" means:

  a. Any natural person:

   (1) While in your service (and for 30 days after termination of service); and

   (2) Whom you compensate directly by salary, wages or commissions; and

   (3) Whom you have the right to direct and control while performing services for you; or

  b. Any natural person who is furnished to you to:

   (1) Substitute for a permanent "employee" on leave; or

(2) Meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises".

But "employee" does not mean any:

   (1) Agent, broker, person leased to you by a labor leasing firm, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

   (2) Director or trustee except while performing acts coming within the scope of the usual duties of an employee.

2. "Money" means:

  a. Currency, coins and bank notes in current use and having a face value; and

  b. Travelers checks, register checks and money orders held for sale to the public.

3. "Property Other Than Money And Securities" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property listed in any Crime Coverage Form as Property Not Covered.

4. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

  a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

  b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

 Copyright, Insurance Services Office, Inc., 1996
Copyright, The Surety Association of America, 1996 CR 10 00 04 97 □

Case: 1:06-cv-06171 Document #: 1-2 Filed: 11/13/06 Page 26 of 296 PageID #:26

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

# EXHIBIT B

2145514.01.01.doc
1640937/RAW



# COMMERCIAL CRIME POLICY

ll 1 1/00 - u/1/01

# GENERAL CASUALTY INSURANCE COMPANIES

**GENERAL CASUALTY COMPANY OF WISCONSIN**
**A STOCK COMPANY**
**ONE GENERAL DRIVE**
**SUN PRAIRIE, WISCONSIN 53596**

---

**GENERAL CASUALTY COMPANY OF ILLINOIS**
**A STOCK COMPANY**
**1125 S. KIWANIS DRIVE**
**FREEPORT, ILLINOIS 61032**

---

**REGENT INSURANCE COMPANY**
**A STOCK COMPANY**
**ONE GENERAL DRIVE**
**SUN PRAIRIE, WISCONSIN 53596**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

POLICY PERIOD — 12:01 AM STANDARD TIME AT THE NAMED INSURED'S MAILING ADDRESS SHOWN IN THE DECLARATIONS.

## COMMERCIAL CRIME QUICK REFERENCE

This Commercial Crime Policy consists of several items as described below:

1. **DECLARATION PAGES:** They list the Named Insured, Policy Period, and the Coverage Form(s) included in the policy. They also show the limits of insurance and endorsements that apply to each Coverage Form.

2. **COVERAGE FORMS:** Each Coverage Form describes the type of property covered or not covered and the circumstances under which coverage is provided or excluded. It also includes any conditions that apply specifically to that Coverage Form.

3. **ADDITIONAL PROVISIONS OR EXCLUSIONS:** Some or all of the Coverage Forms may be modified by additional provisions or exclusions. When this happens, the forms which contain those provisions or exclusions will be found after the Coverage Forms they modify. The form numbers will also appear on the Declaration Page of the Coverage Form(s) to which they apply.

4. **COMMON POLICY CONDITIONS:** This form lists some of the conditions to which you and we are subject. These conditions apply to all Coverage Forms attached to this policy.

**THIS QUICK REFERENCE IS NOT PART OF THE COMMERCIAL CRIME POLICY AND DOES NOT PROVIDE COVERAGE. PLEASE READ THE COMMERCIAL CRIME POLICY ITSELF FOR ACTUAL CONTRACTUAL PROVISIONS.**

IN WITNESS WHEREOF, the Company designated on the Declaration page has caused this policy to be signed by its president and secretary, but this policy shall not be valid unless completed by the attachment hereto of a Declaration page and countersigned on the aforesaid Declaration page by a duly authorized agent of the company.

Anne Brouwers Smith
Secretary

John G. Pollock
President

Case: 1:06-cv-06171 Document #: 1-2 Filed: 11/13/06 Page 30 of 296 PageID #:30

ORIGINAL COPY

 **general casualty**

RENEWAL OF:
CDD 0300861

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY |
|---|---|---|---|---|
| CDD 0300861 | 11/01/2000 | 11/01/2001 | GENERAL CASUALTY CO OF IL | 0120703 01 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| AMERICAN AUTO GUARDIAN INC<br>WEAR PROTECTION CORPORATION<br>350 W KENSINGTON RD   NO 108<br>MT PROSPECT IL    60056 | DS&P INSURANCE SERVICES<br>1530 E DUNDEE RD STE 200<br>PALATINE IL       031<br><div align="right">60074</div> |

### CRIME POLICY DECLARATIONS

THIS POLICY CONSISTS OF THIS DECLARATIONS FORM, THE COMMON POLICY
CONDITIONS, THE CRIME GENERAL PROVISIONS FORM AND THE COVERAGE FORMS
INDICATED AS APPLICABLE.
================================================================================
COVERAGE, PREMIUM, LIMITS OF INSURANCE AND DEDUCTIBLE

COVERAGE FORMS FORMING PART OF THIS POLICY                        PREMIUM

EMPLOYEE DISHONESTY - BLANKET                            $       778
LIMIT OF INSURANCE $    500,000  DEDUCTIBLE $ G 40
------------------------------------------------------------------
                                                        $
LIMIT OF INSURANCE $            DEDUCTIBLE $
------------------------------------------------------------------
                                                        $
LIMIT OF INSURANCE $            DEDUCTIBLE $
------------------------------------------------------------------
                                                        $
LIMIT OF INSURANCE $            DEDUCTIBLE $
------------------------------------------------------------------
                                                        $
LIMIT OF INSURANCE $            DEDUCTIBLE $
------------------------------------------------------------------
                                                        $
LIMIT OF INSURANCE $            DEDUCTIBLE $
------------------------------------------------------------------

M.P. $  INCL     TOTAL PREMIUM FOR ALL COVERAGE FORM(S)   $      778.
================================================================================
CANCELLATION OF PRIOR INSURANCE: BY ACCEPTANCE OF THIS POLICY YOU GIVE US
NOTICE CANCELLING PRIOR POLICY OR BOND NOS.
THE CANCELLATION TO BE EFFECTIVE AT THE TIME THIS POLICY BECOMES EFFECTIVE.

APPLICABLE FORMS-CR 0001 10/90   CR 0202 04/97   CR 1000 04/97   CR 7920 03/92
 IL 0017 11/98

                                                        09/19/2000
                                    ----------------    ----------
                                    AUTHORIZED SIGNATURE   DATE

 CR 7900 (07-86)

CDD 0300861
PAGE 2 OF 2
COMBINED BILL
ACCOUNT NO. AMER-FCC614
RENEWAL DECLARATION

ORIGINAL COPY

 **general casualty**

RENEWAL OF:
CDD 0300861

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY |
|---|---|---|---|---|
| CDD 0300861 | 11/01/2000 | 11/01/2001 | GENERAL CASUALTY CO OF IL | 0120703 01 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| AMERICAN AUTO GUARDIAN INC<br>WEAR PROTECTION CORPORATION<br>350 W KENSINGTON RD NO 10B<br>MT PROSPECT IL 60056 | DS&P INSURANCE SERVICES<br>1530 E DUNDEE RD STE 200<br>PALATINE IL 031<br>60074 |

ENDORSEMENT

A $25,000 DEDUCTIBLE APPLIES TO CRIME COVERAGE

G40 (5-85)

412

CDD 0300861
PAGE 1 OF 1
COMBINED BILL
ACCOUNT NO. AMER-FCC614
RENEWAL DECLARATION

**general casualty**

RENEWAL OF:
CDD 0300861

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY |
|---|---|---|---|---|
| CDD 0300861 | 11/01/2000 | 11/01/2001 | GENERAL CASUALTY CO OF IL | 0120703 01 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| AMERICAN AUTO GUARDIAN INC<br>WEAR PROTECTION CORPORATION<br>350 W KENSINGTON RD NO 108<br>MT PROSPECT IL 60056 | DS&P INSURANCE SERVICES<br>1530 E DUNDEE RD STE 200<br>PALATINE IL 031<br><br>60074 |

```
     -S T A T E M E N T   O F   A C C O U N T---   CDD0300861 0111 COMBINED BILL
                                                   AMERICAN AUTO GUARDIAN INC
        INSUREDS COPY....RETAIN THIS PAGE FOR YOUR
                        RECORDS.

TOTAL POLICY PREMIUM ........     $778.00
```

THIS IS NOT A BILL....BILLING INFORMATION WILL BE MAILED SEPARATELY.

IF YOU HAVE ANY POLICY CHANGES, PLEASE CONTACT YOUR AGENT IMMEDIATELY.

YOUR INDEPENDENT AGENT IS WORKING FOR YOU

ISSUE DATE - 09/19/2000

CC 141
(10-90)

CR 00 01 10 90

# EMPLOYEE DISHONESTY COVERAGE FORM
### (Coverage Form A—Blanket)

## A. COVERAGE

We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Cause of Loss.

**1. Covered Property:** "Money", "securities", and "property other than money and securities".

**2. Covered Cause of Loss:** "Employee dishonesty".

**3. Coverage Extension**

**Employees Temporarily Outside Coverage Territory:** We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory General Condition for a period not more than 90 days.

## B. LIMIT OF INSURANCE

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the DECLARATIONS.

## C. DEDUCTIBLE

**1.** We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the DECLARATIONS. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**2.** You must:

    **a.** Give us notice as soon as possible of any loss of the type insured under this Coverage Form even though it falls entirely within the Deductible Amount.

    **b.** Upon our request, give us a statement describing the loss.

## D. ADDITIONAL EXCLUSIONS, CONDITION AND DEFINITIONS: In addition to the provisions in the Crime General Provisions, this Coverage Form is subject to the following:

**1. Additional Exclusions:** We will not pay for loss as specified below:

    **a. Employee Cancelled Under Prior Insurance:** loss caused by any "employee" of yours, or predecessor in interest of yours, for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation.

    **b. Inventory Shortages:** loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

        **(1)** An inventory computation; or

        **(2)** A profit and loss computation.

**2. Additional Condition**

**Cancellation As To Any Employee:** This insurance is cancelled as to any "employee":

    **a.** Immediately upon discovery by:

        **(1)** You; or

        **(2)** Any of your partners, officers or directors not in collusion with the "employee";

    of any dishonest act committed by that "employee" whether before or after becoming employed by you.

    **b.** On the date specified in a notice mailed to you. That date will be least 30 days after the date of mailing.

    The mailing of notice to you at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

**3. Additional Definitions**

    **a. "Employee Dishonesty"** in paragraph A.2. means only dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:

        **(1)** Cause you to sustain loss; and also

        **(2)** Obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for:

            **(a)** The "employee"; or

            **(b)** Any person or organization intended by the "employee" to receive that benefit.

    **b. "Occurrence"** means all loss caused by, or involving, one or more "employees", whether the result of a single act or series of acts.


AUTHENTIC

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE PART

**A. Cancellation** (Common Policy Conditions) is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2.a. We may cancel this policy by mailing to you written notice stating the reason for cancellation.

b. If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

c. If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

(1) 30 days prior to the effective date of cancellation if the policy has been in effect for less than 60 days.

(2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

a. Nonpayment of premium;

b. The policy was obtained through a material misrepresentation;

c. Any insured has violated any of the terms and conditions of the policy;

d. The risk originally accepted has measurably increased;

e. Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail written notice stating the reasons for nonrenewal no less than 60 days before the expiration date to:

a. You; and

b. The broker, if known to us, or the agent of record.

2. Even if we do not comply with these terms, this policy will terminate:

a. On the expiration date if:

(1) You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

(2) We have indicated our willingness to renew this policy to you or your representative; or

(3) You have notified us or our agent that you do not want to renew this policy.

b. On the effective date of any other insurance replacing this policy.

      Copyright, Insurance Services Office, Inc., 1997        ☐

**C. Mailing Of Notices**

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**D.** When forming a part of this policy, the **Legal Action Against Us** Condition in the Crime General Provisions and in the Safe Depository Direct Loss Coverage Form is replaced by the following:

**LEGAL ACTION AGAINST US**

You may not bring any legal action against us involving loss:

    **a.** Unless you have complied with all the terms of this insurance; and

    **b.** Until 90 days after you have filed proof of loss with us; and

    **c.** Unless brought within 2 years from the date you discover the loss. But we will extend this 2 year period by the number of days between the date proof of loss is filed and the date the claim is denied in whole or in part.

Copyright, Insurance Services Office, Inc., 1997

CR 02 02 04 97

Case: 1:06-cv-06171 Document #: 1-2 Filed: 11/13/06 Page 36 of 296 PageID #:36

# CRIME GENERAL PROVISIONS
# LOSS SUSTAINED FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Words and phrases in quotation marks are defined in the policy.

Unless stated otherwise in any Crime Coverage Form, Declarations or endorsement, the following General Exclusions, General Conditions and General Definitions apply to all Crime Coverage Forms forming part of this policy.

## A. General Exclusions

We will not pay for loss as specified below:

### 1. Acts Committed By You Or Your Partners

Loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.

### 2. Governmental Action

Loss resulting from seizure or destruction of property by order of governmental authority.

### 3. Indirect Loss

Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

a. Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

b. Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

### 4. Legal Expenses

Expenses related to any legal action.

### 5. Nuclear

Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

### 6. War And Similar Actions

Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

## B. General Conditions

### 1. Concealment, Misrepresentation Or Fraud

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

a. This insurance;

b. The Covered Property;

c. Your interest in the Covered Property; or

d. A claim under this insurance.

### 2. Consolidation – Merger

If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity:

a. Any additional persons become "employees"; or

b. You acquire the use and control of any additional "premises";

any insurance afforded for "employees" or "premises" also applies to those additional "employees" and "premises", for a period of 60 days after the effective date of such consolidation, merger, or purchase or acquisition of assets or liabilities.

You must give us written notice within this 60 day period and obtain our written consent to extend this insurance to such additional "employees" or "premises". Upon obtaining our written consent, you must pay us an additional premium.

If you fail to notify us in writing within this 60 day period, then this insurance shall automatically terminate as to such additional "employees" or "premises".

Copyright, Insurance Services Office, Inc., 1996
Copyright, The Surety Association of America, 1996

### 3. Coverage Extensions

Unless stated otherwise in the Coverage Form, our liability under any Coverage Extension is part of, not in addition to, the Limit Of Insurance applying to the Coverage or Coverage Section.

### 4. Duties In The Event Of Loss

After you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Property you must:

a. Notify us as soon as possible.

b. Submit to examination under oath at our request and give us a signed statement of your answers.

c. Give us a detailed, sworn proof of loss within 120 days.

d. Cooperate with us in the investigation and settlement of any claim.

### 5. Extended Period To Discover Loss

We will pay only for covered loss discovered no later than one year from the end of the policy period.

### 6. Joint Insured

a. If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

b. If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

c. An "employee" of any Insured is considered to be an "employee" of every Insured.

d. If this insurance or any of its coverages is cancelled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

e. We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

### 7. Legal Action Against Us

You may not bring any legal action against us involving loss:

a. Unless you have complied with all the terms of this insurance; and

b. Until 90 days after you have filed proof of loss with us; and

c. Unless brought within 2 years from the date you discover the loss.

### 8. Liberalization

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this insurance.

### 9. Loss Covered Under More Than One Coverage Of This Insurance

If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

a. The actual amount of loss; or

b. The sum of the limits of insurance applicable to those coverages.

### 10. Loss Sustained During Prior Insurance

a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

(1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

(2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

b. The insurance under this Condition is part of, not in addition to, the Limits Of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

(1) This insurance as of its effective date; or

(2) The prior insurance had it remained in effect.

### 11. Loss Covered Under This Insurance And Prior Insurance Issued By Us Or Any Affiliate

If any loss is covered:

a. Partly by this insurance; and

b. Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

Copyright, Insurance Services Office, Inc., 1996
Copyright, The Surety Association of America, 1996
CR 10 00 04 97  ☐

Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit Of Insurance cumulates from year to year or period to period.

## 12. Other Insurance

This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any deductible amount, not recoverable or recovered under the other insurance or indemnity. However, this insurance will not apply to the amount of loss that is more than the applicable Limit Of Insurance shown in the Declarations.

## 13. Ownership Of Property; Interests Covered

The property covered under this insurance is limited to property:

a. That you own or hold; or

b. For which you are legally liable.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

## 14. Policy Period

a. The Policy Period is shown in the Declarations.

b. Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

## 15. Records

You must keep records of all Covered Property so we can verify the amount of any loss.

## 16. Recoveries

a. Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

(1) To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

(2) Then to us, until we are reimbursed for the settlement made;

(3) Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

b. Recoveries do not include any recovery:

(1) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(2) Of original "securities" after duplicates of them have been issued.

## 17. Territory

This insurance covers only acts committed or events occurring within the United States of America, U. S. Virgin Islands, Puerto Rico, Canal Zone, or Canada.

## 18. Transfer Of Your Rights Of Recovery Against Others To Us

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

## 19. Valuation – Settlement

a. Subject to the applicable Limit Of Insurance provision we will pay for:

(1) Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

(a) At face value in the "money" issued by that country; or

(b) In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

(2) Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

(a) Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

(b) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

(i) Value of the "securities" at the close of business on the day the loss was discovered; or

(ii) Limit Of Insurance.

Copyright, Insurance Services Office, Inc., 1996
Copyright, Surety Association of America, 1996

(3) Loss of, or loss from damage to, "property other than money and securities" or loss from damage to the "premises" for not more than the:

    (a) Actual cash value of the property on the day the loss was discovered;

    (b) Cost of repairing the property or "premises"; or

    (c) Cost of replacing the property with property of like kind and quality.

We may, at our option, pay the actual cash value of the property or repair or replace it.

If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost will be determined by arbitration.

b. We may, at our option, pay for loss of, or loss from damage to, property other than "money":

    (1) In the "money" of the country in which the loss occurred; or

    (2) In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

c. Any property that we pay for or replace becomes our property.

C. General Definitions

1. "Employee" means:

a. Any natural person:

    (1) While in your service (and for 30 days after termination of service); and

    (2) Whom you compensate directly by salary, wages or commissions; and

    (3) Whom you have the right to direct and control while performing services for you; or

b. Any natural person who is furnished to you to:

    (1) Substitute for a permanent "employee" on leave; or

    (2) Meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises".

But "employee" does not mean any:

    (1) Agent, broker, person leased to you by a labor leasing firm, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

    (2) Director or trustee except while performing acts coming within the scope of the usual duties of an employee.

2. "Money" means:

a. Currency, coins and bank notes in current use and having a face value; and

b. Travelers checks, register checks and money orders held for sale to the public.

3. "Property Other Than Money And Securities" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property listed in any Crime Coverage Form as Property Not Covered.

4. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

Copyright, Insurance Services Office, Inc., 1996
Copyright, The Surety Association of America, 1996

CR 10 00 04 97   □

Case: 1:06-cv-06171 Document #: 1-2 Filed: 11/13/06 Page 40 of 296 PageID #:40

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

# EXHIBIT C

*general casualty*

**GENERAL CASUALTY CO OF IL**

2900 PEARL CITY ROAD
FREEPORT IL 61032
PHONE NUMBER: (815) 235-8900

# COMMERCIAL CRIME POLICY

AMERICAN AUTO GUARDIAN INC
WEAR PROTECTION CORPORATION
350 W KENSINGTON RD NO 108
MT PROSPECT IL   60056        60056

*11/1/01 - 11/1/02 if*
*cancelled effective*
*7/12/02*
*Replaced by Acuity*

**Your Independent Agent Is:**

DS&P INSURANCE SERVICES

1530 E DUNDEE RD STE 200
PALATINE IL      031 60074
PHONE NUMBER: (847) 934-6100

**Our Regional Office:**

2900 PEARL CITY ROAD
FREEPORT IL 61032
PHONE NUMBER: (815) 235-8900
FAX NUMBER:   (815) 266-6670

A member of the
"Winterthur" Swiss Insurance Group

# Commercial Crime Policy Quick Reference

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| | |
|---|---|
| **Policy Period** | This policy period begins at 12:01 a.m. standard time at the named insured's mailing address on the date shown in the Declarations. |

## This Commercial Crime Policy consists of several items as described below:

| | |
|---|---|
| **Declaration Pages** | The Declarations list the named insured, policy period, the coverages provided and the limits of insurance. They also show the forms and endorsements that apply to this policy. |
| **Coverage Forms** | The Coverage Forms describe the nature and extent of coverage provided. They also include any conditions that apply specifically to the Coverage Forms. |
| **Additional Provisions or Exclusions** | This policy may be modified by additional provisions or exclusions. When this happens, the forms which contain those provisions or exclusions will be found after the Coverage Forms. The form numbers will also appear on the Declarations. |
| **Common Policy Conditions** | This form lists some of the conditions to which you and we are subject. Further conditions can be found in the Coverage Forms. |

This quick reference is not part of the Commercial Crime Policy and does not provide coverage. Please read the Commercial Crime Policy itself for actual contractual provisions.

In witness whereof, the Company designated on the Declaration page has caused this policy to be signed by its president and secretary, but this policy shall not be valid unless completed by the attachment hereto of a Declaration page and countersigned on the aforesaid Declaration page by a duly authorized representative of the company.

*John G. Golloch*

President, General Casualty Insurance Companies

*Anne Brouwers Smith*

Secretary, General Casualty Insurance Companies

CR 79 20 04 00

CDD 0300861

ORIGINAL COPY
COMMERCIAL CRIME POLICY

*general casualty* 

COMBINED BILL
ACCOUNT NO. AMER-FCC614
RENEWAL DECLARATION

RENEWAL OF:
CDD 0300861

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY |
|---|---|---|---|---|
| CDD 0300861 | 11/01/2001 | 11/01/2002 | GENERAL CASUALTY CO OF IL | 0120703 |
| NAMED INSURED AND ADDRESS | | | AGENT | |
| AMERICAN AUTO GUARDIAN INC<br>WEAR PROTECTION CORPORATION<br>350 W KENSINGTON RD  NO 108<br>MT PROSPECT IL    60056 | | | DS&P INSURANCE SERVICES<br><br>1530 E DUNDEE RD STE 200<br>PALATINE IL          031 60074 | |

## COMMERCIAL CRIME POLICY DECLARATIONS

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS AND CONDITIONS
OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

INSURING AGREEMENTS, LIMITS OF INSURANCE AND DEDUCTIBLES:

| INSURING AGREEMENTS | LIMIT OF INSURANCE PER OCCURRENCE | DEDUCTIBLE AMOUNT PER OCCURRENCE |
|---|---|---|
| 1.  EMPLOYEE THEFT | $ 500,000 | $ 25,000 |
| 2.  FORGERY OR ALTERATION | $ NOT COVERED | $ |
| 3.  INSIDE THE PREMISES — THEFT OF MONEY AND SECURITIES | $ NOT COVERED | $ |
| 4.  INSIDE THE PREMISES — ROBBERY OR SAFE BURGLARY OF OTHER PROPERTY | $ NOT COVERED | $ |
| 5.  OUTSIDE THE PREMISES | $ NOT COVERED | $ |
| 6.  COMPUTER FRAUD | $ NOT COVERED | $ |
| 7.  MONEY ORDERS AND COUNTERFEIT PAPER CURRENCY | $ NOT COVERED | $ |

IF ADDED BY ENDORSEMENT, INSURING AGREEMENT(S):

|  | $ | $ |
|---|---|---|
|  | $ | $ |
|  | $ | $ |
|  | $ | $ |

TOTAL PREMIUM  $ 881

IF "NOT COVERED" IS INSERTED ABOVE OPPOSITE ANY SPECIFIED INSURING AGREEMENT, SUCH
INSURING AGREEMENT AND ANY OTHER REFERENCE THERETO IN THIS POLICY IS DELETED.

CANCELLATION OF PRIOR INSURANCE:  BY ACCEPTANCE OF THIS POLICY YOU GIVE US NOTICE
CANCELLING PRIOR POLICY NOS.
THE CANCELLATION TO BE EFFECTIVE AT THE TIME THIS POLICY BECOMES EFFECTIVE.

APPLICABLE FORMS-  CR 0023 03/00    CR 0202 03/00    CR 7920 04/00

10/8/01
09/28/2001

_____        _____
AUTHORIZED SIGNATURE                  DATE

CR 7911 (05-00)

# COMMERCIAL CRIME POLICY
## (LOSS SUSTAINED FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F. Definitions.

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations:

#### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

#### 2. Forgery Or Alteration

a. We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

(1) Made or drawn by or drawn upon you; or

(2) Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

b. If you are sued for refusing to pay any instrument covered in Paragraph a. above, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

#### 3. Inside The Premises – Theft Of Money And Securities

a. We will pay for loss of "money" and "securities" inside the "premises" or "banking premises" resulting directly from "theft", disappearance or destruction.

b. We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

c. We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

#### 4. Inside The Premises – Robbery Or Safe Burglary Of Other Property

a. We will pay for loss of or damage to "other property":

(1) Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

(2) Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

b. We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

c. We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

#### 5. Outside The Premises

a. We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**b.** We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

## 6. Computer Fraud

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

**a.** To a person (other than a "messenger") outside those "premises"; or

**b.** To a place outside those "premises".

## 7. Money Orders And Counterfeit Paper Currency

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**a.** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**b.** "Counterfeit" paper currency that is acquired during the regular course of business.

## B. Limit Of Insurance

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations.

## C. Deductible

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance. In the event more than one Deductible Amount could apply to the same loss, only the highest Deductible Amount may be applied.

## D. Exclusions

**1.** This policy does not apply to:

**a. Acts Committed By You, Your Partners Or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

**(1)** You; or

**(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons.

**b. Acts Of Employees, Managers, Directors, Trustees Or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

**(1)** Whether acting alone or in collusion with other persons; or

**(2)** While performing services for you or otherwise;

except when covered under Insuring Agreement A.1.

**c. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**d. Indirect Loss**

Loss that is an indirect result of any act or "occurrence" covered by this policy including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money" "securities" or "other property".

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this policy.

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this policy.

**e. Legal Expenses**

Expenses related to any legal action, except when covered under Insuring Agreement A.2.

**f. Nuclear**

Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

**g. War And Similar Actions**

Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

Copyright Insurance Services Office, Inc., 1998

CR 00 23 03 00

2. Insuring Agreement A.1. does not apply to:

   a. **Employee Cancelled Under Prior Insurance**

   Loss caused by any "employee" of yours, or predecessor in interest of yours, for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation.

   b. **Inventory Shortages**

   Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

   (1) An inventory computation; or

   (2) A profit and loss computation.

   However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

   c. **Trading**

   Loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account.

   d. **Warehouse Receipts**

   Loss resulting from fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

3. Insuring Agreements A.3., A.4. and A.5. do not apply to:

   a. **Accounting Or Arithmetical Errors Or Omissions**

   Loss resulting from accounting or arithmetical errors or omissions.

   b. **Exchanges Or Purchases**

   Loss resulting from the giving or surrendering of property in any exchange or purchase.

   c. **Fire**

   Loss resulting from fire, however caused, except:

   (1) Loss from damage to a safe or vault; and

   (2) Under Insuring Agreement A.3., loss of or damage to "money" and "securities".

   d. **Money Operated Devices**

   Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

   e. **Motor Vehicles Or Equipment And Accessories**

   Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

   f. **Transfer Or Surrender Of Property**

   (1) Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

      (a) On the basis of unauthorized instructions;

      (b) As a result of a threat to do bodily harm to any person; or

      (c) As a result of a threat to do damage to any property.

   (2) But, this Exclusion does not apply under Insuring Agreement A.5. to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

      (a) Had no knowledge of any threat at the time the conveyance began; or

      (b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

   g. **Vandalism**

   Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

   h. **Voluntary Parting Of Title To Or Possession Of Property**

   Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

4. Insuring Agreement A.6. does not apply to:

**Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

a. An inventory computation; or

b. A profit and loss computation.

## E. Conditions

### 1. Conditions Applicable To All Insuring Agreements

**a. Cancellation As To Any Employee**

This policy is cancelled as to any "employee":

(1) Immediately upon discovery by:

(a) You; or

(b) Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

(2) On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Cancellation Of Policy**

(1) The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

(2) We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(a) 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

(b) 30 days before the effective date of cancellation if we cancel for any other reason.

(3) We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

(4) Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

(5) If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

(6) If notice is mailed, proof of mailing will be sufficient proof of notice.

**c. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**d. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

(1) This policy;

(2) The property covered under this policy;

(3) Your interest in the property covered under this policy; or

(4) A claim under this policy.

**e. Consolidation – Merger**

If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity, any additional persons become "employees" or you acquire the use and control of any additional "premises":

(1) You must give us written notice and obtain our written consent to extend this insurance to such additional "employees" or "premises". We may condition our consent upon payment of an additional premium; but

(2) For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, any insurance afforded for "employees" or "premises" also applies to these additional "employees" or "premises" for acts committed or events occurring within this 90 day period.

### f. Duties In The Event Of Loss

After you discover a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

(1) Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreements A.1. or A.2.) involves a violation of law, you must also notify the local law enforcement authorities.

(2) Submit to examination under oath at our request and give us a signed statement of your answers.

(3) Give us a detailed, sworn proof of loss within 120 days.

(4) Cooperate with us in the investigation and settlement of any claim.

### g. Employee Benefit Plan(s)

(1) The "employee benefit plan(s)" shown in the Declarations are included as Insureds under Insuring Agreement A.1.

(2) If any "employee benefit plan(s)" is insured jointly with any other entity under this policy, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement A.1. that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

(3) With respect to losses sustained or discovered by any such Plan, Insuring Agreement A.1. is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

(4) If the first Named Insured is an entity other than a Plan, any payment we make to that Insured for loss sustained by any Plan will be held by that Insured for the use and benefit of the Plan(s) sustaining the loss.

(5) If two or more Plans are insured under this policy, any payment we make for loss:

(a) Sustained by two or more Plans; or

(b) Of commingled "funds" or "other property" of two or more Plans;

that arises out of one "occurrence", is to be shared by each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total of those limits.

(6) The Deductible Amount applicable to Insuring Agreement A.1. does not apply to loss sustained by any "employee benefit plan(s)".

### h. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to 3 years afterward.

### i. Extended Period To Discover Loss

(1) We will pay for loss that you sustained prior to the effective date of termination or cancellation of this policy, which is discovered by you no later than 1 year from the date of that termination or cancellation.

(2) However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded by this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

### j. Inspections And Surveys

(1) We have the right to:

(a) Make inspections and surveys at any time;

(b) Give you reports on the conditions we find; and

(c) Recommend changes.

(2) We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    (a) Are safe or healthful; or

    (b) Comply with laws, regulations, codes or standards.

(3) Paragraphs (1) and (2) above apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**k. Joint Insured**

(1) If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this policy. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

(2) If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this policy, that knowledge is considered knowledge of every Insured.

(3) An "employee" of any Insured is considered to be an "employee" of every Insured.

(4) If this policy or any of its coverages is cancelled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered by you during the period of time provided in the Extended Period To Discover Loss Condition E.1.i.

However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by that Insured replacing in whole or in part the insurance afforded by this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(5) We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

**l. Legal Action Against Us**

You may not bring any legal action against us involving loss:

(1) Unless you have complied with all the terms of this policy;

(2) Until 90 days after you have filed proof of loss with us; and

(3) Unless brought within 2 years from the date you discover the loss.

If any limitation is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**m. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

**n. Loss Covered Under More Than One Coverage Of This Policy**

If two or more coverages of this policy apply to the same loss, we will pay the lesser of:

(1) The actual amount of loss; or

(2) The sum of the Limits of Insurance applicable to those coverages.

**o. Loss Covered Under This Policy And Prior Insurance Issued By Us Or Any Affiliate**

If any loss is covered:

(1) Partly by this policy; and

(2) Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

the most we will pay is the larger of the amount recoverable under this policy or the prior insurance.

Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or policy period to policy period.

Copyright Insurance Services Office, Inc., 1998

CR 00 23 03 00

**p. Loss Sustained**

Subject to the Loss Sustained During Prior Insurance Condition E.1.q., we will pay for loss that you sustain through acts committed or events occurring during the policy period shown in the Declarations and discovered by you:

(1) During the policy period; or

(2) During the period of time provided in the Extended Period To Discover Loss Condition E.1.i.

**q. Loss Sustained During Prior Insurance**

(1) If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this policy, provided:

(a) This policy became effective at the time of cancellation or termination of the prior insurance; and

(b) The loss would have been covered by this policy had it been in effect when the acts or events causing the loss were committed or occurred.

(2) The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this policy and is limited to the lesser of the amount recoverable under:

(a) This policy as of its effective date; or

(b) The prior insurance had it remained in effect.

**r. Other Insurance**

This policy does not apply to loss recoverable or recovered under other insurance or indemnity. If the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this policy will apply to that part of the loss, other than that falling within any Deductible Amount, not recoverable or recovered under the other insurance or indemnity.

However, this policy will not apply to the amount of loss that is more than the applicable Limit of Insurance shown in the Declarations.

**s. Ownership Of Property; Interests Covered**

The property covered under this policy is limited to property:

(1) That you own or lease;

(2) That you hold for others; or

(3) For which you are legally liable, except for property inside the premises of a "client" of yours.

However, this policy is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this policy must be presented by you.

**t. Premiums**

The first Named Insured shown in the Declarations:

(1) Is responsible for the payment of all premiums; and

(2) Will be the payee for any return premiums we pay.

**u. Records**

You must keep records of all property covered under this policy so we can verify the amount of any loss.

**v. Recoveries**

(1) Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this policy will be distributed as follows:

(a) To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

(b) Then to us, until we are reimbursed for the settlement made; and

(c) Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

(2) Recoveries do not include any recovery:

(a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(b) Of original "securities" after duplicates of them have been issued.

**w. Territory**

This policy covers acts committed or events occurring within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**x. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having temporary custody of your property will have your rights and duties but only with respect to that property.

**y. Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**z. Valuation – Settlement**

(1) Subject to Section B. Limit Of Insurance provision, we will pay for:

  (a) Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

    (i) At face value in the "money" issued by that country; or

    (ii) In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

  (b) Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

    (i) Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

    (ii) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

      i. Value of the "securities" at the close of business on the day the loss was discovered; or

      ii. Limit of Insurance.

  (c) Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

    (i) The Limit of Insurance applicable to the lost or damaged property;

    (ii) The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

    (iii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

  We will not pay on a replacement cost basis for any loss or damage:

    (i) Until the lost or damaged property is actually repaired or replaced; and

    (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

  If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

(2) We may, at our option, pay for loss of or damage to property other than "money":

  (a) In the "money" of the country in which the loss occurred; or

 Copyright Insurance Services Office, Inc. 1998 CR 00 23 03 00

(b) In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

(3) Any property that we pay for or replace becomes our property.

## 2. Condition Applicable To Insuring Agreement A.1.

### Territory

We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition E.1.w. for a period of not more than 90 days.

## 3. Conditions Applicable To Insuring Agreement A.2.

### a. Deductible

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement A.2.

### b. Facsimile Signatures

We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

### c. Proof Of Loss

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

### d. Territory

We will cover loss you sustain anywhere in the world. The Territory Condition E.1.w. does not apply to Insuring Agreement A.2.

## 4. Conditions Applicable To Insuring Agreements A.4. And A.5.

### a. Armored Motor Vehicle Companies

Under Insuring Agreement A.5., we will only pay for the amount of loss you cannot recover:

(1) Under your contract with the armored motor vehicle company; and

(2) From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

### b. Special Limit Of Insurance For Specified Property

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

(1) Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

(2) Manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

## 5. Conditions Applicable To Insuring Agreement A.6.

### a. Special Limit Of Insurance For Specified Property

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

### b. Territory

We will cover loss you sustain anywhere in the world. The Territory Condition E.1.w. does not apply to Insuring Agreement A.6.

## F. Definitions

1. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. "Client" means any entity for whom you perform services under a written agreement.

3. "Counterfeit" means an imitation of an actual valid original which is intended to deceive and to be taken as the original.

4. "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

5. "Employee":

   a. "Employee" means:

   (1) Any natural person:

   (a) While in your service or for 30 days after termination of service;

(b) Who you compensate directly by salary, wages or commissions; and

(c) Who you have the right to direct and control while performing services for you;

(2) Any natural person who is furnished temporarily to you:

(a) To substitute for a permanent "employee" as defined in Paragraph (1) above, who is on leave; or

(b) To meet seasonal or short-term work load conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises"; or

(3) Any natural person who is:

(a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan(s)" insured under this policy; and

(b) Your director or trustee while that person is handling "funds" or "other property" of any "employee benefit plan(s)" insured under this policy.

b. "Employee" does not mean:

(1) Any agent, broker, person leased to you by a labor leasing firm, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

(2) Any "manager", director or trustee except while performing acts coming within the scope of the usual duties of an "employee".

6. "Employee benefit plan(s)" means any welfare or pension benefit plan shown in the Declarations that is subject to the Employee Retirement Income Security Act of 1974 (ERISA).

7. "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

8. "Funds" means "money" and "securities".

9. "Manager" means a person serving in a directorial capacity for a limited liability company.

10. "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

11. "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

12. "Money" means:

a. Currency, coins and bank notes in current use and having a face value; and

b. Travelers checks, register checks and money orders held for sale to the public.

13. "Occurrence" means:

a. As respects Insuring Agreement A.1., all loss caused by, or involving, one or more "employees", whether the result of a single act or series of acts.

b. As respects Insuring Agreement A.2., all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

c. As respects all other Insuring Agreements:

(1) An act or series of related acts involving one or more persons; or

(2) An act or event, or a series of related acts or events not involving any person.

14. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property excluded under this policy.

15. "Premises" means the interior of that portion of any building you occupy in conducting your business.

16. "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

a. Caused or threatened to cause that person bodily harm; or

b. Committed an obviously unlawful act witnessed by that person.

17. "Safe burglary" means the unlawful taking of:

a. Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

b. A safe or vault from inside the "premises".

Copyright, Insurance Services Office, Inc., 1998

CDD0300861

18. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

   a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

   but does not include "money".

19. "Theft" means the unlawful taking of "money", "securities" or "other property" to the deprivation of the Insured.

20. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

CDD0300861

COMMERCIAL CRIME
CR 02 02 03 00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY

**A.** The **Cancellation** Common Policy Condition or the **Cancellation Of Policy** Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. **Cancellation Of Policies In Effect 60 Days Or Less**

   a. We may cancel this policy by mailing to you written notice stating the reason for cancellation.

   b. If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   c. If we cancel for a reason other than nonpayment of premium, we will mail the notice at least:

      (1) 30 days prior to the effective date of cancellation if the policy has been in effect for less than 60 days.

      (2) 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. **60 Days Or More**

   If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. Any insured has violated any of the terms and conditions of the policy;

d. The risk originally accepted has measurably increased;

e. Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

f. A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail written notice stating the reasons for nonrenewal no less than 60 days before the expiration date to:

   a. You; and

   b. The broker, if known to us, or the agent of record.

2. Even if we do not comply with these terms, this policy will terminate:

   a. On the expiration date if:

      (1) You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit; or

      (2) We have indicated our willingness to renew this policy to you or your representative; or

      (3) You have notified us or our agent that you do not want to renew this policy.

   b. On the effective date of any other insurance replacing this policy.

C. Mailing Of Notices

We will mail cancellation and nonrenewal notices to you, and the agent or broker, at the last addresses known to us. Proof of mailing will be sufficient proof of notice.

D. The Legal Action Against Us Condition is replaced by the following:

LEGAL ACTION AGAINST US

You may not bring any legal action against us involving loss:

   a. Unless you have complied with all the terms of this insurance; and

   b. Until 90 days after you have filed proof of loss with us; and

   c. Unless brought within 2 years from the date you discover the loss. But we will extend this 2 year period by the number of days between the date proof of loss is filed and the date the claim is denied in whole or in part.

E. The Other Insurance Condition is replaced by the following:

OTHER INSURANCE

You may have other insurance subject to the same plan, terms, conditions and provisions as this insurance. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance bears to the Limits of Insurance of all insurance covering on the same basis.

If there is other insurance covering the same loss or damage, other than that described above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

Copyright, Insurance Services Office, Inc., 1999

CP 02 02 03 00

```
CDD 0300861                      ORIGINAL COPY
PAGE  1 OF  1             COMMERCIAL CRIME POLICY
COMBINED BILL
 ACCOUNT NO. AMER-FCC614
 RENEWAL DECLARATION
```



*general casualty*

RENEWAL OF:
CDD 0300861

| POLICY NUMBER | POLICY PERIOD | | COVERAGE IS PROVIDED IN THE | AGENCY |
|---|---|---|---|---|
| CDD 0300861 | 11/01/2001 | 11/01/2002 | GENERAL CASUALTY CO OF IL | 0120703 01 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| AMERICAN AUTO GUARDIAN INC<br>WEAR PROTECTION CORPORATION<br>350 W KENSINGTON RD   NO 108<br>MT PROSPECT IL      60056 | DS&P INSURANCE SERVICES<br>1530 E DUNDEE RD STE 200<br>PALATINE IL          031<br>                         60074 |

```
---S T A T E M E N T  O F  A C C O U N T---   CDD0300861 0211 COMBINED BILL
                                              AMERICAN AUTO GUARDIAN INC


TOTAL POLICY PREMIUM .........    $881.00




THIS IS NOT A BILL....BILLING INFORMATION WILL BE MAILED SEPARATELY.

IF YOU HAVE ANY POLICY CHANGES, PLEASE CONTACT YOUR AGENT IMMEDIATELY.

YOUR INDEPENDENT AGENT IS WORKING FOR YOU

 ISSUE DATE - 09/28/2001
```

# EXHIBIT D

Case: 1:06-cv-06171 Document #: 1-2 Filed: 11/13/06 Page 60 of 296 PageID #:

# Your *ACUITY* Policy







# Protecting and Enhancing Your Well-Being



7/12/02 —
7/12/03











2800 South Taylor Drive
Sheboygan, Wisconsin 53081
www.acuityfin.com

**ACUITY**
A Mutual Insurance Company

August 5, 2002

AMERICAN AUTO GUARDIAN INC
ADP TOTAL SOURCE
350 W KENSINGTON #108
MOUNT PROSPECT IL 60056

Policy Number: K21167

Dear Policyholder:

Thank you for insuring with *ACUITY*.

With *ACUITY*, you can expect fast and fair claims service. You can also expect competitive rates and coverage, a willingness to listen and respond, prompt and accurate policy processing, a highly competent and courteous staff, financial strength and a wide range of flexible billing options.

We really do appreciate your business. If you have any questions or problems relating to your insurance, please do not hesitate to contact us.

It is our pleasure to serve you!

*ACUITY*

Represented by

DS&P INSURANCE SERVICES, INC.
1530 E DUNDEE RD STE 200
PALATINE IL 60067
(847) 934-6100

M-2669(6-01)



**A Mutual Insurance Company**

August 5, 2002

AMERICAN AUTO GUARDIAN INC
ADP TOTAL SOURCE
350 W KENSINGTON #108
MOUNT PROSPECT IL 60056

Policy Number:  K21167

Dear Policyholder:

Welcome to *ACUITY!*

Your business is now insured under the Comco® Commercial Insurance Program. By choosing *ACUITY,* you have selected a commercial insurer committed to quality. Our commitment to you includes state-of-the-industry coverages plus policy, claims and loss control services that meet the highest standards. We look forward to a long association as a provider of vital insurance protection for your business operations.


**Your Independent Agent**

This policy is sold and serviced by an independent insurance agent. Because independent agents can provide insurance coverage through more than one company, you can be confident that you have made a wise selection. Your agent stands ready to serve your needs and answer your questions with regard to this policy.


**Preparation of Your Policy**

"Formation" is the word we use to describe the sophisticated computer processing and printing that prepared this policy. The unique combination of coverages and information that makes up your insurance program has been produced by our computer without the use of preprinted forms or typewriting. Neatness and accuracy are complemented by efficient use of paper, easy access to policy information and a pleasing appearance.

Each line of insurance included is described in three parts. The Declarations indicate amounts of coverage, premiums and other variable information. Coverage Forms contain the main contract provisions. Endorsements modify the coverage or terms in some way. You can easily locate each part for each line using the tabs printed at the right edge of the page.

**If You Have Problems**

Immediate attention to any unresolved problems can be obtained by writing or calling *ACUITY*, P O Box 58, Sheboygan, Wisconsin 53082-0058, (920) 458-9131. The Illinois Department of Insurance has also asked us to advise you that should you have any complaints you may contact the Illinois Department of Insurance, Consumer Division, 320 West Washington Street, Springfield, Illinois 62767.

**For More Information**

Please contact your agent if you have any questions or desire any changes in your policy. Your agent can also help determine if your coverage adequately meets your insurance needs.

Thank you for insuring with *ACUITY*.

Ben Salzmann
President



**ACUITY** ℠
A Mutual Insurance Company

**COMMON POLICY
DECLARATIONS**

First Named Insured and Address:

AMERICAN AUTO GUARDIAN INC
ADP TOTAL SOURCE
C/O AON RISK SERVICES
350 W KENSINGTON #108
MOUNT PROSPECT IL 60056

Agency Name and Number:

7039                    (847)934-6100
DS&P INSURANCE SERVICES, INC.
1530 E DUNDEE RD STE 200
PALATINE IL 60067

Policy Number:  K21167-0

Policy Period:    Effective Date:        07-12-02

                  Expiration Date:       07-12-03

                  12:01 A.M. standard time at
                  your mailing address shown
                  in the declarations

## COVERAGE

Your coverage consists of the following lines of insurance for which a premium is indicated.
This premium may be subject to adjustment.

| | |
|---|---|
| Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | |
| General Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Automobile . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Garage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Inland Marine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Crime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Umbrella Excess Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Workers' Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Bis-Pak® . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1,630.00 |
| Total Advance Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 1,630.00 |

*8/9/02*
Countersignature Date

_____
Countersignature/Authorized Representative

*Donald C. Hugfelt*
Secretary

*Ben Salzmann*
President



## MUTUAL POLICY CONDITIONS

Every person, co-partnership or corporation insured by the company shall be a member of it and shall have one vote. The annual meeting of the members shall be held on the first Tuesday in March at 1:30 P.M. of each year, at the corporate headquarters of the company in Sheboygan, Wisconsin. Notice printed in each policy shall be sufficient as to the time and place of said meeting.

The Named Insured, upon termination of this policy, shall participate in the distribution of dividends, if any are declared, and fixed as determined by the directors in accordance with law.

This policy is nonassessable and the liability of the Named Insured to the company is limited to the payment of the premium herein provided.

### Corporate Headquarters Address

*ACUITY*
2800 South Taylor Drive
PO Box 58
Sheboygan, Wisconsin 53082-0058

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991.

Includes copyrighted material of ISO Commercial Risk Services, Inc. with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991.

Includes copyrighted material of the American Association of Insurance Services with its permission.
Copyright, American Association of Insurance Services, 1984, 1985, 1986, 1987, 1988, 1989.

Includes copyrighted material of the National Council on Compensation Insurance with its permission.
Copyright, National Council on Compensation Insurance, 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991.



**ACUITY**
A Mutual Insurance Company

**BIS-PAK®
COVERAGE PART**

## Declarations

First Named Insured and Address:

AMERICAN AUTO GUARDIAN INC
ADP TOTAL SOURCE
C/O AON RISK SERVICES
350 W KENSINGTON #108
MOUNT PROSPECT IL 60056

Agency Name and Number:

DS&P INSURANCE SERVICES, INC.
7039

Policy Number: CB-K21167

| Policy Period: | Effective Date: | 07-12-02 |
|---|---|---|
| | Expiration Date: | 07-12-03 |

In return for the payment of the premium and subject to all the terms of the policy, we agree to provide the insurance coverage as stated in the same.

12:01 A.M. standard time at your mailing address shown in the declarations

## COVERAGE FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART

| Form Number | Form Title | Premium |
|---|---|---|
| CB-0455 (01-97) | Business Liability Coverage - Tenants' Liability . . . . . . . . . . . . . . . . . $ | 25.00 |
| CB-7019 (03-01) | Hired Auto and Nonowned Auto Liability . . . . . . . . . . . . . . . . . . . . . . | 48.00 |
| CB-0006 (10-01) | Bis-Pak Business Liability and Medical Expenses Coverage Form . . . . | |
| CB-0009 (10-96) | Bis-Pak Common Policy Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB-7016 (01-90) | Asbestos Exclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB7203 (09-01) | Bis-Pak Enhancement Endorsement . . . . . . . . . . . . . . . . . . . . . . . . | 64.00 |
| CB-0417 (01-96) | Employment - Related Practices Exclusions . . . . . . . . . . . . . . . . . . . . | |
| CB-7197 (03-99) | Illinois Changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB-7202 (05-00) | Computer Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| IL-7060 (06-01) | Change of Insurance Carrier Name Endorsement . . . . . . . . . . . . . . . . | |
| CB-0002 (09-01) | Deluxe Bis-Pak Property Coverage Form . . . . . . . . . . . . . . . . . . . . . . | |
| | **Advance Endorsement Premium** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | **137.00** |

## PREMIUM SUMMARY

| | | |
|---|---|---|
| Advance Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | | 1,493.00 |
| Advance Endorsement Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | 137.00 |
| **Total Advance Premium** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | | **1,630.00** |

The Total Advance Premium shown above is based on the exposures you anticipated at the time this coverage part began. We will audit this coverage part in accordance with the Bis-Pak® Liability and Medical Expenses General Condition entitled Premium Audit — Business Liability at the close of the audit period.

Page 2

Policy Number: CB-K21167
Effective Date: 07-12-02

## PROPERTY COVERAGES PROVIDED
Form: Deluxe

| Coverage Item | Premises Number | Building Number | Valuation Basis | Limit of Insurance | Automatic Increase Percentage |
|---|---|---|---|---|---|
| Business Personal Property | 001 | 001 | Replacement Cost | $ 100,000 | N/A |

Deductible: $250

## DESCRIPTION OF PREMISES

| Premises Number | Building Number | Construction, Occupancy and Location |
|---|---|---|
| 001 | 001 | MASONRY NONCOMBUSTIBLE OFFICE 350 W KENSINGTON MOUNT PROSPECT IL |

## MORTGAGEHOLDER NAME AND ADDRESS
NONE

## LIABILITY COVERAGES PROVIDED

| Coverage Item | Limit of Insurance |
|---|---|
| Liability and Medical Expenses (Each Occurrence) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 2,000,000 |
| Medical Expenses (Any One Person) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5,000 |
| Tenants' Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 100,000 |
| Products-Completed Operations Aggregate Limit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4,000,000 |
| General Aggregate Limit (Other Than Products-Completed Operations) . . . . . . . . . . . . . . . . | 4,000,000 |

## SCHEDULE OF LIABILITY CLASSIFICATIONS

| Premises Number | Building Number | Classification Description | Class Code | Premium Basis[1] | Rate |
|---|---|---|---|---|---|
| 001 | 001 | Office Buildings | 61226 | 1,800  AR | 127.64 |

[1] AR = Area - Rate Applies Per 1,000 Square Feet

## OPTIONAL COVERAGES PROVIDED

| Coverage Item | Limit of Insurance |
|---|---|
| Hired and Nonowned Auto Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | Same as Liability Limit |

SO 01 08/05/02

Page 3

Policy Number: CB-K21167
Effective Date: 07-12-02

| Coverage Item | | | Limit of Insurance |
|---|---|---|---|
| Employee Dishonesty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | | | 500,000 |
| Forgery and Alteration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 2,500 |
| Computer Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | See CB-7202 |

| Coverage Item | Premises Number | Building Number | Limit of Insurance |
|---|---|---|---|
| Business Income and Extra Expense . . . . . . . . . . . . . . . . . . . . . . . | 001 | 001 | Actual Loss Sustained |
| Money and Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 001 | 001 | |
| Inside the Premises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | | | 10,000 |
| Outside the Premises . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 5,000 |
| Accounts Receivable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 001 | 001 | 10,000 |
| Valuable Papers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 001 | 001 | 250,000 |

**BIS-PAK® PLAN**

Offices

**AUDIT PERIOD**

Annual

**ADDITIONAL NAMED INSUREDS**

WHO IS AN INSURED includes the following Additional Named Insureds:

NONE

**FIRST NAMED INSURED IS:**

ORGANIZATION OTHER THAN PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY

SO 01 08/05/02



# DELUXE BIS-PAK® PROPERTY COVERAGE FORM

### Index of Policy Provisions

Page

**PROPERTY COVERAGES** . . . . . . . . . . . . . 1-7
  Covered Property . . . . . . . . . . . . . . . . . 1
  Property Not Covered . . . . . . . . . . . . . . 1-2
  Covered Causes of Loss . . . . . . . . . . . 2
  Limitations . . . . . . . . . . . . . . . . . . . . . . 2
  Additional Coverages . . . . . . . . . . . . . . 2-7

**PROPERTY EXTENSIONS OF COVERAGE** . 7-9
  Newly Acquired or Constructed Property . 7
  Personal Effects and Property of Others . 7
  Property Off-Premises . . . . . . . . . . . . . . 7
  Property in Transit . . . . . . . . . . . . . . . . 7
  Outdoor Property . . . . . . . . . . . . . . . . . 7-8
  Valuable Papers and Records — Cost
  of Research . . . . . . . . . . . . . . . . . . . . . 8
  Accounts Receivable . . . . . . . . . . . . . . 8
  Replacement Cost — Building . . . . . . . . 8-9
  Money and Securities . . . . . . . . . . . . . . 9

**PROPERTY EXCLUSIONS** . . . . . . . . . . . . . 9-12

**PROPERTY LIMITS OF INSURANCE** . . . . . 12
  Building Limit — Automatic Increase . . . . 12
  Business Personal Property Limit —
  Seasonal Increase . . . . . . . . . . . . . . . . 12

Page

**PROPERTY OPTIONAL COVERAGES** . . . . . 13-14
  Outdoor Signs . . . . . . . . . . . . . . . . . . . 13
  Interior Glass . . . . . . . . . . . . . . . . . . . . 13
  Employee Dishonesty . . . . . . . . . . . . . . 13-14

**PROPERTY DEDUCTIBLES** . . . . . . . . . . . 14

**PROPERTY GENERAL CONDITIONS** . . . . . 14-15
  Control of Property . . . . . . . . . . . . . . . . 14
  Mortgageholders . . . . . . . . . . . . . . . . . . 14-15
  No Benefit to Bailee . . . . . . . . . . . . . . . 15
  Policy Period, Coverage Territory . . . . . . 15

**PROPERTY LOSS CONDITIONS** . . . . . . . . 15-18
  Abandonment . . . . . . . . . . . . . . . . . . . . 15
  Appraisal . . . . . . . . . . . . . . . . . . . . . . . 15
  Duties in the Event of Loss or Damage . 15-16
  Legal Action Against Us . . . . . . . . . . . . 16
  Limitation — Electronic Media and
  Records . . . . . . . . . . . . . . . . . . . . . . . . 16
  Loss Payment and Valuation . . . . . . . . . 16-18
  Recovered Property . . . . . . . . . . . . . . . 18
  Resumption of Operations . . . . . . . . . . . 18
  Vacancy . . . . . . . . . . . . . . . . . . . . . . . . 18

**PROPERTY DEFINITIONS** . . . . . . . . . . . . . 18

BIS-PAK COVERAGE FORMS



## DELUXE BIS-PAK® PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declara-

tions. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in italics have special meaning. Refer to the Property Definitions Section.

## PROPERTY COVERAGES

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1. **Covered Property**

   Covered Property, as used in this Coverage Form, means the type of property as described in this Section, 1, and limited in 2, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

   a. **Buildings,** meaning the buildings and structures at the premises described in the Declarations, including:

      (1) Completed additions;

      (2) Garages, storage buildings, appurtenant structures usual to your occupancy;

      (3) Fixtures, including outdoor fixtures;

      (4) Permanently installed:

         (a) Machinery; and

         (b) Equipment;

      (5) Your personal property in apartments or rooms furnished by you as landlord;

      (6) Personal property owned by you that is used to maintain or service the buildings, structures or the premises, including:

         (a) Fire extinguishing equipment;

         (b) Outdoor furniture;

         (c) Floor coverings; and

         (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering.

      (7) If not covered by other insurance:

         (a) Additions under construction, alterations and repairs to the buildings or structures; and

         (b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

   b. **Business Personal Property** located in or on the buildings at the described premises or in the open (or in a vehicle) within 100

feet of the described premises, including:

   (1) Property you own that is used in your business;

   (2) Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment and Valuation Property Loss Condition 6g(3)(b);

   (3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

      (a) Made a part of the building or structure you occupy but do not own; and

      (b) You acquired or made at your expense but cannot legally remove; and

   (4) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under paragraph 1b(2).

2. **Property Not Covered**

   Covered Property does not include:

   a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

   b. *Money* or *securities,* except as provided in the:

      (1) Money and Securities Coverage Extension; or

      (2) Employee Dishonesty Optional Coverage.

   c. Contraband or property in the course of illegal transportation or trade;

   d. Land (including land on which the property is located), water, growing crops or lawns;

   e. Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than *stock* of trees, shrubs or plants), all except as provided in the:

      (1) Outdoor Property Coverage Extension; or

      (2) Outdoor Signs Optional Coverage.

**f.** Watercraft (including motors, equipment and accessories) while afloat.

## 3. Covered Causes of Loss

Risks of Direct Physical Loss unless the loss is:

**a.** Excluded in Property Exclusions; or

**b.** Limited in paragraph 4, Limitations;

that follow.

## 4. Limitations

**a.** We will not pay for loss of or damage to:

(1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

(2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

(3) Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory. This limitation does not apply to the Extension of Coverage for Money and Securities.

(4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

(5) Gutters and downspouts caused by or resulting from weight of snow, ice or sleet.

(6) Building materials and supplies not attached to the building or structure caused by or resulting from theft.

(7) The interior of any building or structure or the property inside any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which rain, snow, sleet, ice, sand or dust enters; or

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**b.** With respect to glass (other than glass

building blocks) that is part of the interior of a building or structure, or part of an outdoor sign, we will not pay more than $500 for the total of all loss or damage in any one occurrence. Subject to the $500 limit on all loss or damage, we will not pay more than $100 for each plate, pane, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter. This Limitation does not apply to loss or damage by the *specified causes of loss*, except vandalism.

**c.** We will not pay for loss of or damage to fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken, unless caused by the *specified causes of loss* or building glass breakage. This restriction does not apply to:

(1) Glass that is part of the interior of a building or structure;

(2) Containers of property held for sale; or

(3) Photographic or scientific instrument lenses.

**d.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

## 5. Additional Coverages

### a. Debris Removal

(1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(a) The date of direct physical loss or damage; or

(b) The end of the policy period.

(2) The most we will pay under this Additional Coverage is 25% of:

(a) The amount we pay for the direct physical loss of or damage to Covered Property; plus

(b) The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any

additional debris removal limit provided in paragraph (4) below.

(3) This Additional Coverage does not apply to costs to:

    (a) Extract *pollutants* from land or water; or

    (b) Remove, restore or replace polluted land or water.

(4) If:

    (a) The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

    (b) The debris removal expense exceeds the amount payable under the 25% Debris Removal coverage limitation in paragraph (2) above;

we will pay up to an additional $10,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

**b. Pollutant Clean Up and Removal**

We will pay your expense to extract *pollutants* from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the *pollutants* is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us within 180 days of the earlier of:

(1) The date of direct physical loss or damage; or

(2) The end of the policy period.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy. This limit is in addition to the Limits of Insurance.

**c. Preservation of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 30 days after the property is first moved.

We will not pay for any loss or damage under this Additional Coverage if the Covered Property was moved from the described premises to preserve it from loss or

damage by a cause of loss that is not a Covered Cause of Loss.

**d. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

**e. Collapse**

(1) We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this policy, if the collapse is caused by one or more of the following:

    (a) The *specified cause of loss* or breakage of building glass, all only as insured against in this policy;

    (b) Hidden decay;

    (c) Hidden insect or vermin damage;

    (d) Weight of people or personal property;

    (e) Weight of rain that collects on a roof; or

    (f) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in e(1)(a) through e(1)(e), we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse.

(2) If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

    (a) The personal property which collapses is inside a building insured under this policy; and

    (b) The collapse was caused by a cause of loss listed in e(1)(a) through e(1)(f) above.

(3) With respect to the following property:

    (a) Awnings;

(b) Gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Piers, wharves and docks;

(f) Beach or diving platforms or appurtenances;

(g) Retaining walls; and

(h) Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in e(1)(b) through e(1)(f), we will pay for loss or damage to that property only if such loss or damage is a direct result of the collapse of a building insured under this policy and the property is Covered Property under this policy.

(4) Collapse does not include settling, cracking, shrinkage, bulging or expansion.

### f. Water, Other Liquids, Powder or Molten Material Damage

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts or fire extinguishing equipment if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or

(2) Is directly caused by freezing.

### g. Business Income and Extra Expense

(1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your *operations* during the *period of restoration.* The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(2) Business income means the:

(a) Net income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(b) Continuing normal operating expenses incurred, including payroll.

(3) We will pay necessary Extra Expense you incur during the *period of restoration* that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(4) Extra Expense means expense incurred:

(a) To avoid or minimize the suspension of business and to continue *operations:*

(i) At the described premises; or

(ii) At replacement premises or at temporary locations, including

relocation expenses, and costs to equip and operate the replacement or temporary locations.

(b) To minimize the suspension of business if you cannot continue *operations*.

(c) To:

    (i) Repair or replace any property; or

    (ii) Research, replace or restore the lost information on damaged *valuable papers and records;*

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage.

(5) We will only pay for Loss of Business Income or Extra Expense that you sustain during the *period of restoration* and that occurs within 12 consecutive months after the date of direct physical loss or damage. Items (1) through (5) of this Additional Coverage are not subject to the Limits of Insurance.

(6) Extended Business Income. If the necessary suspension of your *operations* produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    (a) Begins on the date property, except finished stock, is actually repaired, rebuilt or replaced and *operations* are resumed; and

    (b) Ends on the earlier of:

        (i) The date you could restore your *operations,* with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

        (ii) 30 consecutive days after the date determined in (a) above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

This Additional Coverage is not subject to the Limits of Insurance.

h. **Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 24 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for necessary Extra Expense will begin immediately after the time of that action and ends:

(1) Three consecutive weeks after the time of that action; or

(2) When your Business Income coverage ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverage also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance.

i. **Money Orders and Counterfeit Paper Currency**

We will pay for loss due to the good faith acceptance of:

(1) Any U.S. or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

(2) Counterfeit United States or Canadian paper currency;

in exchange for merchandise, *money* or services or as part of a normal business transaction.

The most we will pay for any loss under this Additional Coverage is $1,000.

j. **Forgery and Alteration**

(1) We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in *money,* that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

(2) If you are sued for refusing to pay the check, draft, promissory note, bill of ex-

change or similar written promise of payment in *money*, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

(3) The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit of Insurance is shown in the Declarations.

## k. Increased Cost of Construction

(1) This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in k(3) through k(9) of this Additional Coverage.

(3) The ordinance or law referred to in k(2) of this Additional Coverage is an ordinance or law that regulated the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You are required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of *pollutants*.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form is $5,000.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment and Valuation Property Loss Condition in this Coverage Form do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in k(6) of this Additional Coverage, is not subject to such limitation.

## l. Exterior Building Glass

(1) We will pay for direct physical loss of or damage to glass, including lettering or ornamentation, that is part of the exterior of a covered building or structure at the described premises. The glass must be owned by you, or owned by others but in your care, custody or control. We will also pay for necessary:

(a) Expenses incurred to put up temporary plates or board up openings;

(b) Repair or replacement of encasing frames; and

(c) Expenses incurred to remove or replace obstructions.

(2) Paragraph 3 of Property Coverages and Property Exclusions do not apply to this Additional Coverage except for:

(a) 1b, Earth Movement;

(b) 1c, Governmental Action;

(c) 1d, Nuclear Hazard;

(d) 1f, War and Military Action; and

(e) 1g, Water.

(3) We will not pay for loss or damage caused by or resulting from:

(a) Wear and tear;

(b) Hidden or latent defect;

(c) Corrosion; or

(d) Rust.

(4) The most we pay under this Additional Coverage is the Building Limit of Insurance shown in the Declarations.

However, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property, the most we will pay under this Additional Coverage is the Tenant's Exterior Building Glass Limit of Insurance shown in the Declarations.

## PROPERTY EXTENSIONS OF COVERAGE

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

### 1. Newly Acquired or Constructed Property

a. You may extend the insurance that applies to Buildings to apply to:

(1) Your new buildings or new additions, while being built on the described premises; and

(2) Buildings you acquire at locations, other than the described premises, intended for:

(a) Similar use as the building described in the Declarations; or

(b) Use as a warehouse.

The most we will pay for loss or damage under this extension is $500,000 for each building.

b. You may extend the insurance that applies to Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

The most we will pay for loss or damage under this extension is $100,000.

c. Insurance under this extension for each newly acquired or constructed property will end when any of the following first occurs:

(1) This policy expires;

(2) Thirty days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

### 2. Personal Effects and Property of Others

a. You may extend the insurance that applies to Business Personal Property to apply to:

(1) Your personal effects meaning personal property owned by you, your officers, your partners or your employees. This extension does not apply to loss or damage by theft or to tools or equipment used in your business.

(2) Personal property in your care, custody or control belonging to other than you, your officers, your partners or your employees.

b. The most we will pay for loss or damage under this extension is $5,000 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

### 3. Property Off-Premises

a. You may extend the insurance that applies to Business Personal Property to apply to covered Business Personal Property, other than *money* and *securities, valuable papers and records* or accounts receivable, while it is in the course of transit or temporarily at a premises you do not own, lease or operate. This extension does not apply to Covered Property in or on a vehicle.

b. The most we will pay for loss or damage under this extension is $5,000. If you insure both Building and Business Personal Property, the most we will pay for loss or damage under this extension is $10,000.

### 4. Property In Transit

You may extend the insurance that applies to Business Personal Property to apply to your personal property in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

The most we will pay for loss or damage under this extension is $5,000.

### 5. Outdoor Property

a. You may extend the insurance provided by this Coverage Form to apply to your out-

door fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other then *stock* of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

**b.** The most we will pay for loss or damage under this Extension is $5,000, but not more than $500 for any one tree, shrub or plant.

## 6. Valuable Papers and Records — Cost of Research

**a.** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to *valuable papers and records* that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research lost information on *valuable papers and records* for which duplicates do not exist.

**b.** This Coverage Extension does not apply to:

(1) Property held as samples or for delivery after sale; or

(2) Property in storage away from the premises shown in the Declarations.

**c.** The most we will pay under this Coverage Extension for loss or damage to *valuable papers and records* in any one occurrence at the described premises is $10,000 unless a higher Limit of Insurance for *Valuable Papers and Records* is shown in the Declarations.

For *valuable papers and records* not at the described premises, the most we will pay is $5,000.

**d.** Property Exclusions does not apply to this Coverage Extension except for:

(1) 1c, Governmental Action;

(2) 1d, Nuclear Hazard;

(3) 1f, War and Military Action; and

(4) 2f, Dishonesty;

(5) 2g, False Pretense;

(6) 3; and

(7) The Accounts Receivable and Valuable Papers and Records Exclusions.

## 7. Accounts Receivable

**a.** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

(1) All amounts due from your customers that you are unable to collect;

(2) Interest charges on any loan required to offset amounts you are unable to collect pending our payments of these amounts;

(3) Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

(4) Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**b.** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for Accounts Receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

**c.** Property Exclusions does not apply to this Coverage Extension except for:

(1) 1c, Governmental Action;

(2) 1d, Nuclear Hazard;

(3) 1f, War and Military Action;

(4) 2f, Dishonesty;

(5) 2g, False Pretense;

(6) 3; and

(7) The Accounts Receivable and Valuable Papers and Records Exclusions.

## 8. Replacement Cost — Building

If the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement, without deduction for depreciation. This provision does not apply to the following, even when attached to the building:

**a.** Floor coverings, cloth awnings;

**b.** Air conditioners, ventilation equipment; or

**c.** Domestic appliances, outdoor equipment or furniture.

We will not be liable under this Extension of Coverage:

a. Unless and until the damaged property is actually repaired or replaced on the same premises with due diligence and dispatch and, in no event, unless repair or replacement is completed within a reasonable time after such loss; and

b. If Replacement Cost is indicated in the Declarations as being the basis for valuation of property.

9. **Money and Securities**

a. We will pay for loss of *money* and *securities* used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises or in transit between any of these places, resulting directly from:

(1) Theft, meaning any act of stealing;

(2) Disappearance; or

(3) Destruction.

b. In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

(1) Resulting from accounting or arithmetical errors or omissions;

(2) Due to the giving or surrendering of property in any exchange or purchase; or

(3) Of property contained in any *money*-operated device unless the amount of *money* deposited in it is recorded by a continuous recording instrument in the device.

c. The most we will pay for loss in any one occurrence is:

(1) The limit shown in the Declarations for Inside the Premises for *money* and *securities* while:

(a) In or on the described premises; or

(b) Within a bank or savings institution; and

(2) The limit shown in the Declarations for Outside the Premises for *money* and *securities* while anywhere else.

d. All loss:

(1) Caused by one or more persons; or

(2) Involving a single act or series of related acts;

is considered one occurrence.

e. You must keep records of all *money* and *securities* so we can verify the amount of any loss or damage.

## PROPERTY EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

a. **Ordinance or Law**

The enforcement of any ordinance or law:

(1) Regulating the construction, use or repair of any property; or

(2) Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance or Law, applies whether the loss results from:

(1) An ordinance or law that is enforced even if the property has not been damaged; or

(2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

b. **Earth Movement**

(1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But, if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(2) Volcanic eruption, explosion or effusion. But, if volcanic eruption, explosion or effusion results in fire or volcanic action, we will pay for the loss or damage caused by that fire or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust, or particulate matter; or

(c) Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost

to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

## c. Governmental Action

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

## d. Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination, however caused.

But, if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the loss or damage caused by that fire.

## e. Power Failure

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But, if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

## f. War and Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## g. Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up, or overflows from a sewer, drain or sump; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

    (a) Foundations, walls, floors or paved surfaces;

    (b) Basements, whether paved or not; or

    (c) Doors, windows or other openings.

But, if water, as described in g(1) through (4),

results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

2. We will not pay for loss or damage caused by or resulting from any of the following:

## a. Electrical Apparatus

Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But, if artificially generated electrical current results in fire, we will pay for the loss or damage caused by fire.

## b. Consequential Losses

Delay, loss of use or loss of market.

## c. Smoke, Vapor, Gas

Smoke, vapor or gas from agricultural smudging or industrial operations.

## d. Steam Apparatus

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.

But, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

## e. Frozen Plumbing

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

## f. Dishonesty

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and *valuable papers and records,* this exclusion does not apply to carriers for hire.

## g. False Pretense

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

## h. Exposed Property

Rain, snow, ice or sleet to personal property in the open.

## i. Collapse

Collapse, except as provided in the Additional Coverage for Collapse. But, if collapse results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

## j. Pollution

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of *pollutants* unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the *specified causes of loss.* But, if the discharge, dispersal, seepage, migration, release or escape of *pollutants* results in a *specified cause of loss,* we will pay for the loss or damage caused by that *specified cause of loss.*

## k. Other Types of Loss

(1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force; or

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But, if an excluded cause of loss that is listed in 2k(1) through (7) results in a *specified cause of loss,* or building glass breakage, we will pay for the loss or damage caused by that *specified cause of loss* or building glass breakage.

3. We will not pay for loss or damage caused by or resulting from any of the following 3a through c. But if an excluded cause of loss that is listed in 3a through c results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

## a. Weather Conditions

But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1 above to produce the loss or damage.

## b. Acts or Decisions

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

## c. Negligent Work

Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

## 4. Business Income and Extra Expense Exclusions

We will not pay for:

a. Any Extra Expense or increase of Business Income loss, caused by or resulting from:

(1) Delay in rebuilding, repairing or replacing the property or resuming *operations,* due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of *operations,* we will cover such loss that affects your Business Income during the *period of restoration.*

b. Any other consequential loss.

**5. Accounts Receivable and Valuable Papers Exclusions**

The following additional exclusions apply to the Accounts Receivable and Valuable Papers Coverage Extensions:

a. We will not pay for loss or damage caused by or resulting from electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

(1) Programming errors or faulty machine instructions; or

(2) Faulty installation or maintenance of data processing equipment or component parts;

but we will pay for direct loss or damage caused by lightning.

b. Applicable to *Valuable Papers and Records* only:

We will not pay for loss or damage caused by or resulting from any of the following:

(1) Errors or omissions in processing or copying. But if errors or omissions in processing or copying results in fire or explosion, we will pay for direct loss or damage caused by that fire or explosion; or

(2) Wear and tear, gradual deterioration or latent defect.

c. Applicable to Accounts Receivable only:

We will not pay for:

(1) Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of *money, securities* or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

(2) Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

(3) Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

## PROPERTY LIMITS OF INSURANCE

1. The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

3. The limits applicable to the Coverage Extensions and the Fire Department Service Charge Additional Coverage are in addition to the Limits of Insurance.

4. **Building Limit — Automatic Increase**

a. The Limit of Insurance for Buildings will automatically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

(1) The Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Building limit, divided by 365.

Example:

If:

| The applicable Building limit is | $100,000 |
|---|---|
| The annual percentage increase is | 8% |
| The number of days since the beginning of the policy year (or last policy change) is | 180 |

The amount of increase is
$100,000 x .08 x 180 ÷ 365 = $3,945

5. **Business Personal Property Limit — Seasonal Increase**

a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

b. This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

(1) The 12 months immediately preceding the date the loss or damage occurs; or

(2) The period of time you have been in business as of the date the loss or damage occurs.

## PROPERTY OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

1. **Outdoor Signs**

   a. We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

      (1) Owned by you; or

      (2) Owned by others but in your care, custody or control.

   b. Paragraph 3, Covered Causes of Loss, under the Property Coverages Section, and the Property Exclusions Section do not apply to this Optional Coverage, except for the following Property Exclusions:

      (1) Paragraph 1c, Governmental Action;

      (2) Paragraph 1d, Nuclear Hazard; and

      (3) Paragraph 1f, War and Military Action.

   c. We will not pay for loss or damage caused by or resulting from:

      (1) Wear and tear;

      (2) Hidden or latent defect;

      (3) Rust;

      (4) Corrosion; or

      (5) Mechanical breakdown.

   d. The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

   e. The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

2. **Interior Glass**

   a. We will pay for direct physical loss of or damage to items of glass that are permanently affixed to the interior walls, floors or ceilings of a covered building or structure at the described premises, provided each item is:

      (1) Described in the Declarations as covered under this Optional Coverage;

      (2) Located in the basement or ground floor level of the building or structure, unless the Declarations show that this Optional Coverage is applicable to interior glass at all floors; and

      (3) Owned by you, or owned by others but in your care, custody or control.

   b. We will also pay for necessary:

      (1) Expenses incurred to put up temporary plates or board up openings;

      (2) Repair or replacement of encasing frames; and

      (3) Expenses incurred to remove or replace obstructions.

   c. Paragraph 3, Covered Causes of Loss, under the Property Coverages Section, and the Property Exclusions Section do not apply to this Optional Coverage, except for the following Property Exclusions:

      (1) Paragraph 1c, Governmental Action;

      (2) Paragraph 1d, Nuclear Hazard; and

      (3) Paragraph 1f, War and Military Action.

   d. We will not pay for loss or damage caused by or resulting from:

      (1) Wear and tear;

      (2) Hidden or latent defect;

      (3) Corrosion; or

      (4) Rust.

   e. With respect to this Optional Coverage, all limitations elsewhere in this policy that apply to interior glass are eliminated.

3. **Employee Dishonesty**

   a. We will pay for direct loss of or damage to Business Personal Property, including *money* and *securities*, resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

      (1) Cause you to sustain loss or damage; and also

      (2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

         (a) Any employee; or

         (b) Any other person or organization.

   b. We will not pay for loss or damage:

      (1) Resulting from any dishonest or criminal act that you or any of your partners commit whether acting alone or in collusion with other persons.

      (2) The only proof of which as to its existence or amount is:

         (a) An inventory computation; or

         (b) A profit and loss computation.

   c. The most we will pay for loss or damage in

any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

d. All loss or damage:

(1) Caused by one or more persons; or

(2) Involving a single act or series of related acts;

is considered one occurrence.

e. We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

f. This Optional Coverage does not apply to any employee immediately upon discovery by:

(1) You; or

(2) Any of your partners, officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

g. We will pay only for covered loss or damage discovered no later than one year from

the end of the Policy Period.

h. If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

(1) This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

(2) The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

i. The insurance under paragraph h above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

(1) This Optional Coverage as of its effective date; or

(2) The prior insurance had it remained in effect.

## PROPERTY DEDUCTIBLES

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

In the event that loss or damage occurs to Covered Property at one or more building locations as a result of one occurrence, the largest applicable deductible shown in the Declarations will apply.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under the Outdoor Signs Optional Coverage in any one occurrence is $250.

But this $250 deductible will not increase the

deductible shown in the Declarations. This deductible will be used to satisfy the requirements of the deductible in the Declarations.

3. No deductible applies to the following Additional Coverages, Extensions of Coverage or Optional Coverages:

a. Fire Department Service Charge;

b. Business Income and Extra Expense;

c. Civil Authority;

d. Exterior Glass;

e. Employee Dishonesty;

f. Money and Securities;

g. Interior Glass.

## PROPERTY GENERAL CONDITIONS

### 1. Control of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

### 2. Mortgageholders

a. The term "mortgageholder" includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive

loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this policy at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) Ten days before the effective date of cancellation if we cancel for your non-payment of premium; or

(2) Thirty days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**3. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under this form:

**a.** We cover loss or damage commencing:

(1) During the policy period shown in the Declarations; and

(2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

**b.** The coverage territory is:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

## PROPERTY LOSS CONDITIONS

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties in the Event of Loss or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage

and keep a record of your expenses reasonably incurred to protect the Covered Property. We will consider these expenses in the settlement of a claim, but this will not increase the applicable Limit of Insurance. However, we will not consider any expenses incurred in order to protect the Covered Property from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) Resume all or part of your *operations* as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

## 4. Legal Action Against Us

No one may bring a legal action against us under this insurance unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within two years after the date on which the direct physical loss or damage occurred.

## 5. Limitation — Electronic Media and Records

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

**a.** Sixty consecutive days from the date of

direct physical loss or damage; or

**b.** The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

**a.** Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

**b.** Data stored on such media; or

**c.** Programming records used for electronic data processing or electronically controlled equipment.

Example Number 1:

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period of June 1 through September 1. Loss during the period of September 2 through October 1 is not covered.

Example Number 2:

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period of August 1 through September 29 (60 consecutive days). Loss during the period of September 30 through October 15 is not covered.

## 6. Loss Payment and Valuation

In the event of loss or damage covered by this Coverage Form:

**a.** At our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality subject to g1e below.

**b.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or

damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

e.  We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

f.  We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy and we have reached agreement with you on the amount of loss or an appraisal award has been made.

g.  Except as provided in (2) through (7) below, we will determine the value of Covered Property as follows:

(1)  At replacement cost without deduction for depreciation, if Replacement Cost is indicated in the Declarations as the basis for valuation of the Covered Property.

(a)  You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(b)  We will not pay on a replacement cost basis for any loss or damage:

(i)  Until the lost or damaged property is actually repaired or replaced; and

(ii)  Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

(c)  We will not pay more for loss or damage on a replacement cost basis than the least of:

(i)  The cost to replace, on the same premises, the lost or damaged property with other property that is of comparable material and quality and is used for the same purpose.

(ii)  The amount you actually spend that is necessary to repair or replace the lost or damaged property.

(iii)  The limit shown in the Dec-

larations for the Covered Property.

(2)  At actual cash value, if Actual Cash Value is indicated in the Declarations as the basis for valuation of the Covered Property. We will never pay more than the applicable limit shown in the Declarations.

(3)  The following property at actual cash value:

(a)  Used or second-hand merchandise held in storage or for sale;

(b)  Property of others, but this property is not covered for more than the amount for which you are liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others;

(c)  Household contents, except personal property in apartments or rooms furnished by you as landlord;

(d)  Manuscripts;

(e)  Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

(4)  Glass at the cost of replacement with safety glazing material if required by law.

(5)  *Valuable papers and records,* including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

(a)  Blank materials for reproducing the records; and

(b)  Labor to transcribe or copy the records.

This condition does not apply to *valuable papers and records* that are actually replaced or restored.

(6)  *Money* at its face value.

(7)  *Securities* at their value at the close of business on the day the loss is discovered.

(8)  Applicable only to Accounts Receivable:

(a)  If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

(i)  We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

(ii)  We will adjust that total for

any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

(b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

(i) The amount of the accounts for which there is no loss or damage;

(ii) The amount of the accounts that you are able to re-establish or collect;

(iii) An amount to allow for probable bad debts that you are normally unable to collect; and

(iv) All unearned interest and service charges.

## 7. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

## 8. Resumption of Operations

We will reduce the amount of your:

a. Business Income loss, other than Extra Expense, to the extent you can resume your *operations,* in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

b. Extra Expense loss to the extent you can return *operations* to normal and discontinue such Extra Expense.

## 9. Vacancy

### a. Description of Terms

(1) As used in this Vacancy Condition, the

term building and the term vacant have the meanings set forth in (a) and (b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:

(i) Is not rented; or

(ii) Is not used to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

### b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in (1)(a) and (1)(b) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

## PROPERTY DEFINITIONS

1. *"Money"* means:

a. Currency, coins and bank notes in current use and having a face value; and

b. Travelers checks, register checks and money orders held for sale to the public.

2. *"Operations"* mean your business activities occurring at the described premises.

3. *"Period of restoration"* means the period of time that:

a. Begins:

(1) 24 hours after time of direct physical loss or damage for Business Income coverage; or

(2) Immediately after the time of direct physical loss or damage for Extra Ex-

pense coverage;

Caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

*Period of restoration* does not include any increased period required due to the enforcement of any ordinance or law that:

**a.** Regulates the construction, use or repair, or requires the tearing down of any property; or

**b.** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of *pollutants*.

The expiration date of this policy will not cut short the *period of restoration*.

**4.** "*Pollutants*" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** "*Securities*" means negotiable and nonnegotiable instruments or contracts representing either *money* or other property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include *money*.

**6.** "*Specified causes of loss*" means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action;

falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

(1) The cost of filling sinkholes; or

(2) Sinking or collapse of land into manmade underground cavities.

**b.** Falling objects does not include loss of or damage to:

(1) Personal Property in the open; or

(2) The interior of a building or structure or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**7.** "*Stock*" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**8.** "*Valuable papers and records*" means inscribed, printed, or written:

**a.** Documents;

**b.** Manuscripts; and

**c.** Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

But *valuable papers and records* does not mean:

**a.** *Money* or *securities;*

**b.** Converted data; or

**c.** Programs or instructions used in your data processing operations, including the materials on which the data is recorded.

## BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

### Index of Policy Provisions

Page

LIABILITY AND MEDICAL EXPENSES COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-8

WHO IS AN INSURED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

LIABILITY AND MEDICAL EXPENSES LIMITS OF
INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

LIABILITY AND MEDICAL EXPENSES GENERAL
CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

LIABILITY AND MEDICAL EXPENSES
DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

## BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under the Who Is an Insured Section of this policy.

Other words and phrases that appear in italics have special meaning. Refer to the Liability and Medical Expenses Definitions Section.

## LIABILITY AND MEDICAL EXPENSES COVERAGES

### 1. Business Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury, property damage, personal injury* or *advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury, property damage, personal injury* or *advertising injury* to which this insurance does not apply. We may at our discretion investigate any *occurrence or offense* and settle any claim or *suit* that may result. But:

(1) The amount we will pay for damages is limited as described in the Liability and Medical Expenses Limits of Insurance Section; and

(2) Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension — Supplementary Payments.

b. This insurance applies:

(1) To *bodily injury* or *property damage* only if:

(a) The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the *coverage territory;* and

(b) The *bodily injury* or *property damage* occurs during the policy period.

(2) To:

(a) *Personal injury* caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you; and

(b) *Advertising injury* caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the *coverage territory* during the policy period.

c. Damages because of *bodily injury* include damages claimed by any person or organization for care, loss of services or death resulting at any time from the *bodily injury.*

### d. Coverage Extension — Supplementary Payments

In addition to the Limit of Insurance, we will pay, with respect to any claim we investigate or settle, or any *suit* against an insured we defend:

(1) All expenses we incur.

(2) Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for *bodily injury* applies. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

(4) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or *suit,* including actual loss of earnings up to $250 a day because of time off from work.

(5) All costs taxed against the insured in the *suit.*

(6) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(7) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the

part of the judgment that is within our Limit of Insurance.

If we defend an insured against a *suit* and an indemnitee of the insured is also named as a party to the *suit*, we will defend that indemnitee if all of the following conditions are met:

(1) The *suit* against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an *insured contract;*

(2) This insurance applies to such liability assumed by the insured;

(3) The obligation to defend, or the cost of the defense of, that indemnitee has also been assumed by the insured in the same *insured contract;*

(4) The allegations in the *suit* and the information we know about the *occurrence* are such that no conflict appears to exist between the interests of the insured and the interest of the indemnitee;

(5) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such *suit* and agree that we can assign the same counsel to defend the insured and the indemnitee; and

(6) The indemnitee:

(a) Agrees in writing to:

(i) Cooperate with us in the investigation, settlement or defense of the *suit;*

(ii) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the *suit;*

(iii) Notify any other insurer whose coverage is available to the indemnitee; and

(iv) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(b) Provides us with written authorization to:

(i) Obtain records and other information related to the *suit;* and

(ii) Conduct and control the defense of the indemnitee in such *suit.*

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 1b(2) of Exclusions, such payments will not be deemed to be damages for *bodily injury* and *property damage* and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

(1) We have used up the applicable limit of insurance in the payment of judgments or settlements; or

(2) The conditions set forth above, or the terms of the agreement described in paragraph (6) above, are no longer met.

2. **Medical Expenses**

a. We will pay medical expenses as described below for *bodily injury* caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the *coverage territory* and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the Limit of Insurance. We will pay reasonable expenses for:

(1) First aid at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

## EXCLUSIONS

### 1. Applicable to Business Liability Coverage

**This Insurance does not apply to:**

**a.** Expected or Intended Injury

*Bodily injury* or *property damage* expected or intended from the standpoint of the insured. This exclusion does not apply to *bodily injury* resulting from the use of reasonable force to protect persons or property.

**b.** Contractual Liability

*Bodily injury* or *property damage* for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an *insured contract*, provided the *bodily injury* or *property damage* occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an *insured contract*, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of *bodily injury* or *property damage*, provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same *insured contract*; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.** Liquor Liability

*Bodily injury* or *property damage* for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing of alcoholic beverages.

**d.** Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.** Employers' Liability

*Bodily injury* to:

(1) An employee of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an *insured contract*.

**f.** Pollution

(1) *Bodily injury* or *property damage* arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

However, subparagraph (a) does not apply to *bodily injury* if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or

location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to *bodily injury* or *property damage* arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of *mobile equipment* or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs (a) and (d)(i) do not apply to *bodily injury* or *property damage* arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or *suit* by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing,

or in any way responding to, or assessing the effects of pollutants.

(3) Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. Aircraft, Auto or Watercraft

*Bodily injury* or *property damage* arising out of the ownership, maintenance, use or entrustment to others of any aircraft, *auto* or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and *loading or unloading.*

This exclusion does not apply to:

(1) Watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 50 feet long; and

(b) Not being used to carry persons or property for a charge.

(3) Parking an *auto* on, or on the ways next to premises you own or rent, provided the *auto* is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any *insured contract* for the ownership, maintenance or use of aircraft or watercraft; or

(5) *Bodily injury* or *property damage* arising out of the operation of any of the following equipment:

(a) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(b) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

h. Mobile Equipment

*Bodily injury* or *property damage* arising out of:

(1) The transportation of *mobile equipment* by an *auto* owned or operated by or rented or loaned to any insured; or

(2) The use of *mobile equipment* in, or while in practice for, or while being prepared for, any prearranged racing, speed or stunting activity.

i. War

*Bodily injury* or *property damage* due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

This exclusion applies only to liability assumed under a contract or agreement.

j. Professional Services

*Bodily injury, property damage, personal injury* or *advertising injury* due to rendering or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting, advertising, counseling, consulting services or funeral home services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

(5) Any health or theraputic service, treatment, advice or instruction including but not limited to physiotherapy, massage, chiropody, or the operation or use of suntanning booths or equipment;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of opthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services, barber and beauty shops;

(9) Services in the practice of pharmacy, but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

(10) Services in connection with the selling, licensing, franchising or furnishing of your computer software including electronic data processing programs, designs, specifications, manuals and instructions.

(11) Data processing services rendered by, or that should have been rendered by:

(a) The insured; or

(b) Any person or organization:

    (i) For whose acts, errors or omissions the insured is legally responsible; or

    (ii) From whom the insured assumed liability by reason of a contract or agreement.

(12) The rendering of, or failure to render, electronic data processing, computer consulting or computer programming services, advice or instruction by:

(a) The insured; or

(b) Any person or organization:

    (i) For whose acts, errors or omissions the insured is legally responsible; or

    (ii) From whom the insured assumed liability by reason of a contract or agreement.

k. Damage to Property

*Property damage* to:

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the *property damage* arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of any insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the *property damage* arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because *your work* was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are *your work* and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to *property damage* included in the *products-completed operations hazard*.

l. Damage to Your Product

*Property damage* to *your product* arising out of it or any part of it.

m. Damage to Your Work

*Property damage* to *your work* arising out of it or any part of it and included in the *products-completed operations hazard*.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n. Damage to Impaired Property or Property Not Physically Injured

*Property damage* to *impaired property* or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in *your product* or *your work;* or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to *your product* or *your work* after it has been put to its intended use.

o. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) *Your product;*

(2) *Your work;* or

(3) *Impaired property;*

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

p. Personal or Advertising Injury

*Personal injury* or *advertising injury:*

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(6) With respect to any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way responding to, or assessing the effects of pollutants.

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

q. Advertising Injury

*Advertising injury* arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

r. Suntanning Operations

*Bodily injury, personal injury* or *property damage* arising out of the ownership, operation or use of any suntanning booth or suntanning device.

s. Lead

*Bodily injury, property damage, personal injury* or *advertising injury* arising out of the actual, alleged or threatened ingestion, inhalation, absorption, exposure or presence of lead in any form or from any source.

Coverage also does not apply to any loss, cost, expense, fine or penalty arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, dispose of or in any way respond to or assess the effects of lead in any form; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, disposing of or

in any way responding to or assessing the effects of lead in any form.

Exclusions c, d, e, f, g, h, i, k, l, m, n and o do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in the Limits of Insurance Section of this Coverage Form.

## 2. Applicable to Medical Expenses Coverage

We will not pay expenses for *bodily injury:*

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an *employee* of any insured, if benefits for the *bodily injury* are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the *products-completed operations hazard.*

g. Excluded under Business Liability Coverage.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## 3. Applicable to Both Business Liability Coverage and Medical Expenses Coverage — Nuclear Energy Liability Exclusion

This insurance does not apply:

a. Under Business Liability Coverage, to *bodily injury* or *property damage:*

(1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its Limit of Liability; or

(2) Resulting from the *hazardous properties* of *nuclear material* and with respect to which:

(a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

b. Under Medical Expenses Coverage, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

c. Under Business Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of *nuclear material,* if:

(1) The *nuclear material:*

(a) Is at any *nuclear facility* owned by or operated by or on behalf of an insured; or

(b) Has been discharged or dispersed therefrom;

(2) The *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) The *bodily injury* or *property damage* arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear facility,* but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

d. As used in this exclusion:

*"Byproduct material"* has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

*"Hazardous properties"* include radioactive, toxic or explosive properties;

*"Nuclear facility"* means:

(1) Any *nuclear reactor;*

(2) Any equipment or device designed or used for:

(a) Separating the isotopes of uranium or plutonium;

(b) Processing or utilizing *spent fuel;* or

(c) Handling, processing or packaging *waste;*

(3) Any equipment or device used for the

processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of *waste;*

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

*"Nuclear material"* means *source material, special nuclear material* or *byproduct material;*

*"Nuclear reactor"* means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

*"Property damage"* includes all forms of

radioactive contamination of property;

*"Source material"* has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

*"Special nuclear material"* has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

*"Spent fuel"* means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor;*

*"Waste"* means any waste material:

(1) Containing *byproduct material* other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its *source material* content; and

(2) Resulting from the operation by any person or organization of any *nuclear facility* included under paragraphs (1) and (2) of the definition of *nuclear facility.*

## WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your *executive officers* and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your *employees* other than either your *executive officers* (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but

only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these *employees* is an insured for:

(1) *Bodily injury* or *personal injury:*

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) or to a co-*employee* while that co-*employee* is either in the course of his or her employment or performing duties related to the conduct of your business;

   (b) To the spouse, child, parent, brother or sister of that co-*employee* as a consequence of paragraph (1)(a) above;

   (c) For which there is any obligation to share damages with or repay someone else who must pay damages of the injury described in paragraphs (1)(a) or (b); or

   (d) Arising out of his or her providing or failing to provide professional health care services. However, if you have *employees* who are pharmacists in your retail druggist or drugstore operation, they are insured with respect to their providing

or failing to provide professional health care services; or

(2) *Property damage* to property:

(a) Owned, occupied or used by; or

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your *employees*, any partner or member (if you are a partnership or joint venture) or any member (if you are a limited liability company).

b. Any person (other than your *employee*) or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. With respect to *mobile equipment* registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to

liability arising out of the operation of the equipment and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. *Bodily injury* to a co-*employee* of the person driving the equipment; or

b. *Property damage* to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, limited liability company or joint venture and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage does not apply to *bodily injury* or *property damage* that occurred before you acquired or formed the organization; and

c. Coverage does not apply to *personal injury* or *advertising injury* arising out of an offense committed before you acquired or formed the organzation.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or *suits* brought; or

c. Persons or organizations making claims or bringing *suits*.

2. The most we will pay for the sum of all damages because of all:

a. *Bodily injury, property damage* and medical expenses arising out of any one *occurrence;* and

b. *Personal injury* and *advertising injury* sustained by any one person or organization;

is the Liability and Medical Expenses Limit shown in the Declarations. But the most we will pay for all medical expenses because of *bodily injury* sustained by any one person is the Medi-

cal Expenses Limit shown in the Declarations.

3. The most we will pay under Business Liability Coverage for damages because of *property damage* to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire is the Fire Legal Liability Limit shown in the Declarations.

4. **Aggregate Limits**

a. The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for injury or damage under the *products-completed operations hazard* arising from all *occurrences* during the policy period.

b. The General Aggregate Limit shown in the Declarations is the most we will pay for the sum of all damages because of all:

(1) *Bodily injury, property damage* and medical expenses arising from all *occurrences* during the policy year. This

limit applies separately to:

(a) Each location owned by or rented to you. A location is a premises involving the same or connecting lots, or a premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad; and

(b) Each of your projects away from a location owned by or rented to you; or

(2) *Personal injury* and *advertising injury*

arising out of all offenses committed during the policy period.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS

We have no duty to provide coverage under this Coverage Part unless you and any other involved insured have fully complied with the Conditions contained in this Coverage Part.

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an *occurrence* or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the *occurrence* or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the *occurrence* or offense.

**b.** If a claim is made or *suit* is brought against any insured, you must;

(1) Immediately record the specifics of the claim or *suit* and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or *suit* as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or *suit;*

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the *suit;* and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

**3. Financial Responsibility Laws**

**a.** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for *bodily injury* liability and *property damage* liability will comply with the provisions of the law to the extent of the coverage and Limits of Insurance required by that law.

**b.** With respect to *mobile equipment* to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

**4. Legal Action Against Us**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a *suit* asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 5. Separation of Insureds

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this policy to the First Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or *suit* is brought.

## 6. Premium Audit — Business Liability

**a.** We will compute all premiums for this Coverage Form in accordance with our rules and rates.

**b.** Premium shown in this Coverage Form as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. If a premium payment is due, we will send notice to the First Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the First Named Insured.

**c.** The First Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

## LIABILITY AND MEDICAL EXPENSES DEFINITIONS

1. *"Advertising injury"* means injury arising out of one or more of the following offenses:

   **a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **b.** Oral or written publication of material that violates a person's right of privacy;

   **c.** Misappropriation of advertising ideas or style of doing business; or

   **d.** Infringement of copyright, title or slogan.

2. *"Auto"* means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But *auto* does not include *mobile equipment*.

3. *"Bodily injury"* means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. *"Coverage territory"* means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a above; or

   **c.** All parts of the world if:

   (1) The injury or damage arises out of:

   (a) Goods or products made or sold by you in the territory described in a above; or

   (b) The activities of a person whose home is in the territory described in (a) above, but is away for a short time on your business; and

   (2) The insured's responsibility to pay damages is determined in a *suit* on the merits in the territory described in (a) above or in a settlement we agree to.

5. *"Employee"* includes a *leased worker*. *Employee* does not include a *temporary worker*.

6. *"Executive officer"* means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. *"Impaired property"* means tangible property, other than *your product* or *your work*, that cannot be used or is less useful because:

   **a.** It incorporates *your product* or *your work* that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   **a.** The repair, replacement, adjustment or removal of *your product* or *your work*; or

   **b.** Your fulfilling the terms of the contract or agreement.

8. *"Insured contract"* means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an *insured contract*.

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement; or

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for *bodily injury* or *property damage* to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f does not include that part of any contract or agreement;

(1) That indemnifies a railroad for *bodily injury* or *property damage* arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services.

9. *"Leased worker"* means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. *Leased worker* does not include a *temporary worker.*

10. *"Loading or unloading"* means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or *auto;*

b. While it is in or on an aircraft, watercraft or *auto;* or

c. While it is being moved from an aircraft, watercraft or *auto* to the place where it is finally delivered.

But *loading or unloading* does not include the movement of property by means of a mechanical device, other than a hand truck, that is not

attached to the aircraft, watercraft or *auto.*

11. *"Mobile equipment"* means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers.

e. Vehicles not described in a, b, c or d above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers.

f. Vehicles not described in a, b, c or d above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not *mobile equipment* but will be considered *autos:*

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning.

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. *"Occurrence"* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. *"Personal injury"* means injury, other than *bodily injury,* arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

**14.** *"Products-completed operations hazard"*:

a. Includes all *bodily injury* and *property damage* occurring away from premises you own or rent and arising out of *your product* or *your work* except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, *your work* will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The *bodily injury* or *property damage* must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of *your product* for consumption on premises you own or rent.

b. Does not include *bodily injury* or *property damage* arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the *loading or unloading* of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

**15.** *"Property damage"* means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to

occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it.

**16.** *"Suit"* means a civil proceeding in which damages because of *bodily injury, property damage, personal injury* or *advertising injury* to which this insurance applies are alleged. *Suit* includes:

a. An arbitration proceeding in which such damages are claimed and to which the *insured* must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the *insured* submits with our consent.

**17.** *"Temporary worker"* means a person who is furnished to you to substitute for a permanent *employee* on leave or to meet seasonal or short-term workload conditions.

**18.** *"Your product"* means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

*Your product* includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your product;* and

b. The providing of or failure to provide warnings or instructions.

*Your product* does not include vending machines or other property rented to or located for the use of others but not sold.

**19.** *"Your work"* means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

*Your work* includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your work;* and

b. The providing of or failure to provide warnings or instructions.

## BIS-PAK® COMMON POLICY CONDITIONS

### Index of Policy Provisions

| | Page |
|---|---|
| A. CANCELLATION | 1 |
| B. CHANGES | 1 |
| C. CONCEALMENT, MISREPRESENTATION OR FRAUD | 1 |
| D. EXAMINATION OF YOUR BOOKS AND RECORDS | 1 |
| E. INSPECTIONS AND SURVEYS | 1 |
| F. INSURANCE UNDER TWO OR MORE COVERAGES | 1 |

| | Page |
|---|---|
| G. LIBERALIZATION | 1 |
| H. OTHER INSURANCE | 1 |
| I. PREMIUMS | 2 |
| J. TRANSFER OF RIGHTS OF RECOVERY | 2 |
| K. TRANSFER OF YOUR RIGHTS AND DUTIES | 2 |
| L. REPRESENTATIONS | 2 |
| M. WHEN WE DO NOT RENEW | 2 |

## BIS-PAK® COMMON POLICY CONDITIONS

All coverages of this Coverage Part are subject to the following conditions.

### A. CANCELLATION

**1.** The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

**a.** Ten days before the effective date of cancellation if we cancel for nonpayment of premium.

**b.** Thirty days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the First Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The First Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

### D. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### E. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

**1.** Make inspections and surveys at any time;

**2.** Give you reports on the conditions we find; and

**3.** Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**1.** Are safe or healthful; or

**2.** Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### F. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### G. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

### H. OTHER INSURANCE

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1 above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**3.** Business Liability Coverage is excess over:

**a.** Any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for *your work;*

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, *autos* or watercraft to the extent

not subject to Exclusion g.

b. Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

**4.** When Business Liability Coverage is excess, we will have no duty to defend the insured against any *suit* if any other insurer has a duty to defend the insured against that *suit.* If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When Business Liability Coverage is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

a. The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

b. The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

### I. PREMIUMS

1. The First Named Insured shown in the Declarations:

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

a. Paid to us prior to the anniversary date; and

b. Determined in accordance with paragraph 2 above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium.

### J. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

1. Applicable to Property coverage:

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to a loss to your Covered Property.

b. After a loss to your Covered Property only if, at the time of loss, that party is one of the following:

(1) Someone insured by this insurance;

(2) A business firm:

(a) Owned or controlled by you; or

(b) That owns or controls you; or

(3) Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

### 2. Applicable to Liability coverage:

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring *suit* or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

### K. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

### L. REPRESENTATIONS

By accepting this policy, you agree:

1. The statements in the Declarations are accurate and complete;

**2.** Those statements are based upon representations you made to us; and

**3.** We have issued this policy in reliance upon your representations.

### M. WHEN WE DO NOT RENEW

If we elect not to renew this policy, we will mail or deliver to the First Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.



## ENDORSEMENTS

## COMPUTER COVERAGE

CB-7202(5-2000)

This endorsement modifies insurance provided under the following:

STANDARD BIS-PAK® PROPERTY COVERAGE FORM
DELUXE BIS-PAK® PROPERTY COVERAGE FORM

The coverage provided by this endorsement is subject to the provisions of the Bis-Pak® Property Coverage Form attached to this policy except as otherwise provided within this endorsement.

1. The first sentence of Property Coverages is replaced by the following:

    We will pay for direct physical loss of or damage to Covered Property caused by or resulting from any Covered Cause of Loss.

2. Covered Property under Property Coverages is replaced by the following:

    Covered property means the following types of property:

    a. Your *hardware* and *software;* and

    b. Similar property of others that is in your care, custody or control.

3. Property Not Covered under Property Coverages is replaced by the following:

    Covered Property does not include:

    a. **Accounts, Bills or Documents.**

        We do not cover accounts, bills, evidences of debt, records, abstracts, deeds, manuscripts, program documentation or other documents except those that are in *software* form and then only in that form.

    b. **Contraband.**

        We do not cover contraband or property in the course of illegal transportation or trade.

    c. **Loaned, Leased or Rented to Others.**

        We do not cover property that you loan, lease or rent to others.

    d. **Money and Securities.**

        We do not cover currency, food stamps, lottery tickets not held for sale, money, notes or securities.

    e. **Stock in Trade.**

        We do not cover your stock in trade.

    f. **Vehicle Components.**

        We do not cover *hardware* or *software* which is permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration.

4. Covered Causes of Loss under Property Coverages is replaced by the following:

    Risks of Direct Physical Loss unless the loss is excluded in Property Exclusions.

5. Additional Coverages under Property Coverages is replaced by the following:

    a. **Debris Removal.**

        We pay the cost to remove the debris of covered property that is caused by a covered cause of loss. This coverage does not include costs to:

        (1) Extract *pollutants* from land or water; or

        (2) Remove, restore or replace polluted land or water.

        We will not pay any more under this coverage than 25% of the amount we pay for the direct loss. We will not pay more for loss to property and debris removal combined than the *limit* for the damaged property. However, we will pay an additional amount of debris removal expense up to $10,000 when the debris removal expense exceeds 25% of the amount we pay for direct loss or when the loss to property and debris removal combined exceeds the *limit* for the damaged property.

        We do not pay any expenses unless they are reported to us in writing within 180 days from the date of direct physical loss to covered property.

    b. **Emergency Removal**

        We pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered cause of loss. We pay for any direct physical loss caused by a cause of loss that is not excluded. This coverage applies for up to thirty days after the property is first moved, but does not extend past the date on which this policy expires.

    c. **Extra Expense.**

        We pay the necessary extra expenses that you incur in order to resume or continue your *operations* which are interrupted due to direct physical loss caused by a covered cause of loss to covered property. We cover only the extra expenses that you incur during the *restoration period* and that are necessary to resume or continue your *operations* as nearly as practicable.

        We also cover extra expenses that you incur as a result of:

        (1) Damage to a premises if that damage prevents you from using the covered property;

        (2) Damage to the air conditioning or electrical system which is necessary for the operation of the *hardware* and results in a reduction or suspension of your *oper-*

BIS-PAK ENDORSEMENTS



*ations.* The cause of the damage must occur within 500 feet of the premises on which the *hardware* is located; or

(3) An order by a civil authority that specifically denies you access to a premises where you have covered property. The order must be as a result of damage caused by a covered cause of loss to the premises or to an adjacent property. This extension is limited to two consecutive weeks from the date of the order. This does not increase the *limit.*

The most we pay for extra expenses that you incur because of one occurrence is the Extra Expense Limit shown on the Schedule.

d. **Pollutant Cleanup and Removal.**

We pay your expense to extract *pollutants* from land or water if the discharge, dispersal, seepage, migration, release or escape of the *pollutants* is caused by a covered cause of loss that occurs during the policy period. The expenses are paid only if they are reported to us in writing within 180 days from the date the covered cause of loss occurs.

We do not pay the cost of testing, evaluating, observing or recording the existence level or effects of *pollutants.* However, we pay the cost of testing which is necessary for the extraction of *pollutants* from land or water.

The most we pay for each site or location is $10,000 for the sum of all such expenses arising out of a covered cause of loss occurring during each separate 12 month period of this policy.

6. Property Extensions of Coverage are replaced by the following:

a. **Disturbance and Mechanical Breakdown Coverage.**

We pay for loss to covered property caused by *mechanical breakdown.* We also pay for loss to covered property caused by *electrical disturbance* and *power supply disturbance.*

b. **Newly Purchased or Leased Hardware.**

In the event that you purchase or lease additional *hardware* during the policy period, we extend coverage to the additional *hardware* for up to 60 days.

The most we pay for any loss under this additional coverage is the least of:

(1) The actual cash value of the covered property;

(2) The *Hardware Limit* shown on the Schedule; or

(3) $250,000.

This additional coverage will end when any of the following first occur:

(1) This policy expires;

(2) 60 days after you obtain the additional *hardware;* or

(3) You report the additional *hardware* to us.

c. **Software Storage.**

We cover duplicate and back-up *software* which is stored at a premises where you do not conduct *operations* with that *software* and which is not covered under any other coverage form. The most we pay for loss to *software* at any one storage location is $25,000. We do not include the value of duplicate *software* stored at a premises where you do not conduct *operations* when applying the Coinsurance condition.

7. Property Exclusions are replaced by the following:

a. We do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as or after the excluded causes or events.

(1) Civil Authority.

We do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction or quarantine of property.

We do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a cause of loss excluded under this coverage.

(2) Nuclear Hazard.

We do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion or smoke. We do pay for direct loss by fire resulting from the nuclear hazard.

(3) War.

We do not pay for loss caused by war. This means:

(a) Declared war, undeclared war, civil war, insurrection, rebellion or revolution;

(b) A warlike act by a military force or by military personnel;

(c) The destruction, seizure or use of the property for a military purpose; or

(d) The discharge of a nuclear weapon even if it is accidental.

**b.** We do not pay for loss or damage if one or more of the following exclusions apply to the loss.

(1) Criminal, Fraudulent or Dishonest Acts.

We do not pay for loss caused by or resulting from criminal, fraudulent, dishonest or illegal acts alone or in collusion with another by:

(a) You;

(b) Others who have an interest in the property;

(c) Others to whom you entrust the property;

(d) Your partners, officers, directors, trustees or joint adventurers; or

(e) The employees or agents of (a), (b), (c) or (d) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by your employees, but we do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

(2) Deterioration, Fault or Weakness.

We do not pay for deterioration; decay; or any quality, fault or weakness in the covered property that causes it to damage or destroy itself. This exclusion does not apply to loss caused by *mechanical breakdown*.

(3) Lease Terms.

We do not pay for loss caused by a covered cause of loss for which you are not responsible under the terms of any lease or rental agreement.

(4) Loss of Use.

We do not pay for loss caused by or resulting from loss of use, business interruption, delay or loss of market.

This exclusion does not apply to Extra Expense coverage as provided under Additional Coverages.

(5) *Pollutants.*

We do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal or escape of *pollutants.*

This exclusion does not apply to *Pollutant* Clean-Up and Removal Coverage as provided under Additional Coverages.

(6) Temperature, Humidity, Corrosion or Rust.

We do not pay for loss caused by corrosion, rust, humidity, dampness, dryness or changes in or extremes of temperature.

We do pay for loss to covered property that results from a direct physical loss caused by a covered cause of loss to the air conditioning system that services covered *hardware.*

**c.** We do not pay for extra expenses that you incur if one or more of the following exclusions apply.

(1) Error or Omission.

We do not pay for extra expense caused by error or omission in programming or incorrect instructions to *hardware.*

(2) Leases, Licenses, Contracts or Orders.

We do not pay for any increase in extra expenses due to the suspension, lapse or cancellation of leases, licenses, contracts or orders. However, we do cover loss during the *restoration period* if the suspension, lapse or cancellation results directly from the interruption of your *operations.*

We do not cover any extra expense beyond the *restoration period* caused by the suspension, lapse or cancellation of leases, licenses, contracts or orders.

(3) Strikes, Protests or Interference.

We do not pay for any increase in extra expenses due to interference by strikers or other persons. This applies to interference with rebuilding, repairing or replacing covered property or with the resumption of *operations.*

**8.** Property Limits of Insurance is replaced by the following:

The most we will pay for loss or damage in any one occurrence is the applicable *limit* shown on the Schedule.

**9.** Property Deductibles is replaced by the following:

We pay only that part of your loss over the deductible amount indicated on the Schedule in any one occurrence. If property insured under this endorsement and property insured under the Bis-Pak® Property Coverage Form to which this endorsement is attached is damaged in one occurrence, only the single highest deductible will apply.

10. The following are added to Property Loss Conditions:

a. **Actual Cash Value.**

When Actual Cash Value is indicated on the Schedule, the value of covered property is based on the actual cash value at the time of loss (with a deduction for depreciation).

b. **Replacement Cost.**

When Replacement Cost is indicated on the Schedule, the value of covered property will be based on the replacement cost without any deduction for depreciation.

The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount you spend to repair or replace the damaged or destroyed property.

Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. You may make a claim for actual cash value before repair or replacement takes place and later for the replacement cost if you notify us of your intent within 180 days after the loss.

c. **Pair or Set.**

The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

However, this provision does not apply to *software* that comes in sets. If part of a software set cannot be replaced, the loss is considered a total loss of the set.

d. **Coinsurance.**

We only pay a part of the loss if the *limit* is less than the percentage of the value of the covered property that is indicated on the Schedule. Our part of the loss is determined using the following steps:

(1) Multiply the Coinsurance Percentage indicated on the Schedule by the value of the covered property at the time of loss;

(2) Divide the *limit* for covered property by the result determined in d(1) above;

(3) Multiply the total amount of loss, after

application of any deductible, by the result determined in d(2) above.

The most we pay is the amount determined in d(3) above or the *limit*, whichever is less. We do not pay any remaining part of the loss.

If there is more than one *limit* indicated on the Schedule, this procedure applies separately for each *limit*.

If there is only one *limit* indicated on the Schedule, this procedure applies to the total of all covered property to which the *limit* applies.

11. The following Property Definition is replaced for the purposes of the insurance provided by this endorsement:

"*Operations*" means your normal electronic data processing operations.

12. The following are added to Property Definitions:

a. "*Electrical disturbance*" means electrical or magnetic damage, disturbance of electronic recordings or erasure of electronic recordings.

b. "*Hardware*" means an assemblage of electronic machine components capable of accepting instructions and information, processing the information according to the instructions and producing desired results.

c. "*Limit*" means the amount of coverage that applies.

d. "*Mechanical breakdown*" means mechanical breakdown or malfunction, component failure, faulty installation or blowout.

e. "*Power supply disturbance*" means interruption of power supply, power surge, blackout or brownout.

f. "*Restoration period*" means the time it should take to resume your *operations* starting from the date of loss to covered property caused by a covered cause of loss, and ending on the date the property should be rebuilt, repaired or replaced. This is not limited by the end of the policy period.

This does not include any increase in time due to the enforcement of any ordinance, law or decree that:

(1) Regulates the construction, use, repair or demolition of any property; or

(2) Requires the testing, evaluating, observing or recording the existence, level or effects of *pollutants*.

g. "*Software*" means:

(1) Processing, recording or storage media used for electronic data processing operations. This includes films, tapes,

(continued next page)

cards, discs, drums, cartridges or cells; and

(2) Data, information and instructions stored on processing, recording or storage media used for electronic data processing operations.

## SCHEDULE

| Hardware Limit | Software Limit | Extra Expense Limit |
|---|---|---|
| $100,000 | $25,000 | $10,000 |

| Deductible Amount | Covered Property Valuation | Coinsurance Percentage |
|---|---|---|
| $250 | REPLACEMENT COST | 90% |

## BUSINESS LIABILITY COVERAGE — TENANTS LIABILITY

CB-0455(1-97)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

**1.** The final paragraph of Exclusions — Applicable to Business Liability Coverage is replaced by the following:

With respect to the premises shown in the Schedule of this endorsement which are rented to you or temporarily occupied by you with the permission of the owner, exclusions c, d, e, g, h, k, l, m, n and o do not apply to *property damage.*

**2.** Paragraph 2 of the Liability and Medical Expenses Limits of Insurance is replaced by the following:

The most we will pay under this endorsement for the sum of all damages because of all *property damage* arising out of any one *occurrence* to premises rented to you or temporarily occupied by you with the permission of the owner is the Tenants Liability Limit of Insurance shown in the Schedule.

**3.** With respect to the premises shown in the Schedule of this endorsement, paragraph 3 and paragraph 4b of Liability and Medical Expenses Limits of Insurance are deleted.

## SCHEDULE

| Premises | Tenants Liability Limit of Insurance (Per Occurrence) |
|---|---|
| 350 W KENSINGTON MOUNT PROSPECT IL | $ 100,000 |

## ASBESTOS EXCLUSION

CB-7016(1-90)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

It is understood and agreed that coverage provided by this policy does not apply to *bodily injury* or *property damage* arising out of the manufacture, storage, distribution, installation, service, repair or removal of asbestos or products containing asbestos.

## BIS-PAK® ENHANCEMENT ENDORSEMENT

CB-7203(9-01)

This endorsement modifies insurance provided under the following:

BIS-PAK® COVERAGE PART

### ADDITIONAL COVERAGES

1. **Computer Coverage**

   We will pay for direct physical loss of or damage to covered property caused by or resulting from any covered cause of loss.

   a. Covered Property under Property Coverages is replaced by the following:

      Covered property means the following types of property:

      (1) Your *hardware* and *software;* and

      (2) Similar property of others that is in your care, custody or control.

   b. Property Not Covered under Property Coverages is replaced by the following:

      Covered Property does not include:

      (1) Accounts, Bills or Documents.

         We do not cover accounts, bills, evidences of debt, records, abstracts, deeds, manuscripts, program documentation or other documents except those that are in *software* form and then only in that form.

      (2) Contraband.

         We do not cover contraband or property in the course of illegal transportation or trade.

      (3) Loaned, Leased or Rented to Others.

         We do not cover property that you loan, lease or rent to others.

      (4) *Money* and *Securities*.

         We do not cover *money, securities,* food stamps or lottery tickets.

      (5) Stock in Trade.

         We do not cover your stock in trade.

      (6) Vehicle Components.

         We do not cover *hardware* or *software* which is permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration.

   c. Additional Coverage under Property Coverages is replaced by the following:

      (1) Emergency Removal.

         We pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered cause of loss. We pay for any direct physical loss caused by a cause of loss that is not excluded. This coverage applies for up to thirty days after the property is first moved, but does not extend past the date on which this policy expires.

      (2) Extra Expense.

         We pay the necessary extra expenses that you incur in order to resume or continue your *operations* which are interrupted due to direct physical loss caused by a covered cause of loss to covered property. We cover only the extra expenses that you incur during the *restoration period* and that are necessary to resume or continue your *operations* as nearly as practicable.

         The most we pay for extra expenses that you incur because of one occurrence is $2,500.

   d. Property Extensions of Coverage are replaced by the following:

      **Disturbance and Mechanical Breakdown Coverage.**

      We pay for loss to covered property caused by *mechanical breakdown*. We also pay for loss to covered property caused by *electrical disturbance* and *power supply disturbance*.

   e. Property Limits of Insurance is replaced by the following:

      The most we will pay for loss or damage in any one occurrence is $10,000.

   f. Property Deductibles is replaced by the following:

      We pay only that part of your loss over $250.

   g. The following Property Definition is replaced for the purposes of the insurance provided by this endorsement:

      "*Operations*" means your normal electronic data processing operations.

   h. The following are added to Property Definitions:

      (1) "*Electrical disturbance*" means electrical or magnetic damage, disturbance of electronic recordings or erasure of electronic recordings.

      (2) "*Hardware*" means an assemblage of electronic machine components capable of accepting instructions and information, processing the information according to the instructions and producing desired results.

(continued next page)

(3) *"Mechanical breakdown"* means mechanical breakdown or malfunction, component failure, faulty installation or blowout.

(4) *"Power supply disturbance"* means interruption of power supply, power surge, blackout or brownout.

(5) *"Restoration period'"* means the time it should take to resume your *operations* starting from the date of loss to covered property caused by a covered cause of loss, and ending on the date the property should be rebuilt, repaired or replaced. This is not limited by the end of the policy period.

(6) *"Software"* means:

    (a) Processing, recording or storage media used for electronic data processing operations. This includes films, tapes, cards, discs, drums, cartridges or cells; and

    (b) Data, information and instructions stored on processing, recording or storage media used for electronic data processing operations.

## 2. Employee Tools

    **a.** We will pay for direct physical loss of or damage to employees' tools which are used in connection with your business caused by or resulting from any covered cause of loss.

    **b.** The most we will pay under this additional coverage is $5,000 which is not to exceed $500 per item.

## 3. Fine Arts Coverage

We will pay for direct physical loss of or damage to fine arts which are not covered by insurance purchased specifically for the item caused by or resulting from any covered cause of loss.

We do not pay for fine arts that are on display at fairgrounds or at a national or international exposition.

We do not pay for loss or damage to fine arts caused by or that results from:

    **a.** A process to repair, retouch, restore, adjust, service or maintain the covered fine arts. If a fire or explosion results, we do not cover the loss caused by the fire or explosion.

    **b.** The gradual accumulation of dust, dirt or pollutants.

    **c.** Breakage of art glass windows, statuary, marbles, glassware, bric-a-brac, porcelains or similar fragile items unless it is caused by a covered cause of loss under the Standard Bis-Pak® Property Coverage Form or *specified causes of loss* under the Deluxe

Bis-Pak® Property Coverage Form.

The most we will pay under this additional coverage is $5,000.

## COVERED CAUSES OF LOSS — ADDITIONAL COVERAGES

Covered Causes of Loss under Property Coverages is replaced by the following for Additional Coverages 1 - Computer Coverage, 2 - Employee Tools and 3 - Fine Arts Coverage:

Risks of Direct Physical Loss unless the loss is excluded in Property Exclusions — Additional Coverages.

## PROPERTY EXCLUSIONS — ADDITIONAL COVERAGES

Property Exclusions are replaced by the following for Additional Coverages 1 - Computer Coverage, 2 - Employee Tools and 3 - Fine Arts Coverage:

**1.** We do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as or after the excluded causes or events.

    **a.** Civil Authority.

    We do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction or quarantine of property.

    We do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a cause of loss excluded under this coverage.

    **b.** Nuclear Hazard.

    We do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation or radioactive contamination, however caused. Loss caused by nuclear hazard is not considered loss caused by fire, explosion or smoke. We do pay for direct loss by fire resulting from the nuclear hazard.

    **c.** War.

    We do not pay for loss caused by war. This means declared war, undeclared war, civil war, insurrection, rebellion or revolution; a warlike act by a military force or by military personnel; the destruction, seizure or use of the property for a military purpose; or the discharge of a nuclear weapon even if it is accidental.

**2.** We do not pay for loss or damage if one or more of the following exclusions apply to the loss.

    **a.** Dishonesty.

    We do not pay for loss caused by or result-

ing from criminal, fraudulent, dishonest or illegal acts alone or in collusion with another by you; others who have an interest in the property; others to whom you entrust the property; your partners, officers, directors, trustees or joint adventurers; or the employees of agents of any of the above, whether or not they are at work.

This exclusion does not apply to acts of destruction by your employees, but we do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

**b.** Deterioration, Fault or Weakness.

We do not pay for deterioration; decay; or any quality, fault or weakness in the covered property that causes it to damage or destroy itself. This exclusion does not apply to loss caused by *mechanical breakdown.*

**c.** Lease Terms.

We do not pay for loss caused by a covered cause of loss for which you are not responsible under the terms of any lease or rental agreement.

**d.** Loss of Use.

We do not pay for loss caused by or resulting from loss of use, business interruption, delay or loss of market.

This exclusion does not apply to Extra Expense coverage as provided under Additional Coverages.

**e.** Temperature, Humidity, Corrosion or Rust.

We do not pay for loss caused by corrosion, rust, humidity, dampness, dryness or changes in or extremes of temperature.

**f.** Mysterious disappearance.

**g.** Wear and tear

**3.** We do not pay for extra expenses that you incur if one or more of the following exclusions apply.

**a.** Error or Omission.

We do not pay for extra expense caused by error or omission in programming or incorrect instructions to *hardware.*

**b.** Leases, Licenses, Contracts or Orders.

We do not pay for any increase in extra expenses due to the suspension, lapse or cancellation of leases, licenses, contracts or orders. However, we do cover loss during the *restoration period* if the suspension, lapse or cancellation results directly from the interruption of your *operations.*

## EXTENSIONS OF COVERAGE

**1. Increased Accounts Receivable Coverage**

We will increase the amount shown in the Declarations for Accounts Receivable Coverage by $15,000.

**2. Increased Valuable Papers Coverage**

We will increase the amount shown in the Declarations for Valuable Papers Coverage by $15,000.

**3. Business Income and Extra Expense**

Item (5) of the Business Income and Extra Expense Additional Coverage is replaced by the following:

We will only pay for Loss of Business Income or Extra Expense that you sustain during the *period of restoration.* Items (1) through (5) of this Additional Coverage are not subject to the Limits of Insurance.

**4. Extended Business Income and Extra Expense Coverage**

The number of days listed in paragraph (6)(b)(ii) of the Business Income and Extra Expense Additional Coverage is replaced with 60 days.

**5. Fire Department Service Charge**

Fire Department Service Charge is replaced by the following:

When the fire department is called to save or to protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000 for your liability for fire department service charges:

**a.** Assumed by contract or agreement prior to loss; or

**b.** Required by local ordinance.

**6. Outdoor signs**

The limit shown in item 2 of Property Limits of Insurance is increased to $5,000.

**7. Costs to Prepare Inventory Coverage**

We will pay up to $2,500 for reasonable expenses for the taking of inventory and appraisals, incurred by you at your request to assist us in the determination of the amount of a covered loss.

We do not pay for any expense incurred under the Property Loss Conditions, Appraisals; or any public adjusters' fees.

(continued next page)



### 8. Extinguisher Recharging

We will pay your costs of recharging your fire extinguishers or fire extinguishing systems (including hydrostatic testing if needed), or replacing the fire extinguishing or fire extinguishing systems, whichever is less, because they are discharged as a result of fighting a fire or within 50 feet of your described premises.

The most we will pay under this extension is $1,000.

### 9. Lock Replacement

We will cover your costs to repair or replace door locks or tumblers of your described premises because of theft of your door keys. The most we will pay under this extension is $1,000.

### 10. Arson Reward

We will pay up to $5,000 to any individual or organization for information leading to an arson conviction in connection with loss or damage to covered property. This amount is the most we will pay, regardless of the number of persons or organizations involved in providing information.

---

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

CB-0417(1-96)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

The following exclusion is added:

This insurance does not apply to *bodily injury* or *personal injury* to:

1. A person arising out of any:

a. Refusal to employ that person;

b. Termination of that person's employment; or

c. Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2. The spouse, child, parent, brother or sister of that person as a consequence of *bodily injury* or *personal injury* to that person at whom any of the employment-related practices described in paragraphs a, b or c above is directed.

The Employment-Related Practices Exclusion applies:

1. Whether the insured may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

---

## CHANGE OF INSURANCE CARRIER NAME ENDORSEMENT

IL-7060(6-01)

This endorsement attaches to and forms a part of this policy. Whenever in the said policy the name Heritage Mutual Insurance Company is used, the name *ACUITY, A Mutual Insurance Company* is hereby substituted.

This endorsement is effective 6/01/01.

## ILLINOIS CHANGES

CB-7197(3-99)

This endorsement modifies insurance provided under the following:

BIS-PAK® COVERAGE PART

1. The Cancellation Bis-Pak® Common Policy Condition is replaced by the following:

## CANCELLATION

**a.** The First Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

**b.** (1) We may cancel this policy by mailing to the First Named Insured, any mortgagee or lienholder known to us and the agent or broker written notice stating the reason for cancellation.

(2) If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

(3) If we cancel for a reason other than nonpayment of premium, except as provided in paragraph h below, we will mail the notice at least:

(a) Thirty days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

(b) Sixty days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

**c.** If this policy has been in effect for more than 60 days, except as provided in paragraphs h and i below, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained through a material misrepresentation;

(3) Any insured has violated any of the terms and conditions of the policy;

(4) The risk originally accepted has measurably increased;

(5) Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

(6) A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

**d.** We will mail our notice to the First Named Insured, any mortgagee or lienholder known to us and the agent or broker, at the respective mailing addresses last known to us.

**e.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**f.** If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro

rata. The cancellation will be effective even if we have not made or offered a refund.

**g.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**h. Real Property Other Than Residential Properties Occupied by Four Families or Less:**

The following applies only if this policy covers real property other than residential property occupied by four families or less:

If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation to be effective 10 days after such notice is received:

(1) After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

(2) The building has been unoccupied 60 or more consecutive days. This does not apply to:

(a) Seasonal unoccupancy; or

(b) Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

(3) The building has:

(a) An outstanding order to vacate;

(b) An outstanding demolition order; or

(c) Been declared unsafe in accordance with the law.

(4) Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

**i. Residential Properties Occupied by Four Families or Less:**

The following applies if this policy covers residential properties occupied by four families or less:

If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained by misrepresentation or fraud; or

(3) Any act that measurably increases the risk originally accepted.

2. The When We Do Not Renew Bis-Pak® Common Policy Condition is replaced by the following:

## NONRENEWAL

**a.** If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date.

**b.** We will mail our notice to the following at the respective mailing addresses last known to us:

(continued next page)

(1) The First Named Insured;

(2) The broker, if known to us, or the agent of record; and

(3) The last known mortgagee or lienholder named in the policy.

c. Even if we do not comply with these terms, this policy will terminate:

(1) On the expiration date if:

(a) You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit;

(b) We have indicated our willingness to renew this policy to you or your representative; or

(c) You have notified us or our agent that you do not want to renew this policy.

(2) On the effective date of any other insurance replacing this policy.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The following provision applies only if this policy covers residential properties occupied by four families or less:

If this policy has been issued to you and in effect for five or more years, we may not fail to renew this policy unless:

(1) The policy was obtained by misrepresentation or fraud;

(2) The risk originally accepted has measurably increased; or

(3) You received 60 days' notice of our intent not to renew as provided in paragraphs a through d above.

3. The following is added to the Legal Action Against Us Property Loss Condition:

The period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

4. If this policy covers:

a. Real property used principally for residential purposes up to and including a four family dwelling; or

b. Household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes;

then the following provisions apply:

a. The following is added to the Appraisal Property Loss Condition and supersedes any provision to the contrary:

(1) Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in b below.

(2) We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

(a) You demanded the appraisal; and

(b) The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

b. The Concealment, Misrepresentation or Fraud Bis-Pak® Common Policy Condition is replaced by the following:

## Concealment, Misrepresentation or Fraud

a. This Coverage Part is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

(1) Was made with actual intent to deceive; or

(2) Materially affected either our decision to provide this insurance or the hazard we assumed.

However, this condition will not serve as a reason to void this Coverage Part after the Coverage Part has been in effect for one year or one policy term, whichever is less.

b. This Coverage Part is void if you or any other insured at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

(1) This Coverage Part;

(2) The Covered Property;

(3) Your interest in the Covered Property; or

(4) A claim under this Coverage Part.

c. Notwithstanding the limitations stated in a above, we may cancel the Coverage Part in accordance with the terms of the Cancellation Condition.

5. The following exclusion is added to item 2 under Property Exclusions:

a. We will not pay for loss or damage arising out of any act committed:

(1) By or at the direction of any insured; and

(2) With the intent to cause a loss.

b. However, this exclusion will not apply to deny payment to an innocent co-insured who did not co-operate in or contribute to the creation of the loss if:

(1) The loss arose out of a pattern of criminal domestic violence; and

(2) The perpetrator of the loss is criminally prosecuted for the act causing the loss.

(continued next page)

c. If we pay a claim pursuant to paragraph 5b, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

## HIRED AUTO AND NONOWNED AUTO LIABILITY ·

CB-7019(3-2001)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

1. Insurance is provided as stated below.

   **a. Hired Auto Liability**

   The insurance provided under the Liability and Medical Expenses Coverages Section, paragraph 1, Business Liability, applies to *bodily injury* or *property damage* arising out of the maintenance or use of a *hired auto* by you or your *employees* in the course of your business.

   **b. Nonowned Auto Liability**

   The insurance provided under the Liability and Medical Expenses Coverages Section, paragraph 1, Business Liability, applies to *bodily injury* or *property damage* arising out of the use of any *nonowned auto* in your business.

2. For insurance provided by this endorsement only:

   **a.** The exclusions under paragraph 1, Applicable to Business Liability Coverage, other than exclusions a, b, d, f and i and the Nuclear Energy Liability Exclusion, are deleted and replaced by the following:

   (1) *Bodily injury* to:

      (a) An *employee* of the insured arising out of and in the course of:

         (i) Employment by the insured; or

         (ii) Performing duties related to the conduct of the insured's business; or

      (b) The spouse, child, parent, brother or sister of that *employee* as a consequence of (a) above.

   This exclusion applies:

      (a) Whether the insured may be liable as an employer or in any other capacity; and

      (b) To any obligation to share damages with or repay someone else who must pay damages because of injury.

   This exclusion does not apply to:

      (a) Liability assumed by the insured under an *insured contract;* or

      (b) *Bodily injury* arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be

   provided under any workers' compensation law.

   (2) *Property damage* to:

      (a) Property owned or being transported by, or rented or loaned to the insured; or

      (b) Property in the care, custody or control of the insured.

   **b.** Who is an Insured is replaced by the following:

   Each of the following is an insured under this endorsement to the extent set forth:

   (1) You for any covered auto.

   (2) Anyone else while using with your permission a covered auto you lease, hire, rent or borrow except:

      (a) The owner or anyone else from whom you lease, hire, rent or borrow a covered auto. This exception does not apply if the covered auto is a trailer connected to a covered auto you own.

      (b) Your employee if the covered auto is owned by that employee or a member of his or her household.

      (c) Someone using a covered auto while he or she is working in an auto business unless that business is yours.

      (d) Anyone other than your employees, partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower of any of their employees, while moving property to or from a covered auto.

      (e) A partner (if you are a partnership) or a member (if you are a member) for a covered auto owned by him or her or a member of his or her household.

      (f) Any person engaged in the business of his or her employer for bodily injury to any co-employee of such person injured in the course of employment or to the spouse, child, parent, brother or sister of that co-employee as a consequence of such bodily injury, or for any obligation to share damages with or repay someone else who must pay damages because of the injury.

   (3) Anyone liable for the conduct of the insured described above but only to the

(continued next page)

extent of that liability.

3. The following additional definitions apply:

a. *"Auto business"* means the business or occupation of selling, repairing, servicing, storing or parking *autos.*

b. *"Hired Auto"* means only those *autos* you lease, hire, rent or borrow. This does not include any *auto* you lease, hire, rent or borrow:

(1) From any of your *employees,* partners (if you are a partnership), members (if you are a limited liability company) or members of their households; or

(2) If the lease or rental agreement involv-

ing that *auto* is for a term of longer than 30 consecutive days.

c. *"Nonowned Auto"* means only those autos you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes autos owned by your employees, partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business.

4. The insurance provided under this endorsement is not subject to item 4, Aggregate Limits, of the Liability and Medical Expenses Limits of Insurance Section.

# EXHIBIT E

2145514.01.01.doc
1640937/RAW

# Your *ACUITY* Policy




7/1/03 —
7/1/04



# *Protecting and Enhancing*
# *Your Well-Being*













2800 South Taylor Drive
Sheboygan, Wisconsin 53081
www.acuityfin.com



**ACUITY** SM

A Mutual Insurance Company

July 25, 2003

AMERICAN AUTO GUARDIAN INC
1500 W SCHUR DR 7TH FL
ARLINGTON HEIGHTS IL 60004

Policy Number: K21167

Dear Policyholder:

This renewal policy continues your business coverage under the Comco® Commercial Insurance Program. By choosing *ACUITY,* you have selected a commercial insurer committed to quality. Our commitment to you includes state-of-the-industry coverages plus policy, claims and loss control services that meet the highest standards. We value our continuing association as a provider of vital insurance protection for your business operations.

**Your Independent Agent**

This policy is sold and serviced by an independent insurance agent. Because independent agents can provide insurance coverage through more than one company, you can be confident that you have made a wise selection. Your agent stands ready to serve your needs and answer your questions with regard to this policy.

**Premium Payment Options**

You now have the option of having your premium payments automatically withdrawn from your checking or savings account. No service or handling fees apply to this option. If you wish to have your payments withdrawn from your bank account, complete the Automatic Payment Option Authorization section on the back of your Payment Notice.

**Terrorism Information**

Please refer to the Important Notice and related attachments following this letter for details regarding coverage for acts of terrorism as defined in the federal Terrorism Risk Insurance Act of 2002 and your options relating to this coverage.

M-2240(6-01)

**For More Information**

Please contact your agent if you have any questions or desire any changes in your policy. Your agent can also help determine if your coverage adequately meets your insurance needs.

Thank you for insuring with *ACUITY*.

Ben Salzmann
President

## Important Notice

On November 26, 2002, President Bush signed into law the Terrorism Risk Insurance Act of 2002. Attached are a Policyholder Disclosure Notice of Terrorism Insurance Coverage and any applicable Terrorism Premium Information page(s) which provide you with information regarding this law.

Your policy has been issued with coverage for losses caused by terrorist events as defined in the law. Endorsements that provide this coverage have been attached to your policy and a premium charge has been applied. Please refer to your Declarations for the exact premium charge associated with each endorsement.

You have the right to remove this coverage, where permitted, from your policy. You may do so by signing the attached rejection form and mailing it to *ACUITY*, P.O. Box 58, Sheboygan, WI 53082-0058. If you choose to reject this coverage, you will not be able to add the coverage back to your policy until your next renewal.

Even if you choose to reject coverage for terrorist events as defined in the law a premium charge may apply. Refer to the attached Terrorism Premium Information page(s) for an explanation of premium charges. Your policy and current premium payment plan will be updated to reflect any changes in coverage and premium.

Please contact your agent if you have any questions regarding this law.

## Policyholder Disclosure
## Notice of Terrorism Insurance Coverage

You are hereby notified that under the Terrorism Risk Insurance Act of 2002 that you have a right to purchase insurance coverage for losses arising out of acts of terrorism, *as defined in Section 102(1) of the Act:* The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States — to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that any losses caused by certified acts of terrorism, *as defined in Section 102(1) of the Act,* would be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

The attached policy includes coverage for terrorism as described in the act. The premium charge for this coverage is based on the premiums for each coverage part included in your policy and the location of any property covered under the policy. The attached Terrorism Premium Information sheet provides complete information for developing this premium. The rates shown do not include any charges for the portion of loss covered by the federal government under the act.

## REJECTION OF COVERAGE FOR TERRORIST EVENTS AS DEFINED IN THE TERRORISM RISK INSURANCE ACT OF 2002

You may reject coverage for terrorist events as defined in the Terrorism Risk Insurance Act of 2002, where permitted. You may do this by signing this rejection form and mailing it to *ACUITY*, P.O. Box 58, Sheboygan, WI 53082-0058. If you choose to reject this coverage, you will not be able to add the coverage back to your policy until your next renewal.

I have read the Policyholder Disclosure Notice of Terrorism Insurance Coverage and the Terrorism Premium Information page(s) and hereby reject coverage for terrorist events as defined in the Terrorism Risk Insurance Act of 2002. I understand that coverage for terrorist events as defined in the act will be excluded under my policy.

_____        _____

First Named Insured Signature                                    Date

A rejection form received within 30 days of the date shown on the bottom right corner will be valid as of the Policy Effective Date shown above. A rejection form received after 30 days of the date shown will be valid on the date we receive the form. This rejection will apply until the expiration date of the policy term that begins on the Policy Effective Date shown above.



A Mutual Insurance Company

## Terrorism Premium Information
### Illinois

The premium you pay for terrorism coverage is based on the premiums for each coverage part included in your policy, the location of any property covered under the policy and whether or not you choose to purchase the terrorism coverage as *defined in Section 102(1) of the Terrorism Risk Insurance Act of 2002.* Refer to the attached Policyholder Disclosure Notice of Terrorism Insurance Coverage for a description of applicable provisions in that act.

Even if you reject coverage under the act, a terrorism premium is charged. This happens because we are required by law to provide the following coverage for loss by terrorism regardless of a rejection:

- Any rejection applies only to acts of terrorism as described in the law. Other terrorist acts are not affected by the rejection and many would still be covered by your policy.
- Illinois has a "standard fire policy" law which limits the exclusions which may apply to loss caused by fire. In many cases, this law will require that we cover claims which would otherwise be excluded under any rejection.

| If your *ACUITY* policy contains the following coverage part: | The premium charge for terrorism insurance if you **accept** coverage under the act is: | The premium charge for terrorism insurance if you **reject** coverage under the act is: |
|---|---|---|
| - Bis-Pak® – Property Portion of Your Premium | - 12% of the property premium applying in Cook County<br>- 7.5% of the property premium applying in a county with a Nuclear Power Plant<br>- 6% of the property premium for all other locations | - 9.6% of the property premium applying in Cook County<br>- 6% of the property premium applying in a county with a Nuclear Power Plant<br>- 4.8% of the property premium for all other locations |
| - Bis-Pak® – Liability Portion of Your Premium | - 2% of the liability premium applying to your policy | - 1% of the liability premium applying to your policy |
| - Commercial Property Coverage Part and Commercial Output Program in the Commercial Inland Marine Coverage Part | - 12% of the property premium applying in Cook County<br>- 7.5% of the property premium applying in a county with a Nuclear Power Plant<br>- 6% of the property premium for all other locations | - 9.6% of the property premium applying in Cook County<br>- 6% of the property premium applying in a county with a Nuclear Power Plant<br>- 4.8% of the property premium for all other locations |

TRIA-213(2-03)

## Terrorism Premium Information
## Illinois

| If your ACUITY policy contains the following coverage part: | The premium charge for terrorism insurance if you accept coverage under the act is: | The premium charge for terrorism insurance if you reject coverage under the act is: |
|---|---|---|
| • Commercial Inland Marine Coverage Part — except for the Commercial Output Program | • 12% of the property premium applying in Cook County<br>• 7.5% of the property premium applying in a county with a Nuclear Power Plant<br>• 6% of the property premium for all other locations | • 6% of the property premium applying in Cook County<br>• 3.75% of the property premium applying in a county with a Nuclear Power Plant<br>• 3% of the property premium for all other locations |
| • Commercial Auto, Commercial General Liability, Commercial Umbrella and Commercial Crime Coverage Parts | • 2% of the premium applying to each of the coverage parts | • 1% of the premium applying to each of the coverage parts |
| • Workers' Compensation | • The premium charge is $.05 for each $100 of payroll for all classes. | Workers' Compensation coverage automatically applies to loss caused by terrorism. You are not permitted to reject this coverage. |

**Counties with Nuclear Power Plants** are Grundy County, Ogle County, DeWitt County, Rock Island County and La Salle County.

TRIA-213(a-03)



**ACUITY**
A Mutual Insurance Company

**COMMON POLICY
DECLARATIONS**

First Named Insured and Address:

AMERICAN AUTO GUARDIAN INC
1500 W SCHUR DR 7TH FL
ARLINGTON HEIGHTS IL 60004

Agency Name and Number:

7039                    (847)934-6100
DS&P INSURANCE SERVICES, INC.
1530 E DUNDEE RD STE 200
PALATINE IL 60067

Policy Number: K21167-0

Policy Period:   Effective Date:        07-12-03

                 Expiration Date:       07-12-04

                 12:01 A.M. standard time at
                 your mailing address shown
                 in the declarations

## COVERAGE

Your coverage consists of the following lines of insurance for which a premium is indicated.
This premium may be subject to adjustment.

| | |
|---|---|
| **Property** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | |
| **General Liability** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| **Automobile** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| **Garage** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| **Inland Marine** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| **Crime** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| **Umbrella Excess Liability** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| **Workers' Compensation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| **Bis-Pak®** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4,456.00 |
| **Total Advance Premium** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | **4,456.00** |

Donald C. Hurpfeltt
Secretary

Ben Salzmann
President

## MUTUAL POLICY CONDITIONS

Every person, co-partnership or corporation insured by the company shall be a member of it and shall have one vote. The annual meeting of the members shall be held on the first Tuesday in March at 1:30 P.M. of each year, at the corporate headquarters of the company in Sheboygan, Wisconsin. Notice printed in each policy shall be sufficient as to the time and place of said meeting.

The Named Insured, upon termination of this policy, shall participate in the distribution of dividends, if any are declared, and fixed as determined by the directors in accordance with law.

This policy is nonassessable and the liability of the Named Insured to the company is limited to the payment of the premium herein provided.

### Corporate Headquarters Address

*ACUITY*
2800 South Taylor Drive
PO Box 58
Sheboygan, Wisconsin 53082-0058

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991.

Includes copyrighted material of ISO Commercial Risk Services, Inc. with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991.

Includes copyrighted material of the American Association of Insurance Services with its permission.
Copyright, American Association of Insurance Services, 1984, 1985, 1986, 1987, 1988, 1989.

Includes copyrighted material of the National Council on Compensation Insurance with its permission.
Copyright, National Council on Compensation Insurance, 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991.



**ACUITY**
A Mutual Insurance Company

**BIS-PAK®**
**COVERAGE PART**

BIS-PAK DECLARATIONS

### Renewal Declarations

First Named Insured and Address:

AMERICAN AUTO GUARDIAN INC
1500 W SCHUR DR 7TH FL
ARLINGTON HEIGHTS IL 60004

Agency Name and Number:

DS&P INSURANCE SERVICES, INC.
7039

Policy Number: K21167

| Policy Period: | Effective Date: | 07-12-03 |
|---|---|---|
| | Expiration Date: | 07-12-04 |

In return for the payment of the premium and subject to all the terms of the policy, we agree to provide the insurance coverage as stated in the same.

12:01 A.M. standard time at your mailing address shown in the declarations

### COVERAGE FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART

| Form Number | Form Title | Premium |
|---|---|---|
| CB-0455 (01-97) | Business Liability Coverage - Tenants' Liability . . . . . . . . . . . . . . . . . . $ | 46.00 |
| CB-7019 (03-01) | Hired Auto and Nonowned Auto Liability . . . . . . . . . . . . . . . . . . . . . . . | 117.00 |
| CB-0006 (10-01) | Bis-Pak Business Liability and Medical Expenses Coverage Form  . . . . | |
| CB-0009 (10-96) | Bis-Pak Common Policy Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB-7016 (01-90) | Asbestos Exclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB7203 (09-01) | Bis-Pak Enhancement Endorsement . . . . . . . . . . . . . . . . . . . . . . . . . | 113.00 |
| CB-7034 (02-02) | Additional Insured - Designated Person(s) or Organization(s) . . . . . . . . | |
| CB-0417 (01-96) | Employment - Related Practices Exclusions . . . . . . . . . . . . . . . . . . . . | |
| CB-7197 (03-99) | Illinois Changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB-7202 (05-00) | Computer Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB-0002 (09-01) | Deluxe Bis-Pak Property Coverage Form . . . . . . . . . . . . . . . . . . . . . . | |
| CB-0523 (11-02) | Cap on Losses from Certified Acts of Terrorism . . . . . . . . . . . . . . . . . | 82.00 |
| IL-0985R (01-03) | Disclosure Pursuant to Terrorism Risk Insurance Act of 2002 . . . . . . . | |
| CB-0514 (01-03) | War Liability Exclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| | **Advance Endorsement Premium** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | **358.00** |

### PREMIUM SUMMARY

| | | |
|---|---|---|
| Advance Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 4,098.00 |
| Advance Endorsement Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 358.00 |
| **Total Advance Premium** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | **4,456.00** |

The Total Advance Premium shown above is based on the exposures you anticipated at the time this coverage part began. We will audit this coverage part in accordance with the Bis-Pak® Liability and Medical Expenses General Condition entitled Premium Audit - Business Liability at the close of the audit period.

CB-7000 (6-01)                    Policyholder - Original                    SO 01 07/25/03

Page 2

| | |
|---|---|
| Policy Number: | K21167 |
| Effective Date: | 07-12-03 |

## PROPERTY COVERAGES PROVIDED
Form: Deluxe

| Coverage Item | Premises Number | Building Number | Valuation Basis | Limit of Insurance | Automatic Increase Percentage |
|---|---|---|---|---|---|
| Business Personal Property | 001 | 001 | Replacement Cost | $ 250,000 | N/A |
| Deductible: $250 | | | | | |

## DESCRIPTION OF PREMISES

| Premises Number | Building Number | Construction, Occupancy and Location |
|---|---|---|
| 001 | 001 | JOISTED MASONRY OFFICE 1500 W SCHUR DR ARLINGTON HEIGHTS IL |

## MORTGAGEHOLDER NAME AND ADDRESS

NONE

## LIABILITY COVERAGES PROVIDED

| Coverage Item | Limit of Insurance |
|---|---|
| Liability and Medical Expenses (Each Occurrence) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | 2,000,000 |
| Medical Expenses (Any One Person) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5,000 |
| Tenants' Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 100,000 |
| Products-Completed Operations Aggregate Limit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4,000,000 |
| General Aggregate Limit (Other Than Products-Completed Operations) . . . . . . . . . . . . . . . . | 4,000,000 |

## SCHEDULE OF LIABILITY CLASSIFICATIONS

| Premises Number | Building Number | Classification Description | Class Code | Premium Basis[1] | Rate |
|---|---|---|---|---|---|
| 001 | 001 | Office Buildings | 61226 | 14,000 AR | 127.64 |

[1] AR = Area - Rate Applies Per 1,000 Square Feet

## OPTIONAL COVERAGES PROVIDED

CB-7000 (6-01)

SO 01 07/25/03

Page 3

| | |
|---|---|
| Policy Number: | K21167 |
| Effective Date: | 07-12-03 |

| Coverage Item | Limit of Insurance |
|---|---|
| Hired and Nonowned Auto Liability .......................................... | Same as Liability Limit |
| Employee Dishonesty ...................................................... $ | 500,000 |
| Forgery and Alteration .................................................... | 2,500 |
| Computer Coverage ....................................................... | See CB-7202 |

| Coverage Item | Premises Number | Building Number | Limit of Insurance |
|---|---|---|---|
| Business Income and Extra Expense ........................ | 001 | 001 | Actual Loss Sustained |
| Money and Securities ................................... | 001 | 001 | |
| Inside the Premises ......................................................... $ | | | 10,000 |
| Outside the Premises ...................................................... | | | 5,000 |
| Accounts Receivable .................................... | 001 | 001 | 10,000 |
| Valuable Papers ....................................... | 001 | 001 | 250,000 |

**BIS-PAK® PLAN**

Offices

**AUDIT PERIOD**

Annual

**ADDITIONAL NAMED INSUREDS**

WHO IS AN INSURED includes the following Additional Named Insureds:

NONE

**FIRST NAMED INSURED IS:**

ORGANIZATION OTHER THAN PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY

# DELUXE BIS-PAK® PROPERTY COVERAGE FORM

### Index of Policy Provisions

| | Page | | | Page |
|---|---|---|---|---|
| **PROPERTY COVERAGES** | 1-7 | | **PROPERTY OPTIONAL COVERAGES** | 13-14 |
| Covered Property | 1 | | Outdoor Signs | 13 |
| Property Not Covered | 1-2 | | Interior Glass | 13 |
| Covered Causes of Loss | 2 | | Employee Dishonesty | 13-14 |
| Limitations | 2 | | **PROPERTY DEDUCTIBLES** | 14 |
| Additional Coverages | 2-7 | | **PROPERTY GENERAL CONDITIONS** | 14-15 |
| **PROPERTY EXTENSIONS OF COVERAGE** | 7-9 | | Control of Property | 14 |
| Newly Acquired or Constructed Property | 7 | | Mortgageholders | 14-15 |
| Personal Effects and Property of Others | 7 | | No Benefit to Bailee | 15 |
| Property Off-Premises | 7 | | Policy Period, Coverage Territory | 15 |
| Property in Transit | 7 | | **PROPERTY LOSS CONDITIONS** | 15-18 |
| Outdoor Property | 7-8 | | Abandonment | 15 |
| Valuable Papers and Records — Cost of Research | 8 | | Appraisal | 15 |
| | | | Duties in the Event of Loss or Damage | 15-16 |
| Accounts Receivable | 8 | | Legal Action Against Us | 16 |
| Replacement Cost — Building | 8-9 | | Limitation — Electronic Media and Records | 16 |
| Money and Securities | 9 | | Loss Payment and Valuation | 16-18 |
| **PROPERTY EXCLUSIONS** | 9-12 | | Recovered Property | 18 |
| **PROPERTY LIMITS OF INSURANCE** | 12 | | Resumption of Operations | 18 |
| Building Limit — Automatic Increase | 12 | | Vacancy | 18 |
| Business Personal Property Limit — Seasonal Increase | 12 | | **PROPERTY DEFINITIONS** | 18 |

BIS-PAK COVERAGE FORMS

## DELUXE BIS-PAK® PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declara-

tions. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in italics have special meaning. Refer to the Property Definitions Section.

## PROPERTY COVERAGES

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Form, means the type of property as described in this Section, 1, and limited in 2, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Buildings,** meaning the buildings and structures at the premises described in the Declarations, including:

(1) Completed additions;

(2) Garages, storage buildings, appurtenant structures usual to your occupancy;

(3) Fixtures, including outdoor fixtures;

(4) Permanently installed:

(a) Machinery; and

(b) Equipment;

(5) Your personal property in apartments or rooms furnished by you as landlord;

(6) Personal property owned by you that is used to maintain or service the buildings, structures or the premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering.

(7) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the buildings or structures; and

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b. Business Personal Property** located in or on the buildings at the described premises or in the open (or in a vehicle) within 100

feet of the described premises, including:

(1) Property you own that is used in your business;

(2) Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment and Valuation Property Loss Condition 6g(3)(b);

(3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove; and

(4) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under paragraph 1b(2).

### 2. Property Not Covered

Covered Property does not include:

**a.** Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

**b.** *Money* or *securities,* except as provided in the:

(1) Money and Securities Coverage Extension; or

(2) Employee Dishonesty Optional Coverage.

**c.** Contraband or property in the course of illegal transportation or trade;

**d.** Land (including land on which the property is located), water, growing crops or lawns;

**e.** Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than *stock* of trees, shrubs or plants), all except as provided in the:

(1) Outdoor Property Coverage Extension; or

(2) Outdoor Signs Optional Coverage.

f. Watercraft (including motors, equipment and accessories) while afloat.

### 3. Covered Causes of Loss

Risks of Direct Physical Loss unless the loss is:

**a.** Excluded in Property Exclusions; or

**b.** Limited in paragraph 4, Limitations;

that follow.

### 4. Limitations

**a.** We will not pay for loss of or damage to:

(1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

(2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

(3) Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory. This limitation does not apply to the Extension of Coverage for Money and Securities.

(4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

(5) Gutters and downspouts caused by or resulting from weight of snow, ice or sleet.

(6) Building materials and supplies not attached to the building or structure caused by or resulting from theft.

(7) The interior of any building or structure or the property inside any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which rain, snow, sleet, ice, sand or dust enters; or

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**b.** With respect to glass (other than glass

building blocks) that is part of the interior of a building or structure, or part of an outdoor sign, we will not pay more than $500 for the total of all loss or damage in any one occurrence. Subject to the $500 limit on all loss or damage, we will not pay more than $100 for each plate, pane, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter. This Limitation does not apply to loss or damage by the *specified causes of loss,* except vandalism.

**c.** We will not pay for loss of or damage to fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken, unless caused by the *specified causes of loss* or building glass breakage. This restriction does not apply to:

(1) Glass that is part of the interior of a building or structure;

(2) Containers of property held for sale; or

(3) Photographic or scientific instrument lenses.

**d.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

### 5. Additional Coverages

#### a. Debris Removal

(1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(a) The date of direct physical loss or damage; or

(b) The end of the policy period.

(2) The most we will pay under this Additional Coverage is 25% of:

(a) The amount we pay for the direct physical loss of or damage to Covered Property; plus

(b) The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any

additional debris removal limit provided in paragraph (4) below.

(3) This Additional Coverage does not apply to costs to:

   (a) Extract *pollutants* from land or water; or

   (b) Remove, restore or replace polluted land or water.

(4) If:

   (a) The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

   (b) The debris removal expense exceeds the amount payable under the 25% Debris Removal coverage limitation in paragraph (2) above;

we will pay up to an additional $10,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

### b. Pollutant Clean Up and Removal

We will pay your expense to extract *pollutants* from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the *pollutants* is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us within 180 days of the earlier of:

(1) The date of direct physical loss or damage; or

(2) The end of the policy period.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy. This limit is in addition to the Limits of Insurance.

### c. Preservation of Property

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 30 days after the property is first moved.

We will not pay for any loss or damage under this Additional Coverage if the Covered Property was moved from the described premises to preserve it from loss or

damage by a cause of loss that is not a Covered Cause of Loss.

### d. Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

### e. Collapse

(1) We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this policy, if the collapse is caused by one or more of the following:

   (a) The *specified cause of loss* or breakage of building glass, all only as insured against in this policy;

   (b) Hidden decay;

   (c) Hidden insect or vermin damage;

   (d) Weight of people or personal property;

   (e) Weight of rain that collects on a roof; or

   (f) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in e(1)(a) through e(1)(e), we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse.

(2) If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

   (a) The personal property which collapses is inside a building insured under this policy; and

   (b) The collapse was caused by a cause of loss listed in e(1)(a) through e(1)(f) above.

(3) With respect to the following property:

   (a) Awnings;

(b) Gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Piers, wharves and docks;

(f) Beach or diving platforms or appurtenances;

(g) Retaining walls; and

(h) Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in e(1)(b) through e(1)(f), we will pay for loss or damage to that property only if such loss or damage is a direct result of the collapse of a building insured under this policy and the property is Covered Property under this policy.

(4) Collapse does not include settling, cracking, shrinkage, bulging or expansion.

### f. Water, Other Liquids, Powder or Molten Material Damage

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts or fire extinguishing equipment if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or

(2) Is directly caused by freezing.

### g. Business Income and Extra Expense

(1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your *operations* during the *period of restoration.* The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(2) Business income means the:

(a) Net income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(b) Continuing normal operating expenses incurred, including payroll.

(3) We will pay necessary Extra Expense you incur during the *period of restoration* that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(4) Extra Expense means expense incurred:

(a) To avoid or minimize the suspension of business and to continue *operations:*

(i) At the described premises; or

(ii) At replacement premises or at temporary locations, including

relocation expenses, and costs to equip and operate the replacement or temporary locations.

(b) To minimize the suspension of business if you cannot continue *operations*.

(c) To:

    (i) Repair or replace any property; or

    (ii) Research, replace or restore the lost information on damaged *valuable papers and records*;

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage.

(5) We will only pay for Loss of Business Income or Extra Expense that you sustain during the *period of restoration* and that occurs within 12 consecutive months after the date of direct physical loss or damage. Items (1) through (5) of this Additional Coverage are not subject to the Limits of Insurance.

(6) Extended Business Income. If the necessary suspension of your *operations* produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    (a) Begins on the date property, except finished stock, is actually repaired, rebuilt or replaced and *operations* are resumed; and

    (b) Ends on the earlier of:

        (i) The date you could restore your *operations,* with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

        (ii) 30 consecutive days after the date determined in (a) above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

This Additional Coverage is not subject to the Limits of Insurance.

h. **Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 24 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for necessary Extra Expense will begin immediately after the time of that action and ends:

(1) Three consecutive weeks after the time of that action; or

(2) When your Business Income coverage ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverage also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance.

i. **Money Orders and Counterfeit Paper Currency**

We will pay for loss due to the good faith acceptance of:

(1) Any U.S. or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

(2) Counterfeit United States or Canadian paper currency;

in exchange for merchandise, *money* or services or as part of a normal business transaction.

The most we will pay for any loss under this Additional Coverage is $1,000.

j. **Forgery and Alteration**

(1) We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in *money,* that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

(2) If you are sued for refusing to pay the check, draft, promissory note, bill of ex-

change or similar written promise of payment in *money*, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

(3) The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit of Insurance is shown in the Declarations.

## k. Increased Cost of Construction

(1) This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in k(3) through k(9) of this Additional Coverage.

(3) The ordinance or law referred to in k(2) of this Additional Coverage is an ordinance or law that regulated the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You are required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of *pollutants*.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form is $5,000.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment and Valuation Property Loss Condition in this Coverage Form do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in k(6) of this Additional Coverage, is not subject to such limitation.

## l. Exterior Building Glass

(1) We will pay for direct physical loss of or damage to glass, including lettering or ornamentation, that is part of the exterior of a covered building or structure at the described premises. The glass must be owned by you, or owned by others but in your care, custody or control. We will also pay for necessary:

(a) Expenses incurred to put up temporary plates or board up openings;

(b) Repair or replacement of encasing frames; and

(c) Expenses incurred to remove or replace obstructions.

(2) Paragraph 3 of Property Coverages and Property Exclusions do not apply to this Additional Coverage except for:

(a) 1b, Earth Movement;

(b) 1c, Governmental Action;

(c) 1d, Nuclear Hazard;

(d) 1f, War and Military Action; and

(e) 1g, Water.

(3) We will not pay for loss or damage caused by or resulting from:

(a) Wear and tear;

(b) Hidden or latent defect;

(c) Corrosion; or

(d) Rust.

(4) The most we pay under this Additional Coverage is the Building Limit of Insurance shown in the Declarations.

However, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property, the most we will pay under this Additional Coverage is the Tenant's Exterior Building Glass Limit of Insurance shown in the Declarations.

## PROPERTY EXTENSIONS OF COVERAGE

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

1. **Newly Acquired or Constructed Property**

   a. You may extend the insurance that applies to Buildings to apply to:

      (1) Your new buildings or new additions, while being built on the described premises; and

      (2) Buildings you acquire at locations, other than the described premises, intended for:

         (a) Similar use as the building described in the Declarations; or

         (b) Use as a warehouse.

      The most we will pay for loss or damage under this extension is $500,000 for each building.

   b. You may extend the insurance that applies to Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

      The most we will pay for loss or damage under this extension is $100,000.

   c. Insurance under this extension for each newly acquired or constructed property will end when any of the following first occurs:

      (1) This policy expires;

      (2) Thirty days expire after you acquire or begin to construct the property; or

      (3) You report values to us.

      We will charge you additional premium for values reported from the date construction begins or you acquire the property.

2. **Personal Effects and Property of Others**

   a. You may extend the insurance that applies to Business Personal Property to apply to:

      (1) Your personal effects meaning personal property owned by you, your officers, your partners or your employees. This extension does not apply to loss or damage by theft or to tools or equipment used in your business.

      (2) Personal property in your care, custody or control belonging to other than you, your officers, your partners or your employees.

   b. The most we will pay for loss or damage under this extension is $5,000 at each described premises. Our payment for loss or damage to personal property of others will only be for the account of the owner of the property.

3. **Property Off-Premises**

   a. You may extend the insurance that applies to Business Personal Property to apply to covered Business Personal Property, other than *money* and *securities, valuable papers and records* or accounts receivable, while it is in the course of transit or temporarily at a premises you do not own, lease or operate. This extension does not apply to Covered Property in or on a vehicle.

   b. The most we will pay for loss or damage under this extension is $5,000. If you insure both Building and Business Personal Property, the most we will pay for loss or damage under this extension is $10,000.

4. **Property in Transit**

   You may extend the insurance that applies to Business Personal Property to apply to your personal property in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   The most we will pay for loss or damage under this extension is $5,000.

5. **Outdoor Property**

   a. You may extend the insurance provided by this Coverage Form to apply to your out-

door fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other then *stock* of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

**b.** The most we will pay for loss or damage under this Extension is $5,000, but not more than $500 for any one tree, shrub or plant.

## 6. Valuable Papers and Records — Cost of Research

**a.** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to *valuable papers and records* that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research lost information on *valuable papers and records* for which duplicates do not exist.

**b.** This Coverage Extension does not apply to:

(1) Property held as samples or for delivery after sale; or

(2) Property in storage away from the premises shown in the Declarations.

**c.** The most we will pay under this Coverage Extension for loss or damage to *valuable papers and records* in any one occurrence at the described premises is $10,000 unless a higher Limit of Insurance for *Valuable Papers and Records* is shown in the Declarations.

For *valuable papers and records* not at the described premises, the most we will pay is $5,000.

**d.** Property Exclusions does not apply to this Coverage Extension except for:

(1) 1c, Governmental Action;

(2) 1d, Nuclear Hazard;

(3) 1f, War and Military Action; and

(4) 2f, Dishonesty;

(5) 2g, False Pretense;

(6) 3; and

(7) The Accounts Receivable and Valuable Papers and Records Exclusions.

## 7. Accounts Receivable

**a.** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

(1) All amounts due from your customers that you are unable to collect;

(2) Interest charges on any loan required to offset amounts you are unable to collect pending our payments of these amounts;

(3) Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

(4) Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**b.** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for Accounts Receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

**c.** Property Exclusions does not apply to this Coverage Extension except for:

(1) 1c, Governmental Action;

(2) 1d, Nuclear Hazard;

(3) 1f, War and Military Action;

(4) 2f, Dishonesty;

(5) 2g, False Pretense;

(6) 3; and

(7) The Accounts Receivable and Valuable Papers and Records Exclusions.

## 8. Replacement Cost — Building

If the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement, without deduction for depreciation. This provision does not apply to the following, even when attached to the building:

**a.** Floor coverings, cloth awnings;

**b.** Air conditioners, ventilation equipment; or

**c.** Domestic appliances, outdoor equipment or furniture.

We will not be liable under this Extension of Coverage:

a. Unless and until the damaged property is actually repaired or replaced on the same premises with due diligence and dispatch and, in no event, unless repair or replacement is completed within a reasonable time after such loss; and

b. If Replacement Cost is indicated in the Declarations as being the basis for valuation of property.

**9. Money and Securities**

a. We will pay for loss of *money* and *securities* used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises or in transit between any of these places, resulting directly from:

(1) Theft, meaning any act of stealing;

(2) Disappearance; or

(3) Destruction.

b. In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

(1) Resulting from accounting or arithmetical errors or omissions;

(2) Due to the giving or surrendering of property in any exchange or purchase; or

(3) Of property contained in any *money*-operated device unless the amount of *money* deposited in it is recorded by a continuous recording instrument in the device.

c. The most we will pay for loss in any one occurrence is:

(1) The limit shown in the Declarations for Inside the Premises for *money* and *securities* while:

(a) In or on the described premises; or

(b) Within a bank or savings institution; and

(2) The limit shown in the Declarations for Outside the Premises for *money* and *securities* while anywhere else.

d. All loss:

(1) Caused by one or more persons; or

(2) Involving a single act or series of related acts;

is considered one occurrence.

e. You must keep records of all *money* and *securities* so we can verify the amount of any loss or damage.

## PROPERTY EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

a. **Ordinance or Law**

The enforcement of any ordinance or law:

(1) Regulating the construction, use or repair of any property; or

(2) Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance or Law, applies whether the loss results from:

(1) An ordinance or law that is enforced even if the property has not been damaged; or

(2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

b. **Earth Movement**

(1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But, if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(2) Volcanic eruption, explosion or effusion. But, if volcanic eruption, explosion or effusion results in fire or volcanic action, we will pay for the loss or damage caused by that fire or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust, or particulate matter; or

(c) Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost

to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

## c. Governmental Action

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

## d. Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination, however caused.

But, if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the loss or damage caused by that fire.

## e. Power Failure

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But, if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

## f. War and Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## g. Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up, or overflows from a sewer, drain or sump; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But, if water, as described in g(1) through (4),

results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

2. We will not pay for loss or damage caused by or resulting from any of the following:

## a. Electrical Apparatus

Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But, if artificially generated electrical current results in fire, we will pay for the loss or damage caused by fire.

## b. Consequential Losses

Delay, loss of use or loss of market.

## c. Smoke, Vapor, Gas

Smoke, vapor or gas from agricultural smudging or industrial operations.

## d. Steam Apparatus

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.

But, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

## e. Frozen Plumbing

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

## f. Dishonesty

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and *valuable papers and records,* this exclusion does not apply to carriers for hire.

### g. False Pretense

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

### h. Exposed Property

Rain, snow, ice or sleet to personal property in the open.

### i. Collapse

Collapse, except as provided in the Additional Coverage for Collapse. But, if collapse results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

### j. Pollution

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of *pollutants* unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the *specified causes of loss.* But, if the discharge, dispersal, seepage, migration, release or escape of *pollutants* results in a *specified cause of loss,* we will pay for the loss or damage caused by that *specified cause of loss.*

### k. Other Types of Loss

(1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force; or

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But, if an excluded cause of loss that is listed in 2k(1) through (7) results in a *specified cause of loss,* or building glass breakage, we will pay for the loss or damage caused by that *specified cause of loss* or building glass breakage.

3. We will not pay for loss or damage caused by or resulting from any of the following 3a through c. But if an excluded cause of loss that is listed in 3a through c results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

### a. Weather Conditions

But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1 above to produce the loss or damage.

### b. Acts or Decisions

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

### c. Negligent Work

Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

### 4. Business Income and Extra Expense Exclusions

We will not pay for:

a. Any Extra Expense or increase of Business Income loss, caused by or resulting from:

(1) Delay in rebuilding, repairing or replacing the property or resuming *operations,* due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of *operations,* we will cover such loss that affects your Business Income during the *period of restoration.*

b. Any other consequential loss.

5. **Accounts Receivable and Valuable Papers Exclusions**

The following additional exclusions apply to the Accounts Receivable and Valuable Papers Coverage Extensions:

a. We will not pay for loss or damage caused by or resulting from electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

(1) Programming errors or faulty machine instructions; or

(2) Faulty installation or maintenance of data processing equipment or component parts;

but we will pay for direct loss or damage caused by lightning.

b. Applicable to *Valuable Papers and Records* only:

We will not pay for loss or damage caused by or resulting from any of the following:

(1) Errors or omissions in processing or copying. But if errors or omissions in processing or copying results in fire or explosion, we will pay for direct loss or damage caused by that fire or explosion; or

(2) Wear and tear, gradual deterioration or latent defect.

c. Applicable to Accounts Receivable only:

We will not pay for:

(1) Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, *securities* or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

(2) Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

(3) Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

## PROPERTY LIMITS OF INSURANCE

1. The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

3. The limits applicable to the Coverage Extensions and the Fire Department Service Charge Additional Coverage are in addition to the Limits of Insurance.

4. **Building Limit — Automatic Increase**

a. The Limit of Insurance for Buildings will automatically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

(1) The Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Building limit, divided by 365.

Example:

If:

| | |
|---|---|
| The applicable Building limit is | $100,000 |
| The annual percentage increase is | 8% |
| The number of days since the beginning of the policy year (or last policy change) is | 180 |

The amount of increase is
$100,000 x .08 x 180 ÷ 365 = $3,945

5. **Business Personal Property Limit — Seasonal Increase**

a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

b. This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

(1) The 12 months immediately preceding the date the loss or damage occurs; or

(2) The period of time you have been in business as of the date the loss or damage occurs.

## PROPERTY OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

1. **Outdoor Signs**

   a. We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

      (1) Owned by you; or

      (2) Owned by others but in your care, custody or control.

   b. Paragraph 3, Covered Causes of Loss, under the Property Coverages Section, and the Property Exclusions Section do not apply to this Optional Coverage, except for the following Property Exclusions:

      (1) Paragraph 1c, Governmental Action;

      (2) Paragraph 1d, Nuclear Hazard; and

      (3) Paragraph 1f, War and Military Action.

   c. We will not pay for loss or damage caused by or resulting from:

      (1) Wear and tear;

      (2) Hidden or latent defect;

      (3) Rust;

      (4) Corrosion; or

      (5) Mechanical breakdown.

   d. The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

   e. The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

2. **Interior Glass**

   a. We will pay for direct physical loss of or damage to items of glass that are permanently affixed to the interior walls, floors or ceilings of a covered building or structure at the described premises, provided each item is:

      (1) Described in the Declarations as covered under this Optional Coverage;

      (2) Located in the basement or ground floor level of the building or structure, unless the Declarations show that this Optional Coverage is applicable to interior glass at all floors; and

      (3) Owned by you, or owned by others but in your care, custody or control.

   b. We will also pay for necessary:

      (1) Expenses incurred to put up temporary plates or board up openings;

      (2) Repair or replacement of encasing frames; and

      (3) Expenses incurred to remove or replace obstructions.

   c. Paragraph 3, Covered Causes of Loss, under the Property Coverages Section, and the Property Exclusions Section do not apply to this Optional Coverage, except for the following Property Exclusions:

      (1) Paragraph 1c, Governmental Action;

      (2) Paragraph 1d, Nuclear Hazard; and

      (3) Paragraph 1f, War and Military Action.

   d. We will not pay for loss or damage caused by or resulting from:

      (1) Wear and tear;

      (2) Hidden or latent defect;

      (3) Corrosion; or

      (4) Rust.

   e. With respect to this Optional Coverage, all limitations elsewhere in this policy that apply to interior glass are eliminated.

3. **Employee Dishonesty**

   a. We will pay for direct loss of or damage to Business Personal Property, including *money* and *securities*, resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

      (1) Cause you to sustain loss or damage; and also

      (2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

         (a) Any employee; or

         (b) Any other person or organization.

   b. We will not pay for loss or damage:

      (1) Resulting from any dishonest or criminal act that you or any of your partners commit whether acting alone or in collusion with other persons.

      (2) The only proof of which as to its existence or amount is:

         (a) An inventory computation; or

         (b) A profit and loss computation.

   c. The most we will pay for loss or damage in

any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

d. All loss or damage:

(1) Caused by one or more persons; or

(2) Involving a single act or series of related acts;

is considered one occurrence.

e. We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

f. This Optional Coverage does not apply to any employee immediately upon discovery by:

(1) You; or

(2) Any of your partners, officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

g. We will pay only for covered loss or damage discovered no later than one year from

the end of the Policy Period.

h. If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

(1) This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

(2) The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

i. The insurance under paragraph h above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

(1) This Optional Coverage as of its effective date; or

(2) The prior insurance had it remained in effect.

## PROPERTY DEDUCTIBLES

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

In the event that loss or damage occurs to Covered Property at one or more building locations as a result of one occurrence, the largest applicable deductible shown in the Declarations will apply.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under the Outdoor Signs Optional Coverage in any one occurrence is $250.

But this $250 deductible will not increase the

deductible shown in the Declarations. This deductible will be used to satisfy the requirements of the deductible in the Declarations.

3. No deductible applies to the following Additional Coverages, Extensions of Coverage or Optional Coverages:

a. Fire Department Service Charge;

b. Business Income and Extra Expense;

c. Civil Authority;

d. Exterior Glass;

e. Employee Dishonesty;

f. Money and Securities;

g. Interior Glass.

## PROPERTY GENERAL CONDITIONS

1. **Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

2. **Mortgageholders**

a. The term "mortgageholder" includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive

loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this policy at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) Ten days before the effective date of cancellation if we cancel for your non-payment of premium; or

(2) Thirty days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

### 3. No Benefit to Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

### 4. Policy Period, Coverage Territory

Under this form:

a. We cover loss or damage commencing:

(1) During the policy period shown in the Declarations; and

(2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

b. The coverage territory is:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

## PROPERTY LOSS CONDITIONS

### 1. Abandonment

There can be no abandonment of any property to us.

### 2. Appraisal

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### 3. Duties in the Event of Loss or Damage

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage

and keep a record of your expenses reasonably incurred to protect the Covered Property. We will consider these expenses in the settlement of a claim, but this will not increase the applicable Limit of Insurance. However, we will not consider any expenses incurred in order to protect the Covered Property from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) Resume all or part of your *operations* as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

## 4. Legal Action Against Us

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within two years after the date on which the direct physical loss or damage occurred.

## 5. Limitation — Electronic Media and Records

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

a. Sixty consecutive days from the date of direct physical loss or damage; or

b. The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

a. Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

b. Data stored on such media; or

c. Programming records used for electronic data processing or electronically controlled equipment.

Example Number 1:

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period of June 1 through September 1. Loss during the period of September 2 through October 1 is not covered.

Example Number 2:

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period of August 1 through September 29 (60 consecutive days). Loss during the period of September 30 through October 15 is not covered.

## 6. Loss Payment and Valuation

In the event of loss or damage covered by this Coverage Form:

a. At our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality subject to g1e below.

b. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

c. We will not pay you more than your financial interest in the Covered Property.

d. Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or

damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

e. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

f. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy and we have reached agreement with you on the amount of loss or an appraisal award has been made.

g. Except as provided in (2) through (7) below, we will determine the value of Covered Property as follows:

(1) At replacement cost without deduction for depreciation, if Replacement Cost is indicated in the Declarations as the basis for valuation of the Covered Property.

(a) You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(b) We will not pay on a replacement cost basis for any loss or damage:

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

(c) We will not pay more for loss or damage on a replacement cost basis than the least of:

(i) The cost to replace, on the same premises, the lost or damaged property with other property that is of comparable material and quality and is used for the same purpose.

(ii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

(iii) The limit shown in the Dec-

larations for the Covered Property.

(2) At actual cash value, if Actual Cash Value is indicated in the Declarations as the basis for valuation of the Covered Property. We will never pay more than the applicable limit shown in the Declarations.

(3) The following property at actual cash value:

(a) Used or second-hand merchandise held in storage or for sale;

(b) Property of others, but this property is not covered for more than the amount for which you are liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others;

(c) Household contents, except personal property in apartments or rooms furnished by you as landlord;

(d) Manuscripts;

(e) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) Valuable papers and records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

(a) Blank materials for reproducing the records; and

(b) Labor to transcribe or copy the records.

This condition does not apply to valuable papers and records that are actually replaced or restored.

(6) Money at its face value.

(7) Securities at their value at the close of business on the day the loss is discovered.

(8) Applicable only to Accounts Receivable:

(a) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

(i) We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

(ii) We will adjust that total for

any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

(b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

(i) The amount of the accounts for which there is no loss or damage;

(ii) The amount of the accounts that you are able to re-establish or collect;

(iii) An amount to allow for probable bad debts that you are normally unable to collect; and

(iv) All unearned interest and service charges.

## 7. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

## 8. Resumption of Operations

We will reduce the amount of your:

a. Business Income loss, other than Extra Expense, to the extent you can resume your *operations*, in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

b. Extra Expense loss to the extent you can return *operations* to normal and discontinue such Extra Expense.

## 9. Vacancy

### a. Description of Terms

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (a) and (b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:

(i) Is not rented; or

(ii) Is not used to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

### b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in (1)(a) and (1)(b) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

## PROPERTY DEFINITIONS

1. *"Money"* means:

a. Currency, coins and bank notes in current use and having a face value; and

b. Travelers checks, register checks and money orders held for sale to the public.

2. *"Operations"* mean your business activities occurring at the described premises.

3. *"Period of restoration"* means the period of time that:

a. Begins:

(1) 24 hours after time of direct physical loss or damage for Business Income coverage; or

(2) Immediately after the time of direct physical loss or damage for Extra Ex-

pense coverage;

Caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

*Period of restoration* does not include any increased period required due to the enforcement of any ordinance or law that:

**a.** Regulates the construction, use or repair, or requires the tearing down of any property; or

**b.** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of *pollutants.*

The expiration date of this policy will not cut short the *period of restoration.*

**4.** *"Pollutants"* mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** *"Securities"* means negotiable and nonnegotiable instruments or contracts representing either *money* or other property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include *money.*

**6.** *"Specified causes of loss"* means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action;

falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

(1) The cost of filling sinkholes; or

(2) Sinking or collapse of land into manmade underground cavities.

**b.** Falling objects does not include loss of or damage to:

(1) Personal Property in the open; or

(2) The interior of a building or structure or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**7.** *"Stock"* means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**8.** *"Valuable papers and records"* means inscribed, printed, or written:

**a.** Documents;

**b.** Manuscripts; and

**c.** Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

But *valuable papers and records* does not mean:

**a.** *Money or securities;*

**b.** Converted data; or

**c.** Programs or instructions used in your data processing operations, including the materials on which the data is recorded.

## BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

### Index of Policy Provisions

Page

LIABILITY AND MEDICAL EXPENSES COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2
EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-8
WHO IS AN INSURED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9
LIABILITY AND MEDICAL EXPENSES LIMITS OF
INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
LIABILITY AND MEDICAL EXPENSES GENERAL
CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
LIABILITY AND MEDICAL EXPENSES
DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

## BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under the Who Is an Insured Section of this policy.

Other words and phrases that appear in italics have special meaning. Refer to the Liability and Medical Expenses Definitions Section.

## LIABILITY AND MEDICAL EXPENSES COVERAGES

### 1. Business Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury, property damage, personal injury* or *advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury, property damage, personal injury* or *advertising injury* to which this insurance does not apply. We may at our discretion investigate any *occurrence* or *offense* and settle any claim or *suit* that may result. But:

(1) The amount we will pay for damages is limited as described in the Liability and Medical Expenses Limits of Insurance Section; and

(2) Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension — Supplementary Payments.

b. This insurance applies:

(1) To *bodily injury* or *property damage* only if:

(a) The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the *coverage territory*; and

(b) The *bodily injury* or *property damage* occurs during the policy period.

(2) To:

(a) *Personal injury* caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you; and

(b) *Advertising injury* caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the *coverage territory* during the policy period.

c. Damages because of *bodily injury* include damages claimed by any person or organization for care, loss of services or death resulting at any time from the *bodily injury.*

d. **Coverage Extension — Supplementary Payments**

In addition to the Limit of Insurance, we will pay, with respect to any claim we investigate or settle, or any *suit* against an insured we defend:

(1) All expenses we incur.

(2) Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for *bodily injury* applies. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

(4) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or *suit*, including actual loss of earnings up to $250 a day because of time off from work.

(5) All costs taxed against the insured in the *suit.*

(6) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(7) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the

part of the judgment that is within our Limit of Insurance.

If we defend an insured against a *suit* and an indemnitee of the insured is also named as a party to the *suit*, we will defend that indemnitee if all of the following conditions are met:

(1) The *suit* against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an *insured contract;*

(2) This insurance applies to such liability assumed by the insured;

(3) The obligation to defend, or the cost of the defense of, that indemnitee has also been assumed by the insured in the same *insured contract;*

(4) The allegations in the *suit* and the information we know about the *occurrence* are such that no conflict appears to exist between the interests of the insured and the interest of the indemnitee;

(5) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such *suit* and agree that we can assign the same counsel to defend the insured and the indemnitee; and

(6) The indemnitee:

  (a) Agrees in writing to:

    (i) Cooperate with us in the investigation, settlement or defense of the *suit;*

    (ii) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the *suit;*

    (iii) Notify any other insurer whose coverage is available to the indemnitee; and

    (iv) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  (b) Provides us with written authorization to:

    (i) Obtain records and other information related to the *suit;* and

    (ii) Conduct and control the defense of the indemnitee in such *suit.*

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 1b(2) of Exclusions, such payments will not be deemed to be damages for *bodily injury* and *property damage* and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

(1) We have used up the applicable limit of insurance in the payment of judgments or settlements; or

(2) The conditions set forth above, or the terms of the agreement described in paragraph (6) above, are no longer met.

**2. Medical Expenses**

  **a.** We will pay medical expenses as described below for *bodily injury* caused by an accident:

    (1) On premises you own or rent;

    (2) On ways next to premises you own or rent; or

    (3) Because of your operations;

    provided that:

    (1) The accident takes place in the *coverage territory* and during the policy period;

    (2) The expenses are incurred and reported to us within one year of the date of the accident; and

    (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

  **b.** We will make these payments regardless of fault. These payments will not exceed the Limit of Insurance. We will pay reasonable expenses for:

    (1) First aid at the time of an accident;

    (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    (3) Necessary ambulance, hospital, professional nursing and funeral services.

## EXCLUSIONS

### 1. Applicable to Business Liability Coverage

This Insurance does not apply to:

**a.** Expected or Intended Injury

*Bodily injury* or *property damage* expected or intended from the standpoint of the insured. This exclusion does not apply to *bodily injury* resulting from the use of reasonable force to protect persons or property.

**b.** Contractual Liability

*Bodily injury* or *property damage* for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an *insured contract*, provided the *bodily injury* or *property damage* occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an *insured contract,* reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of *bodily injury* or *property damage,* provided:

   (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same *insured contract;* and

   (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.** Liquor Liability

*Bodily injury* or *property damage* for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing of alcoholic beverages.

**d.** Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.** Employers' Liability

*Bodily injury* to:

(1) An employee of the insured arising out of and in the course of:

   (a) Employment by the insured; or

   (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an *insured contract.*

**f.** Pollution

(1) *Bodily injury* or *property damage* arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

   (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

   However, subparagraph (a) does not apply to *bodily injury* if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

   (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   (d) At or from any premises, site or

location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to *bodily injury* or *property damage* arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of *mobile equipment* or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs (a) and (d)(i) do not apply to *bodily injury* or *property damage* arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or *suit* by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing,

or in any way responding to, or assessing the effects of pollutants.

(3) Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. Aircraft, Auto or Watercraft

*Bodily injury* or *property damage* arising out of the ownership, maintenance, use or entrustment to others of any aircraft, *auto* or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and *loading or unloading*.

This exclusion does not apply to:

(1) Watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 50 feet long; and

(b) Not being used to carry persons or property for a charge.

(3) Parking an *auto* on, or on the ways next to premises you own or rent, provided the *auto* is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any *insured contract* for the ownership, maintenance or use of aircraft or watercraft; or

(5) *Bodily injury* or *property damage* arising out of the operation of any of the following equipment:

(a) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(b) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

h. Mobile Equipment

*Bodily injury* or *property damage* arising out of:

(1) The transportation of *mobile equipment* by an *auto* owned or operated by or rented or loaned to any insured; or

(2) The use of *mobile equipment* in, or while in practice for, or while being prepared for, any prearranged racing, speed or stunting activity.

i. War

*Bodily injury* or *property damage* due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

This exclusion applies only to liability assumed under a contract or agreement.

j. Professional Services

*Bodily injury, property damage, personal injury* or *advertising injury* due to rendering or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting, advertising, counseling, consulting services or funeral home services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

(5) Any health or theraputic service, treatment, advice or instruction including but not limited to physiotherapy, massage, chiropody, or the operation or use of suntanning booths or equipment;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of opthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services, barber and beauty shops;

(9) Services in the practice of pharmacy, but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

(10) Services in connection with the selling, licensing, franchising or furnishing of your computer software including electronic data processing programs, designs, specifications, manuals and instructions.

(11) Data processing services rendered by, or that should have been rendered by:

(a) The insured; or

(b) Any person or organization:

(i) For whose acts, errors or omissions the insured is legally responsible; or

(ii) From whom the insured assumed liability by reason of a contract or agreement.

(12) The rendering of, or failure to render, electronic data processing, computer consulting or computer programming services, advice or instruction by:

(a) The insured; or

(b) Any person or organization:

(i) For whose acts, errors or omissions the insured is legally responsible; or

(ii) From whom the insured assumed liability by reason of a contract or agreement.

k. Damage to Property

*Property damage* to:

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the *property damage* arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of any insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the *property damage* arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because *your work* was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are *your work* and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to *property damage* included in the *products-completed operations hazard.*

l. Damage to Your Product

*Property damage* to *your product* arising out of it or any part of it.

m. Damage to Your Work

*Property damage* to *your work* arising out of it or any part of it and included in the *products-completed operations hazard.*

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n. Damage to Impaired Property or Property Not Physically Injured

*Property damage* to *impaired property* or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in *your product* or *your work;* or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to *your product* or *your work* after it has been put to its intended use.

o. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) *Your product;*

(2) *Your work;* or

(3) *Impaired property;*

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

p. Personal or Advertising Injury

*Personal injury* or *advertising injury:*

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(6) With respect to any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way responding to, or assessing the effects of pollutants.

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

q. Advertising Injury

*Advertising injury* arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

r. Suntanning Operations

*Bodily injury, personal injury* or *property damage* arising out of the ownership, operation or use of any suntanning booth or suntanning device.

s. Lead

*Bodily injury, property damage, personal injury* or *advertising injury* arising out of the actual, alleged or threatened ingestion, inhalation, absorption, exposure or presence of lead in any form or from any source.

Coverage also does not apply to any loss, cost, expense, fine or penalty arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, dispose of or in any way respond to or assess the effects of lead in any form; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, disposing of or

in any way responding to or assessing the effects of lead in any form.

Exclusions c, d, e, f, g, h, i, k, l, m, n and o do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in the Limits of Insurance Section of this Coverage Form.

## 2. Applicable to Medical Expenses Coverage

We will not pay expenses for *bodily injury:*

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an *employee* of any insured, if benefits for the *bodily injury* are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the *products-completed operations hazard.*

g. Excluded under Business Liability Coverage.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## 3. Applicable to Both Business Liability Coverage and Medical Expenses Coverage — Nuclear Energy Liability Exclusion

This insurance does not apply:

a. Under Business Liability Coverage, to *bodily injury* or *property damage:*

(1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its Limit of Liability; or

(2) Resulting from the *hazardous properties* of *nuclear material* and with respect to which:

(a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

b. Under Medical Expenses Coverage, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

c. Under Business Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of *nuclear material*, if:

(1) The *nuclear material:*

(a) Is at any *nuclear facility* owned by or operated by or on behalf of an insured; or

(b) Has been discharged or dispersed therefrom;

(2) The *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(3) The *bodily injury* or *property damage* arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear facility*, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

d. As used in this exclusion:

*"Byproduct material"* has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

*"Hazardous properties"* include radioactive, toxic or explosive properties;

*"Nuclear facility"* means:

(1) Any *nuclear reactor;*

(2) Any equipment or device designed or used for:

(a) Separating the isotopes of uranium or plutonium;

(b) Processing or utilizing *spent fuel;* or

(c) Handling, processing or packaging *waste;*

(3) Any equipment or device used for the

processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of *waste;*

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"*Nuclear material*" means *source material, special nuclear material* or *byproduct material;*

"*Nuclear reactor*" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"*Property damage*" includes all forms of radioactive contamination of property;

"*Source material*" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"*Special nuclear material*" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"*Spent fuel*" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor;*

"*Waste*" means any waste material:

(1) Containing *byproduct material* other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its *source material* content; and

(2) Resulting from the operation by any person or organization of any *nuclear facility* included under paragraphs (1) and (2) of the definition of *nuclear facility.*

## WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your *executive officers* and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your *employees* other than either your *executive officers* (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but

only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these *employees* is an insured for:

(1) *Bodily injury* or *personal injury:*

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) or to a co-*employee* while that co-*employee* is either in the course of his or her employment or performing duties related to the conduct of your business;

   (b) To the spouse, child, parent, brother or sister of that co-*employee* as a consequence of paragraph (1)(a) above;

   (c) For which there is any obligation to share damages with or repay someone else who must pay damages of the injury described in paragraphs (1)(a) or (b); or

   (d) Arising out of his or her providing or failing to provide professional health care services. However, if you have *employees* who are pharmacists in your retail druggist or drugstore operation, they are insured with respect to their providing

or failing to provide professional health care services; or

(2) *Property damage* to property:

    (a) Owned, occupied or used by; or

    (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your *employees*, any partner or member (if you are a partnership or joint venture) or any member (if you are a limited liability company).

b. Any person (other than your *employee*) or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

    (1) With respect to liability arising out of the maintenance or use of that property; and

    (2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. With respect to *mobile equipment* registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to

liability arising out of the operation of the equipment and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. *Bodily injury* to a co-*employee* of the person driving the equipment; or

b. *Property damage* to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, limited liability company or joint venture and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage does not apply to *bodily injury* or *property damage* that occurred before you acquired or formed the organization; and

c. Coverage does not apply to *personal injury* or *advertising injury* arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds:

b. Claims made or *suits* brought; or

c. Persons or organizations making claims or bringing *suits*.

2. The most we will pay for the sum of all damages because of all:

a. *Bodily injury, property damage* and medical expenses arising out of any one *occurrence;* and

b. *Personal injury* and *advertising injury* sustained by any one person or organization;

is the Liability and Medical Expenses Limit shown in the Declarations. But the most we will pay for all medical expenses because of *bodily injury* sustained by any one person is the Medi-

cal Expenses Limit shown in the Declarations.

3. The most we will pay under Business Liability Coverage for damages because of *property damage* to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire is the Fire Legal Liability Limit shown in the Declarations.

4. **Aggregate Limits**

a. The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for injury or damage under the *products-completed operations hazard* arising from all *occurrences* during the policy period.

b. The General Aggregate Limit shown in the Declarations is the most we will pay for the sum of all damages because of all:

    (1) *Bodily injury, property damage* and medical expenses arising from all *occurrences* during the policy year. This

limit applies separately to:

(a) Each location owned by or rented to you. A location is a premises involving the same or connecting lots, or a premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad; and

(b) Each of your projects away from a location owned by or rented to you; or

(2) *Personal injury* and *advertising injury*

arising out of all offenses committed during the policy period.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS

We have no duty to provide coverage under this Coverage Part unless you and any other involved insured have fully complied with the Conditions contained in this Coverage Part.

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

### 2. Duties in the Event of Occurrence, Offense, Claim or Suit

a. You must see to it that we are notified as soon as practicable of an *occurrence* or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the *occurrence* or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the *occurrence* or offense.

b. If a claim is made or *suit* is brought against any insured, you must;

(1) Immediately record the specifics of the claim or *suit* and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or *suit* as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or *suit;*

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the *suit;* and

(4) Assist us, upon our request, in the en-

forcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

### 3. Financial Responsibility Laws

a. When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for *bodily injury* liability and *property damage* liability will comply with the provisions of the law to the extent of the coverage and Limits of Insurance required by that law.

b. With respect to *mobile equipment* to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

### 4. Legal Action Against Us

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a *suit* asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Separation of Insureds**

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this policy to the First Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or *suit* is brought.

**6. Premium Audit — Business Liability**

**a.** We will compute all premiums for this Coverage Form in accordance with our rules and rates.

**b.** Premium shown in this Coverage Form as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. If a premium payment is due, we will send notice to the First Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the First Named Insured.

**c.** The First Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

## LIABILITY AND MEDICAL EXPENSES DEFINITIONS

**1.** *"Advertising injury"* means injury arising out of one or more of the following offenses:

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

**2.** *"Auto"* means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But *auto* does not include *mobile equipment*.

**3.** *"Bodily injury"* means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** *"Coverage territory"* means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a above; or

**c.** All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a above; or

(b) The activities of a person whose home is in the territory described in (a) above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a *suit* on the

merits in the territory described in (a) above or in a settlement we agree to.

**5.** *"Employee"* includes a *leased worker*. Employee does not include a *temporary worker*.

**6.** *"Executive officer"* means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** *"Impaired property"* means tangible property, other than *your product* or *your work*, that cannot be used or is less useful because:

**a.** It incorporates *your product* or *your work* that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of *your product* or *your work*; or

**b.** Your fulfilling the terms of the contract or agreement.

**8.** *"Insured contract"* means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an *insured contract*.

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement; or

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for *bodily injury* or *property damage* to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f does not include that part of any contract or agreement;

(1) That indemnifies a railroad for *bodily injury* or *property damage* arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services.

**9.** *"Leased worker"* means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. *Leased worker* does not include a *temporary worker*.

**10.** *"Loading or unloading"* means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or *auto;*

**b.** While it is in or on an aircraft, watercraft or *auto;* or

**c.** While it is being moved from an aircraft, watercraft or *auto* to the place where it is finally delivered.

But *loading or unloading* does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or *auto.*

**11.** *"Mobile equipment"* means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers.

**e.** Vehicles not described in a, b, c or d above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers.

**f.** Vehicles not described in a, b, c or d above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not *mobile equipment* but will be considered *autos:*

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning.

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**12.** *"Occurrence"* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**13.** *"Personal injury"* means injury, other than *bodily injury*, arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

a. Includes all *bodily injury* and *property damage* occurring away from premises you own or rent and arising out of *your product* or *your work* except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, *your work* will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The *bodily injury* or *property damage* must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of *your product* for consumption on premises you own or rent.

b. Does not include *bodily injury* or *property damage* arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the *loading* or *unloading* of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it.

16. "Suit" means a civil proceeding in which damages because of *bodily injury, property damage, personal injury* or *advertising injury* to which this insurance applies are alleged. *Suit* includes:

a. An arbitration proceeding in which such damages are claimed and to which the *insured* must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the *insured* submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent *employee* on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

*Your product* includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your product;* and

b. The providing of or failure to provide warnings or instructions.

*Your product* does not include vending machines or other property rented to or located for the use of others but not sold.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

*Your work* includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your work;* and

b. The providing of or failure to provide warnings or instructions.

## BIS-PAK® COMMON POLICY CONDITIONS

### Index of Policy Provisions

Page

A. CANCELLATION . . . . . . . . . . . . . . . . . .   1

B. CHANGES . . . . . . . . . . . . . . . . . . . . . .   1

C. CONCEALMENT, MISREPRESENTATION
OR FRAUD . . . . . . . . . . . . . . . . . . . . . .   1

D. EXAMINATION OF YOUR BOOKS AND
RECORDS . . . . . . . . . . . . . . . . . . . . . . .   1

E. INSPECTIONS AND SURVEYS . . . . . . . . .   1

F. INSURANCE UNDER TWO OR MORE
COVERAGES . . . . . . . . . . . . . . . . . . . . .   1

Page

G. LIBERALIZATION . . . . . . . . . . . . . . . . . .   1

H. OTHER INSURANCE . . . . . . . . . . . . . . . .   1

I. PREMIUMS . . . . . . . . . . . . . . . . . . . . . .   2

J. TRANSFER OF RIGHTS OF RECOVERY .   2

K. TRANSFER OF YOUR RIGHTS
AND DUTIES . . . . . . . . . . . . . . . . . . . . . .   2

L. REPRESENTATIONS . . . . . . . . . . . . . . . .   2

M. WHEN WE DO NOT RENEW . . . . . . . . . .   2

## BIS-PAK® COMMON POLICY CONDITIONS

All coverages of this Coverage Part are subject to the following conditions.

### A. CANCELLATION

1. The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

a. Ten days before the effective date of cancellation if we cancel for nonpayment of premium.

b. Thirty days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the First Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The First Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

### D. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### E. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### F. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### G. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

### H. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1 above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

3. Business Liability Coverage is excess over:

a. Any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for *your work;*

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, *autos* or watercraft to the extent

not subject to Exclusion g.

b. Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

4. When Business Liability Coverage is excess, we will have no duty to defend the insured against any *suit* if any other insurer has a duty to defend the insured against that *suit.* If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When Business Liability Coverage is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

a. The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

b. The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

## I. PREMIUMS

1. The First Named Insured shown in the Declarations:

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

a. Paid to us prior to the anniversary date; and

b. Determined in accordance with paragraph 2 above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium.

## J. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

### 1. Applicable to Property coverage:

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

a. Prior to a loss to your Covered Property.

b. After a loss to your Covered Property only if, at the time of loss, that party is one of the following:

(1) Someone insured by this insurance;

(2) A business firm:

(a) Owned or controlled by you; or

(b) That owns or controls you; or

(3) Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

### 2. Applicable to Liability coverage:

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring *suit* or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

## K. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## L. REPRESENTATIONS

By accepting this policy, you agree:

1. The statements in the Declarations are accurate and complete;

2. Those statements are based upon representations you made to us; and

3. We have issued this policy in reliance upon your representations.

## M. WHEN WE DO NOT RENEW

If we elect not to renew this policy, we will mail or deliver to the First Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## ENDORSEMENTS

**COMPUTER COVERAGE**

CB-7202(5-2000)

This endorsement modifies insurance provided under the following:

STANDARD BIS-PAK® PROPERTY COVERAGE FORM
DELUXE BIS-PAK® PROPERTY COVERAGE FORM

The coverage provided by this endorsement is subject to the provisions of the Bis-Pak® Property Coverage Form attached to this policy except as otherwise provided within this endorsement.

1. The first sentence of Property Coverages is replaced by the following:

    We will pay for direct physical loss of or damage to Covered Property caused by or resulting from any Covered Cause of Loss.

2. Covered Property under Property Coverages is replaced by the following:

    Covered property means the following types of property:

    a. Your *hardware* and *software;* and

    b. Similar property of others that is in your care, custody or control.

3. Property Not Covered under Property Coverages is replaced by the following:

    Covered Property does not include:

    a. **Accounts, Bills or Documents.**

        We do not cover accounts, bills, evidences of debt, records, abstracts, deeds, manuscripts, program documentation or other documents except those that are in *software* form and then only in that form.

    b. **Contraband.**

        We do not cover contraband or property in the course of illegal transportation or trade.

    c. **Loaned, Leased or Rented to Others.**

        We do not cover property that you loan, lease or rent to others.

    d. **Money and Securities.**

        We do not cover currency, food stamps, lottery tickets not held for sale, money, notes or securities.

    e. **Stock in Trade.**

        We do not cover your stock in trade.

    f. **Vehicle Components.**

        We do not cover *hardware* or *software* which is permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration.

4. Covered Causes of Loss under Property Coverages is replaced by the following:

    Risks of Direct Physical Loss unless the loss is excluded in Property Exclusions.

5. Additional Coverages under Property Coverages is replaced by the following:

    a. **Debris Removal.**

        We pay the cost to remove the debris of covered property that is caused by a covered cause of loss. This coverage does not include costs to:

        (1) Extract *pollutants* from land or water; or

        (2) Remove, restore or replace polluted land or water.

        We will not pay any more under this coverage than 25% of the amount we pay for the direct loss. We will not pay more for loss to property and debris removal combined than the *limit* for the damaged property. However, we will pay an additional amount of debris removal expense up to $10,000 when the debris removal expense exceeds 25% of the amount we pay for direct loss or when the loss to property and debris removal combined exceeds the *limit* for the damaged property.

        We do not pay any expenses unless they are reported to us in writing within 180 days from the date of direct physical loss to covered property.

    b. **Emergency Removal**

        We pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered cause of loss. We pay for any direct physical loss caused by a cause of loss that is not excluded. This coverage applies for up to thirty days after the property is first moved, but does not extend past the date on which this policy expires.

    c. **Extra Expense.**

        We pay the necessary extra expenses that you incur in order to resume or continue your *operations* which are interrupted due to direct physical loss caused by a covered cause of loss to covered property. We cover only the extra expenses that you incur during the *restoration period* and that are necessary to resume or continue your *operations* as nearly as practicable.

        We also cover extra expenses that you incur as a result of:

        (1) Damage to a premises if that damage prevents you from using the covered property;

        (2) Damage to the air conditioning or electrical system which is necessary for the operation of the *hardware* and results in a reduction or suspension of your *oper-*

BIS-PAK ENDORSEMENTS

(continued next page)

ations. The cause of the damage must occur within 500 feet of the premises on which the *hardware* is located; or

(3) An order by a civil authority that specifically denies you access to a premises where you have covered property. The order must be as a result of damage caused by a covered cause of loss to the premises or to an adjacent property. This extension is limited to two consecutive weeks from the date of the order. This does not increase the *limit*.

The most we pay for extra expenses that you incur because of one occurrence is the Extra Expense Limit shown on the Schedule.

### d. *Pollutant* Cleanup and Removal.

We pay your expense to extract *pollutants* from land or water if the discharge, dispersal, seepage, migration, release or escape of the *pollutants* is caused by a covered cause of loss that occurs during the policy period. The expenses are paid only if they are reported to us in writing within 180 days from the date the covered cause of loss occurs.

We do not pay the cost of testing, evaluating, observing or recording the existence level or effects of *pollutants*. However, we pay the cost of testing which is necessary for the extraction of *pollutants* from land or water.

The most we pay for each site or location is $10,000 for the sum of all such expenses arising out of a covered cause of loss occurring during each separate 12 month period of this policy.

6. Property Extensions of Coverage are replaced by the following:

### a. Disturbance and Mechanical Breakdown Coverage.

We pay for loss to covered property caused by *mechanical breakdown*. We also pay for loss to covered property caused by *electrical disturbance* and *power supply disturbance*.

### b. Newly Purchased or Leased Hardware.

In the event that you purchase or lease additional *hardware* during the policy period, we extend coverage to the additional *hardware* for up to 60 days.

The most we pay for any loss under this additional coverage is the least of:

(1) The actual cash value of the covered property;

(2) The *Hardware Limit* shown on the Schedule; or

(3) $250,000.

This additional coverage will end when any of the following first occur:

(1) This policy expires;

(2) 60 days after you obtain the additional *hardware*; or

(3) You report the additional *hardware* to us.

### c. *Software* Storage.

We cover duplicate and back-up *software* which is stored at a premises where you do not conduct *operations* with that *software* and which is not covered under any other coverage form. The most we pay for loss to *software* at any one storage location is $25,000. We do not include the value of duplicate *software* stored at a premises where you do not conduct *operations* when applying the Coinsurance condition.

7. Property Exclusions are replaced by the following:

### a. We do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as or after the excluded causes or events.

(1) Civil Authority.

We do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction or quarantine of property.

We do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a cause of loss excluded under this coverage.

(2) Nuclear Hazard.

We do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion or smoke. We do pay for direct loss by fire resulting from the nuclear hazard.

(3) War.

We do not pay for loss caused by war. This means:

(continued next page)

(a) Declared war, undeclared war, civil war, insurrection, rebellion or revolution;

(b) A warlike act by a military force or by military personnel;

(c) The destruction, seizure or use of the property for a military purpose; or

(d) The discharge of a nuclear weapon even if it is accidental.

b. We do not pay for loss or damage if one or more of the following exclusions apply to the loss.

(1) Criminal, Fraudulent or Dishonest Acts.

We do not pay for loss caused by or resulting from criminal, fraudulent, dishonest or illegal acts alone or in collusion with another by:

(a) You;

(b) Others who have an interest in the property;

(c) Others to whom you entrust the property;

(d) Your partners, officers, directors, trustees or joint adventurers; or

(e) The employees or agents of (a), (b), (c) or (d) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by your employees, but we do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

(2) Deterioration, Fault or Weakness.

We do not pay for deterioration; decay; or any quality, fault or weakness in the covered property that causes it to damage or destroy itself. This exclusion does not apply to loss caused by *mechanical breakdown*.

(3) Lease Terms.

We do not pay for loss caused by a covered cause of loss for which you are not responsible under the terms of any lease or rental agreement.

(4) Loss of Use.

We do not pay for loss caused by or resulting from loss of use, business interruption, delay or loss of market.

This exclusion does not apply to Extra Expense coverage as provided under Additional Coverages.

(5) *Pollutants.*

We do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal or escape of *pollutants.*

This exclusion does not apply to *Pollutant* Clean-Up and Removal Coverage as provided under Additional Coverages.

(6) Temperature, Humidity, Corrosion or Rust.

We do not pay for loss caused by corrosion, rust, humidity, dampness, dryness or changes in or extremes of temperature.

We do pay for loss to covered property that results from a direct physical loss caused by a covered cause of loss to the air conditioning system that services covered *hardware.*

c. We do not pay for extra expenses that you incur if one or more of the following exclusions apply.

(1) Error or Omission.

We do not pay for extra expense caused by error or omission in programming or incorrect instructions to *hardware.*

(2) Leases, Licenses, Contracts or Orders.

We do not pay for any increase in extra expenses due to the suspension, lapse or cancellation of leases, licenses, contracts or orders. However, we do cover loss during the *restoration period* if the suspension, lapse or cancellation results directly from the interruption of your *operations.*

We do not cover any extra expense beyond the *restoration period* caused by the suspension, lapse or cancellation of leases, licenses, contracts or orders.

(3) Strikes, Protests or Interference.

We do not pay for any increase in extra expenses due to interference by strikers or other persons. This applies to interference with rebuilding, repairing or replacing covered property or with the resumption of *operations.*

8. Property Limits of Insurance is replaced by the following:

The most we will pay for loss or damage in any one occurrence is the applicable *limit* shown on the Schedule.

9. Property Deductibles is replaced by the following:

(continued next page)

We pay only that part of your loss over the deductible amount indicated on the Schedule in any one occurrence. If property insured under this endorsement and property insured under the Bis-Pak® Property Coverage Form to which this endorsement is attached is damaged in one occurrence, only the single highest deductible will apply.

10. The following are added to Property Loss Conditions:

a. **Actual Cash Value.**

When Actual Cash Value is indicated on the Schedule, the value of covered property is based on the actual cash value at the time of loss (with a deduction for depreciation).

b. **Replacement Cost.**

When Replacement Cost is indicated on the Schedule, the value of covered property will be based on the replacement cost without any deduction for depreciation.

The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount you spend to repair or replace the damaged or destroyed property.

Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. You may make a claim for actual cash value before repair or replacement takes place and later for the replacement cost if you notify us of your intent within 180 days after the loss.

c. **Pair or Set.**

The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

However, this provision does not apply to *software* that comes in sets. If part of a software set cannot be replaced, the loss is considered a total loss of the set.

d. **Coinsurance.**

We only pay a part of the loss if the *limit* is less than the percentage of the value of the covered property that is indicated on the Schedule. Our part of the loss is determined using the following steps:

(1) Multiply the Coinsurance Percentage indicated on the Schedule by the value of the covered property at the time of loss;

(2) Divide the *limit* for covered property by the result determined in d(1) above;

(3) Multiply the total amount of loss, after

application of any deductible, by the result determined in d(2) above.

The most we pay is the amount determined in d(3) above or the *limit*, whichever is less. We do not pay any remaining part of the loss.

If there is more than one *limit* indicated on the Schedule, this procedure applies separately for each *limit*.

If there is only one *limit* indicated on the Schedule, this procedure applies to the total of all covered property to which the *limit* applies.

11. The following Property Definition is replaced for the purposes of the insurance provided by this endorsement:

"*Operations*" means your normal electronic data processing operations.

12. The following are added to Property Definitions:

a. "*Electrical disturbance*" means electrical or magnetic damage, disturbance of electronic recordings or erasure of electronic recordings.

b. "*Hardware*" means an assemblage of electronic machine components capable of accepting instructions and information, processing the information according to the instructions and producing desired results.

c. "*Limit*" means the amount of coverage that applies.

d. "*Mechanical breakdown*" means mechanical breakdown or malfunction, component failure, faulty installation or blowout.

e. "*Power supply disturbance*" means interruption of power supply, power surge, blackout or brownout.

f. "*Restoration period*" means the time it should take to resume your *operations* starting from the date of loss to covered property caused by a covered cause of loss, and ending on the date the property should be rebuilt, repaired or replaced. This is not limited by the end of the policy period.

This does not include any increase in time due to the enforcement of any ordinance, law or decree that:

(1) Regulates the construction, use, repair or demolition of any property; or

(2) Requires the testing, evaluating, observing or recording the existence, level or effects of *pollutants*.

g. "*Software*" means:

(1) Processing, recording or storage media used for electronic data processing operations. This includes films, tapes,

(continued next page)

cards, discs, drums, cartridges or cells; and

(2) Data, information and instructions

stored on processing, recording or storage media used for electronic data processing operations.

## SCHEDULE

| Hardware Limit | Software Limit | Extra Expense Limit |
|---|---|---|
| $250,000 | $62,500 | $10,000 |

| Deductible Amount | Covered Property Valuation | Coinsurance Percentage |
|---|---|---|
| $250 | REPLACEMENT COST | 90% |

## ADDITIONAL INSURED — DESIGNATED PERSON(S) OR ORGANIZATION(S)

CB-7034(2-02)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

1. The following is added to Who Is an Insured:

   Any person or organization shown in the Schedule is also an insured, but only with respect to vicarious liability arising out of your ongoing operations or premises owned by or rented to you.

2. With respect to the insurance afforded to these additional insureds, the following exclusion is added:

   2. Exclusions

      This insurance does not apply to bodily in-

jury or property damage occurring after:

(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2) That portion of your work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

### SCHEDULE

**Person or Organization**
(Name and Address)

ADP TOTALSOURCE
C/O AON RISK SERVICES
1001 BRICKEL BAY RD STE 1100
MIAMI FL 33131

## ASBESTOS EXCLUSION

CB-7016(1-90)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

It is understood and agreed that coverage provided

by this policy does not apply to bodily injury or property damage arising out of the manufacture, storage, distribution, installation, service, repair or removal of asbestos or products containing asbestos.

## BIS-PAK® ENHANCEMENT ENDORSEMENT

CB-7203(9-01)

This endorsement modifies insurance provided under the following:

BIS-PAK® COVERAGE PART

### ADDITIONAL COVERAGES

1. **Computer Coverage**

   We will pay for direct physical loss of or damage to covered property caused by or resulting from any covered cause of loss.

   a. Covered Property under Property Coverages is replaced by the following:

   Covered property means the following types of property:

   (1) Your *hardware* and *software;* and

   (2) Similar property of others that is in your care, custody or control.

   b. Property Not Covered under Property Coverages is replaced by the following:

   Covered Property does not include:

   (1) Accounts, Bills or Documents.

   We do not cover accounts, bills, evidences of debt, records, abstracts, deeds, manuscripts, program documentation or other documents except those that are in *software* form and then only in that form.

   (2) Contraband.

   We do not cover contraband or property in the course of illegal transportation or trade.

   (3) Loaned, Leased or Rented to Others.

   We do not cover property that you loan, lease or rent to others.

   (4) *Money* and *Securities.*

   We do not cover *money, securities,* food stamps or lottery tickets.

   (5) Stock in Trade.

   We do not cover your stock in trade.

   (6) Vehicle Components.

   We do not cover *hardware* or *software* which is permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration.

   c. Additional Coverage under Property Coverages is replaced by the following:

   (1) Emergency Removal.

   We pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered cause of loss. We pay for any direct physical loss caused by a cause of loss that is not excluded. This coverage applies for up to thirty days after the property is first moved, but does not extend past the date on which this policy expires.

   (2) Extra Expense.

   We pay the necessary extra expenses that you incur in order to resume or continue your *operations* which are interrupted due to direct physical loss caused by a covered cause of loss to covered property. We cover only the extra expenses that you incur during the *restoration period* and that are necessary to resume or continue your *operations* as nearly as practicable.

   The most we pay for extra expenses that you incur because of one occurrence is $2,500.

   d. Property Extensions of Coverage are replaced by the following:

   **Disturbance and Mechanical Breakdown Coverage.**

   We pay for loss to covered property caused by *mechanical breakdown.* We also pay for loss to covered property caused by *electrical disturbance* and *power supply disturbance.*

   e. Property Limits of Insurance is replaced by the following:

   The most we will pay for loss or damage in any one occurrence is $10,000. ·

   f. Property Deductibles is replaced by the following:

   We pay only that part of your loss over $250.

   g. The following Property Definition is replaced for the purposes of the insurance provided by this endorsement:

   *"Operations"* means your normal electronic data processing operations.

   h. The following are added to Property Definitions:

   (1) *"Electrical disturbance"* means electrical or magnetic damage, disturbance of electronic recordings or erasure of electronic recordings.

   (2) *"Hardware"* means an assemblage of electronic machine components capable of accepting instructions and information, processing the information according to the instructions and producing desired results.

(continued next page)

(3) "*Mechanical breakdown*" means mechanical breakdown or malfunction, component failure, faulty installation or blowout.

(4) "*Power supply disturbance*" means interruption of power supply, power surge, blackout or brownout.

(5) "*Restoration period*" means the time it should take to resume your *operations* starting from the date of loss to covered property caused by a covered cause of loss, and ending on the date the property should be rebuilt, repaired or replaced. This is not limited by the end of the policy period.

(6) "*Software*" means:

(a) Processing, recording or storage media used for electronic data processing operations. This includes films, tapes, cards, discs, drums, cartridges or cells; and

(b) Data, information and instructions stored on processing, recording or storage media used for electronic data processing operations.

## 2. Employee Tools

a. We will pay for direct physical loss of or damage to employees' tools which are used in connection with your business caused by or resulting from any covered cause of loss.

b. The most we will pay under this additional coverage is $5,000 which is not to exceed $500 per item.

## 3. Fine Arts Coverage

We will pay for direct physical loss of or damage to fine arts which are not covered by insurance purchased specifically for the item caused by or resulting from any covered cause of loss.

We do not pay for fine arts that are on display at fairgrounds or at a national or international exposition.

We do not pay for loss or damage to fine arts caused by or that results from:

a. A process to repair, retouch, restore, adjust, service or maintain the covered fine arts. If a fire or explosion results, we do not cover the loss caused by the fire or explosion.

b. The gradual accumulation of dust, dirt or pollutants.

c. Breakage of art glass windows, statuary, marbles, glassware, bric-a-brac, porcelains or similar fragile items unless it is caused by a covered cause of loss under the Standard Bis-Pak® Property Coverage Form or *specified causes of loss* under the Deluxe

Bis-Pak® Property Coverage Form.

The most we will pay under this additional coverage is $5,000.

## COVERED CAUSES OF LOSS — ADDITIONAL COVERAGES

Covered Causes of Loss under Property Coverages is replaced by the following for Additional Coverages 1 - Computer Coverage, 2 - Employee Tools and 3 - Fine Arts Coverage:

Risks of Direct Physical Loss unless the loss is excluded in Property Exclusions — Additional Coverages.

## PROPERTY EXCLUSIONS — ADDITIONAL COVERAGES

Property Exclusions are replaced by the following for Additional Coverages 1 - Computer Coverage, 2 - Employee Tools and 3 - Fine Arts Coverage:

1. We do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as or after the excluded causes or events.

a. Civil Authority.

We do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction or quarantine of property.

We do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a cause of loss excluded under this coverage.

b. Nuclear Hazard.

We do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation or radioactive contamination, however caused. Loss caused by nuclear hazard is not considered loss caused by fire, explosion or smoke. We do pay for direct loss by fire resulting from the nuclear hazard.

c. War.

We do not pay for loss caused by war. This means declared war, undeclared war, civil war, insurrection, rebellion or revolution; a warlike act by a military force or by military personnel; the destruction, seizure or use of the property for a military purpose; or the discharge of a nuclear weapon even if it is accidental.

2. We do not pay for loss or damage if one or more of the following exclusions apply to the loss.

a. Dishonesty.

We do not pay for loss caused by or result-

ing from criminal, fraudulent, dishonest or illegal acts alone or in collusion with another by you; others who have an interest in the property; others to whom you entrust the property; your partners, officers, directors, trustees or joint adventurers; or the employees of agents of any of the above, whether or not they are at work.

This exclusion does not apply to acts of destruction by your employees, but we do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

**b.** Deterioration, Fault or Weakness.

We do not pay for deterioration; decay; or any quality, fault or weakness in the covered property that causes it to damage or destroy itself. This exclusion does not apply to loss caused by *mechanical breakdown*.

**c.** Lease Terms.

We do not pay for loss caused by a covered cause of loss for which you are not responsible under the terms of any lease or rental agreement.

**d.** Loss of Use.

We do not pay for loss caused by or resulting from loss of use, business interruption, delay or loss of market.

This exclusion does not apply to Extra Expense coverage as provided under Additional Coverages.

**e.** Temperature, Humidity, Corrosion or Rust.

We do not pay for loss caused by corrosion, rust, humidity, dampness, dryness or changes in or extremes of temperature.

**f.** Mysterious disappearance.

**g.** Wear and tear

**3.** We do not pay for extra expenses that you incur if one or more of the following exclusions apply.

**a.** Error or Omission.

We do not pay for extra expense caused by error or omission in programming or incorrect instructions to *hardware*.

**b.** Leases, Licenses, Contracts or Orders.

We do not pay for any increase in extra expenses due to the suspension, lapse or cancellation of leases, licenses, contracts or orders. However, we do cover loss during the *restoration period* if the suspension, lapse or cancellation results directly from the interruption of your *operations*.

## EXTENSIONS OF COVERAGE

**1. Increased Accounts Receivable Coverage**

We will increase the amount shown in the Declarations for Accounts Receivable Coverage by $15,000.

**2. Increased Valuable Papers Coverage**

We will increase the amount shown in the Declarations for Valuable Papers Coverage by $15,000.

**3. Business Income and Extra Expense**

Item (5) of the Business Income and Extra Expense Additional Coverage is replaced by the following:

We will only pay for Loss of Business Income or Extra Expense that you sustain during the *period of restoration*. Items (1) through (5) of this Additional Coverage are not subject to the Limits of Insurance.

**4. Extended Business Income and Extra Expense Coverage**

The number of days listed in paragraph (6)(b)(ii) of the Business Income and Extra Expense Additional Coverage is replaced with 60 days.

**5. Fire Department Service Charge**

Fire Department Service Charge is replaced by the following:

When the fire department is called to save or to protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000 for your liability for fire department service charges:

**a.** Assumed by contract or agreement prior to loss; or

**b.** Required by local ordinance.

**6. Outdoor signs**

The limit shown in item 2 of Property Limits of Insurance is increased to $5,000.

**7. Costs to Prepare Inventory Coverage**

We will pay up to $2,500 for reasonable expenses for the taking of inventory and appraisals, incurred by you at your request to assist us in the determination of the amount of a covered loss.

We do not pay for any expense incurred under the Property Loss Conditions, Appraisals; or any public adjusters' fees.

(continued next page)

## 8. Extinguisher Recharging

We will pay your costs of recharging your fire extinguishers or fire extinguishing systems (including hydrostatic testing if needed), or replacing the fire extinguishing or fire extinguishing systems, whichever is less, because they are discharged as a result of fighting a fire or within 50 feet of your described premises.

The most we will pay under this extension is $1,000.

## 9. Lock Replacement

We will cover your costs to repair or replace door locks or tumblers of your described premises because of theft of your door keys. The most we will pay under this extension is $1,000.

## 10. Arson Reward

We will pay up to $5,000 to any individual or organization for information leading to an arson conviction in connection with loss or damage to covered property. This amount is the most we will pay, regardless of the number of persons or organizations involved in providing information.

---

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

CB-0523(11-02)

This endorsement modifies insurance provided under the following:

BIS-PAK® COVERAGE PART

A. The following provisions are added and apply to Property and Liability Coverages if applicable:

### Cap On Certified Terrorism Losses

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a certified act of terrorism include the following:

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

With respect to any one or more certified acts of terrorism under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

B. The following provision is added to Standard Bis-Pak® Property Coverage Form or Deluxe Bis-Pak® Property Coverage Form:

### APPLICATION OF OTHER EXCLUSIONS

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Form, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

## ILLINOIS CHANGES

CB-7197(3-99)

This endorsement modifies insurance provided under the following:

BIS-PAK® COVERAGE PART

1. The Cancellation Bis-Pak® Common Policy Condition is replaced by the following:

### CANCELLATION

a. The First Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

b. (1) We may cancel this policy by mailing to the First Named Insured, any mortgagee or lienholder known to us and the agent or broker written notice stating the reason for cancellation.

(2) If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

(3) If we cancel for a reason other than nonpayment of premium, except as provided in paragraph h below, we will mail the notice at least:

(a) Thirty days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

(b) Sixty days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

c. If this policy has been in effect for more than 60 days, except as provided in paragraphs h and i below, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained through a material misrepresentation;

(3) Any insured has violated any of the terms and conditions of the policy;

(4) The risk originally accepted has measurably increased;

(5) Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

(6) A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

d. We will mail our notice to the First Named Insured, any mortgagee or lienholder known to us and the agent or broker, at the respective mailing addresses last known to us.

e. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

f. If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro

rata. The cancellation will be effective even if we have not made or offered a refund.

g. If notice is mailed, proof of mailing will be sufficient proof of notice.

### h. Real Property Other Than Residential Properties Occupied by Four Families or Less:

The following applies only if this policy covers real property other than residential property occupied by four families or less:

If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation to be effective 10 days after such notice is received:

(1) After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

(2) The building has been unoccupied 60 or more consecutive days. This does not apply to:

(a) Seasonal unoccupancy; or

(b) Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

(3) The building has:

(a) An outstanding order to vacate;

(b) An outstanding demolition order; or

(c) Been declared unsafe in accordance with the law.

(4) Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

### I. Residential Properties Occupied by Four Families or Less:

The following applies if this policy covers residential properties occupied by four families or less:

If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained by misrepresentation or fraud; or

(3) Any act that measurably increases the risk originally accepted.

2. The When We Do Not Renew Bis-Pak® Common Policy Condition is replaced by the following:

### NONRENEWAL

a. If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date.

b. We will mail our notice to the following at the respective mailing addresses last known to us:

(continued next page)

(1) The First Named Insured;

(2) The broker, if known to us, or the agent of record; and

(3) The last known mortgagee or lienholder named in the policy.

c. Even if we do not comply with these terms, this policy will terminate:

(1) On the expiration date if:

(a) You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit;

(b) We have indicated our willingness to renew this policy to you or your representative; or

(c) You have notified us or our agent that you do not want to renew this policy.

(2) On the effective date of any other insurance replacing this policy.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The following provision applies only if this policy covers residential properties occupied by four families or less:

If this policy has been issued to you and in effect for five or more years, we may not fail to renew this policy unless:

(1) The policy was obtained by misrepresentation or fraud;

(2) The risk originally accepted has measurably increased; or

(3) You received 60 days' notice of our intent not to renew as provided in paragraphs a through d above.

3. The following is added to the Legal Action Against Us Property Loss Condition:

The period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

4. If this policy covers:

a. Real property used principally for residential purposes up to and including a four family dwelling; or

b. Household or personal property that is usual or incidental to the occupany of any premises used for residential purposes;

then the following provisions apply:

a. The following is added to the Appraisal Property Loss Condition and supersedes any provision to the contrary:

(1) Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in b below.

(2) We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

(a) You demanded the appraisal; and

(b) The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

b. The Concealment, Misrepresentation or Fraud Bis-Pak® Common Policy Condition is replaced by the following:

### Concealment, Misrepresentation or Fraud

a. This Coverage Part is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

(1) Was made with actual intent to deceive; or

(2) Materially affected either our decision to provide this insurance or the hazard we assumed.

However, this condition will not serve as a reason to void this Coverage Part after the Coverage Part has been in effect for one year or one policy term, whichever is less.

b. This Coverage Part is void if you or any other insured at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

(1) This Coverage Part;

(2) The Covered Property;

(3) Your interest in the Covered Property; or

(4) A claim under this Coverage Part.

c. Notwithstanding the limitations stated in a above, we may cancel the Coverage Part in accordance with the terms of the Cancellation Condition.

5. The following exclusion is added to item 2 under Property Exclusions:

a. We will not pay for loss or damage arising out of any act committed:

(1) By or at the direction of any insured; and

(2) With the intent to cause a loss.

b. However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

(1) The loss arose out of a pattern of criminal domestic violence; and

(2) The perpetrator of the loss is criminally prosecuted for the act causing the loss.

(continued next page)

c. If we pay a claim pursuant to paragraph 5b, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

## BUSINESS LIABILITY COVERAGE — TENANTS LIABILITY

CB-0455(1-97)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

1. The final paragraph of Exclusions — Applicable to Business Liability Coverage is replaced by the following:

With respect to the premises shown in the Schedule of this endorsement which are rented to you or temporarily occupied by you with the permission of the owner, exclusions c, d, e, g, h, k, l, m, n and o do not apply to *property damage*.

2. Paragraph 2 of the Liability and Medical Expenses Limits of Insurance is replaced by the following:

The most we will pay under this endorsement for the sum of all damages because of all *property damage* arising out of any one *occurrence* to premises rented to you or temporarily occupied by you with the permission of the owner is the Tenants Liability Limit of Insurance shown in the Schedule.

3. With respect to the premises shown in the Schedule of this endorsement, paragraph 3 and paragraph 4b of Liability and Medical Expenses Limits of Insurance are deleted.

### SCHEDULE

| Premises | Tenants Liability Limit of Insurance (Per Occurrence) | |
|---|---|---|
| 1500 W SCHUR DR ARLINGTON HEIGHTS IL | $ | 100,000 |

## WAR LIABILITY EXCLUSION

CB-0514(1-03)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

A. Exclusion i., under **Exclusions, 1. Applicable To Business Liability Coverage** is replaced by the following:

This insurance does not apply to:

i. War

*Bodily injury, property damage, personal injury,* or *advertising injury,* however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

B. Exclusion h., under **Exclusions, 2. Applicable To Medical Expenses Coverage** does not apply. Medical Expenses due to war are now subject to Exclusion g. of **Exclusions, 2. Applicable to Medical Expenses Coverage** since *bodily injury* arising out of war is now excluded under Exclusion i. of **Exclusions, 1. Applicable To Business Liability Coverage.**

## HIRED AUTO AND NONOWNED AUTO LIABILITY

CB-7019(3-2001)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

**1.** Insurance is provided as stated below.

**a. Hired Auto Liability**

The insurance provided under the Liability and Medical Expenses Coverages Section, paragraph 1, Business Liability, applies to *bodily injury* or *property damage* arising out of the maintenance or use of a *hired auto* by you or your *employees* in the course of your business.

**b. Nonowned Auto Liability**

The insurance provided under the Liability and Medical Expenses Coverages Section, paragraph 1, Business Liability, applies to *bodily injury* or *property damage* arising out of the use of any *nonowned auto* in your business.

**2.** For insurance provided by this endorsement only:

**a.** The exclusions under paragraph 1, Applicable to Business Liability Coverage, other than exclusions a, b, d, f and i and the Nuclear Energy Liability Exclusion, are deleted and replaced by the following:

(1) *Bodily injury* to:

(a) An *employee* of the insured arising out of and in the course of:

(i) Employment by the insured; or

(ii) Performing duties related to the conduct of the insured's business; or

(b) The spouse, child, parent, brother or sister of that *employee* as a consequence of (a) above.

This exclusion applies:

(a) Whether the insured may be liable as an employer or in any other capacity; and

(b) To any obligation to share damages with or repay someone else who must pay damages because of injury.

This exclusion does not apply to:

(a) Liability assumed by the insured under an *insured contract;* or

(b) *Bodily injury* arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be

provided under any workers' compensation law.

(2) *Property damage* to:

(a) Property owned or being transported by, or rented or loaned to the insured; or

(b) Property in the care, custody or control of the insured.

**b.** Who Is an Insured is replaced by the following:

Each of the following is an insured under this endorsement to the extent set forth:

(1) You for any covered auto.

(2) Anyone else while using with your permission a covered auto you lease, hire, rent or borrow except:

(a) The owner or anyone else from whom you lease, hire, rent or borrow a covered auto. This exception does not apply if the covered auto is a trailer connected to a covered auto you own.

(b) Your employee if the covered auto is owned by that employee or a member of his or her household.

(c) Someone using a covered auto while he or she is working in an auto business unless that business is yours.

(d) Anyone other than your employees, partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower of any of their employees, while moving property to or from a covered auto.

(e) A partner (if you are a partnership) or a member (if you are a member) for a covered auto owned by him or her or a member of his or her household.

(f) Any person engaged in the business of his or her employer for bodily injury to any co-employee of such person injured in the course of employment or to the spouse, child, parent, brother or sister of that co-employee as a consequence of such bodily injury, or for any obligation to share damages with or repay someone else who must pay damages because of the injury.

(3) Anyone liable for the conduct of the insured described above but only to the

(continued next page)

extent of that liability.

3. The following additional definitions apply:

a. "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking autos.

b. "Hired Auto" means only those autos you lease, hire, rent or borrow. This does not include any auto you lease, hire, rent or borrow:

(1) From any of your employees, partners (if you are a partnership), members (if you are a limited liability company) or members of their households; or

(2) If the lease or rental agreement involv-

ing that auto is for a term of longer than 30 consecutive days.

c. "Nonowned Auto" means only those autos you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes autos owned by your employees, partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business.

4. The insurance provided under this endorsement is not subject to item 4, Aggregate Limits, of the Liability and Medical Expenses Limits of Insurance Section.

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

CB-0417(1-96)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

The following exclusion is added:

This insurance does not apply to bodily injury or personal injury to:

1. A person arising out of any:

a. Refusal to employ that person;

b. Termination of that person's employment; or

c. Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, hu-

miliation or discrimination directed at that person; or

2. The spouse, child, parent, brother or sister of that person as a consequence of bodily injury or personal injury to that person at whom any of the employment-related practices described in paragraphs a, b or c above is directed.

The Employment-Related Practices Exclusion applies:

1. Whether the insured may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

IL-0985R(1-03)

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

A. Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage

for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the policy Declarations.

B. Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

# EXHIBIT F

Your *ACUITY* Policy



# *For All That Matters*



**1-800-242-7666**

www.acuity.com



**A Mutual Insurance Company**

June 23, 2004

AMERICAN AUTO GUARDIAN INC
PO BOX 925
ARLINGTON HEIGHTS IL 60006

Policy Number: K21167

Dear Policyholder:

This renewal policy continues your business coverage under the Comco® Commercial Insurance Program. By choosing *ACUITY,* you have selected a commercial insurer committed to quality. Our commitment to you includes state-of-the-industry coverages plus policy, claims and loss control services that meet the highest standards. We value our continuing association as a provider of vital insurance protection for your business operations.

**Your Independent Agent**

This policy is sold and serviced by an independent insurance agent. Because independent agents can provide insurance coverage through more than one company, you can be confident that you have made a wise selection. Your agent stands ready to serve your needs and answer your questions with regard to this policy.

**Terrorism Information**

**Please refer to the Important Notice and related attachments following this letter for details regarding coverage for acts of terrorism as defined in the federal Terrorism Risk Insurance Act of 2002 and your options relating to this coverage.**

**For More Information**

Please contact your agent if you have any questions or desire any changes in your policy. Your agent can also help determine if your coverage adequately meets your insurance needs.

Thank you for insuring with *ACUITY.*

Ben Salzmann
President

M-2240(6-01)

## Important Notice

On November 26, 2002, President Bush signed into law the Terrorism Risk Insurance Act of 2002. Attached are a Policyholder Disclosure Notice of Terrorism Insurance Coverage and any applicable Terrorism Premium Information page(s) which provide you with information regarding this law.

Your policy has been issued with coverage for losses caused by terrorist events as defined in the law. Endorsements that provide this coverage have been attached to your policy and a premium charge has been applied. Please refer to your Declarations for the exact premium charge associated with each endorsement.

You have the right to remove this coverage, where permitted, from your policy. You may do so by signing the attached rejection form and mailing it to *ACUITY*, P.O. Box 58, Sheboygan, WI 53082-0058. If you choose to reject this coverage, you will not be able to add the coverage back to your policy until your next renewal.

Even if you choose to reject coverage for terrorist events as defined in the law a premium charge may apply. Refer to the attached Terrorism Premium Information page(s) for an explanation of premium charges. Your policy and current premium payment plan will be updated to reflect any changes in coverage and premium.

Please contact your agent if you have any questions regarding this law.

## Policyholder Disclosure
## Notice of Terrorism Insurance Coverage

You are hereby notified that under the Terrorism Risk Insurance Act of 2002 that you have a right to purchase insurance coverage for losses arising out of acts of terrorism, *as defined in Section 102(1) of the Act:* The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States — to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that any losses caused by certified acts of terrorism, *as defined in Section 102(1) of the Act,* would be partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

The attached policy includes coverage for terrorism as described in the act. The premium charge for this coverage is based on the premiums for each coverage part included in your policy and the location of any property covered under the policy. The attached Terrorism Premium Information sheet provides complete information for developing this premium. The rates shown do not include any charges for the portion of loss covered by the federal government under the act.

## REJECTION OF COVERAGE FOR TERRORIST EVENTS AS DEFINED IN THE TERRORISM RISK INSURANCE ACT OF 2002

You may reject coverage for terrorist events as defined in the Terrorism Risk Insurance Act of 2002, where permitted. You may do this by signing this rejection form and mailing it to *ACUITY*, P.O. Box 58, Sheboygan, WI 53082-0058. If you choose to reject this coverage, you will not be able to add the coverage back to your policy until your next renewal.

I have read the Policyholder Disclosure Notice of Terrorism Insurance Coverage and the Terrorism Premium Information page(s) and hereby reject coverage for terrorist events as defined in the Terrorism Risk Insurance Act of 2002. I understand that coverage for terrorist events as defined in the act will be excluded under my policy.

_____          _____
First Named Insured Signature                          Date

A rejection form received within 30 days of the date shown on the bottom right corner will be valid as of the Policy Effective Date shown above. A rejection form received after 30 days of the date shown will be valid on the date we receive the form. This rejection will apply until the expiration date of the policy term that begins on the Policy Effective Date shown above.



**ACUITY**
A Mutual Insurance Company

## Terrorism Premium Information
### Illinois

The premium you pay for terrorism coverage is based on the premiums for each coverage part included in your policy, the location of any property covered under the policy and whether or not you choose to purchase the terrorism coverage as *defined in Section 102(1) of the Terrorism Risk Insurance Act of 2002.* Refer to the attached Policyholder Disclosure Notice of Terrorism Insurance Coverage for a description of applicable provisions in that act.

Even if you reject coverage under the act, a terrorism premium is charged. This happens because Illinois has a "standard fire policy" law which limits the exclusions which may apply to loss caused by fire. In many cases, this law will require that we cover claims which would otherwise be excluded under any rejection.

| If your ACUITY policy contains the following coverage part: | The premium charge for terrorism insurance if you accept coverage under the act is: | The premium charge for terrorism insurance if you reject coverage under the act is: |
|---|---|---|
| • Bis-Pak® — Property Portion of Your Premium | • 9.6% of the property premium applying in Cook County<br>• 6% of the property premium applying in a county with a Nuclear Power Plant<br>• 4.8% of the property premium for all other locations | • 7.2% of the property premium applying in Cook County<br>• 4.5% of the property premium applying in a county with a Nuclear Power Plant<br>• 3.6% of the property premium for all other locations |
| • Bis-Pak® — Liability Portion of Your Premium | • 1% of the liability premium applying to your policy | • No premium charge applies |
| • Commercial Property Coverage Part and Commercial Output Program in the Commercial Inland Marine Coverage Part | • 9.6% of the premium applying in Cook County<br>• 6% of the premium applying in a county with a Nuclear Power Plant<br>• 4.8% of the premium for all other locations | • 7.2% of the premium applying in Cook County<br>• 4.5% of the premium applying in a county with a Nuclear Power Plant<br>• 3.6% of the premium for all other locations |

TRIA-203(4-03)

## Terrorism Premium Information
### Illinois

| If your ACUITY policy contains the following coverage part: | The premium charge for terrorism insurance if you accept coverage under the act is: | The premium charge for terrorism insurance if you reject coverage under the act is: |
|---|---|---|
| • Commercial Inland Marine Coverage Part — except for the Commercial Output Program | • 6% of the premium applying in Cook County<br>• 3.75% of the premium applying in a county with a Nuclear Power Plant<br>• 3% of the premium for all other locations | • No premium charge applies |
| • Commercial Auto, Commercial General Liability, Commercial Umbrella and Commercial Crime Coverage Parts | • 1% of the premium applying to each of the coverage parts | • No premium charge applies |
| • Workers' Compensation | • The premium charge is $.05 for each $100 of payroll for all classes. | Workers' Compensation coverage automatically applies to loss caused by terrorism. You are **not** permitted to reject this coverage. |

**Counties with Nuclear Power Plants** are Grundy County, Ogle County, DeWitt County, DeKalb County, Rock Island County and La Salle County.

TRIA-203(4-03)



**ACUITY.**
A Mutual Insurance Company

**COMMON POLICY
DECLARATIONS**

First Named Insured and Address:

AMERICAN AUTO GUARDIAN INC
PO BOX 925
ARLINGTON HEIGHTS IL 60006

Agency Name and Number:

7039                    (847)934-6100
DS&P INSURANCE SERVICES, INC.
1530 E DUNDEE RD STE 200
PALATINE IL 60067

Policy Number:  K21167-0

| Policy Period: | Effective Date: | 07-12-04 |
|---|---|---|
| | Expiration Date: | 07-12-05 |

12:01 A.M. standard time at
your mailing address shown
in the declarations

## COVERAGE

Your coverage consists of the following lines of insurance for which a premium is indicated.
This premium may be subject to adjustment.

| | |
|---|---:|
| Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | |
| General Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Automobile  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Garage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Inland Marine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Crime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Umbrella Excess Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Workers' Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| Bis-Pak® . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4,621.00 |
| **Total Advance Premium** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | **4,621.00** |

Secretary

President

## MUTUAL POLICY CONDITIONS

Every person, co-partnership or corporation insured by the company shall be a member of it and shall have one vote. The annual meeting of the members shall be held on the first Tuesday in March at 1:30 P.M. of each year, at the corporate headquarters of the company in Sheboygan, Wisconsin. Notice printed in each policy shall be sufficient as to the time and place of said meeting.

The Named Insured, upon termination of this policy, shall participate in the distribution of dividends, if any are declared, and fixed as determined by the directors in accordance with law.

This policy is nonassessable and the liability of the Named Insured to the company is limited to the payment of the premium herein provided.

### Corporate Headquarters Address

*ACUITY*
2800 South Taylor Drive
PO Box 58
Sheboygan, Wisconsin 53082-0058
800-242-7666

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1982, 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991.

Includes copyrighted material of ISO Commercial Risk Services, Inc. with its permission.
Copyright, ISO Commercial Risk Services, Inc., 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991.

Includes copyrighted material of the American Association of Insurance Services with its permission.
Copyright, American Association of Insurance Services, 1984, 1985, 1986, 1987, 1988, 1989.

Includes copyrighted material of the National Council on Compensation Insurance with its permission.
Copyright, National Council on Compensation Insurance, 1983, 1984, 1985, 1986, 1987, 1988, 1989, 1990, 1991.



**ACUITY**sm

A Mutual Insurance Company

**BIS-PAK®**
**COVERAGE PART**

BIS-PAK DECLARATIONS

## Renewal Declarations

First Named Insured and Address:

AMERICAN AUTO GUARDIAN INC
PO BOX 925
ARLINGTON HEIGHTS IL 60006

Agency Name and Number:

DS&P INSURANCE SERVICES, INC.
7039

Policy Number:  K21167

| Policy Period: | Effective Date: | 07-12-04 |
|---|---|---|
| | Expiration Date: | 07-12-05 |

In return for the payment of the premium and subject to all the terms of the policy, we agree to provide the insurance coverage as stated in the same.

12:01 A.M. standard time at your mailing address shown in the declarations

### COVERAGE FORMS AND ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART

| Form Number | Form Title | Premium |
|---|---|---|
| CB-0455 (01-97) | Business Liability Coverage - Tenants' Liability . . . . . . . . . . . . . . . . . . $ | 51.00 |
| CB-7019 (03-01) | Hired Auto and Nonowned Auto Liability . . . . . . . . . . . . . . . . . . . . . . . | 129.00 |
| CB-0006 (10-01) | Bis-Pak Business Liability and Medical Expenses Coverage Form  . . . . | |
| CB-0009 (10-96) | Bis-Pak Common Policy Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB-7016 (01-90) | Asbestos Exclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB7203 (09-01) | Bis-Pak Enhancement Endorsement  . . . . . . . . . . . . . . . . . . . . . . . . | 124.00 |
| CB-7034 (02-02) | Additional Insured - Designated Person(s) or Organization(s) . . . . . . . | 100.00 |
| CB-0417 (01-96) | Employment - Related Practices Exclusions . . . . . . . . . . . . . . . . . . . . | |
| CB-7197 (03-99) | Illinois Changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB-7202 (05-00) | Computer Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB-0002 (10-03) | Deluxe Bis-Pak Property Coverage Form . . . . . . . . . . . . . . . . . . . . . . | |
| CB-0534 (11-02) | Limited Exclusion of Acts of Terrorism (Other than Cert Acts); Cap on Losses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 37.00 |
| IL-0985R (01-03) | Disclosure Pursuant to Terrorism Risk Insurance Act of 2002  . . . . . . . | |
| CB-0514 (01-03) | War Liability Exclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB-0576 (11-02) | Limited Fungi or Bacteria Coverage . . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB-0577 (11-02) | Fungi or Bacteria Exclusion (Liability) . . . . . . . . . . . . . . . . . . . . . . . . | |
| CB-0538 (12-02) | Limited Terrorism Exclusion (Other than Cert Acts); Cap on Losses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18.00 |
| CB-0542 (11-02) | Exclusion of Punitive Damages related to a Certified Act of Terrorism . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | |
| | **Advance Endorsement Premium** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ | **459.00** |

Page 2

Policy Number: K21167
Effective Date: 07-12-04

## PREMIUM SUMMARY

Advance Premium .................................................... $ 4,162.00

Advance Endorsement Premium ........................................ 459.00

**Total Advance Premium ............................................. $ 4,621.00**

The Total Advance Premium shown above is based on the exposures you anticipated at the time this coverage part began. We will audit this coverage part in accordance with the Bis-Pak® Liability and Medical Expenses General Condition entitled Premium Audit - Business Liability at the close of the audit period.

## PROPERTY COVERAGES PROVIDED
Form: Deluxe

| Coverage Item | Premises Number | Building Number | Valuation Basis | Limit of Insurance | Automatic Increase Percentage |
|---|---|---|---|---|---|
| Business Personal Property | 001 | 001 | Replacement Cost | $ 250,000 | N/A |
| Deductible: $250 | | | | | |

## DESCRIPTION OF PREMISES

| Premises Number | Building Number | Construction, Occupancy and Location |
|---|---|---|
| 001 | 001 | JOISTED MASONRY OFFICE 1500 W SHURE DR ARLINGTON HEIGHTS IL |

## MORTGAGEHOLDER NAME AND ADDRESS

NONE

Page 3

| Policy Number: | K21167 |
|---|---|
| Effective Date: | 07-12-04 |

## LIABILITY COVERAGES PROVIDED

| Coverage Item | | Limit of Insurance |
|---|---|---|
| Liability and Medical Expenses (Each Occurrence) ............................... | $ | 2,000,000 |
| Medical Expenses (Any One Person) ........................................ | | 5,000 |
| Tenants' Liability ...................................................... | | 100,000 |
| Products-Completed Operations Aggregate Limit ............................... | | 4,000,000 |
| General Aggregate Limit (Other Than Products-Completed Operations) ............... | | 4,000,000 |

## SCHEDULE OF LIABILITY CLASSIFICATIONS

| Premises Number | Building Number | Classification Description | Class Code | Premium Basis[1] | Rate |
|---|---|---|---|---|---|
| 001 | 001 | Office Buildings | 61226 | 14,000  AR | 131.70 |

[1] AR = Area - Rate Applies Per 1,000 Square Feet

## OPTIONAL COVERAGES PROVIDED

| Coverage Item | | Limit of Insurance |
|---|---|---|
| Hired and Nonowned Auto Liability ......................................... | | Same as Liability Limit |
| Employee Dishonesty ................................................... | $ | 500,000 |
| Forgery and Alteration .................................................. | | 2,500 |
| Computer Coverage .................................................... | | See CB-7202 |

| Coverage Item | Premises Number | Building Number | Limit of Insurance |
|---|---|---|---|
| Business Income and Extra Expense ........................ | 001 | 001 | Actual Loss Sustained |
| Money and Securities ................................... | 001 | 001 | |
| Inside the Premises .................................................. $ | | | 10,000 |
| Outside the Premises ................................................ | | | 5,000 |
| Accounts Receivable ................................... | 001 | 001 | 10,000 |
| Valuable Papers ...................................... | 001 | 001 | 250,000 |

## BIS-PAK® PLAN

Offices

## AUDIT PERIOD

Annual

Page 4

Policy Number: K21167
Effective Date: 07-12-04

**ADDITIONAL NAMED INSUREDS**

WHO IS AN INSURED includes the following Additional Named Insureds:

NONE

**FIRST NAMED INSURED IS:**

ORGANIZATION OTHER THAN PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY

# DELUXE BIS-PAK® PROPERTY COVERAGE FORM

### Index of Policy Provisions

Page

**PROPERTY COVERAGES** . . . . . . . . . . . . . . 1-7
   Covered Property . . . . . . . . . . . . . . . . 1
   Property Not Covered . . . . . . . . . . . . . . 1-2
   Covered Causes of Loss . . . . . . . . . . . 2
   Limitations . . . . . . . . . . . . . . . . . . . . . 2
   Additional Coverages . . . . . . . . . . . . . . 2-7

**PROPERTY EXTENSIONS OF COVERAGE** . 7-9
   Newly Acquired or Constructed Property . 7
   Personal Effects and Property of Others . 7
   Property Off-Premises . . . . . . . . . . . . . . 7
   Property in Transit . . . . . . . . . . . . . . . . 7
   Outdoor Property . . . . . . . . . . . . . . . . 7-8
   Valuable Papers and Records - Cost
     of Research . . . . . . . . . . . . . . . . . . . . 8
   Accounts Receivable . . . . . . . . . . . . . . 8
   Replacement Cost - Building . . . . . . . . . 8-9
   Money and Securities . . . . . . . . . . . . . . 9

**PROPERTY EXCLUSIONS** . . . . . . . . . . . . 9-12

**PROPERTY LIMITS OF INSURANCE** . . . . . 12
   Building Limit - Automatic Increase . . . . . 12
   Business Personal Property Limit -
     Seasonal Increase . . . . . . . . . . . . . . . 12

Page

**PROPERTY OPTIONAL COVERAGES** . . . . . 13-14
   Outdoor Signs . . . . . . . . . . . . . . . . . . 13
   Interior Glass . . . . . . . . . . . . . . . . . . . . 13
   Employee Dishonesty . . . . . . . . . . . . . . 13-14

**PROPERTY DEDUCTIBLES** . . . . . . . . . . . . 14

**PROPERTY GENERAL CONDITIONS** . . . . . 14-15
   Control of Property . . . . . . . . . . . . . . . . 14
   Mortgageholders . . . . . . . . . . . . . . . . . . 14-15
   No Benefit to Bailee . . . . . . . . . . . . . . . 15
   Policy Period, Coverage Territory . . . . . . 15

**PROPERTY LOSS CONDITIONS** . . . . . . . . 15-18
   Abandonment . . . . . . . . . . . . . . . . . . . . 15
   Appraisal . . . . . . . . . . . . . . . . . . . . . . . 15
   Duties in the Event of Loss or Damage . 15-16
   Legal Action Against Us . . . . . . . . . . . . 16
   Limitation - Electronic Media and
     Records . . . . . . . . . . . . . . . . . . . . . . . 16
   Loss Payment and Valuation . . . . . . . . . 16-18
   Recovered Property . . . . . . . . . . . . . . . 18
   Resumption of Operations . . . . . . . . . . . 18
   Vacancy . . . . . . . . . . . . . . . . . . . . . . . . 18

**PROPERTY DEFINITIONS** . . . . . . . . . . . . . 18-19

BIS-PAK COVERAGE FORMS

## DELUXE BIS-PAK® PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declara-

tions. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in italics have special meaning. Refer to the Property Definitions Section.

## PROPERTY COVERAGES

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1. **Covered Property**

   Covered Property, as used in this Coverage Form, means the type of property as described in this Section, 1, and limited in 2, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

   a. **Buildings,** meaning the buildings and structures at the premises described in the Declarations, including:

      (1) Completed additions;

      (2) Garages, storage buildings, appurtenant structures usual to your occupancy;

      (3) Fixtures, including outdoor fixtures;

      (4) Permanently installed:

         (a) Machinery; and

         (b) Equipment;

      (5) Your personal property in apartments or rooms furnished by you as landlord;

      (6) Personal property owned by you that is used to maintain or service the buildings, structures or the premises, including:

         (a) Fire extinguishing equipment;

         (b) Outdoor furniture;

         (c) Floor coverings; and

         (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering.

      (7) If not covered by other insurance:

         (a) Additions under construction, alterations and repairs to the buildings or structures; and

         (b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

   b. **Business Personal Property** located in or on the buildings at the described premises or in the open (or in a vehicle) within 100

feet of the described premises, including:

      (1) Property you own that is used in your business;

      (2) Property of others that is in your care, custody or control, except as otherwise provided in Loss Payment and Valuation Property Loss Condition 6g(3)(b);

      (3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

         (a) Made a part of the building or structure you occupy but do not own; and

         (b) You acquired or made at your expense but cannot legally remove; and

      (4) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under paragraph 1b(2).

2. **Property Not Covered**

   Covered Property does not include:

   a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

   b. *Money* or *securities,* except as provided in the:

      (1) Money and Securities Coverage Extension; or

      (2) Employee Dishonesty Optional Coverage.

   c. Contraband or property in the course of illegal transportation or trade;

   d. Land (including land on which the property is located), water, growing crops or lawns;

   e. Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than *stock* of trees, shrubs or plants), all except as provided in the:

      (1) Outdoor Property Coverage Extension; or

      (2) Outdoor Signs Optional Coverage.

**f.** Watercraft (including motors, equipment and accessories) while afloat.

## 3. Covered Causes of Loss

Risks of Direct Physical Loss unless the loss is:

**a.** Excluded in Property Exclusions; or

**b.** Limited in paragraph 4, Limitations;

that follow.

## 4. Limitations

**a.** We will not pay for loss of or damage to:

(1) Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

(2) Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

(3) Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory. This limitation does not apply to the Extension of Coverage for Money and Securities.

(4) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

(5) Gutters and downspouts caused by or resulting from weight of snow, ice or sleet.

(6) The interior of any building or structure or the property inside any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which rain, snow, sleet, ice, sand or dust enters; or

(b) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**b.** With respect to glass (other than glass building blocks) that is part of the interior of a building or structure, or part of an outdoor sign, we will not pay more than $500 for the total of all loss or damage in any one occur-

rence. Subject to the $500 limit on all loss or damage, we will not pay more than $100 for each plate, pane, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter. This Limitation does not apply to loss or damage by the *specified causes of loss*, except vandalism.

**c.** We will not pay for loss of or damage to fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken, unless caused by the *specified causes of loss* or building glass breakage. This restriction does not apply to:

(1) Glass that is part of the interior of a building or structure;

(2) Containers of property held for sale; or

(3) Photographic or scientific instrument lenses.

**d.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

## 5. Additional Coverages

### a. Debris Removal

(1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(a) The date of direct physical loss or damage; or

(b) The end of the policy period.

(2) The most we will pay under this Additional Coverage is 25% of:

(a) The amount we pay for the direct physical loss of or damage to Covered Property; plus

(b) The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in paragraph (4) below.

(3) This Additional Coverage does not apply to costs to:

(a) Extract *pollutants* from land or water; or

(b) Remove, restore or replace polluted land or water.

(4) If:

(a) The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

(b) The debris removal expense exceeds the amount payable under the 25% Debris Removal coverage limitation in paragraph (2) above;

we will pay up to an additional $10,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

### b. Pollutant Clean Up and Removal

We will pay your expense to extract *pollutants* from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the *pollutants* is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us within 180 days of the earlier of:

(1) The date of direct physical loss or damage; or

(2) The end of the policy period.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy. This limit is in addition to the Limits of Insurance.

### c. Preservation of Property

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 30 days after the property is first moved.

We will not pay for any loss or damage under this Additional Coverage if the Covered Property was moved from the described premises to preserve it from loss or damage by a cause of loss that is not a Covered Cause of Loss.

### d. Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $2,500 for your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

### e. Collapse

(1) We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this policy, if the collapse is caused by one or more of the following:

(a) The *specified cause of loss* or breakage of building glass, all only as insured against in this policy;

(b) Hidden decay;

(c) Hidden insect or vermin damage;

(d) Weight of people or personal property;

(e) Weight of rain that collects on a roof; or

(f) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in e(1)(a) through e(1)(e), we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse.

(2) If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

(a) The personal property which collapses is inside a building insured under this policy; and

(b) The collapse was caused by a cause of loss listed in e(1)(a) through e(1)(f) above.

(3) With respect to the following property:

(a) Awnings;

(b) Gutters and downspouts;

(c) Yard fixtures;

(d) Outdoor swimming pools;

(e) Piers, wharves and docks;

(f) Beach or diving platforms or appurtenances;

(g) Retaining walls; and

(h) Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in e(1)(b) through e(1)(f), we will pay for loss or damage to that property only if such loss or damage is a direct result of the collapse of a building insured under this policy and the property is Covered Property under this policy.

(4) Collapse does not include settling, cracking, shrinkage, bulging or expansion.

**f. Water, Other Liquids, Powder or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, but we will pay the cost to repair or replace damaged parts or fire extinguishing equipment if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or

(2) Is directly caused by freezing.

**g. Business Income and Extra Expense**

(1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your *operations* during the *period of restoration.* The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(2) Business income means the:

(a) Net income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and

(b) Continuing normal operating expenses incurred, including payroll.

(3) We will pay necessary Extra Expense you incur during the *period of restoration* that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

(a) The portion of the building which you rent, lease or occupy; and

(b) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

(4) Extra Expense means expense incurred:

(a) To avoid or minimize the suspension of business and to continue *operations:*

(i) At the described premises; or

(ii) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

(b) To minimize the suspension of business if you cannot continue *operations*.

(c) To:

    (i) Repair or replace any property; or

    (ii) Research, replace or restore the lost information on damaged *valuable papers and records;*

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage.

(5) We will only pay for Loss of Business Income or Extra Expense that you sustain during the *period of restoration* and that occurs within 12 consecutive months after the date of direct physical loss or damage. Items (1) through (5) of this Additional Coverage are not subject to the Limits of Insurance.

(6) Extended Business Income. If the necessary suspension of your *operations* produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    (a) Begins on the date property, except finished stock, is actually repaired, rebuilt or replaced and *operations* are resumed; and

    (b) Ends on the earlier of:

        (i) The date you could restore your *operations,* with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

        (ii) 30 consecutive days after the date determined in (a) above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

This Additional Coverage is not subject to the Limits of Insurance.

h. **Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 24 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for necessary Extra Expense will begin immediately after the time of that action and ends:

(1) Three consecutive weeks after the time of that action; or

(2) When your Business Income coverage ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverage also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance.

i. **Money Orders and Counterfeit Paper Currency**

We will pay for loss due to the good faith acceptance of:

(1) Any U.S. or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

(2) Counterfeit United States or Canadian paper currency;

in exchange for merchandise, *money* or services or as part of a normal business transaction.

The most we will pay for any loss under this Additional Coverage is $1,000.

j. **Forgery and Alteration**

(1) We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in *money,* that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

(2) If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in *money,* on the basis that it has been forged or altered, and you

have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

(3) The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500, unless a higher Limit of Insurance is shown in the Declarations.

### k. Increased Cost of Construction

(1) This Additional Coverage applies only to buildings insured on a replacement cost basis.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in k(3) through k(9) of this Additional Coverage.

(3) The ordinance or law referred to in k(2) of this Additional Coverage is an ordinance or law that regulated the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You are required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of *pollutants*.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form is $5,000.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced, at the

same or another premises; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment and Valuation Property Loss Condition in this Coverage Form do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in k(6) of this Additional Coverage, is not subject to such limitation.

### l. Exterior Building Glass

(1) We will pay for direct physical loss of or damage to glass, including lettering or ornamentation, that is part of the exterior of a covered building or structure at the described premises. The glass must be owned by you, or owned by others but in your care, custody or control. We will also pay for necessary:

(a) Expenses incurred to put up temporary plates or board up openings;

(b) Repair or replacement of encasing frames; and

(c) Expenses incurred to remove or replace obstructions.

(2) Paragraph 3 of Property Coverages and Property Exclusions do not apply to this Additional Coverage except for:

(a) 1b, Earth Movement;

(b) 1c, Governmental Action;

(c) 1d, Nuclear Hazard;

(d) 1f, War and Military Action; and

(e) 1g, Water.

(3) We will not pay for loss or damage caused by or resulting from:

(a) Wear and tear;

(b) Hidden or latent defect;

(c) Corrosion; or

(d) Rust.

(4) The most we pay under this Additional Coverage is the Building Limit of Insurance shown in the Declarations.

However, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building property and coverage for Tenants' Exterior Glass is shown in the Declarations, we will pay the cost to replace the glass.

## PROPERTY EXTENSIONS OF COVERAGE

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

### 1. Newly Acquired or Constructed Property

a. You may extend the insurance that applies to Buildings to apply to:

(1) Your new buildings or new additions, while being built on the described premises; and

(2) Buildings you acquire at locations, other than the described premises, intended for:

(a) Similar use as the building described in the Declarations; or

(b) Use as a warehouse.

The most we will pay for loss or damage under this extension is $500,000 for each building.

b. You may extend the insurance that applies to Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

The most we will pay for loss or damage under this extension is $100,000.

c. Insurance under this extension for each newly acquired or constructed property will end when any of the following first occurs:

(1) This policy expires;

(2) Thirty days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date construction begins or you acquire the property.

### 2. Personal Effects and Property of Others

a. You may extend the insurance that applies to Business Personal Property to apply to:

(1) Your personal effects meaning personal property owned by you, your officers, your partners or your employees. This extension does not apply to loss or damage by theft or to tools or equipment used in your business.

(2) Personal property in your care, custody or control belonging to other than you, your officers, your partners or your employees.

b. The most we will pay for loss or damage under this extension is $5,000 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

### 3. Property Off-Premises

a. You may extend the insurance that applies to Business Personal Property to apply to covered Business Personal Property, other than *money* and *securities, valuable papers and records* or accounts receivable, while it is in the course of transit or temporarily at a premises you do not own, lease or operate. This extension does not apply to Covered Property in or on a vehicle.

b. The most we will pay for loss or damage under this extension is $5,000. If you insure both Building and Business Personal Property, the most we will pay for loss or damage under this extension is $10,000.

### 4. Property in Transit

You may extend the insurance that applies to Business Personal Property to apply to your personal property in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

The most we will pay for loss or damage under this extension is $5,000.

### 5. Outdoor Property

a. You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than

signs attached to buildings), trees, shrubs and plants (other than *stock* of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

**b.** The most we will pay for loss or damage under this Extension is $5,000, but not more than $500 for any one tree, shrub or plant.

**6. Valuable Papers and Records - Cost of Research**

**a.** You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to *valuable papers and records* that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research lost information on *valuable papers and records* for which duplicates do not exist.

**b.** This Coverage Extension does not apply to:

(1) Property held as samples or for delivery after sale; or

(2) Property in storage away from the premises shown in the Declarations.

**c.** The most we will pay under this Coverage Extension for loss or damage to *valuable papers and records* in any one occurrence at the described premises is $10,000 unless a higher Limit of Insurance for *Valuable Papers and Records* is shown in the Declarations.

For *valuable papers and records* not at the described premises, the most we will pay is $5,000.

**d.** Property Exclusions does not apply to this Coverage Extension except for:

(1) 1c, Governmental Action;

(2) 1d, Nuclear Hazard;

(3) 1f, War and Military Action; and

(4) 2f, Dishonesty;

(5) 2g, False Pretense;

(6) 3; and

(7) The Accounts Receivable and Valuable Papers and Records Exclusions.

**7. Accounts Receivable**

**a.** You may extend the insurance that applies to Business Personal Property to apply to accounts receivable. We will pay:

(1) All amounts due from your customers that you are unable to collect;

(2) Interest charges on any loan required to offset amounts you are unable to collect pending our payments of these amounts;

(3) Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

(4) Other reasonable expenses that you incur to re-establish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**b.** The most we will pay under this Coverage Extension for loss or damage in any one occurrence at the described premises is $10,000, unless a higher Limit of Insurance for Accounts Receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $5,000.

**c.** Property Exclusions does not apply to this Coverage Extension except for:

(1) 1c, Governmental Action;

(2) 1d, Nuclear Hazard;

(3) 1f, War and Military Action;

(4) 2f, Dishonesty;

(5) 2g, False Pretense;

(6) 3; and

(7) The Accounts Receivable and Valuable Papers and Records Exclusions.

**8. Replacement Cost - Building**

If the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement, without deduction for depreciation. This provision does not apply to the following, even when attached to the building:

**a.** Floor coverings, cloth awnings;

**b.** Air conditioners, ventilation equipment; or

**c.** Domestic appliances, outdoor equipment or furniture.

We will not be liable under this Extension of Coverage:

**a.** Unless and until the damaged property is actually repaired or replaced on the same premises with due diligence and dispatch and, in no event, unless repair or replacement is completed within a reasonable time after such loss; and

**b.** If Replacement Cost is indicated in the Declarations as being the basis for valuation of property.

## 9. Money and Securities

**a.** We will pay for loss of *money* and *securities* used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises or in transit between any of these places, resulting directly from:

(1) Theft, meaning any act of stealing;

(2) Disappearance; or

(3) Destruction.

**b.** In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

(1) Resulting from accounting or arithmetical errors or omissions;

(2) Due to the giving or surrendering of property in any exchange or purchase; or

(3) Of property contained in any *money*-operated device unless the amount of *money* deposited in it is recorded by a continuous recording instrument in the device.

**c.** The most we will pay for loss in any one occurrence is:

(1) The limit shown in the Declarations for Inside the Premises for *money* and *securities* while:

(a) In or on the described premises; or

(b) Within a bank or savings institution; and

(2) The limit shown in the Declarations for Outside the Premises for *money* and *securities* while anywhere else.

**d.** All loss:

(1) Caused by one or more persons; or

(2) Involving a single act or series of related acts;

is considered one occurrence.

**e.** You must keep records of all *money* and *securities* so we can verify the amount of any loss or damage.

## PROPERTY EXCLUSIONS

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance or Law

The enforcement of any ordinance or law:

(1) Regulating the construction, use or repair of any property; or

(2) Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance or Law, applies whether the loss results from:

(1) An ordinance or law that is enforced even if the property has not been damaged; or

(2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

### b. Earth Movement

(1) Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But, if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

(2) Volcanic eruption, explosion or effusion. But, if volcanic eruption, explosion or effusion results in fire or volcanic action, we will pay for the loss or damage caused by that fire or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust, or particulate matter; or

(c) Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost

to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

c. **Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

d. **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But, if nuclear reaction or radiation, or radioactive contamination results in fire, we will pay for the loss or damage caused by that fire.

e. **Power Failure**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But, if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

f. **War and Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. **Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up, or overflows from a sewer, drain or sump; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But, if water, as described in g(1) through (4),

results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. **Electrical Apparatus**

Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But, if artificially generated electrical current results in fire, we will pay for the loss or damage caused by fire.

b. **Consequential Losses**

Delay, loss of use or loss of market.

c. **Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

d. **Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control.

But, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

e. **Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

f. **Dishonesty**

Dishonest or criminal acts by you, anyone else with an interest in the property, or any of your or their partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and *valuable papers and records*, this exclusion does not apply to carriers for hire.

### g. False Pretense

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

### h. Exposed Property

Rain, snow, ice or sleet to personal property in the open.

### i. Collapse

Collapse, except as provided in the Additional Coverage for Collapse. But, if collapse results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

### j. Pollution

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of *pollutants* unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the *specified causes of loss*. But, if the discharge, dispersal, seepage, migration, release or escape of *pollutants* results in a *specified cause of loss*, we will pay for the loss or damage caused by that *specified cause of loss*.

### k. Other Types of Loss

(1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force; or

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But, if an excluded cause of loss that is listed in 2k(1) through (7) results in a *specified cause of loss*, or building glass breakage, we will pay for the loss or damage caused by that *specified cause of loss* or building glass breakage.

3. We will not pay for loss or damage caused by or resulting from any of the following 3a through c. But if an excluded cause of loss that is listed in 3a through c results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

### a. Weather Conditions

But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1 above to produce the loss or damage.

### b. Acts or Decisions

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

### c. Negligent Work

Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

### 4. Business Income and Extra Expense Exclusions

We will not pay for:

a. Any Extra Expense or increase of Business Income loss, caused by or resulting from:

(1) Delay in rebuilding, repairing or replacing the property or resuming *operations*, due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of *operations*, we will cover such loss that affects your Business Income during the *period of restoration*.

b. Any other consequential loss.

### 5. Accounts Receivable and Valuable Papers Exclusions

The following additional exclusions apply to the Accounts Receivable and Valuable Papers Coverage Extensions:

a. We will not pay for loss or damage caused by or resulting from electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

   (1) Programming errors or faulty machine instructions; or

   (2) Faulty installation or maintenance of data processing equipment or component parts;

   but we will pay for direct loss or damage caused by lightning.

b. Applicable to *Valuable Papers and Records* only:

   We will not pay for loss or damage caused by or resulting from any of the following:

   (1) Errors or omissions in processing or copying. But if errors or omissions in processing or copying results in fire or explosion, we will pay for direct loss or damage caused by that fire or explosion; or

   (2) Wear and tear, gradual deterioration or latent defect.

c. Applicable to Accounts Receivable only:

   We will not pay for:

   (1) Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of *money, securities* or other property.

      This exclusion applies only to the extent of the wrongful giving, taking or withholding.

   (2) Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

   (3) Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

## PROPERTY LIMITS OF INSURANCE

1. The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

3. The limits applicable to the Coverage Extensions and the Fire Department Service Charge Additional Coverage are in addition to the Limits of Insurance.

4. **Building Limit - Automatic Increase**

   a. The Limit of Insurance for Buildings will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

      (1) The Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit, times

      (2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

      (3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Building limit, divided by 365.

   Example:

   If:

   | | |
   |---|---|
   | The applicable Building limit is | $100,000 |
   | The annual percentage increase is | 8% |
   | The number of days since the beginning of the policy year (or last policy change) is | 180 |

   The amount of increase is
   $100,000 x .08 x 180 ÷ 365 = $3,945

5. **Business Personal Property Limit - Seasonal Increase**

   a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

   b. This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

      (1) The 12 months immediately preceding the date the loss or damage occurs; or

      (2) The period of time you have been in business as of the date the loss or damage occurs.

## PROPERTY OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

1. **Outdoor Signs**

   a. We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

      (1) Owned by you; or

      (2) Owned by others but in your care, custody or control.

   b. Paragraph 3, Covered Causes of Loss, under the Property Coverages Section, and the Property Exclusions Section do not apply to this Optional Coverage, except for the following Property Exclusions:

      (1) Paragraph 1c, Governmental Action;

      (2) Paragraph 1d, Nuclear Hazard; and

      (3) Paragraph 1f, War and Military Action.

   c. We will not pay for loss or damage caused by or resulting from:

      (1) Wear and tear;

      (2) Hidden or latent defect;

      (3) Rust;

      (4) Corrosion; or

      (5) Mechanical breakdown.

   d. The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

   e. The provisions of this Optional Coverage supersede all other references to outdoor signs in this policy.

2. **Interior Glass**

   a. We will pay for direct physical loss of or damage to items of glass that are permanently affixed to the interior walls, floors or ceilings of a covered building or structure at the described premises, provided each item is:

      (1) Described in the Declarations as covered under this Optional Coverage;

      (2) Located in the basement or ground floor level of the building or structure, unless the Declarations show that this Optional Coverage is applicable to interior glass at all floors; and

      (3) Owned by you, or owned by others but in your care, custody or control.

   b. We will also pay for necessary:

      (1) Expenses incurred to put up temporary plates or board up openings;

      (2) Repair or replacement of encasing frames; and

      (3) Expenses incurred to remove or replace obstructions.

   c. Paragraph 3, Covered Causes of Loss, under the Property Coverages Section, and the Property Exclusions Section do not apply to this Optional Coverage, except for the following Property Exclusions:

      (1) Paragraph 1c, Governmental Action;

      (2) Paragraph 1d, Nuclear Hazard; and

      (3) Paragraph 1f, War and Military Action.

   d. We will not pay for loss or damage caused by or resulting from:

      (1) Wear and tear;

      (2) Hidden or latent defect;

      (3) Corrosion; or

      (4) Rust.

   e. With respect to this Optional Coverage, all limitations elsewhere in this policy that apply to interior glass are eliminated.

3. **Employee Dishonesty**

   a. We will pay for direct loss of or damage to Business Personal Property, including *money* and *securities,* resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

      (1) Cause you to sustain loss or damage; and also

      (2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

         (a) Any employee; or

         (b) Any other person or organization.

   b. We will not pay for loss or damage:

      (1) Resulting from any dishonest or criminal act that you or any of your partners commit whether acting alone or in collusion with other persons.

      (2) The only proof of which as to its existence or amount is:

         (a) An inventory computation; or

         (b) A profit and loss computation.

   c. The most we will pay for loss or damage in any one occurrence is the Limit of Insur-

ance for Employee Dishonesty shown in the Declarations.

d. All loss or damage:

   (1) Caused by one or more persons; or

   (2) Involving a single act or series of related acts;

   is considered one occurrence.

e. We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

f. This Optional Coverage does not apply to any employee immediately upon discovery by:

   (1) You; or

   (2) Any of your partners, officers or directors not in collusion with the employee;

   of any dishonest act committed by that employee before or after being hired by you.

g. We will pay only for covered loss or damage discovered no later than one year from

the end of the Policy Period.

h. If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

   (1) This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

   (2) The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

i. The insurance under paragraph h above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

   (1) This Optional Coverage as of its effective date; or

   (2) The prior insurance had it remained in effect.

## PROPERTY DEDUCTIBLES

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

   In the event that loss or damage occurs to Covered Property at one or more building locations as a result of one occurrence, the largest applicable deductible shown in the Declarations will apply.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under the Outdoor Signs Optional Coverage in any one occurrence is $250.

   But this $250 deductible will not increase the

deductible shown in the Declarations. This deductible will be used to satisfy the requirements of the deductible in the Declarations.

3. No deductible applies to the following Additional Coverages, Extensions of Coverage or Optional Coverages:

   a. Fire Department Service Charge;

   b. Business Income and Extra Expense;

   c. Civil Authority;

   d. Exterior Glass;

   e. Employee Dishonesty;

   f. Money and Securities;

   g. Interior Glass.

## PROPERTY GENERAL CONDITIONS

### 1. Control of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

### 2. Mortgageholders

a. The term "mortgageholder" includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this policy at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) Ten days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) Thirty days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

### 3. No Benefit to Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

### 4. Policy Period, Coverage Territory

Under this form:

a. We cover loss or damage commencing:

(1) During the policy period shown in the Declarations; and

(2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

b. The coverage territory is:

(1) The United States of America (including its territories and possessions);

(2) Puerto Rico; and

(3) Canada.

## PROPERTY LOSS CONDITIONS

### 1. Abandonment

There can be no abandonment of any property to us.

### 2. Appraisal

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### 3. Duties in the Event of Loss or Damage

a. You must see that the following are done in the event of loss or damage to Covered Property:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the

Covered Property from further damage and keep a record of your expenses reasonably incurred to protect the Covered Property. We will consider these expenses in the settlement of a claim, but this will not increase the applicable Limit of Insurance. However, we will not consider any expenses incurred in order to protect the Covered Property from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) Resume all or part of your *operations* as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

### 4. Legal Action Against Us

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within two years after the date on which the direct physical loss or damage occurred.

### 5. Limitation - Electronic Media and Records

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

a. Sixty consecutive days from the date of direct physical loss or damage; or

b. The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

a. Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

b. Data stored on such media; or

c. Programming records used for electronic data processing or electronically controlled equipment.

Example Number 1:

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period of June 1 through September 1. Loss during the period of September 2 through October 1 is not covered.

Example Number 2:

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period of August 1 through September 29 (60 consecutive days). Loss during the period of September 30 through October 15 is not covered.

### 6. Loss Payment and Valuation

In the event of loss or damage covered by this Coverage Form:

a. At our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality subject to g1e below.

b. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

c. We will not pay you more than your financial interest in the Covered Property.

d. Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We

may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

e. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

f. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy and we have reached agreement with you on the amount of loss or an appraisal award has been made.

g. Except as provided in (2) through (7) below, we will determine the value of Covered Property as follows:

(1) At replacement cost without deduction for depreciation, if Replacement Cost is indicated in the Declarations as the basis for valuation of the Covered Property.

(a) You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(b) We will not pay on a replacement cost basis for any loss or damage:

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

(c) We will not pay more for loss or damage on a replacement cost basis than the least of:

(i) The cost to replace, on the same premises, the lost or damaged property with other property that is of comparable material and quality and is used for the same purpose;

(ii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

(iii) The limit shown in the Declarations for the Covered Property.

(2) At actual cash value, if Actual Cash Value is indicated in the Declarations as the basis for valuation of the Covered Property. We will never pay more than the applicable limit shown in the Declarations.

(3) The following property at actual cash value:

(a) Used or second-hand merchandise held in storage or for sale;

(b) Property of others, but this property is not covered for more than the amount for which you are liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others;

(c) Household contents, except personal property in apartments or rooms furnished by you as landlord;

(d) Manuscripts;

(e) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) *Valuable papers and records,* including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

(a) Blank materials for reproducing the records; and

(b) Labor to transcribe or copy the records.

This condition does not apply to *valuable papers and records* that are actually replaced or restored.

(6) *Money* at its face value.

(7) *Securities* at their value at the close of business on the day the loss is discovered.

(8) Applicable only to Accounts Receivable:

(a) If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

(i) We will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

(ii) We will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

(b) The following will be deducted from the total amount of accounts receivable, however that amount is established:

(i) The amount of the accounts for which there is no loss or damage;

(ii) The amount of the accounts that you are able to re-establish or collect;

(iii) An amount to allow for probable bad debts that you are normally unable to collect; and

(iv) All unearned interest and service charges.

## 7. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

## 8. Resumption of Operations

We will reduce the amount of your:

a. Business Income loss, other than Extra Expense, to the extent you can resume your *operations*, in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

b. Extra Expense loss to the extent you can return *operations* to normal and discontinue such Extra Expense.

## 9. Vacancy

a. Description of Terms

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (a) and (b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:

(i) Is not rented; or

(ii) Is not used to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in (1)(a) through (1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

## PROPERTY DEFINITIONS

1. "*Money*" means:

a. Currency, coins and bank notes in current use and having a face value; and

b. Travelers checks, register checks and money orders held for sale to the public.

2. "*Operations*" mean your business activities occurring at the described premises.

3. "*Period of restoration*" means the period of time that:

a. Begins:

(1) 24 hours after time of direct physical loss or damage for Business Income coverage; or

(2) Immediately after the time of direct physical loss or damage for Extra Expense coverage;

Caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

*Period of restoration* does not include any increased period required due to the enforcement of any ordinance or law that:

**a.** Regulates the construction, use or repair, or requires the tearing down of any property; or

**b.** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of *pollutants*.

The expiration date of this policy will not cut short the *period of restoration.*

**4.** *"Pollutants"* mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** *"Securities"* means negotiable and nonnegotiable instruments or contracts representing either *money* or other property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include *money.*

**6.** *"Specified causes of loss"* means the following:

Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

(1) The cost of filling sinkholes; or

(2) Sinking or collapse of land into manmade underground cavities.

**b.** Falling objects does not include loss of or damage to:

(1) Personal Property in the open; or

(2) The interior of a building or structure or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**7.** *"Stock"* means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**8.** *"Valuable papers and records"* means inscribed, printed, or written:

**a.** Documents;

**b.** Manuscripts; and

**c.** Records;

including abstracts, books, deeds, drawings, films, maps or mortgages.

But *valuable papers and records* does not mean:

**a.** *Money* or *securities;*

**b.** Converted data; or

**c.** Programs or instructions used in your data processing operations, including the materials on which the data is recorded.

## BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

**Index of Policy Provisions**

Page

LIABILITY AND MEDICAL EXPENSES COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-8

WHO IS AN INSURED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

LIABILITY AND MEDICAL EXPENSES LIMITS OF
INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

LIABILITY AND MEDICAL EXPENSES GENERAL
CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

LIABILITY AND MEDICAL EXPENSES
DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13

## BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under the Who Is an Insured Section of this policy.

Other words and phrases that appear in italics have special meaning. Refer to the Liability and Medical Expenses Definitions Section.

## LIABILITY AND MEDICAL EXPENSES COVERAGES

### 1. Business Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury, property damage, personal injury* or *advertising injury* to which this insurance applies. We will have the right and duty to defend the insured against any *suit* seeking those damages. However, we will have no duty to defend the insured against any *suit* seeking damages for *bodily injury, property damage, personal injury* or *advertising injury* to which this insurance does not apply. We may at our discretion investigate any *occurrence or offense* and settle any claim or *suit* that may result. But:

(1) The amount we will pay for damages is limited as described in the Liability and Medical Expenses Limits of Insurance Section; and

(2) Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension — Supplementary Payments.

b. This insurance applies:

(1) To *bodily injury* or *property damage* only if:

(a) The *bodily injury* or *property damage* is caused by an *occurrence* that takes place in the *coverage territory;* and

(b) The *bodily injury* or *property damage* occurs during the policy period.

(2) To:

(a) *Personal injury* caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you; and

(b) *Advertising injury* caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the *coverage territory* during the policy period.

c. Damages because of *bodily injury* include damages claimed by any person or organization for care, loss of services or death resulting at any time from the *bodily injury.*

d. **Coverage Extension — Supplementary Payments**

In addition to the Limit of Insurance, we will pay, with respect to any claim we investigate or settle, or any *suit* against an insured we defend:

(1) All expenses we incur.

(2) Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for *bodily injury* applies. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

(4) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or *suit,* including actual loss of earnings up to $250 a day because of time off from work.

(5) All costs taxed against the insured in the *suit.*

(6) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

(7) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the

part of the judgment that is within our Limit of Insurance.

If we defend an insured against a *suit* and an indemnitee of the insured is also named as a party to the *suit*, we will defend that indemnitee if all of the following conditions are met:

(1) The *suit* against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an *insured contract;*

(2) This insurance applies to such liability assumed by the insured;

(3) The obligation to defend, or the cost of the defense of, that indemnitee has also been assumed by the insured in the same *insured contract;*

(4) The allegations in the *suit* and the information we know about the *occurrence* are such that no conflict appears to exist between the interests of the insured and the interest of the indemnitee;

(5) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such *suit* and agree that we can assign the same counsel to defend the insured and the indemnitee; and

(6) The indemnitee:

(a) Agrees in writing to:

(i) Cooperate with us in the investigation, settlement or defense of the *suit;*

(ii) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the *suit;*

(iii) Notify any other insurer whose coverage is available to the indemnitee; and

(iv) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(b) Provides us with written authorization to:

(i) Obtain records and other information related to the *suit;* and

(ii) Conduct and control the defense of the indemnitee in such *suit.*

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 1b(2) of Exclusions, such payments will not be deemed to be damages for *bodily injury* and *property damage* and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

(1) We have used up the applicable limit of insurance in the payment of judgments or settlements; or

(2) The conditions set forth above, or the terms of the agreement described in paragraph (6) above, are no longer met.

## 2. Medical Expenses

a. We will pay medical expenses as described below for *bodily injury* caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the *coverage territory* and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the Limit of Insurance. We will pay reasonable expenses for:

(1) First aid at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

# EXCLUSIONS

## 1. Applicable to Business Liability Coverage

### This Insurance does not apply to:

**a.** Expected or Intended Injury

*Bodily injury* or *property damage* expected or intended from the standpoint of the insured. This exclusion does not apply to *bodily injury* resulting from the use of reasonable force to protect persons or property.

**b.** Contractual Liability

*Bodily injury* or *property damage* for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an *insured contract*, provided the *bodily injury* or *property damage* occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an *insured contract*, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of *bodily injury* or *property damage*, provided:

    (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same *insured contract*; and

    (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c.** Liquor Liability

*Bodily injury* or *property damage* for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing of alcoholic beverages.

**d.** Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.** Employers' Liability

*Bodily injury* to:

(1) An employee of the insured arising out of and in the course of:

    (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an *insured contract*.

**f.** Pollution

(1) *Bodily injury* or *property damage* arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    However, subparagraph (a) does not apply to *bodily injury* if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

    (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    (d) At or from any premises, site or

location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

   (i)  If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

   (ii)  If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to *bodily injury* or *property damage* arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of *mobile equipment* or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs (a) and (d)(i) do not apply to *bodily injury* or *property damage* arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2)  Any loss, cost or expense arising out of any:

   (a)  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   (b)  Claim or *suit* by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing,

or in any way responding to, or assessing the effects of pollutants.

(3)  Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g.  Aircraft, Auto or Watercraft

*Bodily injury* or *property damage* arising out of the ownership, maintenance, use or entrustment to others of any aircraft, *auto* or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and *loading or unloading*.

This exclusion does not apply to:

(1)  Watercraft while ashore on premises you own or rent;

(2)  A watercraft you do not own that is:

   (a)  Less than 50 feet long; and

   (b)  Not being used to carry persons or property for a charge.

(3)  Parking an *auto* on, or on the ways next to premises you own or rent, provided the *auto* is not owned by or rented or loaned to you or the insured;

(4)  Liability assumed under any *insured contract* for the ownership, maintenance or use of aircraft or watercraft; or

(5)  *Bodily injury* or *property damage* arising out of the operation of any of the following equipment:

   (a)  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (b)  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

h.  Mobile Equipment

*Bodily injury* or *property damage* arising out of:

(1)  The transportation of *mobile equipment* by an *auto* owned or operated by or rented or loaned to any insured; or

(2)  The use of *mobile equipment* in, or while in practice for, or while being prepared for, any prearranged racing, speed or stunting activity.

i.  War

*Bodily injury* or *property damage* due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

This exclusion applies only to liability assumed under a contract or agreement.

**j.** Professional Services

*Bodily injury, property damage, personal injury* or *advertising injury* due to rendering or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting, advertising, counseling, consulting services or funeral home services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Supervisory, inspection or engineering services;

(4) Medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

(5) Any health or theraputic service, treatment, advice or instruction including but not limited to physiotherapy, massage, chiropody, or the operation or use of suntanning booths or equipment;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of opthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services, barber and beauty shops;

(9) Services in the practice of pharmacy, but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

(10) Services in connection with the selling, licensing, franchising or furnishing of your computer software including electronic data processing programs, designs, specifications, manuals and instructions.

(11) Data processing services rendered by, or that should have been rendered by:

(a) The insured; or

(b) Any person or organization:

    (i) For whose acts, errors or omissions the insured is legally responsible; or

    (ii) From whom the insured assumed liability by reason of a contract or agreement.

(12) The rendering of, or failure to render, electronic data processing, computer consulting or computer programming services, advice or instruction by:

(a) The insured; or

(b) Any person or organization:

    (i) For whose acts, errors or omissions the insured is legally responsible; or

    (ii) From whom the insured assumed liability by reason of a contract or agreement.

**k.** Damage to Property

*Property damage* to:

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the *property damage* arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of any insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the *property damage* arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because *your work* was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are *your work* and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to *property damage* included in the *products-completed operations hazard.*

**l.** Damage to Your Product

*Property damage* to *your product* arising out of it or any part of it.

**m.** Damage to Your Work

*Property damage* to *your work* arising out of it or any part of it and included in the *products-completed operations hazard.*

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n.** Damage to Impaired Property or Property Not Physically Injured

Property damage to *impaired property* or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in *your product* or *your work*; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to *your product* or *your work* after it has been put to its intended use.

o. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) *Your product*;

(2) *Your work*; or

(3) *Impaired property*;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

p. Personal or Advertising Injury

*Personal injury* or *advertising injury*:

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(6) With respect to any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way responding to, or assessing the effects of pollutants.

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

q. Advertising Injury

*Advertising injury* arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

r. Suntanning Operations

*Bodily injury, personal injury* or *property damage* arising out of the ownership, operation or use of any suntanning booth or suntanning device.

s. Lead

*Bodily injury, property damage, personal injury* or *advertising injury* arising out of the actual, alleged or threatened ingestion, inhalation, absorption, exposure or presence of lead in any form or from any source.

Coverage also does not apply to any loss, cost, expense, fine or penalty arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, dispose of or in any way respond to or assess the effects of lead in any form; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, disposing of or

in any way responding to or assessing the effects of lead in any form.

Exclusions c, d, e, f, g, h, i, k, l, m, n and o do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in the Limits of Insurance Section of this Coverage Form.

## 2. Applicable to Medical Expenses Coverage

We will not pay expenses for *bodily injury:*

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an *employee* of any insured, if benefits for the *bodily injury* are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the *products-completed operations hazard.*

g. Excluded under Business Liability Coverage.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## 3. Applicable to Both Business Liability Coverage and Medical Expenses Coverage — Nuclear Energy Liability Exclusion

This insurance does not apply:

a. Under Business Liability Coverage, to *bodily injury* or *property damage:*

 (1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its Limit of Liability; or

 (2) Resulting from the *hazardous properties* of *nuclear material* and with respect to which:

 (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

 (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

b. Under Medical Expenses Coverage, to expenses incurred with respect to *bodily injury* resulting from the *hazardous properties* of *nuclear material* and arising out of the operation of a *nuclear facility* by any person or organization.

c. Under Business Liability Coverage, to *bodily injury* or *property damage* resulting from the *hazardous properties* of *nuclear material,* if:

 (1) The *nuclear material:*

 (a) Is at any *nuclear facility* owned by or operated by or on behalf of an insured; or

 (b) Has been discharged or dispersed therefrom;

 (2) The *nuclear material* is contained in *spent fuel* or *waste* at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

 (3) The *bodily injury* or *property damage* arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any *nuclear facility,* but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to *property damage* to such *nuclear facility* and any property thereat.

d. As used in this exclusion:

 *"Byproduct material"* has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

 *"Hazardous properties"* include radioactive, toxic or explosive properties;

 *"Nuclear facility"* means:

 (1) Any *nuclear reactor;*

 (2) Any equipment or device designed or used for:

 (a) Separating the isotopes of uranium or plutonium;

 (b) Processing or utilizing *spent fuel;* or

 (c) Handling, processing or packaging *waste;*

 (3) Any equipment or device used for the

processing, fabricating or alloying of *special nuclear material* if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of *waste;*

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"*Nuclear material*" means *source material, special nuclear material* or *byproduct material;*

"*Nuclear reactor*" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"*Property damage*" includes all forms of radioactive contamination of property;

"*Source material*" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"*Special nuclear material*" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"*Spent fuel*" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a *nuclear reactor;*

"*Waste*" means any waste material:

(1) Containing *byproduct material* other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its *source material* content; and

(2) Resulting from the operation by any person or organization of any *nuclear facility* included under paragraphs (1) and (2) of the definition of *nuclear facility.*

## WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your *executive officers* and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your *employees* other than either your *executive officers* (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but

only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these *employees* is an insured for:

   (1) *Bodily injury* or *personal injury:*

       (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company) or to a co-*employee* while that co-*employee* is either in the course of his or her employment or performing duties related to the conduct of your business;

       (b) To the spouse, child, parent, brother or sister of that co-*employee* as a consequence of paragraph (1)(a) above;

       (c) For which there is any obligation to share damages with or repay someone else who must pay damages of the injury described in paragraphs (1)(a) or (b); or

       (d) Arising out of his or her providing or failing to provide professional health care services. However, if you have *employees* who are pharmacists in your retail druggist or drugstore operation, they are insured with respect to their providing

or failing to provide professional health care services; or

(2) *Property damage* to property:

(a) Owned, occupied or used by; or

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your *employees*, any partner or member (if you are a partnership or joint venture) or any member (if you are a limited liability company).

b. Any person (other than your *employee*) or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. With respect to *mobile equipment* registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to

liability arising out of the operation of the equipment and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. *Bodily injury* to a co-*employee* of the person driving the equipment; or

b. *Property damage* to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, limited liability company or joint venture and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage does not apply to *bodily injury* or *property damage* that occurred before you acquired or formed the organization; and

c. Coverage does not apply to *personal injury* or *advertising injury* arising out of an offense committed before you acquired or formed the organzation.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds:

b. Claims made or *suits* brought; or

c. Persons or organizations making claims or bringing *suits*.

2. The most we will pay for the sum of all damages because of all:

a. *Bodily injury, property damage* and medical expenses arising out of any one *occurrence;* and

b. *Personal injury* and *advertising injury* sustained by any one person or organization;

is the Liability and Medical Expenses Limit shown in the Declarations. But the most we will pay for all medical expenses because of *bodily injury* sustained by any one person is the Medi-

cal Expenses Limit shown in the Declarations.

3. The most we will pay under Business Liability Coverage for damages because of *property damage* to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire is the Fire Legal Liability Limit shown in the Declarations.

4. **Aggregate Limits**

a. The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for injury or damage under the *products-completed operations hazard* arising from all *occurrences* during the policy period.

b. The General Aggregate Limit shown in the Declarations is the most we will pay for the sum of all damages because of all:

(1) *Bodily injury, property damage* and medical expenses arising from all *occurrences* during the policy year. This

limit applies separately to:

(a) Each location owned by or rented to you. A location is a premises involving the same or connecting lots, or a premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad; and

(b) Each of your projects away from a location owned by or rented to you; or

(2) *Personal injury* and *advertising injury*

arising out of all offenses committed during the policy period.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS

We have no duty to provide coverage under this Coverage Part unless you and any other involved insured have fully complied with the Conditions contained in this Coverage Part.

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

### 2. Duties in the Event of Occurrence, Offense, Claim or Suit

a. You must see to it that we are notified as soon as practicable of an *occurrence* or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the *occurrence* or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the *occurrence* or offense.

b. If a claim is made or *suit* is brought against any insured, you must;

(1) Immediately record the specifics of the claim or *suit* and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or *suit* as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or *suit;*

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the *suit;* and

(4) Assist us, upon our request, in the en-

forcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

### 3. Financial Responsibility Laws

a. When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for *bodily injury* liability and *property damage* liability will comply with the provisions of the law to the extent of the coverage and Limits of Insurance required by that law.

b. With respect to *mobile equipment* to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

### 4. Legal Action Against Us

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a *suit* asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## 5. Separation of Insureds

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this policy to the First Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or *suit* is brought.

## 6. Premium Audit — Business Liability

a. We will compute all premiums for this Coverage Form in accordance with our rules and rates.

b. Premium shown in this Coverage Form as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. If a premium payment is due, we will send notice to the First Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the First Named Insured.

c. The First Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

## LIABILITY AND MEDICAL EXPENSES DEFINITIONS

1. *"Advertising injury"* means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. *"Auto"* means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But *auto* does not include *mobile equipment*.

3. *"Bodily injury"* means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. *"Coverage territory"* means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in a above; or

         (b) The activities of a person whose home is in the territory described in (a) above, but is away for a short time on your business; and

      (2) The insured's responsibility to pay damages is determined in a *suit* on the

   merits in the territory described in (a) above or in a settlement we agree to.

5. *"Employee"* includes a *leased worker*. Employee does not include a *temporary worker*.

6. *"Executive officer"* means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. *"Impaired property"* means tangible property, other than *your product* or *your work*, that cannot be used or is less useful because:

   a. It incorporates *your product* or *your work* that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of *your product* or *your work;* or

   b. Your fulfilling the terms of the contract or agreement.

8. *"Insured contract"* means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an *insured contract.*

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement; or

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for *bodily injury* or *property damage* to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f does not include that part of any contract or agreement;

(1) That indemnifies a railroad for *bodily injury* or *property damage* arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services.

**9.** *"Leased worker"* means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. *Leased worker* does not include a *temporary worker*.

**10.** *"Loading or unloading"* means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or *auto;*

**b.** While it is in or on an aircraft, watercraft or *auto;* or

**c.** While it is being moved from an aircraft, watercraft or *auto* to the place where it is finally delivered.

But *loading or unloading* does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or *auto.*

**11.** *"Mobile equipment"* means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers.

**e.** Vehicles not described in a, b, c or d above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers.

**f.** Vehicles not described in a, b, c or d above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not *mobile equipment* but will be considered *autos:*

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**12.** *"Occurrence"* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**13.** *"Personal injury"* means injury, other than *bodily injury*, arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. *"Products-completed operations hazard"*:

a. Includes all *bodily injury* and *property damage* occurring away from premises you own or rent and arising out of *your product* or *your work* except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, *your work* will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The *bodily injury* or *property damage* must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of *your product* for consumption on premises you own or rent.

b. Does not include *bodily injury* or *property damage* arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the *loading or unloading* of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

15. *"Property damage"* means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it.

16. *"Suit"* means a civil proceeding in which damages because of *bodily injury, property damage, personal injury* or *advertising injury* to which this insurance applies are alleged. *Suit* includes:

a. An arbitration proceeding in which such damages are claimed and to which the *insured* must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the *insured* submits with our consent.

17. *"Temporary worker"* means a person who is furnished to you to substitute for a permanent *employee* on leave or to meet seasonal or short-term workload conditions.

18. *"Your product"* means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

*Your product* includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your product*; and

b. The providing of or failure to provide warnings or instructions.

*Your product* does not include vending machines or other property rented to or located for the use of others but not sold.

19. *"Your work"* means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

*Your work* includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of *your work*; and

b. The providing of or failure to provide warnings or instructions.

## BIS-PAK® COMMON POLICY CONDITIONS

### Index of Policy Provisions

| | Page | | | Page |
|---|---|---|---|---|
| A. CANCELLATION | 1 | G. LIBERALIZATION | | 1 |
| B. CHANGES | 1 | H. OTHER INSURANCE | | 1 |
| C. CONCEALMENT, MISREPRESENTATION OR FRAUD | 1 | I. PREMIUMS | | 2 |
| D. EXAMINATION OF YOUR BOOKS AND RECORDS | 1 | J. TRANSFER OF RIGHTS OF RECOVERY | | 2 |
| E. INSPECTIONS AND SURVEYS | 1 | K. TRANSFER OF YOUR RIGHTS AND DUTIES | | 2 |
| F. INSURANCE UNDER TWO OR MORE COVERAGES | 1 | L. REPRESENTATIONS | | 2 |
| | | M. WHEN WE DO NOT RENEW | | 2 |

## BIS-PAK® COMMON POLICY CONDITIONS

All coverages of this Coverage Part are subject to the following conditions.

### A. CANCELLATION

1. The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

a. Ten days before the effective date of cancellation if we cancel for nonpayment of premium.

b. Thirty days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the First Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The First Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

### D. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### E. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### F. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### G. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

### H. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1 above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

3. Business Liability Coverage is excess over:

a. Any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builders' Risk, Installation Risk or similar coverage for your work;

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, autos or watercraft to the extent

not subject to Exclusion g.

**b.** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

**4.** When Business Liability Coverage is excess, we will have no duty to defend the insured against any *suit* if any other insurer has a duty to defend the insured against that *suit*. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When Business Liability Coverage is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**a.** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**b.** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

## I. PREMIUMS

**1.** The First Named Insured shown in the Declarations:

**a.** Is responsible for the payment of all premiums; and

**b.** Will be the payee for any return premiums we pay.

**2.** The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**3.** With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

**a.** Paid to us prior to the anniversary date; and

**b.** Determined in accordance with paragraph 2 above.

Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

**4.** Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium.

## J. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

### 1. Applicable to Property coverage:

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a loss to your Covered Property.

**b.** After a loss to your Covered Property only if, at the time of loss, that party is one of the following:

(1) Someone insured by this insurance;

(2) A business firm:

(a) Owned or controlled by you; or

(b) That owns or controls you; or

(3) Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

### 2. Applicable to Liability coverage:

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring *suit* or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

## K. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## L. REPRESENTATIONS

By accepting this policy, you agree:

**1.** The statements in the Declarations are accurate and complete;

**2.** Those statements are based upon representations you made to us; and

**3.** We have issued this policy in reliance upon your representations.

## M. WHEN WE DO NOT RENEW

If we elect not to renew this policy, we will mail or deliver to the First Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## COMPUTER COVERAGE

CB-7202(5-2000)

This endorsement modifies insurance provided under the following:

STANDARD BIS-PAK® PROPERTY COVERAGE FORM
DELUXE BIS-PAK® PROPERTY COVERAGE FORM

The coverage provided by this endorsement is subject to the provisions of the Bis-Pak® Property Coverage Form attached to this policy except as otherwise provided within this endorsement.

1. The first sentence of Property Coverages is replaced by the following:

    We will pay for direct physical loss of or damage to Covered Property caused by or resulting from any Covered Cause of Loss.

2. Covered Property under Property Coverages is replaced by the following:

    Covered property means the following types of property:

    a. Your *hardware* and *software;* and

    b. Similar property of others that is in your care, custody or control.

3. Property Not Covered under Property Coverages is replaced by the following:

    Covered Property does not include:

    a. **Accounts, Bills or Documents.**

        We do not cover accounts, bills, evidences of debt, records, abstracts, deeds, manuscripts, program documentation or other documents except those that are in *software* form and then only in that form.

    b. **Contraband.**

        We do not cover contraband or property in the course of illegal transportation or trade.

    c. **Loaned, Leased or Rented to Others.**

        We do not cover property that you loan, lease or rent to others.

    d. **Money and Securities.**

        We do not cover currency, food stamps, lottery tickets not held for sale, money, notes or securities.

    e. **Stock in Trade.**

        We do not cover your stock in trade.

    f. **Vehicle Components.**

        We do not cover *hardware* or *software* which is permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration.

4. Covered Causes of Loss under Property Coverages is replaced by the following:

    Risks of Direct Physical Loss unless the loss is excluded in Property Exclusions.

5. Additional Coverages under Property Coverages is replaced by the following:

    a. **Debris Removal.**

        We pay the cost to remove the debris of covered property that is caused by a covered cause of loss. This coverage does not include costs to:

        (1) Extract *pollutants* from land or water; or

        (2) Remove, restore or replace polluted land or water.

        We will not pay any more under this coverage than 25% of the amount we pay for the direct loss. We will not pay more for loss to property and debris removal combined than the *limit* for the damaged property. However, we will pay an additional amount of debris removal expense up to $10,000 when the debris removal expense exceeds 25% of the amount we pay for direct loss or when the loss to property and debris removal combined exceeds the *limit* for the damaged property.

        We do not pay any expenses unless they are reported to us in writing within 180 days from the date of direct physical loss to covered property.

    b. **Emergency Removal**

        We pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered cause of loss. We pay for any direct physical loss caused by a cause of loss that is not excluded. This coverage applies for up to thirty days after the property is first moved, but does not extend past the date on which this policy expires.

    c. **Extra Expense.**

        We pay the necessary extra expenses that you incur in order to resume or continue your *operations* which are interrupted due to direct physical loss caused by a covered cause of loss to covered property. We cover only the extra expenses that you incur during the *restoration period* and that are necessary to resume or continue your *operations* as nearly as practicable.

        We also cover extra expenses that you incur as a result of:

        (1) Damage to a premises if that damage prevents you from using the covered property;

        (2) Damage to the air conditioning or electrical system which is necessary for the operation of the *hardware* and results in a reduction or suspension of your *oper-*

*BIS-PAK ENDORSEMENTS*

ations. The cause of the damage must occur within 500 feet of the premises on which the *hardware* is located; or

(3) An order by a civil authority that specifically denies you access to a premises where you have covered property. The order must be as a result of damage caused by a covered cause of loss to the premises or to an adjacent property. This extension is limited to two consecutive weeks from the date of the order. This does not increase the *limit.*

The most we pay for extra expenses that you incur because of one occurrence is the Extra Expense Limit shown on the Schedule.

d. *Pollutant* **Cleanup and Removal.**

We pay your expense to extract *pollutants* from land or water if the discharge, dispersal, seepage, migration, release or escape of the *pollutants* is caused by a covered cause of loss that occurs during the policy period. The expenses are paid only if they are reported to us in writing within 180 days from the date the covered cause of loss occurs.

We do not pay the cost of testing, evaluating, observing or recording the existence level or effects of *pollutants.* However, we pay the cost of testing which is necessary for the extraction of *pollutants* from land or water.

The most we pay for each site or location is $10,000 for the sum of all such expenses arising out of a covered cause of loss occurring during each separate 12 month period of this policy.

6. Property Extensions of Coverage are replaced by the following:

a. **Disturbance and Mechanical Breakdown Coverage.**

We pay for loss to covered property caused by *mechanical breakdown.* We also pay for loss to covered property caused by *electrical disturbance* and *power supply disturbance.*

b. **Newly Purchased or Leased Hardware.**

In the event that you purchase or lease additional *hardware* during the policy period, we extend coverage to the additional *hardware* for up to 60 days.

The most we pay for any loss under this additional coverage is the least of:

(1) The actual cash value of the covered property;

(2) The *Hardware Limit* shown on the Schedule; or

(3) $250,000.

This additional coverage will end when any of the following first occur:

(1) This policy expires;

(2) 60 days after you obtain the additional *hardware;* or

(3) You report the additional *hardware* to us.

c. *Software* **Storage.**

We cover duplicate and back-up *software* which is stored at a premises where you do not conduct *operations* with that *software* and which is not covered under any other coverage form. The most we pay for loss to *software* at any one storage location is $25,000. We do not include the value of duplicate *software* stored at a premises where you do not conduct *operations* when applying the Coinsurance condition.

7. Property Exclusions are replaced by the following:

a. We do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as or after the excluded causes or events.

(1) Civil Authority.

We do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction or quarantine of property.

We do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a cause of loss excluded under this coverage.

(2) Nuclear Hazard.

We do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion or smoke. We do pay for direct loss by fire resulting from the nuclear hazard.

(3) War.

We do not pay for loss caused by war. This means:

(a) Declared war, undeclared war, civil war, insurrection, rebellion or revolution;

(b) A warlike act by a military force or by military personnel;

(c) The destruction, seizure or use of the property for a military purpose; or

(d) The discharge of a nuclear weapon even if it is accidental.

**b.** We do not pay for loss or damage if one or more of the following exclusions apply to the loss.

(1) Criminal, Fraudulent or Dishonest Acts.

We do not pay for loss caused by or resulting from criminal, fraudulent, dishonest or illegal acts alone or in collusion with another by:

(a) You;

(b) Others who have an interest in the property;

(c) Others to whom you entrust the property;

(d) Your partners, officers, directors, trustees or joint adventurers; or

(e) The employees or agents of (a), (b), (c) or (d) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by your employees, but we do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

(2) Deterioration, Fault or Weakness.

We do not pay for deterioration; decay; or any quality, fault or weakness in the covered property that causes it to damage or destroy itself. This exclusion does not apply to loss caused by *mechanical breakdown*.

(3) Lease Terms.

We do not pay for loss caused by a covered cause of loss for which you are not responsible under the terms of any lease or rental agreement.

(4) Loss of Use.

We do not pay for loss caused by or resulting from loss of use, business interruption, delay or loss of market.

This exclusion does not apply to Extra Expense coverage as provided under Additional Coverages.

(5) *Pollutants*.

We do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal or escape of *pollutants*.

This exclusion does not apply to *Pollutant* Clean-Up and Removal Coverage as provided under Additional Coverages.

(6) Temperature, Humidity, Corrosion or Rust.

We do not pay for loss caused by corrosion, rust, humidity, dampness, dryness or changes in or extremes of temperature.

We do pay for loss to covered property that results from a direct physical loss caused by a covered cause of loss to the air conditioning system that services covered *hardware*.

**c.** We do not pay for extra expenses that you incur if one or more of the following exclusions apply.

(1) Error or Omission.

We do not pay for extra expense caused by error or omission in programming or incorrect instructions to *hardware*.

(2) Leases, Licenses, Contracts or Orders.

We do not pay for any increase in extra expenses due to the suspension, lapse or cancellation of leases, licenses, contracts or orders. However, we do cover loss during the *restoration period* if the suspension, lapse or cancellation results directly from the interruption of your *operations*.

We do not cover any extra expense beyond the *restoration period* caused by the suspension, lapse or cancellation of leases, licenses, contracts or orders.

(3) Strikes, Protests or Interference.

We do not pay for any increase in extra expenses due to interference by strikers or other persons. This applies to interference with rebuilding, repairing or replacing covered property or with the resumption of *operations*.

**8.** Property Limits of Insurance is replaced by the following:

The most we will pay for loss or damage in any one occurrence is the applicable *limit* shown on the Schedule.

**9.** Property Deductibles is replaced by the following:

(continued next page)

We pay only that part of your loss over the deductible amount indicated on the Schedule in any one occurrence. If property insured under this endorsement and property insured under the Bis-Pak® Property Coverage Form to which this endorsement is attached is damaged in one occurrence, only the single highest deductible will apply.

10. The following are added to Property Loss Conditions:

   a. **Actual Cash Value.**

   When Actual Cash Value is indicated on the Schedule, the value of covered property is based on the actual cash value at the time of loss (with a deduction for depreciation).

   b. **Replacement Cost.**

   When Replacement Cost is indicated on the Schedule, the value of covered property will be based on the replacement cost without any deduction for depreciation.

   The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount you spend to repair or replace the damaged or destroyed property.

   Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. You may make a claim for actual cash value before repair or replacement takes place and later for the replacement cost if you notify us of your intent within 180 days after the loss.

   c. **Pair or Set.**

   The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

   However, this provision does not apply to *software* that comes in sets. If part of a software set cannot be replaced, the loss is considered a total loss of the set.

   d. **Coinsurance.**

   We only pay a part of the loss if the *limit* is less than the percentage of the value of the covered property that is indicated on the Schedule. Our part of the loss is determined using the following steps:

   (1) Multiply the Coinsurance Percentage indicated on the Schedule by the value of the covered property at the time of loss;

   (2) Divide the *limit* for covered property by the result determined in d(1) above;

   (3) Multiply the total amount of loss, after

application of any deductible, by the result determined in d(2) above.

The most we pay is the amount determined in d(3) above or the *limit*, whichever is less. We do not pay any remaining part of the loss.

If there is more than one *limit* indicated on the Schedule, this procedure applies separately for each *limit*.

If there is only one *limit* indicated on the Schedule, this procedure applies to the total of all covered property to which the *limit* applies.

11. The following Property Definition is replaced for the purposes of the insurance provided by this endorsement:

   *"Operations"* means your normal electronic data processing operations.

12. The following are added to Property Definitions:

   a. *"Electrical disturbance"* means electrical or magnetic damage, disturbance of electronic recordings or erasure of electronic recordings.

   b. *"Hardware"* means an assemblage of electronic machine components capable of accepting instructions and information, processing the information according to the instructions and producing desired results.

   c. *"Limit"* means the amount of coverage that applies.

   d. *"Mechanical breakdown"* means mechanical breakdown or malfunction, component failure, faulty installation or blowout.

   e. *"Power supply disturbance"* means interruption of power supply, power surge, blackout or brownout.

   f. *"Restoration period"* means the time it should take to resume your *operations* starting from the date of loss to covered property caused by a covered cause of loss, and ending on the date the property should be rebuilt, repaired or replaced. This is not limited by the end of the policy period.

   This does not include any increase in time due to the enforcement of any ordinance, law or decree that:

   (1) Regulates the construction, use, repair or demolition of any property; or

   (2) Requires the testing, evaluating, observing or recording the existence, level or effects of *pollutants.*

   g. *"Software"* means:

   (1) Processing, recording or storage media used for electronic data processing operations. This includes films, tapes,

(continued next page)

cards, discs, drums, cartridges or cells; and

(2) Data, information and instructions

stored on processing, recording or storage media used for electronic data processing operations.

## SCHEDULE

| Hardware Limit | Software Limit | Extra Expense Limit |
|---|---|---|
| $250,000 | $62,500 | $10,000 |

| Deductible Amount | Covered Property Valuation | Coinsurance Percentage |
|---|---|---|
| $250 | REPLACEMENT COST | 90% |

## ADDITIONAL INSURED — DESIGNATED PERSON(S) OR ORGANIZATION(S)

CB-7034(2-02)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

1. The following is added to Who Is an Insured:

   Any person or organization shown in the Schedule is also an insured, but only with respect to vicarious liability arising out of your ongoing operations or premises owned by or rented to you.

2. With respect to the insurance afforded to these additional insureds, the following exclusion is added:

   2. Exclusions

      This insurance does not apply to *bodily in-*

*jury* or *property damage* occurring after:

(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2) That portion of *your work* out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

## SCHEDULE

### Person or Organization
### (Name and Address)

ADP TOTALSOURCE
C/O AON RISK SERVICES
1001 BRICKEL BAY RD STE 1100
MIAMI FL 33131

JONES LANG LASALLE
AMERICAS LP
100 SAUNDERS RD
LAKE FOREST IL 60045

AMCOL INTERNATIONAL CORP
1500 W SHURE DR
ARLINGTON HEIGHTS IL 60004

**BIS-PAK® ENHANCEMENT ENDORSEMENT**

CB-7203(9-01)

This endorsement modifies insurance provided under the following:

BIS-PAK® COVERAGE PART

## ADDITIONAL COVERAGES

### 1. Computer Coverage

We will pay for direct physical loss of or damage to covered property caused by or resulting from any covered cause of loss.

**a.** Covered Property under Property Coverages is replaced by the following:

Covered property means the following types of property:

(1) Your *hardware* and *software;* and

(2) Similar property of others that is in your care, custody or control.

**b.** Property Not Covered under Property Coverages is replaced by the following:

Covered Property does not include:

(1) Accounts, Bills or Documents.

We do not cover accounts, bills, evidences of debt, records, abstracts, deeds, manuscripts, program documentation or other documents except those that are in *software* form and then only in that form.

(2) Contraband.

We do not cover contraband or property in the course of illegal transportation or trade.

(3) Loaned, Leased or Rented to Others.

We do not cover property that you loan, lease or rent to others.

(4) *Money* and *Securities.*

We do not cover *money, securities,* food stamps or lottery tickets.

(5) Stock in Trade.

We do not cover your stock in trade.

(6) Vehicle Components.

We do not cover *hardware* or *software* which is permanently installed or designed to be permanently installed in any aircraft, watercraft, motortruck or other vehicle subject to motor vehicle registration.

**c.** Additional Coverage under Property Coverages is replaced by the following:

(1) Emergency Removal.

We pay for loss to covered property while it is moved or being moved to prevent a loss caused by a covered cause of loss. We pay for any direct physical loss caused by a cause of loss that is not excluded. This coverage applies for up to thirty days after the property is first moved, but does not extend past the date on which this policy expires.

(2) Extra Expense.

We pay the necessary extra expenses that you incur in order to resume or continue your *operations* which are interrupted due to direct physical loss caused by a covered cause of loss to covered property. We cover only the extra expenses that you incur during the *restoration period* and that are necessary to resume or continue your *operations* as nearly as practicable.

The most we pay for extra expenses that you incur because of one occurrence is $2,500.

**d.** Property Extensions of Coverage are replaced by the following:

**Disturbance and Mechanical Breakdown Coverage.**

We pay for loss to covered property caused by *mechanical breakdown.* We also pay for loss to covered property caused by *electrical disturbance* and *power supply disturbance.*

**e.** Property Limits of Insurance is replaced by the following:

The most we will pay for loss or damage in any one occurrence is $10,000.

**f.** Property Deductibles is replaced by the following:

We pay only that part of your loss over $250.

**g.** The following Property Definition is replaced for the purposes of the insurance provided by this endorsement:

*"Operations"* means your normal electronic data processing operations.

**h.** The following are added to Property Definitions:

(1) *"Electrical disturbance"* means electrical or magnetic damage, disturbance of electronic recordings or erasure of electronic recordings.

(2) *"Hardware"* means an assemblage of electronic machine components capable of accepting instructions and information, processing the information according to the instructions and producing desired results.

(continued next page)

(3) *"Mechanical breakdown"* means mechanical breakdown or malfunction, component failure, faulty installation or blowout.

(4) *"Power supply disturbance"* means interruption of power supply, power surge, blackout or brownout.

(5) *"Restoration period"* means the time it should take to resume your *operations* starting from the date of loss to covered property caused by a covered cause of loss, and ending on the date the property should be rebuilt, repaired or replaced. This is not limited by the end of the policy period.

(6) *"Software"* means:

    (a) Processing, recording or storage media used for electronic data processing operations. This includes films, tapes, cards, discs, drums, cartridges or cells; and

    (b) Data, information and instructions stored on processing, recording or storage media used for electronic data processing operations.

## 2. Employee Tools

**a.** We will pay for direct physical loss of or damage to employees' tools which are used in connection with your business caused by or resulting from any covered cause of loss.

**b.** The most we will pay under this additional coverage is $5,000 which is not to exceed $500 per item.

## 3. Fine Arts Coverage

We will pay for direct physical loss of or damage to fine arts which are not covered by insurance purchased specifically for the item caused by or resulting from any covered cause of loss.

We do not pay for fine arts that are on display at fairgrounds or at a national or international exposition.

We do not pay for loss or damage to fine arts caused by or that results from:

**a.** A process to repair, retouch, restore, adjust, service or maintain the covered fine arts. If a fire or explosion results, we do not cover the loss caused by the fire or explosion.

**b.** The gradual accumulation of dust, dirt or pollutants.

**c.** Breakage of art glass windows, statuary, marbles, glassware, bric-a-brac, porcelains or similar fragile items unless it is caused by a covered cause of loss under the Standard Bis-Pak® Property Coverage Form or *specified causes of loss* under the Deluxe

Bis-Pak® Property Coverage Form.

The most we will pay under this additional coverage is $5,000.

## COVERED CAUSES OF LOSS — ADDITIONAL COVERAGES

Covered Causes of Loss under Property Coverages is replaced by the following for Additional Coverages 1 - Computer Coverage, 2 - Employee Tools and 3 - Fine Arts Coverage:

Risks of Direct Physical Loss unless the loss is excluded in Property Exclusions — Additional Coverages.

## PROPERTY EXCLUSIONS — ADDITIONAL COVERAGES

Property Exclusions are replaced by the following for Additional Coverages 1 - Computer Coverage, 2 - Employee Tools and 3 - Fine Arts Coverage:

**1.** We do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as or after the excluded causes or events.

    **a.** Civil Authority.

    We do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction or quarantine of property.

    We do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a cause of loss excluded under this coverage.

    **b.** Nuclear Hazard.

    We do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation or radioactive contamination, however caused. Loss caused by nuclear hazard is not considered loss caused by fire, explosion or smoke. We do pay for direct loss by fire resulting from the nuclear hazard.

    **c.** War.

    We do not pay for loss caused by war. This means declared war, undeclared war, civil war, insurrection, rebellion or revolution; a warlike act by a military force or by military personnel; the destruction, seizure or use of the property for a military purpose; or the discharge of a nuclear weapon even if it is accidental.

**2.** We do not pay for loss or damage if one or more of the following exclusions apply to the loss.

    **a.** Dishonesty.

    We do not pay for loss caused by or result-

(continued next page)

ing from criminal, fraudulent, dishonest or illegal acts alone or in collusion with another by you; others who have an interest in the property; others to whom you entrust the property; your partners, officers, directors, trustees or joint adventurers; or the employees of agents of any of the above, whether or not they are at work.

This exclusion does not apply to acts of destruction by your employees, but we do not pay for theft by employees.

This exclusion does not apply to covered property in the custody of a carrier for hire.

**b.** Deterioration, Fault or Weakness.

We do not pay for deterioration; decay; or any quality, fault or weakness in the covered property that causes it to damage or destroy itself. This exclusion does not apply to loss caused by *mechanical breakdown.*

**c.** Lease Terms.

We do not pay for loss caused by a covered cause of loss for which you are not responsible under the terms of any lease or rental agreement.

**d.** Loss of Use.

We do not pay for loss caused by or resulting from loss of use, business interruption, delay or loss of market.

This exclusion does not apply to Extra Expense coverage as provided under Additional Coverages.

**e.** Temperature, Humidity, Corrosion or Rust.

We do not pay for loss caused by corrosion, rust, humidity, dampness, dryness or changes in or extremes of temperature.

**f.** Mysterious disappearance.

**g.** Wear and tear

3. We do not pay for extra expenses that you incur if one or more of the following exclusions apply.

**a.** Error or Omission.

We do not pay for extra expense caused by error or omission in programming or incorrect instructions to *hardware.*

**b.** Leases, Licenses, Contracts or Orders.

We do not pay for any increase in extra expenses due to the suspension, lapse or cancellation of leases, licenses, contracts or orders. However, we do cover loss during the *restoration period* if the suspension, lapse or cancellation results directly from the interruption of your *operations.*

## EXTENSIONS OF COVERAGE

1. **Increased Accounts Receivable Coverage**

   We will increase the amount shown in the Declarations for Accounts Receivable Coverage by $15,000.

2. **Increased Valuable Papers Coverage**

   We will increase the amount shown in the Declarations for Valuable Papers Coverage by $15,000.

3. **Business Income and Extra Expense**

   Item (5) of the Business Income and Extra Expense Additional Coverage is replaced by the following:

   We will only pay for Loss of Business Income or Extra Expense that you sustain during the *period of restoration.* Items (1) through (5) of this Additional Coverage are not subject to the Limits of Insurance.

4. **Extended Business Income and Extra Expense Coverage**

   The number of days listed in paragraph (6)(b)(ii) of the Business Income and Extra Expense Additional Coverage is replaced with 60 days.

5. **Fire Department Service Charge**

   Fire Department Service Charge is replaced by the following:

   When the fire department is called to save or to protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000 for your liability for fire department service charges:

   **a.** Assumed by contract or agreement prior to loss; or

   **b.** Required by local ordinance.

6. **Outdoor signs**

   The limit shown in item 2 of Property Limits of Insurance is increased to $5,000.

7. **Costs to Prepare Inventory Coverage**

   We will pay up to $2,500 for reasonable expenses for the taking of inventory and appraisals, incurred by you at your request to assist us in the determination of the amount of a covered loss.

   We do not pay for any expense incurred under the Property Loss Conditions, Appraisals; or any public adjusters' fees.

(continued next page)

### 8. Extinguisher Recharging

We will pay your costs of recharging your fire extinguishers or fire extinguishing systems (including hydrostatic testing if needed), or replacing the fire extinguishing or fire extinguishing systems, whichever is less, because they are discharged as a result of fighting a fire or within 50 feet of your described premises.

The most we will pay under this extension is $1,000.

### 9. Lock Replacement

We will cover your costs to repair or replace door locks or tumblers of your described premises because of theft of your door keys. The most we will pay under this extension is $1,000.

### 10. Arson Reward

We will pay up to $5,000 to any individual or organization for information leading to an arson conviction in connection with loss or damage to covered property. This amount is the most we will pay, regardless of the number of persons or organizations involved in providing information.

## BUSINESS LIABILITY COVERAGE — TENANTS LIABILITY                    CB-0455(1-97)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

**1.** The final paragraph of Exclusions — Applicable to Business Liability Coverage is replaced by the following:

With respect to the premises shown in the Schedule of this endorsement which are rented to you or temporarily occupied by you with the permission of the owner, exclusions c, d, e, g, h, k, l, m, n and o do not apply to *property damage*.

**2.** Paragraph 2 of the Liability and Medical Expenses Limits of Insurance is replaced by the following:

The most we will pay under this endorsement for the sum of all damages because of all *property damage* arising out of any one *occurrence* to premises rented to you or temporarily occupied by you with the permission of the owner is the Tenants Liability Limit of Insurance shown in the Schedule.

**3.** With respect to the premises shown in the Schedule of this endorsement, paragraph 3 and paragraph 4b of Liability and Medical Expenses Limits of Insurance are deleted.

### SCHEDULE

| Premises | Tenants Liability Limit of Insurance (Per Occurrence) |
|---|---|
| 1500 W SHURE DR ARLINGTON HEIGHTS IL | $ 100,000 |

## EMPLOYMENT-RELATED PRACTICES EXCLUSION                    CB-0417(1-96)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

The following exclusion is added:

This insurance does not apply to *bodily injury* or *personal injury* to:

1. A person arising out of any:

a. Refusal to employ that person;

b. Termination of that person's employment; or

c. Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, hu-

miliation or discrimination directed at that person; or

2. The spouse, child, parent, brother or sister of that person as a consequence of *bodily injury* or *personal injury* to that person at whom any of the employment-related practices described in paragraphs a, b or c above is directed.

The Employment-Related Practices Exclusion applies:

1. Whether the insured may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

## ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

BIS-PAK® COVERAGE PART

**1.** The Cancellation Bis-Pak® Common Policy Condition is replaced by the following:

### CANCELLATION

**a.** The First Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

**b.** (1) We may cancel this policy by mailing to the First Named Insured, any mortgagee or lienholder known to us and the agent or broker written notice stating the reason for cancellation.

(2) If we cancel for nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

(3) If we cancel for a reason other than nonpayment of premium, except as provided in paragraph h below, we will mail the notice at least:

(a) Thirty days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

(b) Sixty days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

**c.** If this policy has been in effect for more than 60 days, except as provided in paragraphs h and i below, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained through a material misrepresentation;

(3) Any insured has violated any of the terms and conditions of the policy;

(4) The risk originally accepted has measurably increased;

(5) Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

(6) A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

**d.** We will mail our notice to the First Named Insured, any mortgagee or lienholder known to us and the agent or broker, at the respective mailing addresses last known to us.

**e.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**f.** If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the First Named Insured cancels, the refund may be less than pro

rata. The cancellation will be effective even if we have not made or offered a refund.

**g.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**h. Real Property Other Than Residential Properties Occupied by Four Families or Less:**

The following applies only if this policy covers real property other than residential property occupied by four families or less:

If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation to be effective 10 days after such notice is received:

(1) After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

(2) The building has been unoccupied 60 or more consecutive days. This does not apply to:

(a) Seasonal unoccupancy; or

(b) Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

(3) The building has:

(a) An outstanding order to vacate;

(b) An outstanding demolition order; or

(c) Been declared unsafe in accordance with the law.

(4) Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

**i. Residential Properties Occupied by Four Families or Less:**

The following applies if this policy covers residential properties occupied by four families or less:

If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained by misrepresentation or fraud; or

(3) Any act that measurably increases the risk originally accepted.

**2.** The When We Do Not Renew Bis-Pak® Common Policy Condition is replaced by the following:

### NONRENEWAL

**a.** If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal no less than 60 days before the expiration date.

**b.** We will mail our notice to the following at the respective mailing addresses last known to us:

(continued next page)

(1) The First Named Insured;

(2) The broker, if known to us, or the agent of record; and

(3) The last known mortgagee or lienholder named in the policy.

c. Even if we do not comply with these terms, this policy will terminate:

(1) On the expiration date if:

(a) You fail to perform any of your obligations in connection with the payment of the premium for the policy, or any installment payment, whether payable directly to us or our agents or indirectly under any premium finance plan or extension of credit;

(b) We have indicated our willingness to renew this policy to you or your representative; or

(c) You have notified us or our agent that you do not want to renew this policy.

(2) On the effective date of any other insurance replacing this policy.

d. If notice is mailed, proof of mailing will be sufficient proof of notice.

e. The following provision applies only if this policy covers residential properties occupied by four families or less:

If this policy has been issued to you and in effect for five or more years, we may not fail to renew this policy unless:

(1) The policy was obtained by misrepresentation or fraud;

(2) The risk originally accepted has measurably increased; or

(3) You received 60 days' notice of our intent not to renew as provided in paragraphs a through d above.

3. The following is added to the Legal Action Against Us Property Loss Condition:

The period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

4. If this policy covers:

a. Real property used principally for residential purposes up to and including a four family dwelling; or

b. Household or personal property that is usual or incidental to the occupany of any premises used for residential purposes;

then the following provisions apply:

a. The following is added to the Appraisal Property Loss Condition and supersedes any provision to the contrary:

(1) Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in b below.

(2) We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

(a) You demanded the appraisal; and

(b) The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

b. The Concealment, Misrepresentation or Fraud Bis-Pak® Common Policy Condition is replaced by the following:

### Concealment, Misrepresentation or Fraud

a. This Coverage Part is void if you or any insured commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

(1) Was made with actual intent to deceive; or

(2) Materially affected either our decision to provide this insurance or the hazard we assumed.

However, this condition will not serve as a reason to void this Coverage Part after the Coverage Part has been in effect for one year or one policy term, whichever is less.

b. This Coverage Part is void if you or any other insured at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

(1) This Coverage Part;

(2) The Covered Property;

(3) Your interest in the Covered Property; or

(4) A claim under this Coverage Part.

c. Notwithstanding the limitations stated in a above, we may cancel the Coverage Part in accordance with the terms of the Cancellation Condition.

5. The following exclusion is added to item 2 under Property Exclusions:

a. We will not pay for loss or damage arising out of any act committed:

(1) By or at the direction of any insured; and

(2) With the intent to cause a loss.

b. However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

(1) The loss arose out of a pattern of criminal domestic violence; and

(2) The perpetrator of the loss is criminally prosecuted for the act causing the loss.

(continued next page)

c. If we pay a claim pursuant to paragraph 5b, our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

## FUNGI OR BACTERIA EXCLUSION (LIABILITY)

CB-0577(11-02)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

A. The following exclusion is added to Paragraph 1 under Exclusions:

**t. Fungi or Bacteria**

(1) *Bodily injury, property damage, personal injury* or *advertising injury* which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any *fungi* or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

(2) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, *fungi* or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any *fungi* or bacteria that are, are on, or are contained in, a good or product intended for consumption.

B. The following definition is added to Liability and Medical Expenses Definitions:

1. *"Fungi"* means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

## EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

CB-0542(11-02)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a *certified act of terrorism* that are awarded as punitive damages.

B. The following definition is added:

*"Certified act of terrorism"* means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a *certified act of terrorism:*

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

## LIMITED FUNGI OR BACTERIA COVERAGE

This endorsement modifies insurance provided under the following:

DELUXE BIS-PAK® PROPERTY COVERAGE FORM

### A. Fungi or Bacteria Exclusions

1. Under Property Coverages paragraph 5k(5) of the Increased Cost of Construction Additional Coverage is replaced by the following:

   (5) Under this Additional Coverage, we will not pay for:

   (a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by *pollutants* or due to the presence, growth, proliferation, spread or any activity of *fungi,* wet or dry rot or bacteria; or

   (b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of *pollutants, fungi,* wet or dry rot or bacteria.

2. The following exclusion is added to Paragraph 1, under Property Exclusions:

   h. **Fungi, Wet Rot, Dry Rot and Bacteria**

   Presence, growth, proliferation, spread or any activity of *fungi,* wet or dry rot or bacteria.

   But if *fungi,* wet or dry rot or bacteria result in a *specified cause of loss,* we will pay for the loss or damage caused by that *specified cause of loss.*

   This exclusion does not apply:

   (1) When *fungi,* wet or dry rot or bacteria result from fire or lightning; or

   (2) To the extent that coverage is provided in the Additional Coverage — Limited Coverage for Fungi, Wet or Dry Rot and Bacteria (contained in the Limited Fungi or Bacteria Coverage) if any, with respect to loss or damage by a cause of loss other than fire or lightning.

3. Paragraph 2k(2) of the Property Exclusions is replaced by the following:

   (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

### B. Limited Fungi or Bacteria Coverage

The following Additional Coverage is added to Paragraph 5 under Property Coverages:

m. **Limited Coverage for Fungi, Wet Rot, Dry Rot and Bacteria**

   (1) The coverage described in Paragraphs B1m(2) and B1m(6) only applies when the *fungi,* wet or dry rot or bacteria are the result of a *specified cause of loss* other than fire or lightning that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

   (2) We will pay for loss or damage by *fungi,* wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

   (a) Direct physical loss or damage to Covered Property caused by *fungi,* wet or dry rot or bacteria, including the cost of removal of the *fungi,* wet or dry rot or bacteria;

   (b) The cost to tear out and replace any part of the building or other property as needed to gain access to the *fungi,* wet or dry rot or bacteria; and

   (c) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that *fungi,* wet or dry rot or bacteria are present.

   (3) Unless a higher limit is selected in the Schedule, the coverage described under this Limited Coverage is limited to $15,000. If the Schedule indicates that the Separate Premises or Locations Options applies, then the amount of coverage is made applicable to separate premises or locations as described in the Schedule. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of *specified causes of loss* (other than fire or lightning) which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in *fungi,* wet or dry rot or bacteria, we will not pay more than the total of $15,000 unless a higher limit is selected in the Schedule even if the *fungi,* wet or dry rot or

(continued next page)

bacteria continues to be present or active, or recurs, in a later policy period.

(4) The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by *fungi,* wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by *fungi,* wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that *fungi,* wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

(5) The terms of this Limited Coverage do not increase or reduce the coverage provided under the Water, Other Liquids, Powder or Molten Material Damage or Collapse Additional Coverages.

(6) The following applies only if Business Income and Extra Expense Coverage applies to the described premises and only if the suspension of *operations* satisfies all the terms and conditions of the applicable Business Income and Extra Expense Additional Coverage.

a. If the loss which resulted in *fungi,*

wet or dry rot or bacteria does not in itself necessitate a suspension of *operations,* but such suspension is necessary due to loss or damage to property caused by *fungi,* wet or dry rot or bacteria, then our payment under the Business Income and Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days unless another number of days in indicated in the Schedule. The days need not be consecutive.

b. If a covered suspension of *operations* was caused by loss or damage other than *fungi,* wet or dry rot or bacteria, but remediation of *fungi,* wet or dry rot or bacteria prolongs the *period of restoration,* we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the *period of restoration*), but such coverage is limited to 30 days unless another number of days is indicated in the Schedule. The days need not be consecutive.

### C. Fungi Definition

The following definition is added to Property Definitions:

*"Fungi"* means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

### SCHEDULE

**No Options Apply**

---

## WAR LIABILITY EXCLUSION

CB-0514(1-03)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

A. Exclusion i., under **Exclusions, 1. Applicable To Business Liability Coverage** is replaced by the following:

This insurance does not apply to:

i. **War**

*Bodily injury, property damage, personal injury,* or *advertising injury,* however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending

against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

B. Exclusion h., under **Exclusions, 2. Applicable To Medical Expenses Coverage** does not apply. Medical Expenses due to war are now subject to Exclusion g. of **Exclusions, 2. Applicable to Medical Expenses Coverage** since *bodily injury* arising out of war is now excluded under Exclusion i. of **Exclusions, 1. Applicable To Business Liability Coverage.**

## HIRED AUTO AND NONOWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

1. Insurance is provided as stated below.

   a. **Hired Auto Liability**

   The insurance provided under the Liability and Medical Expenses Coverages Section, paragraph 1, Business Liability, applies to *bodily injury* or *property damage* arising out of the maintenance or use of a *hired auto* by you or your *employees* in the course of your business.

   b. **Nonowned Auto Liability**

   The insurance provided under the Liability and Medical Expenses Coverages Section, paragraph 1, Business Liability, applies to *bodily injury* or *property damage* arising out of the use of any *nonowned auto* in your business.

2. For insurance provided by this endorsement only:

   a. The exclusions under paragraph 1, Applicable to Business Liability Coverage, other than exclusions a, b, d, f and i and the Nuclear Energy Liability Exclusion, are deleted and replaced by the following:

   (1) *Bodily injury* to:

   (a) An *employee* of the insured arising out of and in the course of:

   (i) Employment by the insured; or

   (ii) Performing duties related to the conduct of the insured's business; or

   (b) The spouse, child, parent, brother or sister of that *employee* as a consequence of (a) above.

   This exclusion applies:

   (a) Whether the insured may be liable as an employer or in any other capacity; and

   (b) To any obligation to share damages with or repay someone else who must pay damages because of injury.

   This exclusion does not apply to:

   (a) Liability assumed by the insured under an *insured contract*; or

   (b) *Bodily injury* arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be

provided under any workers' compensation law.

   (2) *Property damage* to:

   (a) Property owned or being transported by, or rented or loaned to the insured; or

   (b) Property in the care, custody or control of the insured.

   b. **Who Is an Insured** is replaced by the following:

   Each of the following is an insured under this endorsement to the extent set forth:

   (1) You for any covered auto.

   (2) Anyone else while using with your permission a covered auto you lease, hire, rent or borrow except:

   (a) The owner or anyone else from whom you lease, hire, rent or borrow a covered auto. This exception does not apply if the covered auto is a trailer connected to a covered auto you own.

   (b) Your employee if the covered auto is owned by that employee or a member of his or her household.

   (c) Someone using a covered auto while he or she is working in an auto business unless that business is yours.

   (d) Anyone other than your employees, partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower of any of their employees, while moving property to or from a covered auto.

   (e) A partner (if you are a partnership) or a member (if you are a member) for a covered auto owned by him or her or a member of his or her household.

   (f) Any person engaged in the business of his or her employer for bodily injury to any co-employee of such person injured in the course of employment or to the spouse, child, parent, brother or sister of that co-employee as a consequence of such bodily injury, or for any obligation to share damages with or repay someone else who must pay damages because of the injury.

   (3) Anyone liable for the conduct of the insured described above but only to the

(continued next page)

extent of that liability.

3. The following additional definitions apply:

   a. *"Auto business"* means the business or occupation of selling, repairing, servicing, storing or parking *autos*.

   b. *"Hired Auto"* means only those *autos* you lease, hire, rent or borrow. This does not include any *auto* you lease, hire, rent or borrow:

      (1) From any of your *employees*, partners (if you are a partnership), members (if you are a limited liability company) or members of their households; or

      (2) If the lease or rental agreement involv-

ing that *auto* is for a term of longer than 30 consecutive days.

   c. *"Nonowned Auto"* means only those autos you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes autos owned by your employees, partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business.

4. The insurance provided under this endorsement is not subject to item 4, Aggregate Limits, of the Liability and Medical Expenses Limits of Insurance Section.

---

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

IL-0985R(1-03)

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

A. **Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage

for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the policy Declarations.

B. **Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

---

## ASBESTOS EXCLUSION

CB-7016(1-90)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

It is understood and agreed that coverage provided

by this policy does not apply to *bodily injury* or *property damage* arising out of the manufacture, storage, distribution, installation, service, repair or removal of asbestos or products containing asbestos.

**LIMITED EXCLUSION OF ACTS OF TERRORISM (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM; COVERAGE FOR CERTAIN FIRE LOSSES**

CB-0534(11-02)

This endorsement modifies insurance provided under the following:

STANDARD BIS-PAK® PROPERTY COVERAGE FORM
DELUXE BIS-PAK® PROPERTY COVERAGE FORM

**A.** The following definitions are added with respect to the provisions of this endorsement:

1. *"Certified act of terrorism"* means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The criteria contained in that Act for a *certified act of terrorism* include the following:

   **a.** The act resulted in aggregate losses in excess of $5 million; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. *"Other act of terrorism"* means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. However, *other act of terrorism* does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of *certified act of terrorism*, when such act resulted in aggregate losses of $5 million or less.

**B.** The following exclusion is added:

**EXCLUSION OF AN *OTHER ACT OF TERRORISM***

We will not pay for loss or damage caused directly or indirectly by an *other act of terrorism*. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to such act:

1. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

2. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials; or

3. The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of *other acts of terrorism* which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident.

With respect to this Item **B.3.**, the immediately preceding paragraph describes the threshold used to measure the magnitude of an *other act of terrorism* and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an *other act of terrorism*, there is no coverage under this Coverage Form or Policy.

**C. Exception Covering Certain Fire Losses**

If an *other act of terrorism* results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the exception does not apply to insurance provided under Business Income and Extra Expense Additional Coverages.

**D. Cap On Certified Terrorism Losses**

With respect to any one or more *certified acts of terrorism* under the federal Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

(continued next page)

**E. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Form or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**LIMITED TERRORISM EXCLUSION (OTHER THAN CERTIFIED ACTS OF TERRORISM); CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

CB-0538(12-02)

This endorsement modifies insurance provided under the following:

BIS-PAK® BUSINESS LIABILITY AND MEDICAL EXPENSES COVERAGE FORM

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

*Any injury or damage* arising, directly or indirectly, out of an *other act of terrorism.* However, this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an *other act of terrorism* and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

1. For the purposes of this endorsement, *"any injury or damage"* means any injury or damage covered under any Coverage Form to which this endorsement is applicable, and includes but is not limited to *bodily injury, property damage,* or *personal injury* or *advertising injury,* as may be defined in any applicable Coverage Form.

2. *"Certified act of terrorism"* means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a *certified act of terrorism:*

    **a.** The act resulted in aggregate losses in excess of $5 million; and

    **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. *"Other act of terrorism"* means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. However, *other act of terrorism* does not include an act which meets the criteria set forth in Paragraph **b.** of the definition of "certified act of terrorism" when such act resulted in aggregate losses of $5 million or less. Multiple incidents of an *other act of terrorism* which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** In the event of an *other act of terrorism* that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Form or Policy.

(continued next page)

D. With respect to any one or more *certified acts of terrorism,* we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

# EXHIBIT G

2145514.01.01.doc
1640937/RAW

# *ACUITY* PROOF OF LOSS – FIDELITY

2800 South Taylor Drive
Sheboygan, WI 53081

**Claim Number:** KW5727   **Claim Adjuster:** James McCaffery

**Bond or Policy Number:** K21167       **Agency:** DS&P Insurance Services, Inc.

**Name of Insured:** American Auto Guardian, Inc.

**Address:** P.O. Box 925, Arlington Heights, IL 60006

**Date(s) of Loss:** Various. See below.

**Date Insured discovered loss:** On or about August 8, 2005

**Date loss reported to company or agent:** On or about August 25, 2005

I, James E. Devers **certify that** American Auto Guardian, Inc. **has sustained a loss as a result of the dishonest act(s) of** Sherri Kramer **employed as** Director and Vice President **and that the amount of money or property dishonestly misappropriated by** Sherri Kramer **amounts to** Four Hundred Forty-Four Thousand, Four Hundred Thirty-One Dollars and Nineteen Cents (\$444,431.19); **that the following detailed statement of loss, and of all sums due or owing to** American Auto Guardian **is a true net loss for the period from** April, 2000 to July, 2005, subject to further investigation and supplementation by American Auto Guardian as information becomes available.

## Details of Loss

**In the space below or on an additional document specify (1) how the losses were caused, (2) when the losses occurred, (3) the names and addresses of all persons who have knowledge of the details of the losses, (4) the dates of employment of the employees listed above and (5) how and when the losses were discovered.**

American Auto Guardian, Inc. ("AAGI") incorporates by reference in this Proof of Loss as though fully stated herein the attached federal court First Amended Complaint filed March 23, 2006 captioned *American Auto Guardian, Inc. v. Sherri Kramer and Harry G. Kramer, III*, pending in the United States District Court for the Northern District of Illinois, Eastern Division, No. 05 C 6404 ("the Federal lawsuit"). The federal lawsuit details how the losses were caused, when they occurred, and how and when they were discovered.

Al Ranieri and Jim Devers are the persons most knowledgeable about AAGI's claims. Al Ranieri, currently President of AAGI, was one of the founders of AAGI when it was incorporated in February, 1998, and owns 43% of its shares. Ranieri has knowledge concerning the business operations and procedures of AAGI, and the employment, duties and responsibilities of Sherri Kramer. James Devers became employed by AAGI on September 1, 2003, and became Finance Direct after Kramer left AAGI in July, 2005. Devers headed the investigation into Kramer's misconduct, assisted by Sue Acer and various other employees of AAGI's accounting

department. Certain of these accounting employees may have knowledge regarding Kramer's actions because they worked for her.

**In the space below describe each item of loss for which claim is made and enter the amount claimed. If merchandise, list cost to insured and each credit to be applied to this loss. Credits include any item of value available to offset against or reduce the loss. Attach additional sheets if necessary.**

Each item of loss for which a claim is made is set forth in detail in the attached federal court complaint. Certain items of loss have also been assigned an item number by AAGI, and those items and all items of loss are referenced in the two three-ring binders accompanying this Proof of Loss. The binders are entitled "Kramers' Misappropriations" and "Kramers' Misuse of AAGI Credit Cards."

| Date of Loss or Credit | Description of Item of Loss or Credit | Amounts Claimed or Credited |
|---|---|---|
| 1. Various Dates | Theft of AAGI funds through fraudulent Bosely Design checks (federal lawsuit paragraphs 21 - 32) | $285,264.22, less insurance payment of $49,783.46 for checks issued in 2005 by Kramer |
| 2. Various Dates | Theft of AAGI funds through Misuse of AAGI's credit cards (federal lawsuit paragraphs 42 - 57) | $71,151.96 |
| 3. Various Dates | Theft of AAGI's credit card points (federal lawsuit paragraphs 33 – 37 and 58 – 62) | $47,826.25 |
| 4. Various Dates | Theft of AAGI funds through improper issuance of AAGI checks and improper cash withdrawals (federal lawsuit paragraphs 66 – 73 and 75 – 77) | $23,963.76 |
| 5. April, 2004 | Theft of AAGI funds through fraudulent salary increase (federal lawsuit paragraphs 38 – 41) | $6,250.00 |
| 6. Various Dates | Theft of AAGI funds through Misappropriation of Woodfield Mall gift certificates (federal lawsuit paragraphs 63 – 65) | $9,975.00 |

**Total Loss:** $444,431.19
**Less Insurance Payment:** ($49,783.46)
**Net Total Loss:** $394,647.73

Note: On September 16, 2003, AAGI loaned $25,000 to Sherri Kramer in the form of an advance. On November 23, 2005, AAGI received a $10,000 payment from Chip Kramer, and on December 5, 2005, AAGI received another payment of $7,500 from Chip Kramer. These payments were applied to reduce the outstanding balance of the loan.

**It is understood that the above facts and details of loss are subject to verification and that the acceptance and retention of this form by the company as completed by the undersigned does not constitute a waiver of any stipulation of condition of the bond or policy, or an admission of coverage or liability thereunder.**

State of _____ **Illinois** _____ )
                    ) SS
County of _____ **Cook** _____ )

_____ **James E. Devers** _____ **being duly sworn, states that, he/she is Finance Director of** _____ **American Auto Guardian, Inc.** _____ **the insured listed above, and the statements above, on the reverse side and in any papers attached constitute a complete and truthful recital of all facts now known concerning this claim; and that no material facts are being withheld or suppressed by the insured.**

**Subscribed and sworn to before me, a Notary Public in and for the above named County and State this _27_ day of _March_ , _2006_.**

_Andrew B Hojnacki_
Notary Public

_James E Devers_
Signature of Party completing this Proof of Loss

OFFICIAL SEAL
**ANDREA B. HOJNACKI**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-14-2007

State law, in some states, requires that we advise you of the following: A person commits insurance fraud which is a crime if he or she knowingly and with intent to defraud any insurance company or person, files a statement of claim or makes application for insurance containing any false or deceptive information.

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN AUTO GUARDIAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 6404 |
| | ) | |
| SHERRI KRAMER and | ) | |
| HARRY G. KRAMER III, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, AMERICAN AUTO GUARDIAN, INC. ("AAG"), by and through its attorneys, and for its First Amended Complaint against defendants SHERRI KRAMER and HARRY G. "CHIP" KRAMER III, states as follows:

### THE PARTIES

1.     Plaintiff AAG is an Illinois corporation with its principal place of business in Arlington Heights, Illinois.

2.     Defendants Sherri Kramer and Harry G. "Chip" Kramer, III are husband and wife, citizens and residents of Illinois, and reside at 428 Birmingham Lane, Schaumburg, Cook County, Illinois.

### JURISDICTION

3.     Jurisdiction is proper pursuant to 28 U.S.C. § 1331 because one count of this action arises under the laws of the United States, specifically the Racketeer Influenced and Corrupt Organizations Act ("*RICO*"), 18 U.S.C. §1961, et seq.  This Court has supplemental jurisdiction over the remaining Illinois common law claims pursuant to 28 U.S.C. §1367(a) because those claims arise from the same facts and form part of the same case as the RICO count.

### VENUE

4.     Venue is proper in this district pursuant to § 1319(a)(2) in that a substantial part of the events giving rise to this claim occurred in the Northern District of Illinois.

1950013.02.04
1618610/RAW

## FACTUAL BACKGROUND

### A.     History of AAG and Sherri Kramer's Employment at AAG

5.     AAG was incorporated in February, 1998, and is a marketer and administrator of various financial and insurance-type products sold in connection with the purchase of automobiles and other vehicles, and markets its products through independent agents.

6.     When AAG was incorporated in February, 1998 it had three employees: Lance Davis was President, Director and a shareholder, Al Ranieri was Vice President, Director, and a shareholder, and Roula McCarthy was Vice President.

7.     On or about April 26, 1999, Sherri Kramer (*"Kramer"*) was hired by AAG on a part-time basis, and was given the title of Financial Manager. Kramer's responsibilities initially consisted of cash management and reporting, which included keeping accounting records of receipts and disbursements, issuing checks on AAG's operating account at LaSalle Bank in payment of corporate expenses, and maintaining control over AAG's corporate credit cards and statements.

8.     The signatories on AAG's LaSalle Bank operating account at the time of Kramer's hiring in April, 1999 were Lance Davis, Al Ranieri, and employee Barbara Means. Due to the volume of checks being issued, and the fact that Davis and Ranieri were not always available, signature stamps for Davis and Ranieri were obtained and utilized to stamp their names on checks drawn on AAG's LaSalle operating account. As part of her duties of employment, Kramer was given control and custody of these signature stamps.

9.     In November, 1999, AAG's human resource functions in conjunction with ADP, a company which processed AAG's payroll and provided human resources support, were assigned to Kramer.

10.     By September, 2001 AAG had approximately 18 employees. On or about September 10, 2001, Kramer was hired full time by AAG, promoted to Assistant Secretary and Vice President, and placed in charge of AAG's Accounting Department. In addition to her cash management and reconciliation duties, Kramer's additional financial responsibilities included

bank account reconciliations, agent and dealer profit sharing reporting, and financial statement preparation. As part of her accounting responsibilities, Kramer had direct access to AAG's Quickbooks accounting records, the computerized software utilized by AAG during the term of Kramer's employment to keep its accounting and bookkeeping records. Kramer's annual salary at this time was $50,000, and she participated in AAG's weekly management meetings.

11.    As AAG continued to grow, Kramer's duties and responsibilities increased. Many of AAG's products are regulated by insurance codes and state insurance departments, and as part of her human resource duties, Kramer hired the person who was in charge of assuring compliance with the various insurance rules and regulations, and obtaining necessary licenses. Consequently, AAG's Compliance Department reported to Kramer.

12.    In conjunction with the marketing of its products, AAG contracts with printers to print various marketing, promotional and product supplies, such as brochures, folders, rate cards and multi-carbon forms. Kramer's husband, Chip Kramer, worked for one of those printers, Ed Garvey and Company. Kramer also headed up AAG's Sales and Marketing Department, which was responsible for coordinating and purchasing AAG's printing requirements, maintaining inventory control, and providing marketing support to AAG's agents and dealers.

13.    On February 28, 2003, Al Ranieri succeeded Lance Davis as President of AAG, and AAG's shareholders elected Kramer as Director in the place of Lance Davis. Kramer's salary subsequently increased to $80,000 per year. At this time, AAG had approximately 25 employees.

14.    By April, 2004 AAG employed 58 people. The necessary accounting requirements for AAG's business became accordingly more complex, and the number of employees in accounting increased. All of the Accounting Department employees still reported to Kramer at this time.

15.    However, Kramer had no formal training in accounting, and by the summer of 2005, because of the increased size of AAG and increased complexity of AAG's business, Al Ranieri had determined that AAG's expanded Accounting Department needed to report to

someone with a financial background and experience, and also that the Sales and Marketing Department needed new management.

16.    Accordingly, on or about July 18, 2005, Al Ranieri advised Kramer that the Accounting Department, Sales and Marketing Department and Human Resources Department would no longer report to her. Al Ranieri told Kramer, however, that she could continue to work on special projects for AAG, but that her then current salary of $105,000 would have to be reduced.

17.    This was not acceptable to Kramer, who abruptly left AAG's offices. Later that night, after AAG's offices were closed, Kramer returned to AAG and cleaned out her office. Kramer never returned to work at AAG, and was officially terminated on August 11, 2005.

18.    Subsequent to Ms. Kramer's departure, James Devers became Finance Director of AAG, and the Accounting Department reported to him.

19.    AAG pays profit sharing bonuses to agents that market its products and to vehicle dealers that sell its products if the business is profitable to AAG and to the insurers of AAG's products. Profit sharing is paid approximately 45 days after the end of each quarter, and profit sharing payments needed to be calculated for the quarter ending June 30, 2005. Such calculations were the responsibility of Kramer, but because she did not report to work after July 18, 2005, the task of preparing the profit sharing reports fell to James Devers and his accounting staff, who began reviewing the history of profit sharing payments made and amounts due for AAG's various agents and dealers.

20.    AAG's profit sharing review, and subsequent larger investigation, revealed that Sherri Kramer, who AAG believed was a trusted manager, director and officer of AAG, had in fact, in conspiracy with her husband, Chip Kramer, been looting, defrauding and embezzling from AAG for her, and their own, personal aggrandizement. The Kramers carried out their theft through a pattern of racketeering activity, fraud, embezzlement, conversion, theft and breach of fiduciary duties that lasted for a period of more than five (5) years, as detailed below.

- 4 -

## B.    The Fake "Bosley Design" Account and Fraudulent Accounting Records

21.    One of the accounts receiving profit sharing payments was an agent group consisting of Key Source Insurance Services, LLC ("*Key Source*"), and Front End Management, Inc. ("*Front End*"). After Kramer's termination, a review was made of this agent group's profit sharing account. AAG's QuickBooks accounting records showed two $12,000 profit sharing checks issued to this agent group drawn on AAG's LaSalle Bank operating account. Kramer had been in charge of this account at the time the checks were issued. The QuickBooks records showed one of the checks to be payable to Key Source in the amount of $12,000 dated May 27, 2005 (the "*Key Source Check*"). QuickBooks showed the second check to be payable to Front End in the amount of $12,000 dated June 10, 2005 (the "*Front End Check*"). The audit indicated that this agent group had received an extra $12,000 check.

22.    AAG obtained from LaSalle Bank a copy of the two checks. Both checks bore the stamped signature of Al Ranieri. The Front End Check indeed showed the payee to be Front End as represented by Kramer's entry in AAG's Quickbooks accounting records. The face of the Key Source Check, however, did not show the payee to be Key Source as indicated by AAG's QuickBooks accounting records. Rather, the payee on the face of the Key Source check was "Bosley Design and Imaging." Kramer had entered false information in AAG's Quickbooks accounting records that the check was payable to Key Source when, in fact, it was payable to a "Bosley Design."

23.    Bosley Design was a designer and printer with whom AAG had done business in the past. Bosley Design was located in Indianapolis, Indiana, and its bank account into which it deposited AAG's checks in payment for services was located at Union Planters Bank in that city. AAG, however, had not done any business with that company since late 2002, almost three years prior to the May 25, 2005 date of the Key Source Check, and the company had long since gone out of business.

24.    However, the Key Source Check was endorsed by "Bosley Design" and deposited into an account by that name at TCF National Bank, Account No. 3865698223 (the "*Fake Bosley*

*Design Account*"). At a time unknown to AAG, but no later than the fall of 2001, Sherri and Chip Kramer had established the Fake Bosley Design Account at TCF National Bank. Chip Kramer was a signer on the Fake Bosley Design Account. At this time, it is not known whether Sherri Kramer was also a signer.

25.    The Fake Bosley Design Account had and has no relationship whatsoever to the Bosley Design with whom AAG actually did business. Rather, the Fake Bosley Design Account was individually owned by Chip and Sherri Kramer, and bank statements for this account were sent to a P.O. Box in Schaumburg, Illinois, in order to conceal ownership of the account.

26.    Beginning no later than October, 2001, and continuing through at least June, 2005, Sherri Kramer stamped either Lance Davis' or Al Ranieri's signature to sixty-four (64) AAG checks payable to Bosley Design (including the Key Source Check) for which no actual work was performed, and deposited those checks into the Fake Bosley Design Account owned by the Kramers at TCF National Bank.

27.    Nine (9) of these checks were issued in 2001 totaling $26,431.89; twenty-seven (27) were issued in 2002 totaling $91,338.60; fifteen (15) were issued in 2003 totaling $55,770.98; eight (8) were issued in 2004 totaling $61,939.20; and five (5) were issued in 2005 totaling $49,783.46, for a grand total of $285,264.22 in AAG funds.

28.    Upon information and belief, each of the sixty-four (64) checks was transferred by mail and/or wire by TCF National Bank to LaSalle Bank for payment, and transfer of funds in payment was made by LaSalle Bank from AAG's account to the Fake Bosley Design Account by wire.

29.    Kramer concealed her theft of the sixty-four checks from AAG through various means, including entering into AAG's Quickbooks accounting records fake "Bosley Design" job orders, and phony "Bosley Design" invoice orders or product descriptions.

30.    Kramer also altered the payee's name, on many of the sixty-four checks, in AAG's QuickBooks accounting records to reflect payment to a current AAG vendor rather than to the phony "Bosley Design." For example, on some of the checks deposited into the Fake Bosley

- 6 -

Design Account, the payee entered by Kramer into AAG's QuickBooks accounting records was not Bosley Design as indicated on the face of the checks, but instead was "Ed Garvey & Company," the printing company for whom her husband Chip Kramer worked, and with whom AAG was then placing its printing business.

31.     The AAG QuickBooks accounting records entered by Kramer also indicated that these checks were in payment of Ed Garvey invoices for work performed, when that was not the case. In fact, neither Bosley Design nor Ed Garvey performed any work or produced any invoices for the checks which supposedly represented payment.

32.     The AAG funds deposited into the Fake Bosley Design Account were used by the Kramers for their own personal benefit. Some of the funds were transferred directly into Sherri Kramer's personal checking account into which Kramer also had her AAG paycheck deposited.

## C.     Personal Purchases Made By The Kramers With AAG Visa Reward Points

33.     During her employment with AAG, Kramer opened, on behalf of AAG, AAG's Corporate Visa Credit Card Account No. 726-07S02 at Merrill Lynch (the "*AAG Visa Account*"). As Vice President in charge of the Accounting Department, Ms. Kramer controlled the AAG Visa Account, and had access to its records. She directed the AAG mail room that all credit card statements be delivered directly to her.

34.     Two AAG credit cards were issued from the AAG Visa Account, one bearing the name of A. R. Ranieri, and the other bearing the name of Sherri Kramer. Kramer retained possession of both cards. The cards were supposed to be utilized only to make payments on behalf of AAG to auto repair facilities for auto repair claims arising under extended warranty contracts administered by AAG. Charges to the cards earned "reward points," which could be utilized to pay for other purchases.

35.     After Kramer left AAG, AAG reviewed the credit card records for the AAG Visa Account. The review revealed that on February 26 and March 1, 2005, Kramer charged a total of $11,146.78 to Rocky Mountain Vacations onto the AAG Visa card bearing her name. Kramer paid for these charges by redeeming 743,067 reward points. Because the Visa card was issued

from the AAG Visa Account and was an AAG credit card, these reward points belonged to AAG. Kramer concealed the nature of the credit card charges by recording them in AAG's Quickbooks accounting system as "Miscellaneous."

36.    Similarly, on April 1, 2005, Kramer charged a total of $8,308.47 ($8,236.23 plus $72.24) to Fairmont Banff Springs onto the AAG Visa card bearing her name. Kramer then paid for $8,236 of these charges by redeeming 549,067 reward points that belonged to AAG. Again, Ms. Kramer concealed the true nature of the charges by recording them in AAG's Quickbooks accounting records as "Miscellaneous."

37.    These credit card transactions occurred without AAG's knowledge or consent. Upon information and belief, both Sherri Kramer and Chip Kramer utilized the AAG Visa Reward Points purchases detailed above.

**D.    Sherri Kramer's Alteration Of Her Employment Status Change Form**

38.    On April 2, 2004, Al Ranieri, President of AAG, approved a salary increase from $80,000 to $105,000 for Sherri Kramer. The effective date of the change was retroactive to January 1, 2004. An employment status change form reflecting the above change was completed by Kramer and signed by Ranieri.

39.    After the form was signed by Ranieri, Kramer made a copy. Kramer took the original signed form to Susan Buchholz, who was then head of Human Resources, but reported to Kramer. Kramer told Buchholz that the retroactive effective date of January 1, 2004 for the salary increase was not correct, and the retroactive date should have been October 1, 2003, and that she (Kramer) would talk to Al Ranieri about the mistake.

40.    Kramer then "whited out" the effective date of January 1, 2004, inserted the effective date of October 1, 2003, and had Buchholz, her direct reporting employee, sign the changed form. Kramer then took back the original changed form, gave Buchholz a copy, and directed Buchholz to process payroll based on the October 1, 2003 date, instead of the January 1, 2004 date. The retroactive salary increase was paid to Kramer in a lump sum in her next

regularly scheduled pay check, including the unauthorized three-month increase, with $6,250.00. AAG had not and did not approve this $6,250.00 retroactive salary payment to Kramer.

41.    In an attempt to conceal her misrepresentation of the retroactive salary date, and unbeknownst to Buchholz, Kramer placed into her personnel file the copy of the original employment status change form with the effective date of January 1, 2004 that she had made before she altered the original form, instead of the altered form with the October 1, 2003 effective date. Thus, someone looking through Kramer's personnel file at that time would be led to believe that her salary increase took effect on January 1, 2004, as agreed with Al Ranieri.

## E.    The Kramers' Theft Of AAG Property For Personal Holiday Gifts

42.    As a regular business practice, AAG sends gifts of candy or similar treats to customer accounts and vendors during the holiday season. These gifts are delivered to AAG's offices, and AAG then sends the gifts to the appropriate recipients. Since Kramer was in charge of Sales and Marketing, the responsibility for gathering the names of the recipients and assuring that they received their gift was part of her duties.

43.    On December 8, 2003, Sherri Kramer utilized AAG's corporate American Express Credit Card to order and pay for $4,860 worth of holiday gifts from Fannie May Candies to send to AAG's customer accounts and vendors for the 2003 holiday season.

44.    In 2005, after Kramer's termination, AAG received a solicitation from Fannie Mae that showed the previous order for December 8, 2003 which had been placed by Kramer. A review of this solicitation showed that the order of $4,860 consisted of 140 gifts, but only 115 of which were delivered to AAG. The other 25 gifts, having a value of $955, were sent to Kramer's personal residence. These 25 gifts, paid for by AAG, were not used for AAG's business purposes, but rather, were used by both Sherri and Chip Kramer as gifts to their personal friends and acquaintances.

## F.    Sherri Kramer's Use Of AAG Funds To Purchase Jewelry and Subsequent Fraudulent Alteration Of Credit Card Statements

45.    In January, 2004, certain AAG employees, including Kramer, attended the National Automobile Dealers Association ("NADA") convention in Las Vegas, Nevada. At the

2004 convention, AAG hosted a hospitality suite at the Venetian Hotel, and provided food and beverages to customers, vendors and potential customers who were also attending the convention.

46.     While in Las Vegas, and unbeknownst to AAG at that time, Kramer utilized AAG's American Express Corporate Credit Card to purchase for her own use jewelry worth $8,342 from Venetzia Fine Jewelry on January 30, 2004.

47.     When Kramer returned from Las Vegas, she disguised her jewelry purchase by recording that purchase in AAG's QuickBooks accounting records as a "hotel food and beverage deposit," which appeared to be related to the hospitality suite at the NADA convention. Kramer refused to give the Accounting Department a hard copy of the American Express credit card billing statement. Instead, Kramer downloaded the American Express credit card billing statement from the internet into a spreadsheet, and fraudulently altered the true billing statement item, which read on the actual American Express billing statement "Venetzia Fine Jewelr Las Vegas NV," "to "The Venetian – Lodging." This false "Venetian" entry was entered into AAG's Quickbooks accounting system at the direction of Kramer.

**G.     The Kramer's Use Of AAG Funds For Purchases At Costco and Sherri Kramer's Subsequent Fraudulent Alteration of Credit Card Statements**

48.     In June, 2004, Kramer entered into AAG's QuickBooks accounting system an entry that read "6/11/04/Dinner/Restaurant/Agents Meeting Dinner/American Express/$975.18"

49.     Kramer refused to give the Accounting Department a hard copy of the American Express billing statement, or an expense receipt back-up for the $975.18 charge. Instead, she downloaded the American Express credit card billing statement from the internet into a spreadsheet, and doctored the true billing statement item, which read on the actual American Express billing statement as "Costco Wholesal 0993 Schaumburg IL," to read as "$975.18 Jameson's Charhouse, Arlington H Food-Beverage." Jameson's Charhouse is a restaurant within walking distance of AAG's office in Arlington Heights, IL, and is often used for business meals by AAG.

50.    In fact, an agent dinner meeting never took place, AAG never received any goods from Costco, and Kramer utilized $975.18 from AAG to purchase goods from Costco for her own personal use.

## H.    Kramer's Additional Use of AAG Credit Cards for Personal Purchases, and Corresponding Fraudulent Accounting Entries

51.    In addition to the fraudulent jewelry and Costco credit card purchases set forth above, beginning no later than July, 2001 and continuing through March, 2005, Kramer utilized AAG's corporate credit cards without AAG's knowledge or consent on at least 155 separate occasions to make purchases for her, her husband's, and her family's personal benefit.

52.    Unbeknownst to AAG, these personal purchases included: tickets to The Rolling Stones, Cher, Madonna, U2, Paul McCartney, Britney Spears, Crosby Stills Nash & Young, Neil Young with Crazy Horse, and Justin Timberlake and Christine Aguilera concerts; skiing vacations at Vail and Beaver Creek, Colorado; clothing and apparel purchases at Marshall Fields, Macy's and Nordstroms; family vacations at the Grand Hotel, Mackinac Island, Michigan, and at the Hilton Hotel in Myrtle Beach, South Carolina; hotel stays at the Ritz Carlton Hotel, Crowne Plaza Hotel, Marriott Hotel, Hyatt Regency Hotel in Beaver Cr eek, Colorado and Drake Hotel in New York; sporting goods; internet digital music service; wine and liquor; flowers; laser tag; car repairs; limousine rentals; rental cars; restaurant meals; and computer and electronic purchases at Costco, Comp USA, and Best Buy.

53.    Kramer concealed these personal credit card purchases from AAG through a combination of one or more of the following methods: (1) making false entries into AAG's QuickBooks accounting system indicating that the purchases were for business purposes, when in fact, they were not; (2) altering the credit card statements by downloading the credit card information from the internet onto excel spreadsheets, and changing the true credit card entries; (3) failing to provide itemized receipts to support the charges; and (4) failing to make any entry into AAG's QuickBooks accounting records whatsoever regarding certain individual personal credit card purchases and then covering up these purchases by entering fake business purchases

in large dollar amounts into the QuickBooks accounting system to balance the dollar amount of the checks issued to pay off the credit card statements with the dollar amount of the credit entries in QuickBooks.

54.    Kramer made the following false QuickBooks entries in order to conceal the personal nature of the following purchases:

| AAG Item # | Transaction Date | False Accounting Entry | Item Purchased | Amount Embezzled |
|---|---|---|---|---|
| | | | | |
| 27. | 1/12/2002 | Airfare to NADA Convention | Air plane ticket for Sherri Kramer's mother-in-law to Myrtle Beach, SC | $149.00 |
| 30. | 2/9/2002 | Miscellaneous office cleaning supplies, pop, paper products, | Liquor at United Liquors | $245.36 |
| 37. | 3/02/2002 | Parking Passes for Season's Tickets | Personal purchase of concert tickets for Paul McCartney, Britney Spears and Crosby Stills Nash & Young | $1,093.50 |
| 38. | 3/22/2002 | Miscellaneous Xerox Supplies | Masterlube Auto Repair | $142.94 |
| 39. | 3/22/2002 | Miscellaneous Xerox Supplies | Mastertech Auto Repair | $487.63 |
| 40. | 3/31/2002 | Miscellaneous Xerox Supplies | Skiing Items | $525.70 |
| 42a. | 5/1/2002 | Office Supplies | United Center Box Event Tickets | $226.50 |
| 43. | 5/5/2002 | Miscellaneous/Supplies | Golf Center | $28.88 |
| 44. | 5/28/2002 | United Center Parking | Rolling Stones Concert and Cher Concert | $951.00 |
| 45. & 48. | 8/13/2002 | Miscellaneous/Disputed Items | Marshall Field's ($705.69 less $491.46 credit) | $214.23 |
| 46. | 9/18/2002 | Department Lunch | Nancy's Pizza | $34.86 |
| 47. | 10/1/2002 | Toner for Laser Printers | Rolling Stones Concerts | $1,232.00 |
| 49. | 11/1/2002 | Miscellaneous | United Center Food & Beverages | $74.00 |
| 50. | 11/6/2002 | Fannie May Candies Deposit | Laser X | $100.00 |
| 52. | 12/1/2002 | Office Supplies | Build-A-Bear Workshop | $401.94 |
| 55. | 12/30/2002 | Intuit Software/QB Forms | Hotel.com | $313.00 |
| 56. | 12/31/2002 | Intuit Software/QB Forms | United Center Food & Beverages | $74.00 |
| 57. | 1/1/2003 | Intuit Software/QB Forms | Rosebud on Rush Restaurant | $168.76 |
| 58. | 1/3/2003 | Intuit Software/QB Forms | Crowne Plaza Hotel | $17.37 |
| 59. | 1/3/2003 | Intuit Software/QB Forms | Crowne Plaza Hotel | $68.00 |
| 64. | 1/31/2003 | Office Max Office Supplies | Toys 'R' US | $73.52 |
| 65. | 2/2/2003 | NADA Hotel Charge | Sunglasses at Macy's | $173.60 |
| 67. | 3/14/2003 | "Paradise Travel Cancun Trip Airfares to Chicago" for AAG Contest | Down payment on Honda Pilot Car | $2,000.00 |


| 79. | 8/15/2003 | Hotel Expense | Personal vacation at Grand Mackinac Island Hotel | $1,165.44 |
|---|---|---|---|---|
| 80. | 8/20/2003 | Miscellaneous Internet | Personal digital Music Subscription | $9.95 |
| 81. | 8/25/2003 | Agents Hotel for Meeting at AAG | Grand Hotel Mackinac Island | $367.69 |
| 82. | 8/26/2003 | Agents Hotel for Meeting at AAG | Grand Hotel Mackinac Island | $86.66 |
| 83. | 9/12/2003 | AT&T Internet Service | Digital Music Subscription | $33.66 |
| 84. | 9/20/2003 | AT&T Internet Service | Digital Music Subscription | $9.95 |
| 85. | 10/7/2003 | Arlington International Race Course for Company Outing | Laser X | $100.00 |
| 87. | 10/21/2003 | Dinner with Agents | Digital Music Subscription | $9.95 |
| 89. | 10/22/2003 | Deposit for NADA Convention | Airfare for Vail Ski Vacation | $465.00 |
| 90. | 10/22/2003 | Deposit for NADA Convention | Airfare for Vail Ski Vacation | $465.00 |
| 91. | 10/22/2003 | Deposit for NADA Convention | Airfare for Vail Ski Vacation | $465.00 |
| 92. | 10/22/2003 | Deposit for NADA Convention | Airfare for Vail Ski Vacation | $465.00 |
| 93. | 10/22/2003 | Deposit for NADA Convention | Airfare for Vail Ski Vacation | $465.00 |
| 95. | 10/22/2003 | Deposit for extra rooms for NADA | Hyatt Regency in Beaver Creek/Vail Hotel | $1,653.74 |
| 96. | 10/22/2003 | Deposit for extra rooms for NADA | Hyatt Regency in Beaver Creek/Vail Hotel | $1,653.74 |
| 98. | 11/1/2003 | NADA Hotel Room Deposits | Airfare to visit mother-in-law at Myrtle Beach, SC | $341.00 |
| 99. | 11/1/2003 | NADA Hotel Room Deposits | Airfare to visit mother-in-law at Myrtle Beach, SC | $341.00 |
| 100. | 11/1/2003 | NADA Hotel Room Deposits | Airfare to visit mother-in-law at Myrtle Beach, SC | $341.00 |
| 101. | 11/1/2003 | NADA Hotel Room Deposits | Airfare to visit mother-in-law at Myrtle Beach, SC | $341.00 |
| 102. | 11/1/2003 | NADA Hotel Room Deposits | Airfare to visit mother-in-law at Myrtle Beach, SC | $341.00 |
| 103. | 11/20/2003 | E-Fax Service | Digital Music Subscription | $9.95 |
| 129. | 3/15/2004 | Agents Dinner | The Ivy Restaurant meal while Kramers at the taping of Frazier | $186.00 |
| 141. | 6/22/2004 | Send.com | Gift Shop, Winfield, IL | $158.68 |
| 143. | 6/17/2004 | Deposit on Season Tickets for the Chicago Bulls | Madonna Concert | $1,232.00 |
| 157. | 2/22/2005 | Chicago Bulls Playoff Tickets at the United Center | Cher Concert | $339.00 |
| 159. | 3/22/2005 | Ticket Deposit | U2 Concert | $400.00 |
| | | | **TOTAL** | **$20,242.20** |

55.    Often, when Sherri Kramer used AAG's corporate credit card for purchases, and then entered into AAG's QuickBooks accounting system entries relating to those purchases, she misrepresented to AAG that the purchases were for business purposes, when, in fact, they were not.  Further, Kramer actively concealed the personal nature of many of the purchases by failing to provide to AAG receipts or other documents which would identify the personal nature of the purchases.  Kramer misrepresented the following purchases as business-related when, in fact, they were not:

| AAG Item # | Transaction Date | False "Business Purpose" Accounting Entry | Item Purchased | Amount Embezzled |
|---|---|---|---|---|
| 28. | 1/12/2002 | Meals - Lance Davis | Personal meal at Magnum's in Rolling Meadows on Saturday | $223.00 |
| 29. | 1/20/2002 | Computer Supplies - Software & Equipment | Purchase of personal items at Costco | $301.68 |
| 31. | 2/21/2002 | Lunch - Pizza for Birthday | Personal meal at Nancy's Pizza in Schaumburg | $21.46 |
| 32. | 2/23/2002 | Meals | Personal purchase of food at United Center | $55.50 |
| 33. | 3/1/2002 | Meals | Personal purchase of food at United Center | $78.00 |
| 34. | 3/3/2002 | Lunch - AR/SK/LD Interview | Personal meal at Italianni's in Schaumburg on Sunday | $174.00 |
| 35. | 3/9/2002 | LD - Lunch for meeting | Food purchased at United Center on Saturday | $69.25 |
| 36. | 3/10/2002 | Restaurant Meals | Personal meal at Ruby Tuesday's restaurant in Bloomingdale, IL on Sunday | $44.94 |
| 41. | 4/20/2002 | Miscellaneous Agent Gifts | Personal purchase of wine at Lynfred Winery | $150.39 |
| 42. | 4/20/2002 | Miscellaneous Agent Gifts | Personal purchase of wine at Lynfred Winery | $170.28 |
| 51. | 11/8/2002 | Restaurant Meals | Personal meal at Benihana's in Schaumburg | $196.00 |
| 53. | 12/15/2002 | Computer Equipment (Multiple items under $250) | Personal purchase of Toshiba Laptop Computer at Best Buy | $1,643.73 |
| 54. | 12/30/2002 | Chili's Grill in Rolling Meadows - Credit card charge for lunch while shopping for work supplies | Personal meal at Chili's Grill in Rolling Meadows | $30.06 |
| 60. | 1/3/2003 | Restaurant Meals | Personal meal at Benihana's in Schaumburg | $138.00 |

| 61. | 1/17/2003 | United Airlines - SK - NADA Airfare | Purchase of airline ticket for Chip Kramer | $178.00 |
|---|---|---|---|---|
| 62. | 1/21/2003 | Restaurant - Accounting Dept. Lunch | Personal meal at Nancy's Pizza in Schaumburg | $32.15 |
| 63. | 1/24/2003 | Meals - Restaurant | Personal purchase of food at United Center | $80.00 |
| 66. | 3/1/2003 | Restaurant Employee meals working on Saturday | Personal meal at Nancy's Pizza in Schaumburg | $43.00 |
| 68. | 3/22/2003 | Restaurant Meals | Personal Food & Beverages at the United Center on Saturday | $46.75 |

| 69. | 3/22/2003 | Restaurant Meals | Personal Food & Beverages at the United Center on Saturday | $12.50 |
|---|---|---|---|---|
| 70. | 4/8/2003 | Tickets for Agents | Personal purchase of concert tickets to Christine Aguilera and Justin Timberlake | $316.00 |
| 71. | 5/23/2003 | Restaurant Meals | Personal meal at Benihana's in Schaumburg | $119.00 |
| 72. | 6/4/2003 | Tickets for Agents | Personal purchase of concert tickets to Neil Young with Crazy Horse | $236.00 |
| 73. | 6/18/2003 | CompUSA (toner) | Personal computer equipment purchases | $116.86 |
| 74. | 6/25/2003 | Restaurant Dinner with Cain Wong | Personal meal at Benihana's in Schaumburg | $126.29 |
| 75. | 7/1/2003 | Airfare US Air | Purchase of airplane ticket for Kramer's mother-in-law | $215.00 |
| 76. | 7/3/2003 | Tickets for Agents | Personal purchase of White Sox Tickets | $480.00 |
| 77. | 7/15/2003 | Restaurant Agent Meal | Personal meal at Big Bowl restaurant in Schaumburg | $90.00 |
| 86. | 10/19/2003 | Dinner with Agents | Personal meal at Benihana's in Schaumburg on Sunday | $135.44 |
| 88. | 10/22/2003 | Fee for Booking Airfare | Personal fee for Vail Colorado Ski vacation | $35.00 |
| 104. | 11/25/2003 | Flowers for Ed Garvey & Co. Death of father | Personal flowers - Card signed by Chip & Sherri Kramer | $114.75 |
| 105. | 11/28/2003 | Car Rental Expense | Rental car for personal vacation in Myrtle Beach, SC | $332.80 |
| 106. | 12/4/2003 | Limo service at airport | Personal limousine service | $57.00 |
| 107. | 12/6/2003 | Hotel | Personal stay at hotel | $115.95 |
| 108. | 12/6/2003 | SK Hotel for Holiday Party | Personal stay at hotel | $156.92 |
| 125. | 2/15/2004 | Lunch for everyone helping with Claims relocation | Personal meal at Shaw's Crab House on Sunday | $199.00 |

| 130. | 3/17/2004 | Hotel | Personal hotel expense at Hilton Hotel, Universal City, CA by Kramer while attending the taping of "Frazier" TV Show | $30.57 |
|------|-----------|-------|----|---------|
| 131. | 3/17/2004 | Hotel | Personal hotel expense at Hilton Hotel, Universal City, CA by Kramer while attending the taping of "Frazier" TV Show | $32.00 |
| 132. | 3/17/2004 | Rental car | Personal rental car expense incurred by Kramer while attending the taping of "Frazier" TV Show | $107.07 |
| 136. | 3/24/2004 | Flowers - Gift | Personal "Get Well" flowers for Cristine Ranieri | $114.73 |

| 139. | 5/6/2004 | Flower's for Sherri's Mother | Personal "Get Well" flowers for Sherri's Mother | $76.28 |
|------|----------|----|----|---------|
| 140. | 5/25/2004 | Dinner with Guest in office | Personal meal at Bob Chinn's Crab House | $273.00 |
| 144. | 10/28/2004 | Get Well Gift | Personal purchase of Gourmet Gift Basket | $159.99 |
| 145. | 6/28/2004 | Get Well Gift | Personal purchase of wine | $31.98 |
| 146. | 11/4/2004 | Hotel Expense for AAG Guests | Personal hotel use at Marriott in Schaumburg | $127.05 |
| 147. | 11/4/2004 | Hotel Expense for AAG Guests | Personal hotel use at Marriott in Schaumburg | $110.04 |
| 148. | 11/4/2004 | Hotel Expense for AAG Guests | Personal hotel use at Marriott in Schaumburg | $4.00 |
| 149. | 11/4/2004 | Hotel Expense for AAG Guests | Personal hotel use at Marriott in Schaumburg | $292.99 |
| 150. | 12/17/200 | Computer Software in-design Software; Returned mouse not compatible | Personal purchase of I-pod, Altec Lansing Speakers, Nikon Cool Pix Camera, Epson Printer, Extended Warranties and other electronic items at Comp USA | $2,848.56 |
| 151. | 12/18/2004 | Return of Non-compatible computer mouse | Return of personal purchase of non-compatible computer mouse | ($43.49) |
| 152. | 12/18/2004 | Computer Mouse | Personal purchase of computer items at Comp USA | $34.69 |
| 153. | 12/18/2004 | Computer Software / Mouse | Personal purchase of video games and accessories at Comp USA | $404.39 |
| 154. | 12/24/2004 | Small items of Computer Equipment | Personal purchase of I-pod, Altec Lansing Speakers, and accessories at CompUSA | $571.07 |

| 156. | 1/10/2005 | Christmas Candies for Employees, Agents, Dealers | Personal purchase of Christmas Candies "Ultimate Tower" by Abdullah Candies | $772.95 |
| 158. | 3/6/2005 | Dinner for Guests in office | Personal meal at Shaw's Crab House on Sunday | $380.03 |
| | | | | |
| | | | TOTAL: | $12,862.60 |

56.     Kramer further concealed her personal credit card purchases by failing to enter various purchases into AAG's QuickBooks accounting system. This concealment, however, left Kramer with the problem that the dollar amount of the checks needed to pay-off the credit card statements would exceed the dollar amount of the credit card entries that she did record. Therefore, to cover up her unrecorded purchases, and in order to balance the smaller dollar amount of the credit card entries recorded in QuickBooks with the larger check payment needed to pay-off the true credit card balances, Kramer made at least two false credit card purchase entries: one for $9,500 recorded as "Deposit on Next NADA Event", and one for $9,300 recorded as "Event Deposit". In fact, no such credit card purchases were ever made. The following credit card purchases were made for Kramer's and her family's personal benefit, were not recorded in AAG's QuickBooks accounting system, and were covered up through the use of the two false credit card entries and other false entries:

| AAG Item # | Transaction Date | Personal Credit Card Purchases | Amount Embezzled |
| --- | --- | --- | --- |
| | | | |
| 94. | 10/22/2003 | Purchase of sporting goods at Sports Authority in Arlington Heights, IL | $492.45 |
| 97. | 10/24/2003 | Personal stay at Ritz Carleton Hotel, Chicago | $588.76 |
| 110. | 12/20/2003 | Personal Digital Music Subscription | $9.95 |
| 111. | 12/20/2003 | Personal purchase of Panasonic DVD recorder and blank tapes at Best Buy in Schaumburg | $801.02 |
| 112. | 12/20/2003 | Personal purchase of Canon desk top printer, paper and inks at Best Buy in Schaumburg | $569.51 |
| 113. | 12/21/2003 | Personal meal at Carson's Ribs, Chicago, IL | $21.00 |
| 114. | 12/21/2003 | Personal meal at Carson's Ribs, Chicago, IL | $131.00 |
| 115. | 12/22/2003 | Personal purchase of merchandise at Woodfield Mall | $100.00 |
| 116. | 12/22/2003 | Personal purchase of Bose Audio Equipment from Bose store, Deer Park, IL | $574.01 |
| 117. | 12/23/2003 | Personal purchase of Men's clothing at Nordstroms, Schaumburg | $2,505.23 |
| 118. | 12/23/2003 | Personal food purchase at Felicia's Meat Market, Elk Grove Village | $274.30 |

| 119. | 12/23/2003 | Personal meal at Wildfire Restaurant, Schaumburg | $84.00 |
| 120. | 12/24/2003 | Personal purchase of liquor at Binny's Beverages, Schaumburg | $444.07 |
| 121. | 12/24/2003 | Personal meal at Wildfire Restaurant, Schaumburg | $87.00 |
| 122. | 1/18/2004 | Personal purchase at Men's Neckwear Dept. Nordstrom's, Schaumburg | $2,163.15 |
| 123. | 1/18/2004 | Personal purchase of Men's Sportswear at Nordstrom's, Schaumburg | $212.06 |
| 126. | 2/18/2004 | Personal hotel stay at the Crowne Plaza Hotel, Illinois | $240.14 |
| 127. | 3/8/2004 | Personal hotel stay at Hyatt Regency, Beaver Creek/Vail, Colorado for ski vacations | $4,134.39 |

| 128. | 3/8/2004 | Personal hotel stay at Hyatt Regency, Beaver Creek/Vail, Colorado for ski vacation | $4,134.39 |
| 133. | 3/21/2004 | Beaver Creek, Colorado Ski School | $1,596.00 |
| 134. | 3/24/2004 | Personal limousine service | $100.00 |
| 135. | 3/24/2004 | Personal limousine service | $85.80 |
| 137. | 3/27/2004 | Personal hotel stay at Hyatt Regency, Beaver Creek/Vail, Colorado for ski vacation | $2,723.97 |
| 138. | 3/27/2004 | Personal use of rental car at Vail/Eagle, Colorado for ski vacation | $700.00 |
|  |  |  |  |
|  |  | **TOTAL** | $22,772.20 |

57.     Kramer also used AAG's corporate credit cards to make the following purchases for her, her husband's and her family's own personal benefit. Because Kramer failed to preserve AAG's general ledger detail accounting records for the year 2001, AAG at this time does not know the nature of the entries made by Kramer in AAG's accounting records relating to the 2001 personal purchases. Kramer, however, concealed the personal nature of the purchases by failing to provide to AAG receipts or other documents which would identify the purchases.

| AAG Item # | Transaction Date | Personal Nature of Expense | Amount Embezzled |
|---|---|---|---|
|  |  |  |  |
| 1. | 7/2/2001 | Personal meal at Mars 2112 Restaurant, Schaumburg, IL on Saturday | $174.86 |
| 2. | 8/13/2001 | Spirit Airlines Ticket for Chip Kramer | $312.50 |
| 3. | 9/4/2001 | Personal auto repair charge at Mastertech Auto Services | $148.00 |
| 4. | 9/5/2001 | Personal purchase of gift at Maggy Magoo's Gift Items | $83.24 |
| 5. | 9/7/2001 | Personal meal at House of Hunan, Schaumburg, IL | $37.05 |
| 6. | 9/14/2001 | Personal meal at Gilardis Restaurant, Vernon Hills, IL | $135.26 |
| 7. | 9/16/2001 | Personal meal at Cucina Roma, Elk Grove Village, IL on Sunday | $88.24 |
| 8. | 9/17/2001 | Personal meal at Ram 95 Restaurant, Schaumburg, IL | $103.86 |
| 9. | 9/20/2001 | Personal purchase of U2 concert tickets | $340.00 |
| 10. | 9/29/2001 | Personal meal at Bob Chinn's restaurant on Saturday | $16.00 |

| 11. | 9/29/2001 | Personal meal at Bob Chinn's restaurant on Saturday | $143.92 |
|-----|-----------|------------------------------------------------------|---------|
| 12. | 10/7/2001 | Personal meal at Benihana's, Schaumburg, IL on Sunday | $109.16 |
| 13. | 10/21/2001 | Personal meal at Prairie Rock Brewery in Schaumburg on Sunday | $19.31 |
| 14. | 10/21/2001 | Personal meal at Prairie Rock Brewery in Schaumburg on Sunday | $125.89 |
| 15. | 10/25/2001 | Personal purchase of specialty foods and supplies at Cost Plus World Market in Schaumburg | $189.92 |

| 16. | 11/2/2001 | Airline ticket for Chip Kramer | $195.50 |
|-----|-----------|--------------------------------|---------|
| 17. | 11/3/2001 | Purchase of personal gift items at Canterbury Shop, Barrington, IL | $145.91 |
| 18. | 11/3/2001 | Purchase of personal gift items at Canterbury Shop, Barrington, IL | $100.11 |
| 20. | 11/10/2001 | Personal meal at Prairie Rock Brewery in Schaumburg on Saturday | $46.93 |
| 21. | 11/12/2001 | Personal meal at Graziano's Brickoven restaurant, Niles, IL | $37.47 |
| 22. | 11/21/2001 | Personal auto repair charge at Mastertech Auto Services | $2,233.22 |
| 23. | 12/14/2001 | Personal meal at John's Garage restaurant, Schaumburg, IL | $32.39 |
| 24. | 12/22/2001 | Personal meal at Jake's Pizza, Schaumburg, IL on Saturday | $19.56 |
| 25. | 12/26/2001 | Personal meal at Ram Big Horn Brewery, Schaumburg, IL | $75.02 |
| 26. | 12/29/2001 | Personal meal at Italianni's restaurant, Schaumburg, IL on Saturday | $89.46 |
| | | | |
| | | **TOTAL** | **$5,002.78** |
| | | | |
| | | **GRAND TOTAL** | **$60,879.78** |

**I.     Personal Purchases Made by Kramer with AAG American Express Reward Points**

58.     In addition to "reward points" earned under the Merrill Lynch Visa credit card account, AAG's American Express corporate credit card account also earned "reward points" which could be utilized to pay for other purchases.

59.     As was the situation with the Merrill Lynch credit card account, Kramer controlled the American Express credit cards and account, and directed AAG's mail room that all credit card statements be delivered directly to her.

60.     In Spring, 2003, AAG agreed that four managers, including Sherri Kramer, could each redeem 100,000 reward points for personal purchases.

61.     After Kramer left AAG, AAG reviewed the credit card statements for its American Express corporate credit card accounts. This review revealed that during the period August, 2002 through November, 2004, Kramer, unbeknownst to AAG, embezzled over 2.9 million reward points to make purchases for her own personal use. These over 2.9 million

reward points were over and above the 100,000 reward points allotted to Kramer. Kramer's personal purchases with the embezzled reward points included, but were not limited to: Gap gift certificates; Toys R Us gift certificates; Coach leather goods gift certificates; American Express gift certificates; Home Depot gift certificates; North Face Cat's Meow sleeping bags; digital cameras; DVD player; Kitchen Aid mixer and grinder; Bladez electric powered scooter; and Callaway Big Bertha golf clubs.

62.     The specific personal purchases made by Kramer through embezzling AAG's American Express reward points have a cash value of $28,121, and are as follows:

| AAG Item # | Transaction Date | Personal Item Purchased | Points Embezzled | Cash Value of Embezzled Points |
|---|---|---|---|---|
| | | | | |
| 2 | 8/18/2002 | 11 - $50 GAP Gift Certificates | 55,000 | $550 |
| 3 | 8/18/2002 | 2 - $250 Coach Gift Certificates | 50,000 | $500 |
| | | | | |
| 4 | 8/18/2002 | 6 - $50 GAP Gift Certificates | 30,000 | $300 |
| 5 | 10/28/2002 | 30 - $25 GAP Gift Certificates | 75,000 | $750 |
| 6 | 11/13/2002 | 10 - $25 GAP Gift Certificates | 25,000 | $250 |
| 8 | 11/13/2002 | 2 - $250 Coach Gift Certificates | 50,000 | $500 |
| 9 | 12/3/2002 | 20 - $50 Toys R Us Gift Certificates | 100,000 | $1,000 |
| 10 | 12/4/2002 | 1 - Canon Camera | 52,000 | $520 |
| 11 | 12/4/2002 | 10 - $50 GAP Gift Certificates | 50,000 | $500 |
| 13 | 4/19/2003 | 2 - $500 Coach Gift Certificates | 100,000 | $1,000 |
| 14 | 4/19/2003 | 2 - $50 Toys R Us Gift Certificates | 10,000 | $100 |
| 15 | 4/19/2003 | 20 - $50 GAP Gift Certificates | 100,000 | $1,000 |
| 18 | 4/20/2003 | 18 - $50 Toys R Us Gift Certificates | 90,000 | $900 |
| 19 | 4/21/2003 | 10 - $50 Home Depot Gift Certificates | 50,000 | $500 |
| 20 | 5/16/2003 | Callaway Big Bertha Irons | 102,000 | $1,020 |
| 21 | 5/16/2003 | Callaway Big Bertha Driver | 51,000 | $510 |
| 22 | 5/16/2003 | 3 - Callaway Big Bertha Fairway Woods | 135,000 | $1,350 |
| 23 | 5/20/2003 | 8 - $50 GAP Gift Certificates | 40,000 | $400 |
| 24 | 5/20/2003 | Toshiba 5-disc DVD Player | 25,000 | $250 |
| 28 | 5/22/2003 | 1 - Callaway Big Bertha Graphite Shaft Iron | 15,000 | $150 |
| 29 | 5/22/2003 | Bladez Electric Scooter | 75,000 | $750 |
| 30 | 5/22/2003 | 10 - $50 GAP Gift Certificates | 50,000 | $500 |
| 31 | 5/28/2003 | Kitchen Aid Mixer | 40,000 | $400 |
| 36 | 6/9/2003 | 1 - $25 Home Depot Gift Card | 2,500 | $25 |
| 37 | 6/9/2003 | 12 - $100 Home Depot Gift Cards | 120,000 | $1,200 |
| 38 | 6/9/2003 | 5 - Northface Cat's Meow Sleeping Bags | 100,000 | $1,000 |

| 39 | 6/9/2003 | Canon 4.0 Mega Pixel Digital Camera | 66,000 | $660 |
|----|----------|-------------------------------------|--------|------|
| 40 | 6/9/2003 | Shop Amex | 1,127 | $11 |
| 43 | 8/30/2003 | Dividend Miles | 1,000 | $10 |
| 47 | 9/19/2003 | 20 - $50 GAP Gift Certificates | 100,000 | $1,000 |
| 48 | 9/19/2003 | 40 - $25 Toy's R Us Gift Certificates | 100,000 | $1,000 |
| 50 | 4/15/2004 | 40 - $25 Toy's R Us Gift Certificates | 100,000 | $1,000 |
| 51 | 4/15/2004 | 40 - $25 GAP Gift Certificates | 100,000 | $1,000 |
| 52 | 4/15/2004 | 2 - Coach $500 Gift Certificates | 100,000 | $1,000 |
| 53 | 4/15/2004 | 1 - Callaway Titanium Big Bertha Driver | 51,000 | $510 |
| 54 | 4/15/2004 | 2 - Callaway Titanium Fairway Woods | 88,000 | $880 |
| 55 | 11/4/2004 | 16 - $50 American Express Gift Certificates | 160,000 | $800 |
| 56 | 11/4/2004 | 29 - $75 GAP Gift Certificates | 217,500 | $2,175 |
| 57 | 11/4/2004 | 20 - $50 Toys R Us Gift Certificates | 100,000 | $1,000 |
| 58 | 11/4/2004 | 40 - $25 Toy's R Us Gift Certificates | 100,000 | $1,000 |
| 59 | 11/4/2004 | 19 - $100 Home Depot Gift Certificates | 190,000 | $1,900 |
| | | | | |
| **Credit 100,000 points authorized to Kramer for personal purchases** | | | (100,000) | ($1,000) |
| | | | | |
| **Credit 50,000 points utilized for gift for AAG Employee** | | | (50,000) | ($500) |
| | | | | |
| | | **TOTAL** | 2,917,127 | $28,371 |

**J.    Kramer's Breach of Fiduciary Duty Regarding Woodfield Mall Gift Certificates.**

63.    On the employment anniversary of an employee, it is AAG's general policy to give the employee a $25 Woodfield Mall gift certificate. In addition, AAG sometimes distributes $25 Woodfield Mall gift certificates to its employees at holiday time in December, and sometimes uses them for charitable donations.

64.    As part of her job duties at AAG, Kramer was in charge of purchasing the Woodfield Mall gift certificates. Kramer paid for some of the gift certificates using AAG's corporate American Express and Bank One Visa credit cards, and paid for some out of AAG petty cash. On sixteen (16) separate occasions from August, 2001 through May, 2005, Kramer purchased or caused to be purchased a total of 625 $25 Woodfield Mall gift certificates, having a total value of $15,625. Kramer kept the gift certificates in her desk, and controlled their distribution.

65.    However, only 226 of those Woodfield Mall gift certificates, totaling $5,560, were distributed. 399 gift certificates, totaling $9,975, that were in the possession and control of Kramer, are unaccounted for, and upon information and belief were utilized by Kramer for her personal use.

## G.    Miscellaneous Misappropriations of AAG Funds by Kramer

66.    On April 24, 2000, unbeknownst to AAG, Kramer issued to herself, as payee, an AAG check in the amount of $5,291. Kramer stamped Lance Davis' name on the check as the maker of the check, and then deposited the check into her personal checking account. This check was not approved by AAG, and was not issued to Kramer for any business purpose.

67.    On May 29, 2000, unbeknownst to AAG, Kramer issued to herself, as payee, an AAG check in the amount of $6,153.09. Kramer stamped Lance Davis' name on the check as the maker of the check, endorsed the check, and then deposited the check into an unknown account at TCF National Bank. Kramer typed a memo on the face of the check that the check related to payment for "Excess Wear Waiver/Service Contract & Brochure." In fact, AAG never owed Kramer any amounts relating to Excess Wear Waiver/Service Contracts or brochures, and the memo on the check was false. This check was not approved by AAG, and was not issued to Kramer for any business purpose.

68.    On or about July 11, 2001, Kramer represented to AAG that she had incurred $1,606.12 in expenses at Medinah Country Club in connection with a golf outing for one of AAG's marketing agents. In fact, the true amount of expenses totaled $1,310.26. Based on Kramer's misrepresentation, AAG issued a check payable to Kramer in the amount of $1,606.12, $295.86 of which Kramer used for personal expenses.

69.    On December 5, 2003, unbeknownst to AAG, Kramer withdrew $1,925 in cash from AAG's LaSalle Bank checking account. The debit slip completed by Kramer states that the withdrawal was for "Purchase 70 - $25 Amex Gift Checks." In addition, Kramer entered into AAG's QuickBooks accounting records that the withdrawal was for "Employee Xmas gifts." In

- 22 -

fact, the representations made by Kramer on the debit slip and in QuickBooks were knowingly false in that the funds were not used to purchase American Express gift checks for AAG's employees for the 2003 holidays, but instead, were for her own personal use.

70.    Harry "Chip" Kramer is a member of Medinah Country Club. In the summer of 2004, AAG made a reservation for a December, 2004 holiday party at Medinah. In July, 2004, AAG decided to cancel its reservation. Sherri Kramer advised Al Ranieri that if the reservation was canceled, there would be a $3,000 cancellation fee. AAG, nonetheless, canceled the reservation.

71.    On August 27, 2004, Sherri Kramer prepared expense reports seeking reimbursement for expenses that appeared on Chip Kramer's Medinah Country Club billing statement. The expense reports prepared by Kramer listed $1,910.78 for golf on July 4, 2004 for CPS, one of AAG's marketing entities, $867.29 for golf with AAG's computer consultant, and $3,000 for the holiday party cancellation fee, for a total of $5,778.07. Kramer approved these expense reports herself, submitted it to the Accounting Department, and caused the Accounting Department, which reported to Kramer, to issue a check payable to Sherri Kramer dated August 27, 2004 in the amount of $5,778.07. Kramer also entered into AAG's QuickBooks accounting records the following entry regarding the cancellation fee: "07/31/04 Fee for Cancellation of 2004 Holiday Party."

72.    Subsequent to Kramer's termination, AAGI obtained through subpoena Medinah Country Club's billing account statements for Chip Kramer's account. These statements disclosed that Kramer's statement to Ranieri, her expense reports, and her QuickBooks accounting entry regarding the holiday party cancellation fee were all false in that the Medinah Country Club never charged a cancellation fee for the cancellation of AAGI's holiday party. Instead, the $3,000 in AAG funds Kramer received was for her own personal use.

73.    In addition, the July 4, 2004 charge for $1,910.78 was not for golf with CPS, but rather for Chip Kramer's personal expenses at Medinah Country Club. Accordingly, Kramer's expense report and her entry into QuickBooks stating, "Agent Golf Outing" were false.

- 23 -

74.     On December 30, 2004, Kramer charged a $670.63 personal hotel stay at The Drake Hotel in New York, New York to AAG's Citibank Credit Card. In AAG's QuickBooks accounting records, Kramer stated that this charge was made in error, and that she would "get a credit, and charge the appropriate..." In fact, AAG never received a credit for this charge, and the entry was made with the intent of never removing the charge from AAG's corporate credit card.

75.     On or about January 26, 2005, Kramer issued to herself, as payee, an AAG check in the amount of $5,000. The purpose of the check was to cover petty cash expenses for AAG employees and customers at the NADA Convention in New Orleans, Louisiana. As an officer of AAG and Vice President of Accounting, Kramer owed to AAG the fiduciary duty to properly account for petty cash expenses, but Kramer submitted to AAG support for only $3,218.97 in such expenses. Kramer failed to account for, and repay to AAG, $1,781.03 in petty cash expenses, and utilized that amount of AAG funds for her personal use.

76.     On or about February 24, 2005, Kramer prepared an expense report for personal cell phone expenses for the period July 18, 2004 through February 17, 2005. Kramer then approved the expense report herself, submitted it to the Accounting Department, and caused the Accounting Department, which reported to Kramer, to issue a check in the amount of $1,150 in payment of the cell phone bills. Except for outside sales personnel, AAG does not reimburse employees for cell phone bills, and the expense report submitted by Kramer was not approved by any officer of AAG. .

77.     On or about June 27, 2005, Kramer submitted an expense report to AAG's Accounting Department requesting that Rophe Pepper, LLC be paid $2,457 for "hard-drive recovery and memory enhancement." Kramer then approved her own expense report, and caused the Accounting Department to issue a $2,457 check payable to Rophe Pepper. Kramer made the same entry with regard to the Rophe Pepper expense in AAG's QuickBooks accounting records. By submitting the expense report and making the QuickBooks entry, Kramer represented that the Rophe Pepper expense was related to AAG's business. In fact, the expense

report and QuickBooks entry were knowingly false, in that the computer expense was related to Kramer's personal computers at home.

78.     These miscellaneous misappropriations of AAG funds by Kramer amounted to a total of $24,634.39.

## COUNT I - RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1962 -SHERRI KRAMER AND CHIP KRAMER

79.     AAG hereby incorporates paragraphs 1-78 as if fully set forth herein.

80.     There existed at all times relevant hereto a statute of the United States entitled the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961, et seq. Section 1962 of RICO prohibits the perpetration of a pattern of racketeering activity through an enterprise which affects interstate or foreign commerce.

81.     Sherri Kramer and Chip Kramer knowingly and purposefully entered into a pattern of racketeering activity against AAG by engaging in, including, but not limited to, the following unlawful acts:

> a.     as more fully set forth herein, opening the Fake Bosley Design Account and depositing into it stolen AAG funds, and altering AAG's accounting records to cover up the theft;
>
> b.     as more fully set forth herein, utilizing AAG Visa reward points to pay for purchases from Rocky Mountain Vacations and Fairmont Banff Springs and altering AAG's accounting records to cover up the theft;
>
> c.     as more fully set forth herein, stealing Fannie Mae candy purchased by AAG for personal use;
>
> d.     as more fully set forth herein, altering Sherri Kramer's employment status change form to misrepresent the effective starting date of her 2004 salary increase and stealing AAG funds as a result;
>
> e.     as more fully set forth herein, using stolen AAG funds to make personal purchases at Venetzia Fine Jewelry in Las Vegas and Costco in Schaumburg Illinois, and altering credit card statements and AAG's accounting records to cover up the theft;

f.    as more fully set forth herein, using AAG credit cards for personal purchases;

g.    as more fully set forth herein, using AAG credit card reward points for personal purchases;

h.    , misappropriating Woodfiled Mall gift certificates;

i.    , issuing AAG checks to herself for personal expenses and withdrawing AAG cash for personal expenses, and submitting false business expense reports.

82.    Each of the above-detailed acts were unlawful and constituted a pattern of racketeering activity knowingly, willfully, and maliciously undertaken by Sherri and Chip Kramer in furtherance of their theft from, and conspiracy to defraud, AAG;

83.    The Kramers utilized AAG as the enterprise through which they committed their acts of racketeering activity.

84.    The Kramers' acts of racketeering activity affected interstate and foreign commerce in the following ways:

a.    as more fully set forth herein, the deposits into and withdrawls out of the Fake Bosley Design Account were accomplished by either wire transfer or the U.S. Mail;

b.    as more fully set forth herein, the purchase from Rocky Mountain Vacations was made outside of Illinois, and the purchase from Fairmont Banff Springs was made in Canada;

c.    as more fully set forth herein, the jewelry purchase was made in Nevada;

d.    as more fully set forth herein, the doctored American Express credit card statements were downloaded from American Express' website, which, upon information and belief, was not and is not located in Illinois;

e.    as more fully set forth herein, using AAG credit cards and credit card reward points to purchase goods and services outside of Illinois.

85.    The Kramers' pattern of racketeering activity accomplished through AAG directly and proximately caused damages to AAG, amounting to at least $440,000.00.

WHEREFORE, AAG requests the following relief for Sherri Kramer and Chip Kramer's violation of RICO, 18 U.S.C. §1962:

A.  Damages in an amount no less than three times its actual damages, which is an amount no less than $1,320,000.00, pursuant to 18 U.S.C. §1964(c);

B.  That AAG be awarded its costs and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c); and

C.  That such other and further relief be awarded as this Court determines to be just and proper.

COUNT II - BREACH OF FIDUCIARY DUTY - SHERRI KRAMER

85.  AAG hereby incorporates paragraphs 1-84 as if fully set forth herein.

86.  As an employee, officer, and director of AAG, Sherri Kramer owed AAG a

fiduciary duty of the utmost candor, care, loyalty and good faith.

87.  Sherri Kramer knowingly, willfully, and maliciously breached her fiduciary duty

to AAG by engaging in, including, but not limited to, the following unlawful acts:

a.  as more fully set forth herein, opening the Fake Bosley Design Account and depositing into it stolen AAG funds, and altering AAG's accounting records to cover up the theft;

b.  as more fully set forth herein, utilizing AAG Visa reward points to pay for purchases from Rocky Mountain Vacations and Fairmont Banff Springs and altering AAG's accounting records to cover up the theft;

c.  as more fully set forth herein, stealing Fannie Mae candy purchased by AAG for personal use;

d.  as more fully set forth herein, altering Sherri Kramer's employment status change form to misrepresent the effective starting date of her 2004 salary increase and stealing AAG funds as a result;

e.  as more fully set forth herein, using stolen AAG funds to make personal purchases at Venetzia Fine Jewelry in Las Vegas and Costco in Schaumburg Illinois, and altering credit card statements and AAG's accounting records to cover up the theft;

f.  as more fully set forth herein, using AAG credit cards for personal purchases;

g.  as more fully set forth herein, using AAG credit card reward points for personal purchases;

- 27 -

h.  , misappropriating Woodfiled Mall gift certificates;

i.  , issuing AAG checks to herself for personal expenses and withdrawing AAG cash for personal expenses, and submitting false business expense reports.

88.  Sherri Kramer's breach of fiduciary duty proximately caused damages to AAG, amounting to at least $440,000.00.

89.  During the time period that Kramer, unbeknownst to AAG, was breaching her fiduciary duty to AAG, Kramer received in excess of $300,000 in salary from AAG which she is not entitled to keep.

**WHEREFORE**, AAG requests the following relief for Sherri Kramer's breach of fiduciary duty:

A.  Actual damages, including forfeiture of all salary and bonuses paid to Sherri Kramer by AAG, in an amount no less than $740,000.00; and

B.  Punitive damages in an amount no less than $5,000,000.00; and

C.  That such other and further relief be awarded as this Court determines to be just and proper.

### COUNT III - FRAUD - SHERRI KRAMER

90.  AAG hereby incorporates paragraphs 1-89 as if fully set forth herein.

91.  Sherri Kramer knowingly, willfully, and maliciously made many false statements and false omissions of material fact to AAG and employees of AAG during her employment with AAG, including, but not limited to, the following:

a.  as more fully set forth herein, opening the Fake Bosley Design Account and depositing into it stolen AAG funds, and altering AAG's accounting records to cover up the theft;

b.  as more fully set forth herein, utilizing AAG Visa reward points to pay for purchases from Rocky Mountain Vacations and Fairmont Banff Springs and altering AAG's accounting records to cover up the theft;

c.  as more fully set forth herein, stealing Fannie Mae candy purchased by AAG for personal use;

d.    as more fully set forth herein, altering her employment status change form to misrepresent the effective starting date of her 2004 salary increase and stealing AAG funds as a result;

e.    as more fully set forth herein, using stolen AAG funds to make personal purchases at Venetzia Fine Jewelry in Las Vegas and Costco in Schaumburg Illinois, and altering credit card statements and AAG's accounting records to cover up the theft;

f.    as more fully set forth herein, using AAG credit cards for personal purchases;

g.    as more fully set forth herein, using AAG credit card reward points for personal purchases;

h.    , misappropriating Woodfiled Mall gift certificates;

i.    , issuing AAG checks to herself for personal expenses and withdrawing AAG cash for personal expenses, and submitting false business expense reports.

92.    At the time Kramer made the above-detailed intentional statements and omissions of material fact, she knew them to be false.

93.    At the time Kramer made the above-detailed statements and omissions of material fact, she intended for AAG to rely upon them.

94.    AAG did, in fact, rely upon Kramer's statements and omission of material fact to their detriment, relying upon Kramer's honesty as an employee, officer, and director of AAG.

95.    AAG's reliance upon Kramer's statements and omission of material fact directly and proximately caused damages to AAG, as AAG made payments it did not approve or endorse, the true nature of which was hidden by Kramer's intentional statements and omissions. The actual damages to AAG amounts to at least $440,000.00.

96.    During the time period that Kramer, unbeknownst to AAG, was committing fraud upon AAG, Kramer received in excess of $300,000 in salary from AAG which she is not entitled to keep.

WHEREFORE, AAG requests the following relief for Sherri Kramer's fraud:

A.   Actual damages, including forfeiture of all salary and bonuses paid to Sherri Kramer by AAG, in an amount no less than $740,000.00;

B.   Punitive damages in an amount no less than $5,000,000.00; and

C.   That such other and further relief be awarded as this Court determines to be just and proper.

## COUNT IV - CONSPIRACY TO COMMIT FRAUD - SHERRI KRAMER AND CHIP KRAMER

97.   AAG hereby incorporates paragraphs 1-96 as if fully set forth herein.

98.   Sherri Kramer and Chip Kramer knowingly, willfully, and maliciously entered into a conspiracy to defraud AAG by engaging in, including, but not limited to, the following unlawful acts, or lawful acts undertaken by unlawful means:

a.   as more fully set forth herein, opening the Fake Bosley Design Account and depositing into it stolen AAG funds, and altering AAG's accounting records to cover up the theft;

b.   as more fully set forth herein, utilizing AAG Visa reward points to pay for purchases from Rocky Mountain Vacations and Fairmont Banff Springs and altering AAG's accounting records to cover up the theft;

c.   as more fully set forth herein, stealing Fannie Mae candy purchased by AAG for personal use;

d.   as more fully set forth herein, altering Sherri Kramer's employment status change form to misrepresent the effective starting date of her 2004 salary increase and stealing AAG funds as a result;

e.   as more fully set forth herein, using stolen AAG funds to make personal purchases at Venetzia Fine Jewelry in Las Vegas and Costco in Schaumburg Illinois, and altering credit card statements and AAG's accounting records to cover up the theft;

f.   as more fully set forth herein, using AAG credit cards for personal purchases;

g.   as more fully set forth herein, using AAG credit card reward points for personal purchases;

h.   , misappropriating Woodfield Mall gift certificates;

- 30 -

i.      , issuing AAG checks to herself for personal expenses and withdrawing AAG cash for personal expenses, and submitting false business expense reports.

99.    Each of the above-detailed acts of fraud, theft, and deception were willfully and maliciously undertaken by Sherri and Chip Kramer in furtherance of their conspiracy to defraud AAG.

100.    Each of the above-detailed acts of fraud directly and proximately caused damages to AAG, amounting to at least $440,000.00.

101.    During the time period that Kramer, unbeknownst to AAG, was committing fraud upon AAG and conspiring with Chip Kramer to commit fraud upon AAG, Kramer received in excess of $300,000 in salary from AAG which she is not entitled to keep.

**WHEREFORE**, AAG requests the following relief for Sherri Kramer and Chip Kramer's conspiracy to commit fraud:

A.    Actual damages, including forfeiture of all salary and bonuses paid to Sherri Kramer by AAG, in an amount no less than $740,000.00;  and

B.    Punitive damages in an amount no less than $5,000,000.00;  and

C.    That such other and further relief be awarded as this Court determines to be just and proper.

**COUNT V - CONVERSION - SHERRI KRAMER AND CHIP KRAMER**

102.    AAG hereby incorporates paragraphs 1-101 as if fully set forth herein.

103.    Sherri Kramer and Chip Kramer knowingly and purposefully converted AAG property for their own personal use by the following acts:

a.    as more fully set forth herein, opening the Fake Bosley Design Account and depositing into it stolen AAG funds, and altering AAG's accounting records to cover up the theft;

b.    as more fully set forth herein, utilizing AAG Visa reward points to pay for purchases from Rocky Mountain Vacations and Fairmont Banff Springs and altering AAG's accounting records to cover up the theft;

c.     as more fully set forth herein, stealing Fannie Mae candy purchased by AAG for personal use;

d.     as more fully set forth herein, altering Sherri Kramer's employment status change form to misrepresent the effective starting date of her 2004 salary increase and stealing AAG funds as a result;

e.     as more fully set forth herein, using stolen AAG funds to make personal purchases at Venetzia Fine Jewelry in Las Vegas and Costco in Schaumburg Illinois, and altering credit card statements and AAG's accounting records to cover up the theft;

f.     as more fully set forth herein, using AAG credit cards for personal purchases;

g.     as more fully set forth herein, using AAG credit card reward points for personal purchases;

h.     , misappropriating Woodfiled Mall gift certificates;

i.     , issuing AAG checks to herself for personal expenses and withdrawing AAG cash for personal expenses, and submitting false business expense reports.

104.   AAG at all times had an absolute and unconditional right to, and right to take immediate possession of, its monies, its Visa reward points, and its purchased Fannie Mae candy (collectively, the "*AAG Property*").

105.   AAG made a continuing demand for the AAG Property, in that the AAG Property was at all times property of AAG and never the property of either Sherri and/or Chip Kramer.

106.   By fraudulently stealing the AAG Property, Sherri and Chip Kramer wrongfully and without authorization assumed control and ownership over the AAG Property.

107.   The Kramers' illegal conversion of the AAG Property proximately caused damages to AAG, amounting to at least $440,000.00.

WHEREFORE, AAG requests the following relief for Sherri Kramer and Chip Kramer's conversion of AAG property:

A.     Damages in an amount no less than $440,000.00; and

B.     Punitive damages in an amount no less than $5,000,000.00; and

C.     That such other and further relief be awarded as this Court determines to be just
       and proper.

                                     Respectfully submitted,

                                     AMERICAN AUTO GUARDIAN, INC.


                                     By/s/          Joseph P. Lombardo
                                                    One of Its Attorneys

Richard A. Wohlleber
Joseph P. Lombardo
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 23, 2006, a copy of the foregoing AMERICAN AUTO GUARDIAN, INC.'S FIRST AMENDED COMPLAINT was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties and interested persons may access this filing through the Court's system:

> Michael J. Kralovec
> Joseph R. Lemersal
> Sara R. McClain
> Nash Lalich & Kralovec, LLC
> 53 W. Jackson Blvd., Suite 1102
> Chicago, IL 60604

> /s/     Joseph P. Lombardo
>         Joseph P. Lombardo