RRG                     6054-05009

## IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN AUTO GUARDIAN, INC., | ) | |
| | ) | |
| Plaintiff and Counter-Defendant, | ) | |
| | ) | |
| vs. | ) | No.:         06 C 6171 |
| | ) | Judge:      Shadur |
| ACUITY MUTUAL INSURANCE COMPANY, | ) | Magistrate: Ashman |
| | ) | |
| Defendant and Counter-Plaintiff. | ) | |

### ACUITY MUTUAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Now comes the Defendant and Counter-Plaintiff, Acuity Mutual Insurance Company ("Acuity"), by its attorneys, and for its Memorandum of Law in Support of its Cross-Motion for Summary Judgment in its favor and against the Plaintiff and Counter-Defendant, American Auto Guardian, Inc. ("AAG"), states as follows:

### INTRODUCTION

AAG filed this declaratory judgment action to recover the difference between the $121,629.55 already paid by Acuity under an Employee Dishonesty coverage form for losses incurred by AAG as a result of an embezzlement scheme by a former AAG employee, and the $394,647.73 that AAG claims Acuity owes under the subject insurance policies. AAG filed a complaint for breach of an insurance contract and bad faith failure to pay benefits. Acuity filed a counterclaim seeking a declaration that it owes no further obligations to AAG. The parties have completed discovery and each now seeks summary judgment on its claims.

"Summary judgment is proper when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir. 2007), quoting *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004); Fed.R.Civ.P.56 (c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With cross-motions for summary judgment, all inferences are construed in favor of the party against whom the motion under consideration is made. *Stimsonite Corp. v. NightLine Markers, Inc.*, 33 F. Supp. 2d 703, 705 (N.D.Ill. 1999).

## I.  CONSTRUCTION OF THE ACUITY POLICIES

This Court's subject matter jurisdiction is predicated on diversity of citizenship. 28 U.S.C. § 1332 (2005); AAG Compl. ¶ 3. In a diversity action, this Court will apply the same law that a state court of the forum – Illinois – would apply. *Erie R. Co. v. Thompkins*, 304 U.S. 64 (1938). Accordingly, the parties seek the Court's declaration of Illinois' ultimate position on the issues presented in these cross-motions for summary judgment from the current body of Illinois law on insurance policy language, applicable Seventh Circuit opinions, if any, decisional law of other states and decisional law from other federal courts.

### A.  THE ACUITY POLICIES CONSTITUTE THREE SEPARATE CONTRACTS.

For well over a century, Illinois law has held that a policy renewal constitutes a new contract. *Hartford Fire Ins. Co. v. Walsh*, 54 Ill. 164, 1870 WL 6279, at *2 (1870); *see also*, *Dungey v. Haines & Britton, Ltd.*, 155 Ill. 2d 329, 334, 614 N.E.2d 1205 (1993). This is particularly true where "material and significant differences exist, such as effective dates [and] increased premiums." *Doe v. Ill. State Medical Inter-Ins. Exch.*, 234 Ill. App.

3d 129, 138, 599 N.E.2d 983 (1st Dist. 1992); *see also*, *Bronstein v. INA Life Ins. Co. of North America*, 207 Ill. App. 3d 910, 912-13, 566 N.E.2d 484 (1st Dist. 1990) (a change in the effective dates of insurance is a "material and substantial" difference, thereby creating a new contract). Such differences demonstrate that "the latter policy was not a mere continuation of the former." *Doe*, 234 Ill. App. 3d at 138.

Here, each Acuity policy specifically lists its effective date and expiration date (Acuity Stmt. of Fts. ¶¶ 3,4). The Employee Dishonesty provisions each further note that Acuity "will pay only for loss or damage you sustain through acts committed or events occurring during the policy period." (Acuity Stmt. of Fts. ¶ 6). The policies define the term "policy period" as the one-year period shown in the declarations. *Id.* Accordingly, each of the Acuity policies represents a separate one-year policy of insurance that this Court must examine individually to determine Acuity's coverage obligations.

