IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN AUTO GUARDIAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 6171 |
| | ) | |
| ACUITY MUTUAL INSURANCE | ) | JUDGE SHADUR |
| COMPANY, | ) | Magistrate Judge Ashman |
| | ) | |
| Defendant. | ) | |
| | ) | |

**AMERICAN AUTO GUARDIAN, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
SUMMARY JUDGMENT ON COUNT I OF ITS COMPLAINT**

Plaintiff, **AMERICAN AUTO GUARDIAN, INC.** ("AAGI"), by its attorneys, submits this Memorandum of Law in support of its Motion for Summary Judgment on Count I of its Complaint. There are no genuine issues of material fact as to that Count, and AAGI is entitled to judgment as a matter of law against defendant, **ACUITY MUTUAL INSURANCE COMPANY** ("Acuity"), for the balance due on AAGI's employee dishonesty claim filed under Acuity's employee dishonesty insurance policy.

## I. STATEMENT OF FACTS

**A.    AAGI's Employee Dishonesty Insurance Policies**

AAGI markets and administers various financial and insurance type products sold in connection with the purchase of automobiles and other products, including vehicle service contracts, GAP, theft protection products, and excess wear and tear coverage for leased vehicles. (SF1)[1] In connection with its business operations, AAGI purchased insurance to cover losses in the event of employee dishonesty. (SF1) As is relevant herein, AAGI had continuous insurance coverage for dishonest employee acts for five years. (SF5-6). General Casualty Insurance

---

[1]    Reference to AAGI's Rule 56.1 Statement of Facts will be in the format "SF" followed by the particular Statement of Fact paragraph number.

Company ("General Casualty") provided coverage between 12:01 a.m. July 1, 2000 and 12:01 a.m. on July 12, 2002. (SF5) Acuity then provided coverage between 12:01 a.m. on July 12, 2002 and 12:01 a.m. on July 12, 2005. (SF6) The following six policies were issued:

| Exhibit | Insurer | Policy No. | Effective Dates |
|---------|---------|------------|-----------------|
| A | General Casualty Insurance Company | CDD0300861 | 7/01/00-11/01/00 |
| B | General Casualty Insurance Company | CDD0300861 | 11/01/00-11/01/01 |
| C | General Casualty Insurance Company | CDD0300861 | 11/01/01-7/12/02 |
| D | Acuity Mutual Insurance Company | K21167-0 | 7/12/02-7/12/03 |
| E | Acuity Mutual Insurance Company | K21167-0 | 7/12/03-7/12/04 |
| F | Acuity Mutual Insurance Company | K21167-0 | 7/12/04-7/12/05 |

AAGI purchased its first employee dishonesty policy from General Casualty. (SF5) That policy, No. CDD0300861, covered dishonest acts occurring between 12:01 a.m. on July 1, 2000 and 12:01 a.m. on November 1, 2000 and discovered no later than one year from the end of the policy period.[2] (SF5; SF8)

AAGI renewed its employee dishonesty coverage in November, 2000, and this second General Casualty policy, bearing the same policy number as the first, and stating on its face "renewal of: CDD0300861," provided coverage for dishonest acts occurring between 12:01 a.m. on November 1, 2000 and 12:01 a.m. on November 1, 2001. (SF5, SF8) It also covered losses "discovered no later than one year from the end of the policy period" (i.e., November 1, 2002). (SF8)

In November, 2001, AAGI renewed its coverage for employee dishonesty with a third consecutive General Casualty policy. (SF5, SF8) This policy, bearing the same number as the other two policies, stated that it was the "renewal of "CDD0300861." It provided coverage for losses resulting from dishonest acts occurring between 12:01 a.m. on November 1, 2001, and 12:01 a.m. on November 1, 2002, and discovered within one year from the date of cancellation

---

[2]     As discussed more fully below, in early August, 2005, AAGI discovered that its Vice President of Accounting, Sherri Kramer, in conspiracy with her husband, had been embezzling funds from AAGI. The earliest dishonest acts that AAGI unearthed that occurred while there was insurance in force happened in July, 2001, so coverage under the first General Casualty policy is not implicated. Kramer, however, did commit dishonest acts in each of the other coverage periods.

or termination of the policy. (SF8) However, the policy also provided that if AAGI switched insurers, then the extended one year period to discover the loss would automatically terminate upon the effective date of the replacement insurance. In other words, the policy would only cover losses resulting from dishonest acts reported within the policy period. The specific language of the policy stated (SF9):

### E. Conditions

#### 1. Conditions Applicable to All Insuring Agreements

\* \* \*

#### i. Extended Period to Discover Loss

(1) We will pay for loss that you sustained prior to the effective date of termination or cancellation of this policy, which is discovered by you no later than 1 year from the date of that termination or cancellation.