### B. AAG HAS NO COVERAGE UNDER EITHER THE FIRST ACUITY POLICY OR ANY OF THE GENERAL CASUALTY POLICIES.

The coverage determination in this case turns upon the construction of the discovery clause and the prior insurance clause in each Acuity policy. When construing the language of an insurance policy, a Court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy. *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561 (2005). The Court must give effect to every policy provision and assume that every provision was intended to serve a purpose. *Rich v. Principal Life Ins. Co.*, 226 Ill. 2d 359, 371, 875 N.E.2d 1082 (2007). If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary and popular meaning, and the policy must be applied as written. *Id.*

3

A Court may consider only reasonable interpretations of the policy language and must not strain to find an ambiguity where none exits. *Hobbs*, 214 Ill. 2d at 17. A contract is not rendered ambiguous merely because the parties have different interpretations as to its meaning or because each party insists that the language unambiguously supports its position. *Central Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206 (2004).

1. **The Acuity Policies' Discovery Clause, Standing Alone, Limits AAG's Recovery To Only Those Damages Incurred During The Third Acuity Policy Period.**

AAG did not discover Kramer's fraud until August 2005, one month after the July 2005 expiration of the third Acuity policy period. (Acuity Stmt. of Fts. ¶ 2). In general, an insured is only entitled to indemnity for losses falling within the terms of its policy. *Fidelity & Cas. Co. v. Mobay Chem Corp.*, 252 Ill. App. 3d 992, 1002-03, 625 N.E.2d 151 (1st Dist. 1992), *appeal denied*, 153 Ill. 2d 559, 624 N.E.2d 806 (1993). The Acuity policies, however, contemplated the possibility that an employee might perpetrate surreptitious crimes of employee dishonesty during the life of one policy that the employer would not discover until some time thereafter. Accordingly, the Acuity polices contain a discovery clause that extends coverage to "covered loss or damage discovered no later than one year from the end of the policy period." (Acuity Stmt. of Fts. ¶ 6).

Compliance with a limitations provision, such as the discovery clause here, amounts to a condition precedent to recovery under the policy. *Foamcraft, Inc. v. First State Ins. Co.*, 238 Ill. App. 3d 791, 794, 606 N.E.2d 537 (1st Dist. 1992). Provisions requiring discovery of loss within a specified time consistently command a literal construction; diligent attempts to discover loss, difficulty of discovering loss, and intentional

4

concealment of loss by a dishonest employee do not excuse a failure to comply with a discovery clause. *See Couch on Insurance 2d*, §46.194 (1982).

For example, in *Karen Kane Inc. v. Reliance Ins. Co.*, 202 F.3d 1180 (9th Cir. 2000), the Court examined, under California law, whether an insurer for incidents of employee dishonesty properly refused to pay the coverage limit for the first of three separate one-year policy periods, in connection with an employee's $1.4 million fraud. *Id.* at 1182. Just like the Acuity policies here, the Reliance policies' one-year discovery clause provided that Reliance "will pay only for covered loss discovered no later than one year from the end of the policy period." *Id.* at 1188.

The Court affirmed that the discovery clause barred any recovery by the insured under the earliest of the three Reliance policies. *Id.* at 1188-90. The Court held that "[t]he language of the one-year discovery rule is quite plain and would appear to apply in straightforward fashion. [The insured's] argument that the provision is 'inconsistent' with other policy provisions, essentially because it limits the coverage provided for by those provisions, lacks merit . . . Simply because a general rule of coverage has certain clear exceptions does not mean that the exceptions should be read out of the policy as 'inconsistent' with the rule." *Id.* at 1188.

The insured also accused Reliance of failing to adequately warn it of the provision's limitation on coverage. The Court torpedoed this argument as well "in light of the following warning, prominently located at the beginning of the policy: 'Various provisions in this policy restrict coverage. Read the entire policy to determine rights, duties and what is or is not covered.'" *Id.* at 1188. "Simply because [the insured] may not have subjectively anticipated that its recovery would be limited by the one-year discovery rule is irrelevant to the insured's objectively reasonable expectation of coverage, based on the

clear meaning of the policy provisions." *Id.* In light of these facts, the Court held that the one-year discovery clause "unambiguously barred [the insured] from recovering under the earliest of the three policies." *Id.* at 1190.

In fact, the sole situation in which courts have declined enforcement of a policy's discovery clause is where the fraud or theft was impossible to discover because the employee exercised dominion or control over the company. *See, e.g., Willow Mgmt. v. American States Ins.*, 1995 WL 22862, *2 (N.D.Ill. 1995) (limiting the dominion and control exception to circumstances where the employee dishonesty was impossible to discover); *Admiralty Fund v. Peerless Ins. Co.*, 143 Cal. App. 3d 379, 384-85, 191 Cal. Rptr. 753 (Cal. App. 1983) (discovery of loss provisions are generally valid and strictly enforceable, except in situations of "adverse domination and control").