(2) However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded by this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

\* \* \*

#### p. Loss Sustained

Subject to the Loss Sustained During Prior Insurance Condition **E.1.q.**, we will pay for loss that you sustain through acts committed or events occurring during the policy period shown in the Declarations and discovered by you:
(1) During the policy period; or
(2) During the period of time provided in the Extended Period To Discover Loss Condition **E.1.i.**

This last General Casualty policy, as did the previous two General Casualty policies, provided for "prior loss" coverage. (SF5) General Casualty agreed that it would cover losses occurring during the current policy period, and losses that AAGI could have recovered under the preceding policy period except for the fact that the time for discovering the loss had expired.

(SF9)[3]  Put another way, the General Casualty policy agreed to extend the discovery period for losses occurring in the second General Casualty policy period (November 1, 2000 to November 1, 2001 -- second policy period losses) until the end of the current policy period (November 1, 2002), and for one year thereafter.  (SF9)  The specific language of the General Casualty policy stated (SF9):

### q.  Loss Sustained During Prior Insurance

(1)  If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this policy, provided:
    (a) This policy became effective at the time of cancellation or termination of the prior insurance; and
    (b) The loss would have been covered by this policy had it been in effect when the acts or events causing the loss were committed or occurred.

*   *   *

In July, 2002, AAGI switched insurers.  (SF7)  AAGI purchased coverage from Acuity for employee dishonest acts occurring between 12:01 a.m. on July 12, 2002 and 12:01 a.m. on July 12, 2003.  (SF6)  Effective with the switch, General Casualty's policy immediately terminated the time to discover losses.  (SF5)  General Casualty covered, therefore, only losses which had already been reported to it.  (SF5)[4]

Acuity's policy, however, had language covering prior losses substantially similar to General Casualty's language.  (SF10)  Acuity promised that it would cover losses occurring during the current policy period, and losses that AAGI could have recovered under the preceding

---

[3]    Since AAGI did not have employee dishonesty insurance prior to purchasing the first General Casualty policy, the prior loss provision of that policy does not come into play.  And since no dishonest acts were committed during the first policy period, the prior loss provision of the second General Casualty policy also is not applicable.  The prior loss provision of the third General Casualty policy is activated because Kramer committed dishonest acts during the second General Casualty policy period.

[4]    No losses had been reported to General Casualty as Kramer's embezzlement was not discovered until August, 2005.

policy period but for the fact that the time for discovering the loss had expired. (SF10) Since AAGI could have recovered under the third General Casualty policy for second General Casualty policy period losses (November 1, 2000 – November 1, 2001) as well as losses occurring during the third General Casualty policy period itself (November 1, 2001 to July 12, 2002 -- third policy period losses), the Acuity policy, in effect, extended the time for discovering second and third General Casualty policy losses to the end of the first Acuity policy period (July 12, 2003), and for one year thereafter. (SF10) The specific language of the Acuity policy stated (SF10):

3. **Employee Dishonesty**

\* \* \*

e. We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

\* \* \*

g. We will pay only for covered loss or damage discovered no later than one year from the end of the Policy Period.

h. If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

(1) This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

(2) The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

\* \* \*

This first Acuity policy also provided under the BisPak Common Policy Conditions, Section I, Premiums, paragraph 3, that: "With our consent you may continue this policy in force by paying a continuation premium for each successive one year period. ..." (SF10) Thus, when Acuity sent to AAGI its second policy for the period July 12, 2003 – July 12, 2004, it was accompanied by a July 25, 2003 letter that stated in part: "This renewal policy continues your business coverage under the Comco Commercial Insurance Program. ..." (SF 10; SF11)