In this case, Acuity took the examination under oath of Al Ranieri, AAG's president, to determine whether Kramer exercised dominion and control over AAG. Ranieri testified that Kramer did not follow AAG corporate policy of obtaining permission from another AAG officer for any personal or corporate disbursements. (Acuity Stmt. of Fts. ¶ 28). Ranieri had the authority to investigate Kramer's activities as he saw fit. He admitted that he had the authority to access the company's accounting programs whenever he wanted, and he had the authority to instruct Kramer to provide him with explanations of all financial activity and, in fact, eventually fired her, in part for her refusal to do so. (Acuity Stmt. of Fts. ¶¶ 29, 30). Simply put, Ranieri neglected to exert his authority to properly supervise Kramer.

Acuity and AAG explicitly agreed at the inception of each Acuity policy period that Acuity would "pay only for covered loss or damage discovered no later than one year from the end of the policy period." (Acuity Stmt. of Fts. ¶ 6). AAG incurred losses during the

third Acuity policy period ending July 12, 2005, which were undeniably first discovered within the one-year discovery clause contained in the third Acuity policy period. (Acuity Stmt. of Fts. ¶ 2). Acuity subsequently covered AAG's losses falling within the third Acuity policy period in the form of two settlement drafts totaling $121,629.55. (Acuity Stmt. of Fts. ¶¶ 7, 19, 35, 36).

The first Acuity policy period, however, ended in July 2003 and the second Acuity policy period ended in July 2004. (Acuity Stmt. of Fts. ¶ 4). One year from the end of the first and second Acuity policy periods would have been July 2004 and 2005, respectively. AAG did not discover Kramer's fraud until August 2005. Simply stated, the discovery clause did not obligate Acuity to pay any losses **except those occurring during the third Acuity policy period, which Acuity has already paid**.

### 2. The Prior Insurance Clause Extends Coverage For AAG Only To Those Damages Incurred During The Second Acuity Policy Period.

The Acuity policies each contain a prior insurance clause explaining that if AAG sustained a loss during a period of any insurance held by AAG that became ineffective upon inception of the Acuity policy under which coverage was sought, Acuity would pay for that loss upon satisfaction of certain enumerated conditions. (Acuity Stmt. of Fts. ¶ 6). A diligent search reveals no Illinois authority parsing such a prior insurance clause. Other courts, however, have examined similar policy language and upheld the same construction sought by Acuity.

The Eighth Circuit decision in *Winthrop & Weinstein v. Travelers Cas. & Sur. Co.*, 187 F.3d 871 (8th Cir. 1999), for example, is on all fours with this case. In *Winthrop*, the insured's employee engaged in an embezzlement scheme from 1990 to September 1994 that resulted in $215,783.01 of stolen proceeds. USF&G insured Winthrop under three policies

7

issued annually from February 1990 through February 1994, and Travelers insured Winthrop from February 1994 through and beyond the discovery of loss in September 1994. *Id.* at 872-73.

The Travelers policy contained the following relevant prior insurance clause:

a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance provided:

   (1) ***This insurance became effective at the time of cancellation or termination of the prior insurance;*** and

   (2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred. [*Id.* at 873 (emphasis added).]

Traveler's admitted liability for losses occurring after February 1, 1994, but denied that the prior insurance clause of its policy covered checks altered during the first two of the three USF&G policy periods on the grounds that the Travelers policy did not **become effective** after cancellation or termination of either of the first two USF&G policies.[1] *Id.* at 874.

In holding that the policy required Travelers to indemnify Winthrop **only** for the loss occurring during the Travelers policy period, the Court stated as follows:

Even if the USF&G policy contemplated multiple discovery windows, the district court held that the ***Travelers insurance did not "go into effect until after the third policy period"***; therefore, the Travelers insurance ***did not become "effective at the time of cancellation or termination of the prior insurance,"*** as the Travelers policy required. [*Id.* at 876 (emphasis added).]

---

[1] Travelers additionally successfully argued that it had no coverage obligation under the third and final USF&G policy period, because the one-year discovery window under the final USF&G policy period had not expired when the insured discovered the employee dishonesty. *Id.* at 874.