This second Acuity policy also contained the same prior loss policy language, and worked the same way as the first policy. (SF10) It agreed to cover losses occurring during the current policy period, and losses that AAGI could have recovered for under the preceding policy except that the time for discovering those losses had expired. (SF10) Under the first Acuity policy, AAGI could have recovered for second General Casualty policy period losses (November 1, 2000 – November 1, 2001), the third General Casualty policy period losses (November 1, 2001 – July 12, 2002) and losses occurring under the first Acuity policy itself (July 12, 2002 – July 12, 2003 – fourth policy period losses). (SF10) Thus, the second Acuity policy extended the time period for discovering losses to the end of the second Acuity policy period (July 12, 2004), and for one year thereafter. (SF10) In other words, losses incurred from November 1, 2000 through July 12, 2004 were covered by the second Acuity policy. (SF10)

Like the first Acuity policy, the second Acuity policy provided that the policy would continue in force by paying a continuation premium. (SF 10) And as was the case with the second policy, when Acuity sent to AAGI its third and final Acuity policy for the period July 12, 2004 – July 12 2005, it was accompanied by a letter dated June 23, 2004 that identically stated: "This renewal policy continues your business coverage under the Comco Commercial Insurance Program. ..." (SF 11)

This third and final Acuity policy also agreed to cover loss es occurring during the current policy period, and losses that AAGI could have recovered under the preceding policy period except that the time for discovering those losses had expired. (SF10) The third Acuity policy agreed to cover second, third, and fourth policy period losses. (SF1) Because the final Acuity policy agreed to cover prior policy losses, it in effect extended the time period for discovering those prior losses (and losses occurring during the final policy period) to the end of that policy period (July 12, 2005), and for one year thereafter. (SF10)

In sum, the effect of these consecutive insurance policies was to extend, or roll forward, the discovery period for losses occurring during any of the policy periods to one year after the termination of the last policy period, or until July 12, 2006. (SF10) Or, put another way, Acuity agreed to provide coverage for losses stemming from events occurring between November 1,

2000 and July 12, 2005, and discovered no later than July 12, 2006. (SF10) The limit of coverage was $500,000. (SF6)

**B.      Sherri Kramer's Dishonest Acts**

In early August, 2005, AAGI uncovered that Sherri Kramer, AAGI's Vice President of Accounting, had been embezzling funds by depositing into a bank account owned by her husband, Chip Kramer, AAGI checks payable to a defunct supplier, Bosley Design and Imaging ("the Bosley Design Scheme"). (SF12-14) On October 19, 2005, AAGI notified Acuity that it had completed its investigation into the Kramers' Bosley Design Scheme (SF15). The scheme encompassed sixty-four (64) checks issued beginning October 19, 2001 and running through June 24, 2005 totaling $285,264.22. (SF16) As broken down into coverage periods, AAGI sustained the following losses (SF17):

| | | | |
|---|---|---|---|
| General Casualty Policies | 11/01/00 - 07/12/02 | 24 checks totaling | $76,808.40 |
| Acuity Policy | 07/12/02 - 07/12/03 | 23 checks totaling | $81,850.07 |
| Acuity Policy | 07/12/03 - 07/12/04 | 8 checks totaling | $50,821.12 |
| Acuity Policy | 07/12/04 - 07/12/05 | 9 checks totaling | $75,784.63 |

By letter dated February 20, 2006, four months after Acuity was notified that the investigation into the Bosley Design Scheme was complete, and even though Acuity had not requested that a formal Proof of Loss be filed, Acuity paid AAGI $49,783.46 representing payment for five Bosley checks issued in 2005 that fell within the coverage period July 12, 2004 – July 12, 2005. (SF 14; SF 18) Acuity stated that coverage for these five checks was "undisputed."[5] (SF18; SF19) Acuity, however, did not explain why payment for the remaining four checks issued during that same coverage period and totaling $26,001.17 was not made. and also did not explain why payment for the remaining Bosley Design checks issued in other coverage periods was not made. (SF20) AAGI requested an explanation on three separate occasions (SF 21) but despite the fact that Illinois Insurance Code Section 5/154.6(b) and

---

[5]      Illinois Insurance Code Regulation Section 919.50(a) requires an insurer to affirm or deny liability on claims within a reasonable time, and to tender payment within thirty days for those portions of a claim which are not in dispute.

supporting Regulation 919.40 required Acuity to respond to AAGI's inquiries within fifteen working days, Acuity ignored AAGI's requests for more than five months (SF22).