8

Put another way, the Court held that "the expiration of USF&G policy periods one and two [were] terminations of prior insurance not immediately followed by Travelers coverage." *Id.* at 876. Accordingly, Travelers was not liable for loss occurring during the first two USF&G policy periods.

Similarly, in *Armbrust International, Ltd. v. Travelers Cas. and Sur. Co. of America*, 2006 WL 1207659 (D.R.I. 2006), a prior insurance provision provided that Travelers would pay for the insured's loss "during the period of any prior insurance. . . provided . . . a. ***this Coverage Part became effective at the time of cancellation or termination of the prior insurance.***" *Id.* at *10 (emphasis added). The insured's employee had embezzled $323,203 between May 2000 and May 2003. The insured had coverage under St. Paul Policy One from October 2001 to October 2002; coverage under St. Paul Policy Two from October 2002 to October 2003; and coverage under the Travelers policy from February 2003 though March 2004. *Id.* at *2. The insured claimed coverage for all losses under the Travelers policy. Travelers, in turn, took the position that coverage under its policy only applied to loss which actually occurred during its policy period. *Id.* at *5.

The Court found no coverage under either St. Paul policy because, among other reasons, St. Paul Policy Two (effective October 2002 to October 2003) overlapped the Travelers policy (effective February 2003 to March 2004). *Id.* at *10. "This overlap means that the Travelers policy did not become effective at the time of termination or cancellation of St. Paul policy two." *Id.* The Court noted further that "[b]ecause the Travelers policy ran concurrently with St. Paul policy 3, and the language of this 'Prior Insurance' provision ***clearly requires that the prior insurance terminate or cancel before the current policy becomes effective***, Plaintiffs are not covered under the 'Prior Insurance' provision." *Id.* (emphasis added).

9

AAG alleges that the prior insurance clause effective during the third Acuity policy period provides coverage for "dishonest acts occurring 'during the period of *any prior insurance*' [] so long as there was a policy in effect that would have provided coverage for the acts if they had been discovered under the prior insurance policy period, and the dishonest acts are of the same nature or type that would be covered under Acuity's insurance" (AAG Compl. ¶ 23) (emphasis original). What AAG fails to take into consideration is that the prior insurance clause only applies if the policy at issue "became effective *at the time of cancellation or termination of the prior insurance*." (Acuity Stmt. of Fts. ¶ 6) (emphasis added). In this case, the third Acuity policy period did not commence upon cancellation or termination of either the first Acuity policy period or any of the prior General Casualty policy periods. Accordingly, AAG may not rely upon the prior insurance clause of the third Acuity policy to trigger coverage under either the first Acuity policy or any General Casualty policies.

As previously discussed, AAG discovered Kramer's embezzlement scheme in August 2005, thereby triggering coverage under the third Acuity policy period, for which Acuity has already compensated AAG $121,629.55. Contrary to the above discussion, however, the third Acuity policy period did "bec[o]me effective at the time of cancellation or termination of the prior insurance" – the second Acuity policy period. Therefore, Acuity also retains liability to compensate AAG for "sustain[ed] loss or damage during the [second Acuity policy] period."[2]

AAG is incorrect as a matter of law, however, when it relies upon *Cincinnati Ins. Co. v. Hopkins*, 522 N.W.2d 837 (Iowa 1994) and *Universal Underwriters Ins. Co. v. Ford*,

---

[2] Acuity discusses its lack of bad faith in not initially paying under the second Acuity policy period later in this memorandum.

10

734 So. 2d 173 (Miss. 1999) for the proposition that it "had employee dishonesty coverage continuously for the period of July 1, 2000 through July 12, 2005" and that, therefore, "the dishonest acts of Sherri Kramer occurring during the period of July 1, 2000 through July 12, 2005 are covered." (Acuity Stmt. of Fts. ¶ 39). Each of these decisions actually supports Acuity's interpretation that its liability reaches back no further than the second Acuity policy period.

For example, in *Cincinnati*, the Court solely held that a prior insurance clause provided coverage ***to the policy preceding it***. The Court did not examine and in no way considered what effect the prior insurance clause would have on a policy issued prior to the preceding policy. As such, the *Cincinnati* decision is uninstructive relative to AAG's claim for coverage under the first Acuity policy or any of the General Casualty policies.