The discovery of the Bosley Design Scheme led AAGI to investigate all of the financial transactions that Sherri Kramer, as Vice President of Accounting, had handled during the years that she was employed by AAGI. (SF23) AAGI uncovered, among other things, that Kramer had altered accounting records to conceal the use of corporate credit cards for personal purchases; used credit card reward points for ski vacations and other high life style acquisitions; and submitted fake expense reports. (SF24) On February 22, 2006, AAGI advised Acuity that its investigation into the Kramers' other dishonest acts was "substantially completed" (SF25), and on March 28, 2006 AAGI submitted a comprehensive Proof of Loss.[6] (SF26) As broken down into coverage periods, AAGI suffered the following losses in addition to the Bosley Design losses (SF27):

| | | |
|---|---|---|
| General Casualty Policies 11/01/00 – 07/12/02 | | $14,266.79 |
| Acuity Policy 07/12/02 – 07/12/03 | | $30,000.62 |
| Acuity Policy 07/12/03 – 07/12/04 | | $60,072.59 |
| Acuity Policy 07/12/04 – 07/12/05 | | $45,307.34 |
| | **Total:** | **$149,647.34** |

## C.     Acuity's Denial of AAGI's Claim

By letter from Acuity dated August 2, 2006, AAGI finally learned the fate of the remainder of its claim. (SF28) In that letter, Acuity did not deny that Sherri Kramer's actions were the kind of dishonest acts covered by its policies, but declared that any losses occurring prior to July 12, 2004 were not covered. (SF29) Acuity, therefore, only paid AAGI an additional $71,846.09 for losses AAGI suffered between July 12, 2004 and July 12, 2005, which included the four Bosley Design checks that Acuity had not paid back in February. (SF29) Acuity asserted that the $71,846.09 was its "remaining liability" on AAGI's claim (SF29). In summary, Acuity paid AAGI a total of $121,629.55 on AAGI's claim of $434,911.56

---

[6]     Sherri Kramer, and her husband, Chip Kramer, III were indicted by the State of Illinois, Case Nos. 06 CR 2127101 and 06 CR 2127102, and have pled guilty. AAGI has also filed a civil RICO, fraud and conversion action pending in this Court before Judge Marovich. *American Auto Guardian, Inc. v. Sherri Kramer and Harry G. Kramer, III*, No. 05 C 6404.

($285,264.22 Bosley Design losses plus $149,697.34 "other" losses), leaving a balance due of $313,282.01. (SF30)

By letter dated August 29, 2006, AAGI immediately disputed Acuity's limitation on coverage. (SF 31) AAGI asked Acuity to reconsider its denial, cited case law that squarely rejected Acuity's position, and demanded that Acuity pay the remaining balance of AAGI's claim (SF31).

Acuity replied that it was reviewing the issues that AAGI had raised, and that a response would be forthcoming shortly. (SF 32-34) In preparing its response, Acuity reviewed information from SilverPlume, an industry resource used by Acuity for various purposes, including policy interpretation (SF35) In discussing the interpretation of Paragraph 3.h, SilverPlume set out an illustration that established that Acuity's coverage position was wrong:

> ... [A]ssume a policy is written with Company A effective January 1, 2006, and expiring on January 1, 2007. Assume further that coverage was received for successive policy terms with a different insurer (Company B) without a gap in coverage. An employee steals money on several occasions between January 1, 2006 and January 1, 2007, but the losses are not discovered until February 2, 2008. In this example, the new insurer (Company B) would be liable even though the loss, which occurred during Company A's policy term, was not discovered until one month after the end of Company A's one year discovery period. (SF36)

Despite Acuity's promise that a substantive response would be forthcoming, AAGI never received one. (SF 37) Consequently, AAGI filed this litigation on November 13, 2006, two and a half months after AAGI first requested re-consideration. (SF38)

## II.   LAW AND ARGUMENT

### A.   ILLINOIS LAW REQUIRES THAT EVERY PROVISION OF AN INSURANCE POLICY BE GIVEN EFFECT

In this diversity action (SF1-3), the Court applies Illinois law regarding the interpretation of insurance policies. Under Illinois law, the construction of the provisions of an insurance policy is a question of law. *Nicor, Inc. v. Associated Electric and Gas Insurance Services, Ltd.*, 223 Ill.2d 407, 860 N.E.2d 280, 285 (2006). Insurance policies are subject to the same rules of construction applicable to other types of contracts. *Id.* The Illinois Supreme Court in *Valley*