The decision in *Universal* is similarly inapplicable. In *Universal*, the prior insurance provision provided, in relevant part, as follows:

> LOSS UNDER PRIOR BOND OR POLICY – If EMPLOYEE DISHONESTY ***replaces a bond or policy*** carried by YOU (or YOUR predecessor in interest) ***that is no longer in effect***, WE will pay for LOSS (subject to Condition 1) if LOSS would have been covered by the prior bond or policy except that the LOSS was not discovered in the Discovery Period of the prior bond or policy. [*Id.* at 178-79 (emphasis added).]

The Universal policies broadly provided coverage as long as the current policy "replaces a bond or policy. . . that is no longer in effect." *Id.* There was no qualification like the Acuity policies here and in *Cincinnati* and *Winthrop*, which specified that the current policy *only* provided coverage for a policy that became ineffective ***at the time the current policy incepted***. Thus, the Court's rationale in *Universal* is limited to policy language that does not appear and is distinguishable from the language in the Acuity policies.

In addition to what it has already paid to AAG, Acuity also owes coverage to AAG under the second Acuity policy period by virtue of the third Acuity policy's prior insurance clause. There is no issue of material fact, however, to contradict Acuity's assertion that it owes no coverage to AAG under the first Acuity policy or any of the General Casualty policies. Accordingly, the Court should grant partial summary judgment to each party as discussed herein as a matter of law.

## II. ACUITY DID NOT ACT IN BAD FAITH IN INITIALLY INCORRECTLY DENYING COVERAGE UNDER THE SECOND ACUITY POLICY PERIOD.

The law is well-settled by the Illinois Supreme Court that where a *bona fide* dispute exists concerning coverage, the insurer's actions in denying or delaying coverage are not vexatious and unreasonable and that sanctions and costs therefore remain inappropriate. *See Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000); *Knoll Pharm. Co. v. Auto. Ins. Co. of Hartford*, 210 F. Supp. 2d 1017, 1028-29 (N.D.Ill. 2002); *State Farm Mut. Auto. Ins. Co. v. Smith*, 197 Ill. 2d 369, 757 N.E.2d 881 (2001). The definition of *bona fide* is "[r]eal, genuine, and not feigned." *McGee v. State Farm Fire & Cas. Co.*, 315 Ill. App. 3d 673, 684, 734 N.E.2d 144 (2d Dist. 2000) (quoting Black's Law Dictionary 177 (6th ed. 1990)). An insurer may in good faith entertain a difference of opinion regarding policy coverage, and no penalty should be assigned unless this conduct was without reasonable cause. *Morris v. Auto-Owners Ins. Co.*, 239 Ill. App. 3d 500, 508, 606 N.E.2d 1299 (4th Dist. 1993). Additionally, a difference of opinion between insurer and insured is not rendered unreasonable simply because judgment was later adverse to the insurer. *Id.*

It further remains well settled that the lack of Illinois case law examining specific policy provisions makes a *bona fide* dispute between insurer and insured all the more

reasonable. *See State Farm Mut. Auto. Ins. Co. v. Fisher*, 315 Ill. App. 3d 1159, 1166, 735 N.E.2d 747 (1st Dist. 2000) (*bona fide* dispute as to whether valet driver and casino parking service were excluded from liability coverage under insured's auto policy by auto business exclusion precluded finding that insurer's refusal to defend was vexatious; no specific Illinois case law existed and insurer's interpretation was reasonable, albeit wrong); *see also, First Nat'l Bank of Manitowoc v. Cincinnati Ins. Co.*, 485 F.3d 971 (7th Cir. 2007) (no bad faith under Wisconsin law where coverage was "fairly debatable" and there were no Wisconsin cases directly on point, and little persuasive extrajurisdictional case law existed); *Hudson Universal Ltd. v. Aetna Ins. Co.*, 987 F. Supp. 337 (D.N.J. 1997) (same under New Jersey law); *SEMX Corp. v. Federal Ins. Co.*, 2005 WL 2877884 (S.D.Cal. 2005) (same under California law).

In fact, in *Karen Kane, supra*, the court specifically addressed the insured's bad faith claim. The Court held that "[a]lthough Reliance's reading of the insurance policy was ultimately incorrect in part, we find that Reliance's interpretation was a reasonable one. . . .Because Reliance did not act unreasonably or tortiously in denying coverage, we affirm the dismissal of [the insured's] bad faith claim." *Karen Kane*, 202 F.3d at 1190.