*Forge Insurance Company v. Swiderski Electronics, Inc.*, 223 Ill.2d 352, 860 N.E.2d 307, 314 (2006) summarized those rules of construction:

> A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy. **Like any contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose.** If the words used in the policy, given their plain and ordinary meaning, are unambiguous, they must be applied as written. However, if the words used in the policy are ambiguous, they will be strictly construed against the drafter. Words are ambiguous if they are reasonably susceptible to more than one interpretation, not simply if the parties can suggest creative possibilities for their meaning and a court will not search for ambiguity where there is none. (citations omitted) (emphasis added)

**B.    ACUITY'S POLICY UNAMBIGUOUSLY PROVIDES COVERAGE FOR ALL OF SHERRI KRAMER'S DISHONEST ACTS THAT OCCURRED DURING THE GENERAL CASUALTY AND ACUITY POLICY PERIODS**

**1.    Acuity's Policies Constitute One Continuous Policy Term from July 12, 2002 through July 12, 2005**

It is axiomatic insurance contract law that a renewal policy may either constitute a new and independent contract, or an extension of the prior contract, depending on the intent of the parties as ascertained from the contract itself. *See generally*, 44 C.J.S. Ins. §551 (2007). Where an insurance policy period is extended by payment of the required premium, it has been held that such a policy constitutes a single, extended policy term, which is comprised of renewal periods. *See, e.g., Safeco Inc. Co. v. Lindberg*, 394 N.W.2d 146, 147-48 (Minn. 1986); *Shared-Interest Management, Inc. v. CNA Fin. Ins. Group*, 725 N.Y.S.2d 469, 471-72 (N.Y. Sup. Ct. 2001).

The undisputed facts herein establish that there is a single continuous Acuity policy period from July 12, 2002 through July 12, 2005. First, the renewal policies all have the same policy number, K21167-0, as the initial Acuity policy. (SF 6)  Second, the cover letters from Acuity to AAGI refer to each enclosed policy as a "renewal" policy that "continues" AAGI's business coverage. (SF11).  Finally, all of the policies, in paragraph I. 3 of the BisPak Commercial Policy Conditions, refer to continuing "this" policy for a "successive" one year period by paying a "continuation" premium. (SF10). It is clear, therefore, that there was one

continuous Acuity policy period, the original term of which was extended by the issuance of renewal policies, and the payment of a continuation premium. Accordingly, as AAGI discovered the Kramers' wrongdoing within one year of the end of this policy period, all of the losses suffered by AAGI during that period (July 12, 2002 – July 12, 2005) are covered. *See, e.g., Safeco Inc. Co.*, 394 N.W.2d at 147-48; *CNA Fin. Ins. Group*, 725 N.Y.S.2d at 471-72. Moreover, as set forth below, under the prior insurance clause of the Acuity policy, the losses that occurred during the General Casualty policies are also covered. Therefore, summary judgment should be granted on Count I of the Complaint in favor of AAGI and against Acuity.

2.    **Even If There Is Not One Continuous Acuity Policy Term, There Is Still Coverage Under the Prior Insurance Clause**

The language of Paragraph 3.h of the Acuity policies is clear, straightforward, and unambiguous – losses covered during the period of the prior insurance are covered under the current policy if the time for discovering the losses under the prior insurance has expired. The prior loss clause addresses the time period before policy inception. The discovery clause, limiting coverage to losses discovered within one year of policy termination, applies to losses occurring in the current policy time period. The clauses do not conflict, and both can be given effect in accordance with the mandate of Illinois law, *Valley Forge, supra.* As noted by the Fifth Circuit in *Times-Picayune Publishing Corporation v. Zurich American Insurance Company,* 421 F.3d 328 (5th Cir. 2005), prior loss clauses contemplate "the possibility that surreptitious crimes like embezzlement might be perpetrated during the life of one policy, but not discovered until sometime thereafter."

Acuity's prior loss coverage is subject to two conditions: (1) that the current policy becomes effective at the time of termination of the prior insurance; and (2) that the loss or damage that occurred during the period of the prior insurance is of the type that would be covered under the current insurance. Both the pre-conditions to coverage have been met. First, Kramer's dishonest acts that occurred during the periods of prior insurance are of the kind covered by the current policy, and Acuity has never contended otherwise. (*See* Acuity's August 2, 2007 coverage letter.) Second, AAGI's third Acuity policy, under which AAGI is seeking recovery, became effective at the expiration of the immediately preceding second policy.