Acuity never erred in its coverage determination relative to the discovery clause. Acuity and its coverage counsel, however, initially read the prior insurance clause as pertaining solely to losses occurring during a *previous carrier's* time on the risk, reading the purpose of the clause, in the absence of any Illinois law to the contrary, as protecting an insured switching from one carrier to the next. *See, e.g., Winthrop*, 187 F.3d at 876-77 (insured should not be penalized *for switching insurance companies*). Under such a reading, the prior insurance clause would only act to provide coverage for damages occurring during the General Casualty policy periods, and would only apply until the July

2003 expiration of the first Acuity policy period. Based upon this interpretation, Acuity acted reasonably in initially concluding that the prior insurance clause of the third Acuity policy did not trigger additional coverage for AAG's loss under the General Casualty policies. Admittedly, Acuity failed to initially consider whether the prior insurance clause might cover losses occurring during an earlier Acuity policy period.

Although Acuity was not bound to follow or consider the policy interpretation of a foreign court, Acuity and its coverage counsel nonetheless reexamined the prior insurance clause upon receipt of AAG's August 29, 2006 correspondence referring Acuity to the Iowa Supreme Court's 1994 decision in *Cincinnati*. (Acuity Stmt. of Fts. ¶¶ 39-46). Based upon *Cincinnati*, Acuity recognized that because the prior insurance clause in the third Acuity policy did not define "prior insurance" as specifically referring to a previous carrier, this clause could *potentially* refer to *any* "prior insurance," including prior policies issued by Acuity. *Id.* Acuity further recognized that such an interpretation of the prior insurance clause would indeed result in coverage for AAG during the second Acuity policy period as well. *Id.* Acuity was still in the process of further researching its own underwriting department's interpretation of the prior insurance clause and obtaining a confirming coverage opinion from additional outside coverage counsel when AAG filed this suit - only seven weeks after alerting Acuity to the *Cincinnati* decision. (Acuity Stmt. of Fts. ¶ 47).

The *Cincinnati* decision, although arguably triggering coverage for AAG during the second Acuity policy period, in no way supports AAG's claim for coverage under the first Acuity policy or any of the General Casualty policies. Based upon AAG's inception of litigation, Acuity could not pay on the second Acuity policy aver November 2006, even though it recognized that liability potentially existed therein. Nonetheless, Acuity's $164,228.48 Offer of Judgment, which offer included full payment of damages incurred

14

under the second Acuity policy period (Acuity Stmt. of Fts. ¶48), demonstrates Acuity's continued efforts of good faith even after AAG instituted litigation. For its part, AAG never responded in any way to the Offer of Judgment. (Acuity Stmt. of Fts. ¶49).

Although Acuity initially denied coverage under the second Acuity policy, it was in the process of reevaluating its position in light of a single foreign case brought to its attention by AAG when AAG filed this lawsuit. Moreover, Acuity's reexamination only demonstrated additional coverage under one policy, not under five policies as AAG still contends. At base, the totality of Acuity's conduct – in light of the undisputed facts, the parties' reasonable and *bona fide* dispute regarding interpretation of the prior insurance clause and the absence of any Illinois law on point – absolves Acuity of bad faith claims handling in its initial denial of coverage under the second Acuity policy. Accordingly, AAG's bad faith action should be dismissed as a matter of law.

Wherefore, the Defendant and Counter-Plaintiff, Acuity Mutual Insurance Company, respectfully requests that this Honorable Court grant its Cross-Motion for Summary Judgment as expressed herein and against AAG, and for such other and further relief as the Court deems just and fit in the circumstances.

**Respectfully submitted:**

**JOHNSON & BELL, LTD.**

By: */s/ Richard R. Gordon*
     Richard R. Gordon

Glenn F. Fencl ARDC No. 3126086
Richard Gordon ARDC No. 6277551
JOHNSON & BELL, LTD.
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603-5404
(312) 372-0770
**Doc # 1790479**

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of February, 2008, I electronically filed the foregoing Memorandum of Law in Support of Motion for Summary Judgment with the Clerk of The Court using the CM/ECF system which will send notification of such filing to the following: **Joseph P. Lombardo, Chapman and Cutler, LLP, 111 West Monroe Street, Chicago, Illinois 60603** and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: none.

/s/ Richard R. Gordon

Richard R. Gordon A.R.D.C. Number 6277551
JOHNSON & BELL, LTD.
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603
(312) 372-0770