As discussed above, AAGI's second Acuity policy (July 12, 2003 – July 12, 2004) would have covered all of Kramer's dishonest acts that occurred during the prior consecutive insurance coverage periods, along with dishonest acts that occurred during that second policy period. AAGI, however, did not discover Kramer's embezzlement until August, 2005, which was more than one year after the discovery period for the second Acuity policy period expired on July 12, 2005. Under the plain language of Paragraph 3.h, therefore, AAGI's third policy covered all of Kramer's prior dishonest acts covered by the second policy because the time period under the second policy for discovering the dishonest acts had expired.

Acuity, however, not only refused to provide coverage for Kramer's dishonest acts that occurred during the policy periods from November 1, 2000 through July 12, 2003, *but also refused to provide coverage even for Kramer's dishonest acts that occurred during the immediately preceding policy period of July 12, 2003 – July 12, 2004*. Acuity achieved this result by reading Paragraph 3.h out of the policy. Acuity's coverage explanation set forth on page 5 of its August 2, 2005 coverage letter is that "the twelve month reporting requirement bars coverage for all damages occurring within a particular policy period that were not discovered within twelve months of the end date of that policy period." But that position, as AAGI pointed out in its August 29, 2005 letter requesting reconsideration, is nonsensical, as it renders meaningless the first part of Paragraph 3.h: "If you … sustain loss or damage during the period of any prior insurance that you could have recovered under that insurance *except the time within which to discover the loss or damage had expired*, we will pay for it under this optional coverage …" (Emphasis added.) Acuity's coverage position contradicts well established Illinois law that effect should be given every provision because it is intended that every provision serve a purpose (*Valley Forge, supra*, 810 N.E.2d at 314), and that policies should not be interpreted in such a way as to render coverage illusory. *American Country Ins. Co. v. Cline,* 309 Ill.App.3d 501, 722 N.E. 2d 755, 763 (1st Dist. 1999).

Acuity's position is also contrary to the interpretation of Paragraph 3.h by SilverPlume, the resource relied on by Acuity for policy interpretation. (SF34) The example set out in *SilverPlume* to illustrate the operation of Paragraph 3.h is on all fours with this situation, and

clearly shows that Section 3.h provides coverage when the discovery period of the preceding policy has expired. (SF35)

Further, the case law that has construed provisions identical to Paragraph 3.h squarely holds that AAGI is entitled to coverage for all of Kramer's dishonest acts that occurred while there was insurance coverage in force. In its August 29, 2007 reconsideration letter, AAGI directed Acuity to *Cincinnati Insurance Co. v. Hopkins Sporting Goods, Inc.*, 522 N.W.2d 837 (S.Ct. Iowa 1994) and *Universal Underwriters Insurance Co. & Ford*, 734 So.2d 173 (S. Ct. Miss. 1999) as cases that directly contradict Acuity's coverage position. Although these are not Illinois cases, Illinois courts have recognized as persuasive established precedent from other jurisdictions. *James v. Western States Insurance Company*, 335 Ill.App.3d 1109, 783 N.E.2d 37, 42-43 (5th Dist. 2001). Moreover, AAGI has not been able to locate any case law which construes provisions similar to Paragraph 3.h any differently than the Courts did in *Cincinnati Insurance* and *Universal Underwriters*. Those cases, therefore, have become well established precedent.

In *Cincinnati Insurance*, Cincinnati issued two policies to Hopkins Sporting Goods, one for 1986 through 1989, and another for 1989 through 1992. Each policy required a loss to be discovered not later than one year from the end of the policy period. Each policy also had the standard prior loss provision.

In 1992, Hopkins Sporting Goods discovered it had suffered employee theft during the years 1987 through 1992. Cincinnati Insurance Company's position was that no coverage existed prior to 1989 because the losses were not discovered within one year of the expiration of the first policy, i.e., by the end of 1990. The Supreme Court of Iowa rejected Cincinnati Insurance Company's position, finding that the prior loss provision "extend[ed] the limitation period into the period of a new policy." *Id.* at 522 N.W.2d at 839.

In *Universal Underwriters*, Universal Underwriters Insurance Company issued five consecutive one year garage liability insurance policies covering employee dishonesty to Buddy Jones Ford Lincoln-Mercury beginning with the policy period October 1, 1984 to October 1, 1985, and ending with the last policy period of October 1, 1988 to October 1, 1989. On July 25, 1988 the dealership discovered that its bookkeeper had on 175 separate occasions from 1984

through 1988 embezzled over $233,000. As is the case here, each of Universal's policies provided that a loss is covered only if discovered not later than one year from the end of the policy period. Each policy also contained a prior loss provision nearly identical to the one in Acuity's policy.

Universal Underwriters paid the dealership only for losses that occurred during the October 1, 1987 to October 1, 1988 policy period, contending that the one year discovery period precluded coverage for dishonest acts occurring during prior periods. The dealership sued, and the trial court agreed with Universal Underwriter's position. On appeal, the Mississippi Supreme Court reversed, holding that the prior loss provision provided coverage for all of the dishonest acts that occurred during the prior policy periods. Relying on *Cincinnati Insurance*, the Mississippi Supreme Court stated that the prior loss coverage provision "continuously extends the discovery clause through each successive policy period..." 734 So.2d at 179.

The *Universal Underwriters* decision is so persuasive, that it is cited in American Jurisprudence, Fidelity Bonds and Insurance, Second Edition for the general proposition that:

> An extension of coverage provision that covered an employee dishonesty loss during the period of a prior policy if the loss would have been covered by the prior policy but was not discovered during its discovery period continuously extended the discovery clause through each successive policy period; thus, the insured had coverage for losses that occurred during the period of prior policies that expired more than one year before.

*See* 35A Am. Jur. Fidelity Bonds and Insurance, ¶73 (2007). Obviously, general compilations like Am. Jur. do not typically cite marginal or minority positions. *See also Times-Picayune Publishing Corp., supra*, 421 F.3d at 337 (where Times-Picayune was insured under a series of six consecutive employee dishonesty policies beginning in January, 1995, with the final and sixth policy running from July 1, 2000 to July 1, 2001, each containing a one year discovery clause and a prior loss clause, and where the employee's dishonesty was first discovered in December, 2000 during the sixth policy period, it was undisputed that all dishonest acts that occurred during the prior policy periods beginning in January, 1995 were covered by the Times-Picayune's sixth insurance policy).

In its Second Supplemental Answer to AAGI Interrogatory No. 10, Acuity pointed to *Winthrop and Weinstine, P.A. v. Travelers Casualty and Surety Company,* 187 F.3d 871 (8th Cir. 1999) as authority for its position. That case does not support Acuity, and cannot reasonably be interpreted to do so. In *Winthrop,* the plaintiff law firm's accounts payable clerk, Therese Warner, embezzled funds from Winthrop and Weinstine beginning in 1990 and continuing through June, 1994. United States Fidelity and Guaranty Company ("USF&G") insured Winthrop & Weinstine against loss due to employee dishonesty during three policy periods: February 1, 1990 to February 1, 1991; February 1, 1991 to February 1, 1992; and February 1, 1992 to February 1, 1994. The USF&G policies provided that they would "pay only for covered loss discovered no later than one year from the end of the policy period."

On February 1, 1994, the USF&G policy expired, and was replaced by an employee dishonesty policy underwritten by Travelers Casualty and Surety Company ("Travelers"). The Travelers' policy had a prior loss coverage provision identical to that in Acuity's policies. Winthrop & Weinstine discovered Warner's theft on September 28, 1994, and immediately notified Travelers. Winthrop & Weinstine, however, did not notify USF&G of the theft until October 18, 1995, almost thirteen months after it discovered Warner's dishonesty.

USF&G refused to provide coverage for losses occurring prior to February 1, 1994, contending that it was relieved of its obligation as a result of Winthrop & Weinstine's late notice. Travelers agreed to cover losses occurring after February 1, 1994, but claimed that the prior loss clause of its policy did not apply because the one year discovery window under the USF&G policy (i.e., from February 1, 1994 to February 1, 1995) had not expired when Warner's theft was uncovered on September 28, 1994.

Winthrop & Weinstine filed suit against both insurers seeking to recover the losses that occurred prior to February 1, 1994. The district court granted summary judgment in favor of the insurers. The district court held that USF&G was not liable because it was prejudiced by Winthrop & Weinstine's late notice, and that Travelers was liable only for losses occurring after February 1, 1994.

On appeal, the Eighth Circuit held that the district court did not err in concluding that Winthrop & Weinstine's untimely notice was prejudicial to USF&G, and therefore, USF&G was

relieved of any obligation to provide coverage for losses occurring during its policy periods. With regard to Travelers, the Court of Appeals held that the district court properly concluded that the prior loss clause in Travelers' policy did not apply *solely because the time within which to discover the loss under the USF&G policy (by February 1, 1995) had not expired when Winthrop & Weinstine learned of the loss on September 28, 1994.*

Contrary to the facts in *Winthrop*, there is no dispute that AAGI discovered the Kramers theft outside of the discovery window of any insurance in effect prior to the last (i.e., third) Acuity policy. The discovery window for the immediately prior second Acuity policy ended July 12, 2005. AAGI did not learn of the Kramers' dishonesty until August, 2005 (SF11), at which point the discovery window for the second policy had closed. Therefore, the prior insurance clause of the third Acuity policy applies. *Winthrop* clearly has no applicability here.

Acuity also cited in its Second Supplemental Interrogatory Answer to AAGI Interrogatory No. 10, *Willow Management Co. v. American States Insurance Company*, 1995 WL 2282 (N.D. Ill. 1995) and *Kane v. Reliance Insurance Company*, 202 F.3d 1180 (9th Cir. 2000). Acuity's reliance on these cases is misplaced. In *Willow*, only one employee dishonesty policy was issued covering the period March 25, 1991 to March 25, 1992, and it contained a one year discovery window provision. There was no dispute that the loss was discovered outside the one year discovery window. The issue was whether the limitation on coverage imposed by the discovery window could be disregarded where adverse dominion and control by a corporate officer made discovery of the loss impossible. The district court, ruling on a motion to dismiss, held that sufficient facts regarding adverse dominion and control were not alleged to bar application of the one year discovery period limitation. Since no other insurance policy periods were involved, the case did not address the effect of a prior insurance clause and is inapplicable here.

In *Kane*, there were three consecutive employee dishonesty policies issued. Each policy had a one year discovery window, but the issue before the court involved only the first policy. As in *Willow*, there was no dispute that the loss was discovered outside the first policy's one year discovery window. The plaintiff sought to circumvent the one year discovery limitation by arguing that the limitation was inconsistent with other policy provisions providing coverage, and

that the discovery period should be tolled. The Ninth Circuit rejected Kane's arguments, holding that Kane had not provided sufficient evidence to toll the discovery period under the adverse dominion and control theory.

Apparently, there were no prior loss clauses in the second or third policies, as Kane never argued that the first policy period losses were covered by those policies, and there was no discussion of prior loss clauses by the Ninth Circuit. Plainly, *Kane* cannot be cited to suggest that Acuity's prior loss clause does not provide coverage here.

## CONCLUSION

There was one continuous Acuity policy period from July 12, 2002 through July 12, 2005, not three separate policy periods. Sherri Kramer's dishonest acts occurring within that continuous policy period are covered, along with dishonest acts occurring during the General Casualty policy periods as a result of the operation of General Casualty's and Acuity's prior insurance clauses.

Even if there is not a continuous Acuity policy period the prior loss clause unambiguously provides coverage for Sherri Kramer's dishonest acts occurring between November 1, 2000, and July 12, 2005. The existence of coverage is supported by industry interpretation and well established precedent. There is no contrary authority, and Acuity's coverage interpretation fails to give effect to Paragraph 3.h. This Court should hold that Acuity's employee dishonesty policy covers all of AAGI's losses.

Respectfully submitted,
AMERICAN AUTO GUARDIAN, INC.


/s/
_____
One of its Attorneys

Richard A. Wohlleber
Joseph P. Lombardo
CHAPMAN AND CUTLER LLP
111 W. Monroe Street
Chicago, IL 60603
(312) 845-3000
(312) 701-2361

## CERTIFICATE OF SERVICE

Joseph P. Lombardo, an attorney, certifies that American Auto Guardian, Inc.'s Memorandum of Law in Support of Its Motion for Summary Judgment was filed electronically on February 6, 2008. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties and interested persons may access this filing through the Court's system:

> Glenn Fencl
> Richard Gordon
> Johnson & Bell
> 33 W. Monroe, Suite 2700
> Chicago, IL 60603
> fenclg@jbltd.com
> gordonr@jbltd.com

/s/   Joseph P. Lombardo
      Joseph P. Lombardo

2359232 01.02.doc